# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF FLORIDA

### WEST PALM BEACH DIVISION

### CASE NO. 9:21-CV-82067-CIV (CANNON)

TWO ROADS DEVELOPMENT LLC,
TRILAR HOLDINGS LLC, and FLAGLER
SOUTH DEVELOPMENT LLC,

                  Plaintiffs,

v.

PALM BEACH ATLANTIC UNIVERSITY
INC., FRISBIE GROUP LLC, FH3 LLC,
WILLIAM M.B. FLEMING, JR., PATRICK
C. KOENIG, DAVID W. FRISBIE,
ROBERT N. FRISBIE JR., and CODY S.
CROWELL,

                  Defendants.

## DEFENDANTS' MOTION AND MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION AND FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED

**<u>TABLE OF CONTENTS</u>**

**<u>Page</u>**

BACKGROUND AND OVERVIEW ............................................................................1

ARGUMENT ..........................................................................................................4

    A.    LEGAL STANDARD..........................................................................4

    B.    PLAINTIFFS FAIL TO STATE A CLAIM FOR CIVIL RICO
          VIOLATIONS ........................................................................................4

          1.    Plaintiffs Fail to Allege – and Cannot Plausibly Allege – an
               Association-in-Fact "Enterprise" Comprised of the PBAU
               Defendants and the Frisbie Defendants ......................................5

          2.    Plaintiffs Have Not Alleged – and Cannot Plausibly Allege –
               Predicate Acts Constituting a "Pattern" of Racketeering Activity ..............7

               a.    Plaintiffs Fail to Plead Wire Fraud. ...............................8

               b.    Plaintiffs Fail to Plead Extortion.....................................9

               c.    Plaintiffs Fail to Plead Criminal Trade Secret
                    Misappropriation.........................................................9

          3.    Plaintiffs Do Not – and Cannot – Allege a "Pattern" of
               Racketeering Activity that was Continuing in Nature ................................9

          4.    Plaintiffs Do Not – and Cannot – Allege That Any "Pattern" of
               Racketeering Activity was a Proximate Cause of Cognizable Injury........11

    C.    PLAINTIFFS FAIL TO STATE A CLAIM FOR TRADE SECRET
          MISAPPROPRIATION.......................................................................12

          1.    The FAC Establishes That Plaintiffs Failed To Take "Reasonable
               Measures" To Maintain the Secrecy of the Asserted Secrets. ..................13

               a.    Plaintiffs Widely Disseminated Information Without
                    Protections.................................................................13

               b.    The LOI Confirms the Absence of Reasonable Measures............15

               c.    An "Implied . . . Understanding" Is No "Reasonable
                    Measure."...................................................................18

# TABLE OF CONTENTS

**(Continued)**

**Page**

2.      Plaintiffs Fail To Identify Any Misappropriated Trade Secret Information. ...................................................................................19

D.      PLAINTIFFS ALSO FAIL TO SUFFICIENTLY PLEAD VARIOUS STATE LAW CLAIMS.........................................................................21

1.      Plaintiffs' Purchase and Sale Agreement-Based Claims Seek Enforcement of a Contract In Violation of Its Own Terms and the Statute of Frauds ................................................................................21

a.      Breach of The Proposed PSA (Claim 4). ......................................21

b.      Specific Performance (Claim 15) and Promissory Estoppel (Claim 8). ........................................................................................23

c.      Breach of the LOI's Exclusivity Provision (Claim 2). .................24

2.      Plaintiffs Fail to State Claims Related to Misappropriation of Information. ................................................................................................25

a.      FUTSA (Claim 10). ........................................................................26

b.      Conversion of Confidential Business Information (Claim 11) .................................................................................................26

c.      Unjust Enrichment (Claim 14).......................................................27

d.      Tortious Interference (Claims 12 and 13).......................................27

e.      Fraud (Claim 5), Aiding and Abetting Fraud (Claim 6), and Negligent Misrepresentation (Claim 7) .........................................28

CONCLUSION.....................................................................................................30

## **TABLE OF AUTHORITIES**

### **FEDERAL CASES**

*Acrisure of Cal., LLC v. Soc. Commercial Ins. Servs., Inc.*,
   No. CV 18-10187-CJC, 2019 WL 4137618 (C.D. Cal. Mar. 27, 2019)..................20

*ADA Consultants & Advisors, Inc. v. Wal-Mart Stores, Inc.*,
   No. 609CV143ORL18DAB, 2009 WL 10670000 (M.D. Fla. Aug. 10, 2009) ......................21

*Am. Red Cross v. Palm Beach Blood Bank, Inc.*,
   143 F.3d 1407 (11th Cir. 1998) ...................................................................12, 19

*Am. Registry, LLC v. Hanaw*,
   No. 2:13-CV-352-FtM-29CM, 2014 WL 12606501 (M.D. Fla. July 16, 2014) ..............26, 27

*American Dental Ass'n v. Cigna Corp.*,
   605 F.3d 1283 (11th Cir. 2010) .........................................................1, 2, 4, 5, 8, 15

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)............................................................................4, 5, 8

*Attia v. Google LLC*,
   No. 17-cv-06037-BLF, 2018 WL 2971049 (N.D. Cal. Jun. 13, 2018)...................10

*Banco Latino Int'l v. Gomez Lopez*,
   95 F. Supp. 2d 1327 (S.D. Fla. 2000) ......................................................5

*Bateman v. Mnemonics, Inc.*,
   79 F.3d 1532 (11th Cir. 1996) ...........................................................13, 18

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007)........................................................................2, 4, 8

*Bivens Gardens Office Bldg., Inc. v. Barnett Banks of Fla., Inc.*,
   140 F.3d 898 (11th Cir. 1998) ...........................................................12

*Blue Cross & Blue Shield of Ala. v. Sanders*,
   138 F.3d 1347 (11th Cir. 1998) ...........................................................21

*Boyle v. U.S.*,
   556 U.S. 938 (2009)........................................................................4, 5, 6

*Brooks v. Blue Cross & Blue Shield of Fla.*,
   116 F.3d 1364 (11th Cir. 1997) .......................................................8, 29, 30

*Care Servs. Mgmt., LLC v. Premier Mobile Dentistry of VA, LLC*,
   No. 3:17-CV-01095, 2020 WL 5797974 (M.D. Tenn. Sept. 29, 2020)...................15

# TABLE OF AUTHORITIES

### (Continued)

**Page**

*CareerFairs.com v. United Bus. Media LLC*,
838 F. Supp. 2d 1316 (S.D. Fla. 2011) ...................................................................27

*Carnegie-Mellon Univ. v. Cohill*,
484 U.S. 343 (1988)..................................................................................................21

*Charles Ramsey Co., Inc. v. Fabtech-NY LLC*,
No. 1:18-CV-0546, 2020 WL 352614 (N.D.N.Y. Jan. 21, 2020) .....................13, 15

*Cisneros v. Petland, Inc.*,
972 F.3d 1204 (11th Cir. 2020) ...............................................................................5

*Cofacredit, S.A. v. Windsor Plumbing Supply Co.*,
187 F.3d 229 (2d Cir. 1999)......................................................................................10

*Cont. Assocs., Inc. v. Atalay*,
No. 1:14-CV-882, 2015 WL 1649051 (E.D. Va. Apr. 10, 2015) ...........................19

*D. Penguin Bros. Ltd. v. City Nat'l Bank*,
587 F. App'x 663 (2d Cir. 2014) ...............................................................................7

*DB Riley, Inc. v. AB Eng'g Corp.*,
977 F. Supp. 84 (D. Mass. 1997) ..............................................................................16

*Decurtis LLC v. Carnival Corporation*,
No. 20-22945-CIV, 2021 WL 1968327 (S.D. Fla. Jan. 6, 2021)......................19, 20

*Diamond Power Int'l, Inc. v. Clyde Bergemann, Inc.*,
370 F. Supp. 2d 1339 (N.D. Ga. 2005) .....................................................................17

*Durham v. Bus. Mgmt. Assocs.*,
847 F.2d 1505 (11th Cir. 1988) .................................................................................29

*Efron v. Embassy Suites (P.R.), Inc.*,
223 F.3d 12 (1st Cir. 2000).......................................................................................10

*Fail-Safe LLC v. A.O. Smith Corp.*,
744 F. Supp. 2d 831 (E.D. Wis. 2010).......................................................................19

*Flamenbaum v. Orient Lines, Inc.*,
No. 03-22549-CIV, 2004 WL 1773207 (S.D. Fla. July 20, 2004) ..........................30

# TABLE OF AUTHORITIES

## (Continued)

**Page**

*Gamboa v. Velez*,
  457 F.3d 703 (7th Cir. 2006) ...........................................................................10

*Goldfine v. Sichenzia*,
  118 F. Supp. 2d 392 (S.D.N.Y. 2000).................................................................5

*H.J. Inc. v. Northwestern Bell Tel. Co.*,
  492 U.S. 229 (1989)...........................................................................................10

*Heinhold v. Perlstein*,
  651 F. Supp. 1410 (E.D. Pa. 1987) ...................................................................11

*Hi-Tech Pharm., Inc. v. HBS Int'l Corp.*,
  910 F.3d 1186 (11th Cir. 2018) ..........................................................................3

*Hill Holliday Connors Cosmopulos, Inc. v. Greenfield*,
  433 F. App'x 207 (4th Cir. 2011) .....................................................................14

*Hodges v. Buzzeo*,
  193 F. Supp. 2d 1279 (M.D. Fla. 2002)............................................................28

*Hughes v. Consol-Pa. Coal Co.*,
  945 F.2d 594 (3d Cir. 1991)..............................................................................10

*Hurry Fam. Revocable Tr. v. Frankel*,
  No. 8:18-CV-2869-T-33CPT, 2019 WL 2868945 (M.D. Fla. July 3, 2019).............19

*In re Holdsworth*,
  495 B.R. 544 (Bank. M.D. Fla. 2013)..................................................................9

*In re Maxxim Med. Grp., Inc.*,
  434 B.R. 660 (Bank. M.D. Fla. 2010).................................................................13

*Inv. Sci., LLC v. Oath Holdings Inc.*,
  No. 20 CIV. 8159 (GBD), 2021 WL 3541152 (S.D.N.Y. Aug. 11, 2021) .............18

*Jackson v. BellSouth Telecomms.*,
  372 F.3d 1250 (11th Cir. 2004) ......................................................................7, 9

*Jouria v. CE Res., Inc.*,
  No. 15-CV-61165, 2017 WL 3868422 (S.D. Fla. July 17, 2017)...........................27

**TABLE OF AUTHORITIES**

**(Continued)**

**Page**

*K3 Enters., Inc. v. Sasowski,*
No. 1:20-cv-24441-AMC (S.D. Fla. Nov. 22, 2021), ECF No. 95.........................................25

*Krush Commc'ns, LLC v. Lunex Telecom, Inc.,*
No. 1:13-CV-3167-SCJ, 2014 WL 12069847 (N.D. Ga. Sept. 12, 2014) ..............................17

*M.C. Dean, Inc. v. City of Miami Beach,*
199 F. Supp. 3d 1349 (S.D. Fla. 2016) ......................................................................12, 13, 17

*Madu v. U.S. Atty. Gen.,*
470 F.3d 1362 (11th Cir. 2006) ...................................................................................................4

*Maio v. Aetna, Inc.,*
221 F.3d 472 (3d Cir. 2000)........................................................................................................11

*Mason v. AmTrust Fin. Servs., Inc.,*
No. 19CV8364 (DLC), 2020 WL 1330688 (S.D.N.Y. Mar. 23, 2020), *aff'd,* 848 F.
App'x 447 (2d Cir. 2021)...........................................................................................................14

*Metro Worldwide, LLC v. ZYP LLC,*
No. 9:19-CV-81502-RLR, 2021 WL 1015960 (S.D. Fla. Mar. 17, 2021) .......................22, 23

*Mile High Healthcare Analytics, LLC v. Med. Care Consortium Inc.,*
No. 18-CV-22374, 2020 WL 9460325 (S.D. Fla. July 29, 2020)...........................................27

*Morast v. Lance,*
807 F.2d 926 (11th Cir. 1987) ...................................................................................................11

*Nautica Int'l v. Intermarine USA, L.P.,*
5 F. Supp. 2d 1333 (S.D. Fla. 1998) .........................................................................................27

*Nephron Pharms. Corp. v. Hulsey,*
No. 6:18-cv-1573-Orl-31LRH, 2020 WL 7684863 (M.D. Fla. Oct. 7, 2020).................25, 29

*O'Malley v. O'Neill,*
887 F.2d 1557 (11th Cir. 1989) .................................................................................................11

*O'Rear v. Am. Family Life Assurance Co.,*
139 F.R.D. 418 (M.D. Fla. 1991)...............................................................................................11

*Perry v. Gammon,*
583 F. Supp. 1230 (N.D. Ga. 1984) ..........................................................................................30

## TABLE OF AUTHORITIES

### (Continued)

**Page**

*Price v. Pinnacle Brands, Inc.*,
138 F.3d 602 (5th Cir. 1998) ...................................................................11

*R.C. Olmstead, Inc., v. CU Interface, LLC*,
606 F.3d 262 (6th Cir. 2010) ...................................................................17

*Raney v. Allstate Ins. Co.*,
370 F.3d 1086 (11th Cir. 2004) ...............................................................21

*Ray v. Spirit Airlines, Inc.*,
836 F.3d 1340 (11th Cir. 2016) .................................................................5

*Rogers v. Desa Int'l, Inc.*,
183 F. Supp. 2d 955 (E.D. Mich. 2002) ...................................................17

*Sheets v. Yamaha Motors Corp., U.S.A.*,
849 F.2d 179 (5th Cir. 1988) ...................................................................14

*Silicon Image, Inc. v. Analogix Semiconductor, Inc.*,
No. C-07-00635 JCS, 2008 WL 166950 (N.D. Cal. Jan. 17, 2008) ........16

*Smart & Assocs., LLC v. Indep. Liquor (NZ) Ltd.*,
226 F. Supp. 3d 828 (W.D. Ky. 2016) .....................................................16

*Smith v. GTE Corp.*,
236 F.3d 1292 (11th Cir. 2001) .................................................................4

*St. Johns Vein Ctr., Inc. v. StreamlineMD LLC*,
347 F. Supp. 3d 1047 (M.D. Fla. 2018) ..............................................15, 18

*Super Vision Intern., Inc. v. Mega Intern. Comm. Bank Co., Ltd.*,
534 F. Supp. 2d 1326 (S.D. Fla. 2008) .....................................................7

*Taxinet, Corp. v. Leon*,
No. 16-24266-CIV, 2018 WL 3405243 (S.D. Fla. July 12, 2018) .....26, 29

*Taylor v. Appleton*,
30 F.3d 1365 (11th Cir. 1994) ...................................................................4

*Temurian v. Piccolo*,
No. 18-62737, 2019 WL 1763022 (S.D. Fla. Apr. 22, 2019) ............12, 26

**TABLE OF AUTHORITIES**

**(Continued)**

**Page**

*TRB Acquisitions LLC v. Yedid*,
No. 20-CV-0552 (JMF), 2021 WL 293122 (S.D.N.Y. Jan. 28, 2021) ...................................20

*TriEst Irrigation LLC v. Hiers*,
No. 7:18-CV-155 (HL), 2021 WL 2229059 (M.D. Ga. June 2, 2021) ............................13, 16

*U.S. Airline Pilots Ass'n v. Awappa, LLC*,
615 F.3d 312 (4th Cir. 2010) ..................................................................................................10

*U.S. v. Bledsoe*,
674 F.2d 647 (8th Cir. 1982) (*overruled on other grounds*, *U.S. v. Lane*, 474 U.S.
438 (1986))...............................................................................................................................6

*U.S. v. Goldin Indus.*,
219 F.3d 1271 (11th Cir. 2000) ............................................................................................6, 7

*U.S. v. Gonzalez*,
921 F.2d 1530 (11th Cir. 1991) ................................................................................................9

*U.S. v. Ross*,
131 F.3d 970 (11th Cir. 1997) ..................................................................................................8

*U.S. v. Shanshan Du*,
570 F. App'x 490 (6th Cir. 2014) ...........................................................................................13

*U.S. v. Turkette*,
452 U.S. 576 (1981)...................................................................................................................6

*Varney v. R.J. Reynolds Tobacco Co.*,
118 F. Supp. 2d 63 (D. Mass. 2000) .......................................................................................29

*VVIG, Inc. v. Alvarez*,
No. 18-23109-CIV, 2019 WL 5063441 (S.D. Fla. Oct. 9, 2019) ......................................19, 20

*White Constr. Co., Inc. v. Martin Marietta Materials, Inc.*,
633 F. Supp. 2d 1302 (M.D. Fla. 2009)...................................................................................23

*Yellowfin Yachts, Inc. v. Barker Boatworks, LLC*,
898 F.3d 1279 (11th Cir. 2018) .......................................................................14, 15, 17, 18

**TABLE OF AUTHORITIES**

**(Continued)**

**Page**

**STATE CASES**

*Bergman v. DeIulio*,
    826 So. 2d 500 (Fla. 4th Dist. Ct. App. 2002) ........................................................................23

*Bruce v. Am. Dev. Corp.*,
    408 So. 2d 857 (Fla. 3d Dist. Ct. App. 1982) ..........................................................................28

*Cap. Asset Research Corp. v. Michael Swerdlow Cos.*,
    743 So. 2d 43 (Fla. 4th Dist. Ct. App. 1999) ..........................................................................22

*Cavallaro v. Stratford*,
    784 So. 2d 619 (Fla. 5th Dist. Ct. App. 2001) ........................................................................23

*Club Eden Roc v. Tripmasters, Inc.*,
    471 So. 2d 1322 (Fla. 3d Dist. Ct. App. 1985) ......................................................................22

*Davis v. Ivey*,
    984 So. 2d 571 (Fla. 5th Dist. Ct. App. 2008) ........................................................................24

*DK Arena, Inc. v. EB Acquisitions I, LLC*,
    112 So. 3d 85 (Fla. 2013) ..................................................................................................22, 23

*Ethyl Corp. v. Balter*,
    386 So. 2d 1220 (Fla. 3d Dist. Ct. App. 1980) ......................................................................28

*Friedman v. Am. Guard. Warranty Servs., Inc.*,
    837 So. 2d 1165 (Fla. 4th Dist. Ct. App. 2003) ....................................................................30

*Gossard v. Adia Servs., Inc.*,
    723 So. 2d 182 (Fla. 1998) ....................................................................................................28

*Hester v. Fla. Cap. Grp., Inc.*,
    189 So. 3d 950 (Fla. 2d Dist. Ct. App. 2016) ........................................................................24

*Home Design Joint Venture v. Cnty. Appliance of Naples*,
    563 So. 2d 767 (Fla. 2d Dist. Ct. App. 1990) ........................................................................23

*Martin Petroleum Corp. v. Amerada Hess Corp.*,
    769 So. 2d 1105 (Fla. 4th Dist. Ct. App. 2000) ....................................................................28

*Midtown Realty, Inc. v. Hussain*,
    712 So. 2d 1249 (Fla. 3d Dist. Ct. App. 1998) ......................................................................23

# TABLE OF AUTHORITIES

## (Continued)

**Page**

*Nicholson v. Kellin,*
    481 So. 2d 931 (Fla. 5th Dist. Ct. App. 1985) ........................................................30

*Rybovich Boat Works, Inc. v. Atkins,*
    585 So. 2d 270 (Fla. 1991) ........................................................................................24

*Star Fruit Co. v. Eagle Lake Growers,*
    33 So. 2d 858 (Fla. 1948) ..........................................................................................26

*Tanenbaum v. Biscayne Osteopathic Hosp., Inc.,*
    190 So. 2d 777 (Fla. 1966) ........................................................................................22

*Weisman v. S. Wine & Spirits,*
    297 So. 3d 646 (Fla. 4th Dist. Ct. App. 2020) ..........................................................27

**FEDERAL STATUTES**

18 U.S.C. 1836(b) ............................................................................................................12

18 U.S.C § 1839(3)(A) .....................................................................................................21

18 U.S.C. § 1839(3)(B) ...............................................................................................20, 21

Defend Trade Secrets Act (DTSA) ...........................................................................*passim*

RICO ..........................................................................................................................*passim*

**STATE STATUTES**

Fla. Stat. § 95.11(5)(a) ....................................................................................................24

Fla. Stat. § 688.008(1) .....................................................................................................25

Fla. Stat. § 725.01 ......................................................................................................22, 23

Florida Uniform Trade Secret Act (FUTSA) ............................................................*passim*

**RULES**

Fed. R. Civ. P. 9(b) ..........................................................................................2, 8, 29, 30

Fed. R. Civ. P. 12(b)(1) ...................................................................................................1, 4

Fed. R. Civ. P. 12(b)(6) ...................................................................................................1, 4

## <u>TABLE OF AUTHORITIES</u>

**(Continued)**

<u>**Page**</u>

### <u>OTHER AUTHORITIES</u>

Restatement (Second) of Torts § 766 cmt. *N* (1979) ....................................................................28

Pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6), Defendants Palm Beach Atlantic University Inc. ("PBAU" or "the University"), William M.B. Fleming, Jr., and Patrick C. Koenig (the "PBAU Defendants"),[1] and David W. Frisbie, Robert N. Frisbie Jr., Cody S. Crowell, Frisbie Group LLC, and FH3 LLC (the "Frisbie Defendants"[2] and, collectively with the PBAU Defendants, "Defendants"), move to dismiss the First Amended Complaint ("FAC") of Plaintiffs Two Roads Development LLC, Trilar Holdings LLC, and Flagler South Development LLC (collectively, "Plaintiffs") (DE 11) for lack of subject matter jurisdiction and failure to state a claim upon which relief can be granted.

## BACKGROUND AND OVERVIEW

Plaintiffs' claims of racketeering schemes, stolen secrets, and common law breaches evaporate upon contact with the federal pleading requirements and relevant legal standards. The actual facts they allege show, instead, that this is an ordinary property sale dispute presenting no issue of federal law. Plaintiffs are victims of only their unjustified sense of being entitled to transact business with commercial parties who have chosen other, more suitable partners.

Plaintiffs' own complaint confirms these conclusions – especially once, as required in assessing a motion to dismiss, conclusory allegations and unsupported characterizations are disregarded and only particularly alleged facts are assessed to determine whether they support plausible claims. *See American Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1288-93 (11th Cir. 2010). So viewed, the complaint establishes only that Plaintiffs are failed and disappointed bidders for two parcels of PBAU's property, and are aggrieved that Defendants did not alter their own development planning to accommodate them. Following agreement to a letter of intent that structured negotiations regarding a potential sale of the parcels, Plaintiffs negotiated with PBAU to secure an agreement to sell the land. (FAC, ¶¶ 46-59.) Sometime thereafter, according to Plaintiffs, PBAU officials allegedly approved the completion and delivery of a final agreement by the President if he chose to exercise his discretion to do so, (*id.*, ¶ 59), but he did not. (*Id.*, ¶¶ 62-64.) Instead, the President and PBAU proceeded with another party – the Frisbie Group. (*Id.*, ¶¶ 74, 79.) The Frisbie Defendants, too, thereafter rebuffed Plaintiffs' overture and chose a

---

[1] Palm Beach Atlantic University is an ecumenical Christian University in West Palm Beach, Florida. William Fleming previously served as President and in that capacity was PBAU's Chief Executive Officer. Patrick Koenig serves on PBAU's Board of Trustees.

[2] Frisbie Group is a Florida-based real estate investment and operating firm specializing in the reimagination and revitalization of real estate along the East Coast.

different partner to advance their development plans.  (*Id.*, ¶¶ 73-78.)  And, PBAU did not do Plaintiffs the favor of granting an easement over its own property even as Plaintiffs sought to block PBAU's ability to develop its property; nor did other defendants alter their own development plans to benefit Plaintiffs.  (*Id.*, ¶¶ 81-91.)  This is all normal commercial behavior.

The rest, alleging coordinated and bad faith action directed against Plaintiffs, is purely conclusory.  Plaintiffs' fraud-based RICO claim, one of two asserted bases for federal jurisdiction, is precisely the speculative assertion that fails to rise to the level of a "plausible" claim, especially where, as here, the facts Plaintiffs do plead are entirely consistent with the "obvious alternative explanation" that each of the Defendants was separately pursuing its own, legitimate interests.  *See American Dental Ass'n*, 605 F.3d at 1290; *see also Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007); Fed. R. Civ. P. 9(b).  The complaint alleges no facts regarding any associated-in-fact "enterprise" involving the University and the Frisbie Defendants, any predicate criminal acts, any lengthy and repeated "pattern" of such acts, or any harm arising from them.  *See infra* Part B.  Indeed, the complaint contains not a single fact indicating Defendants schemed to harm Plaintiffs rather than indicating that each set of Defendants simply pursued its independent, legitimate interests.

Likewise with Plaintiffs' trade secret claim, the only other basis asserted for federal jurisdiction.  Far from having taken "reasonable measures" to protect the confidentiality of information as required to maintain a trade secrets claim, Plaintiffs admit that they repeatedly disclosed that information to many parties, including Defendants, without adopting even the most rudimentary protective measures.  They handled their information as though it reflected no secrets at all, and cannot identify what "secrets" they possessed or were misappropriated.  *See infra* Part C.

The documents central to Plaintiffs' claims confirm these pleading failures.  Plaintiffs chose not to provide this Court with the two documents that underpin their various claims: (i) a Letter of Intent ("LOI") entered midway through discussions concerning a potential sale between Plaintiffs and the University in 2018 (FAC, ¶¶ 50-54), and (ii) the proposed Purchase and Sale Agreement ("PSA") that the University declined to sign in 2019 following those discussions (*id*. ¶¶ 59-64).[3]  This Court may appropriately consider those documents in addressing this motion.

---

[3] The LOI and proposed PSA are attached as Exhibits A and B, respectively, to the Declaration of Attorney Larry Alexander filed in support of this motion to dismiss and attached hereto.

*Hi-Tech Pharm., Inc. v. HBS Int'l Corp.*, 910 F.3d 1186, 1189 (11th Cir. 2018).  As detailed below, the "non-binding" LOI in fact confirms that Plaintiffs failed to treat their supposed "trade secrets" as secrets at all.  *See infra* Part C.1.  The PSA, in turn, shows the limited information that Plaintiffs actually considered to need protecting.  *See id.*

The PSA and LOI also undermine Plaintiffs' closely related state law claims, should this Court choose to address them as a matter of judicial efficiency.  Plaintiffs' contract claims disregard the relevant contracts' terms and basic rules of contract formation and construction.  The PSA, executed by Plaintiffs but not by PBAU, expressly indicated that it would become effective only upon execution by *both* parties.  In any event, any proposed contract such as the PSA, especially for the sale of real property, must be agreed and signed by *both* parties to be enforceable.  Otherwise it is, as here, just an offer.  *See infra* Part D.1.a.  The PSA also contradicts the specific relief and completion-related damages Plaintiffs seek: it is a highly contingent, interim agreement entirely dependent on Plaintiffs succeeding in the lengthy and uncertain regulatory approval process.  (*See* FAC, ¶ 37 ("significant zoning hurdles" for neighboring project), ¶¶ 9 & 74 (nearly two years of pursuing approvals).)  Even if signed, the proposed PSA would have been but one of many steps along a long road to a completed transaction.  *See infra* Part D.1.b.  And, the LOI's exclusivity period, the basis for one of Plaintiffs' contractual breach claims, expressly lasted only 90 days and expired long before the allegedly breaching discussions among the Defendants.  *See infra* Part D.1.c.

Plaintiffs' state law claims related to unjust enrichment through misappropriation of information by fraud or otherwise are equally infirm.  Plaintiffs' trade secrets claim under the Florida Uniform Trade Secrets Act ("FUTSA") fails for the same reasons the federal claim fails.  *See infra* Part D.2.a.  FUTSA also preempts Plaintiffs' various conversion, unjust enrichment, tortious interference, fraud, and misrepresentation claims that rest on the same allegations as those supporting the FUTSA claim, and are simply relabeled as alternative grounds for relief.  *See infra* Part D.2.b-e.  In addition, several of those claims must be dismissed for additional, separate reasons, ranging from the rule that fraud be pleaded with particularity to the limitations Florida law imposes on tortious interference claims to protect legitimate commercial activity.  *See infra* Part D.2.d-e.

Plaintiffs may be deeply disappointed that the University would not sell two property parcels to them and that the Frisbie Defendants did not find them to be suitable co-venturers, but

their complaint presents nothing that makes this a case – much less a federal case.

## ARGUMENT

Plaintiffs have failed to plead facts establishing a plausible foundation for their claims for violation of the RICO Act (First Claim for Relief) and for federal trade secret misappropriation (Ninth Claim for Relief).  Plaintiffs' own complaint shows that they had no information that they protected as "trade secrets" and that Defendants are not racketeers.  Even if a plausible foundation did exist, Plaintiffs fail to satisfy basic pleading requirements.  The complaint should be dismissed.

### A.      LEGAL STANDARD

Rule 12(b)(1) requires the dismissal of claims lacking federal subject matter jurisdiction. *E.g.*, *Madu v. U.S. Atty. Gen.*, 470 F.3d 1362, 1365 (11th Cir. 2006).  Once challenged, the party invoking this Court's jurisdiction – here, Plaintiffs – bears the burden of proving subject matter jurisdiction exists in this Court.  *Taylor v. Appleton*, 30 F.3d 1365, 1367 (11th Cir. 1994); *accord Smith v. GTE Corp.*, 236 F.3d 1292, 1299 (11th Cir. 2001) ("[A] court must zealously [e]nsure that jurisdiction exists over a case … .").

Under Rule 12(b)(6), a complaint must plead facts sufficient to create a "reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "A plaintiff's obligation to provide the 'grounds' for 'entitlement to relief' requires more than labels and conclusions," and pleaded facts, excluding from consideration conclusory allegations, "must be enough to raise a right to relief above the speculative level" – more than a "mere possibility."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Plaintiffs must establish that their claim is instead "plausible," and "courts may infer from the factual allegations in the complaint 'obvious alternative explanation[s],' which suggest lawful conduct rather than the unlawful conduct plaintiff would ask the court to infer."  *American Dental Ass'n*, 605 F.3d at 1290 (quoting *Ashcroft*, 556 U.S. at 1951-52).

### B.      PLAINTIFFS FAIL TO STATE A CLAIM FOR CIVIL RICO VIOLATIONS

Plaintiffs' RICO allegations present precisely the type of speculative, non-plausible claim that *Iqbal*, *Twombly*, and the *American Dental Association* line of cases all require be dismissed. In *American Dental Association*, plaintiffs alleged that the defendants' similarly-directed actions amounted to a "common scheme" to harm third parties; in *Twombly*, parallel conduct was alleged to be improperly coordinated; and in *Iqbal*, national security actions were alleged to be

infected with a "discriminatory" purpose.  All were dismissed because, once the conclusory allegations were excluded from the analysis, the remaining factual allegations were susceptible to "'obvious alternative explanation[s], which suggest lawful conduct rather than unlawful conduct … .'"  *American Dental Ass'n*, 605 F.3d at 1290 (quoting *Ashcroft*, 556 U.S. at 1951-52).

Here, too, Plaintiffs paste speculative and conclusory labels of conspiracy and improper motive on what is otherwise a description of normal and legitimate commercial conduct: both sets of Defendants pursuing a discrete commercial opportunity with partners that happen not to be Plaintiffs.  However, because RICO "was not intended to create a new means of recovery in garden variety commercial disputes," "commercial litigators cannot transform every commercial dispute into a civil RICO action … by contorting the facts of the dispute to resemble vaguely a criminal undertaking."  *Banco Latino Int'l v. Gomez Lopez*, 95 F. Supp. 2d 1327, 1333 (S.D. Fla. 2000); *accord Goldfine v. Sichenzia*, 118 F. Supp. 2d 392, 394 (S.D.N.Y. 2000) (condemning similar attempt to transform garden variety business case into RICO case in attempt to obtain treble damages).

As a result, Plaintiffs cannot satisfy any of RICO's central elements.  To proceed under the statute, a plaintiff must plausibly allege that defendants (1) operated or managed, (2) an *enterprise,* (3) through a *pattern,* (4) of *racketeering activity* that included *at least two predicate acts of racketeering*, which (5) caused (6) injury to the business or property of the plaintiff."  *Cisneros v. Petland, Inc.*, 972 F.3d 1204, 1211 (11th Cir. 2020) (emphasis added).  As described further below, the complaint does not establish any enterprise (or indeed any improper coordination directed at Plaintiffs), any predicate criminal acts (much less a pattern of such acts), or harm caused by such criminality.  Each of these flaws independently requires that the RICO claim be dismissed with prejudice.

1.    **Plaintiffs Fail to Allege – and Cannot Plausibly Allege – an Association-in-Fact "Enterprise" Comprised of the PBAU Defendants and the Frisbie Defendants**

Plaintiffs must, but cannot, plead "facts sufficient to give rise to a plausible inference that the various members of the alleged enterprise acted with [a] common [unlawful] purpose."  *Ray v. Spirit Airlines, Inc.*, 836 F.3d 1340, 1352-53 (11th Cir. 2016).  Their complaint establishes no enterprise, much less one organized to pursue a common, improper purpose.

An associated-in-fact RICO enterprise is "a group of persons associated together for a common purpose of engaging in a course of conduct," *U.S. v. Turkette*, 452 U.S. 576, 583 (1981), that "furnishes a vehicle for the commission of two or more predicate crimes." *U.S. v. Goldin Indus.*, 219 F.3d 1271, 1275 (11th Cir. 2000). Plaintiffs must plead facts showing "a continuing unit that functions with a common purpose," including "a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit those associates to pursue the enterprise's purpose." *Boyle v. U.S.*, 556 U.S. 938, 941, 946 (2009). This requirement "ensure[s] that RICO's severe penalties are limited to 'enterprises consisting of more than simple conspiracies to perpetrate the predicate acts of racketeering." *U.S. v. Bledsoe*, 674 F.2d 647, 664 (8th Cir. 1982) (*overruled on other grounds*, *U.S. v. Lane*, 474 U.S. 438 (1986)).

Far from pleading facts showing the existence of any continuing unit with sufficient longevity between the Frisbie Defendants and the PBAU Defendants, Plaintiffs' complaint instead concedes two independent parties, each pursuing their separate economic interests and related only by the objective of completing a discrete property transaction. *See supra* p. 1-2 (alleged facts consistent with normal commercial dealings). Plaintiffs' allegations in fact show each set of defendants' independent actions directed toward Plaintiffs, separately addressing the Frisbie Defendants' actions, (*see, e.g.*, FAC ¶ 105(a), (d) (own negotiations); *id.* ¶ (a)-(b) (denying knowledge of Two Roads/PBAU negotiations); *id.*, ¶ (a), (c)-(d) (procuring "trade secrets"); and *id.*, ¶ (a), (d) (failing to assist in securing permission for easement)), and those of the PBAU RICO defendants, (*see, e.g., id.*, ¶ (e)-(g) (misleading statements regarding contract status); *id.*, ¶ (e)-(f) ("misle[d] Plaintiffs into submitting another offer"); and *id.*, ¶ (e) ("condition[ed] easements…on the release of legal claims and support of future developments on the property"). No facts support joint or coordinated action.

Similarly, although Plaintiffs repeatedly claim that Defendants acted with a common "purpose" in a "scheme to defraud Plaintiffs," (FAC ¶¶ 2, 67, 105), their complaint points only to independent actions. The alleged PBAU actions to secure Plaintiffs' development plans and related information occurred early in the nine months before PBAU and Plaintiffs allegedly "made concluding revisions to the [PSA]" "[i]n or about March 2019." (*Id.*, ¶ 59.) Yet that March 2019 date also marks the first alleged appearance of the Frisbie Defendants in even seeking to discuss a development opportunity with PBAU. (*Id.*, ¶ 68.) In Plaintiffs' own

narration, there is no common action or purpose.  Likewise, the Frisbie Defendants' supposed "defrauding" of Plaintiffs took the form of eventually fruitless negotiations over whether Plaintiffs and the Frisbie Defendants might act together as co-developers, (*id.*, ¶¶ 75-77), matters inherently not involving the PBAU Defendants and for which Plaintiffs provide no facts suggesting PBAU involvement.

Indeed, the complaint alleges no facts even suggesting that the two sets of defendants coordinated or even communicated regarding actions, or jointly undertook actions, designed to harm or defraud Plaintiffs.  However, Plaintiffs must identify an enterprise that "furnishes a vehicle for the commission of two or more predicate crimes," *U.S. v. Goldin Indus.*, 219 F.3d at 1275.  There can be no RICO enterprise where, as here, defendants act on behalf of themselves, "in their individual capacities, to advance their individual self-interests."  *D. Penguin Bros. Ltd. v. City Nat'l Bank*, 587 F. App'x 663, 667 (2d Cir. 2014) ("Plaintiffs' failure to allege a plausible common purpose among the RICO defendants is fatal to their assertion that these defendants formed an association-in-fact RICO enterprise."); *accord Super Vision Intern., Inc. v. Mega Intern. Comm. Bank Co., Ltd.*, 534 F. Supp. 2d 1326, 1337-38 (S.D. Fla. 2008) ("liability depends on showing that the defendants conducted or participated in the conduct of the 'enterprise's affairs,' not just their own affairs.").  For this reason too, the RICO claim must be dismissed.

## 2.   Plaintiffs Have Not Alleged – and Cannot Plausibly Allege – Predicate Acts Constituting a "Pattern" of Racketeering Activity

Plaintiffs' RICO conspiracy claim also fails to properly plead the two predicate acts constituting a "pattern" of racketeering activity required by the statute.  "To successfully allege a pattern of racketeering activity, plaintiffs must charge that: (1) the defendants committed two or more predicate acts within a ten-year time span; (2) the predicate acts were related to one another; and (3) the predicate acts demonstrated criminal conduct of a continuing nature."  *Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1264 (11th Cir. 2004).

In this case, no such "pattern" exists because Plaintiffs fail to sufficiently plead the existence of *any* predicate criminal act.  As described below, no basis exists for their assertions that Defendants undertook (i) wire fraud (FAC, ¶¶ 116-119), (ii) extortion under Florida law (*id.*, ¶ 121), and (iii) theft of trade secrets (*id.*, ¶¶ 112-115, 120).

a.     **Plaintiffs Fail to Plead Wire Fraud.**

To plead wire fraud,[4] Plaintiffs' burden is to establish that each RICO defendant "(1) intentionally participated in a scheme or artifice to defraud or to obtain money or property by false or fraudulent pretenses, representations or promises; and (2) used wire communications to carry out that scheme or artifice." *U.S. v. Ross*, 131 F.3d 970 (11th Cir. 1997). Yet Plaintiffs never allege communications that, in fact, defrauded them. *Cf. American Dental*, 605 F.3d at 1292 (affirming RICO dismissal for failure to plead wire fraud: "we think it telling that the three named plaintiffs [e]ach received [allegedly fraudulent communications], yet the complaint never offers any examples[.]"). Instead, they seek discovery to secure such evidence that Defendants "perpetuate[d] the ongoing scheme … to defraud Plaintiffs," (FAC, ¶ 119), thereby implicitly acknowledging that their attempt to plead wire fraud is a prime example of the conclusory pleading forbidden by *Iqbal* and *Twombly*. The core communications that Plaintiffs fail to describe are any that would have deceived them -- that is, communications *they claim to have received and relied upon*, making their discovery request a concession that their claims lack any factual basis.

Plaintiffs also acknowledge their claims must satisfy Rule 9(b)'s requirement that Plaintiffs plausibly allege "(1) the precise statements, documents, or misrepresentations made; (2) the time, place, and person responsible for the statement; (3) the content and manner in which these statements misled the Plaintiffs; and (4) what the defendants gained by the alleged fraud." *Brooks v. Blue Cross & Blue Shield of Fla.*, 116 F.3d 1364, 1380-81 (11th Cir. 1997). Yet, Plaintiffs barely even attempt to satisfy this burden and instead allege the existence of "numerous" e-mail messages that somehow "misled Plaintiffs into believing that PBAU would countersign the heavily negotiated and 'all approved' PSA" (FAC, ¶ 117). Nor do Plaintiffs describe how they were harmed by these statements, any more than had the PBAU Defendants simply said nothing and still declined to sign the document. Likewise, Plaintiffs point to one July 2019 phone call where David Frisbie somehow "misrepresented his knowledge of Plaintiff[s]' negotiations with PBAU," (FAC, ¶ 118), apparently providing some advantage and harming Plaintiffs in ways not specified. Neither allegation comes close to satisfying Plaintiffs' Rule 9(b) burden.

---

[4] Plaintiffs claim to rely on predicate acts of mail fraud as well, but nowhere even attempt to plead any predicate acts showing use of the mails.

          b.      **Plaintiffs Fail to Plead Extortion.**

Offended that a real estate agent might advise her clients not to buy units in their building, Plaintiffs see that as a RICO predicate act of extortion under Florida law.  This, too, is insufficiently pleaded.

Extortion exists under Florida law where "one maliciously threatens – whether verbally or in writing – to *accuse another of any crime* or to *expose another to disgrace* with the intent to extort money or gain any pecuniary advantage or with the intent to compel the person so threatened to do any act (or refrain from doing any act) against his or her will."  *In re Holdsworth*, 495 B.R. 544, 550-51 (Bank. M.D. Fla. 2013) (emphasis added).  Here, there is (and can be) no allegation of a threatened accusation of a crime or exposure to disgrace.  Plaintiffs allege instead that Suzanne Frisbie "threatened to damage the reputation of Plaintiffs' Forté project by telling people not to buy units in the building," (FAC, ¶ 121), and that David Frisbie echoed this purported statement and warned of "war" if Plaintiffs "came out against Frisbie Group's development," (*id.* ¶ 122).  This is not the stuff of a predicate RICO act.  Plaintiffs cannot plausibly allege the PBAU RICO Defendants were even aware of – let alone participated in the operation and management of – any continuing scheme to engage in this predicate act of extortion.  As to the Frisbie Defendants telling people not to buy units in Plaintiffs' building and using "war" to describe the dispute that Plaintiffs would engender, that does not constitute a threat to accuse Plaintiffs of a crime or offense or to expose Plaintiffs to disgrace.

          c.      **Plaintiffs Fail to Plead Criminal Trade Secret Misappropriation.**

Plaintiffs also fail to plead criminal trade secret misappropriation, for the many reasons set out in Part C, *infra*, describing how Plaintiffs do not even have a civil "trade secrets" claim to assert, having failed to take "reasonable measures" to protect information as secret and to describe any such secrets that they misappropriated.

        3.      **Plaintiffs Do Not – and Cannot – Allege a "Pattern" of Racketeering Activity that was Continuing in Nature**

Because "RICO targets *ongoing* criminal activity," Plaintiffs must plausibly allege crimes that are part of "a pattern of ongoing, continuing criminality or that involves criminality that promises to continue into the future." *Jackson*, 372 F.3d at 1265 (emphasis in original); *accord U.S. v. Gonzalez*, 921 F.2d 1530, 1545 (11th Cir. 1991). Continuity "is both a closed- and open-ended concept, referring either to a closed period of repeated conduct, or to past conduct that by

its nature projects into the future with a threat of repetition." *H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 241-42 (1989).  Plaintiffs fail these requirements, both because they fail to plead predicate criminal acts, *see supra* Part B.2, and, as discussed below, because they do not and cannot establish the requisite continuity even assuming the sufficiency of their allegations of predicate acts.  They allege only actions designed to further a discrete property development plan, initially involving an even shorter period of more focused actions surrounding their separate choices not to proceed with Plaintiffs.

*First*, no open-ended period of continuity exists here. RICO "plaintiff[s] cannot demonstrate open-ended continuity if the racketeering activity has a built-in ending point" – here, at the latest, the purchase, sale and development of the property (and even earlier if limited to the acts leading to the decisions to proceed without Plaintiffs). *U.S. Airline Pilots Ass'n v. Awappa, LLC*, 615 F.3d 312, 319 (4th Cir. 2010); *accord Gamboa v. Velez*, 457 F.3d 703, 709 (7th Cir. 2006) (no open-ended continuity even where "purported scheme takes several years to unfold, involves a variety of criminal acts, and targets more than one victim"); *Attia v. Google LLC*, No. 17-cv-06037-BLF, 2018 WL 2971049, at *18 n. 15 (N.D. Cal. Jun. 13, 2018) ("entirely unsupported and illogical" to contend that "ongoing use" of trade secrets constitutes "open-ended" continuity for purposes of RICO). Plaintiffs' potential role in the deal is long done: so, too, is the "scheme."

*Second*, equally absent is closed-ended continuity: here, negotiations are alleged to have surreptitiously – and improperly – taken place for two months from March through May of 2019, leading to the termination of the LOI in May of 2019 and the consummation of a sale agreement and development plans by January 8, 2020 -- roughly ten months altogether. Predicate acts that, as here, "extend[] over a few weeks or months and threaten[] no future criminal conduct" are insufficient to establish a "pattern" of "racketeering activity" for purposes of the statute. *H.J. Inc.*, 492 U.S. at 242; *accord also Efron v. Embassy Suites (P.R.), Inc.*, 223 F.3d 12 (1st Cir. 2000) (no closed-ended continuity where alleged predicate acts occurred over 21-month period); *Cofacredit, S.A. v. Windsor Plumbing Supply Co.*, 187 F.3d 229, 242 (2d Cir. 1999) (Second Circuit "has never held a period of less than two years to constitute a 'substantial period of time'); *Hughes v. Consol-Pa. Coal Co.*, 945 F.2d 594, 611 (3d Cir. 1991) ("[t]welve months is not a substantial period of time").  Even if the Frisbies' determination not to co-venture with Plaintiffs or the allegations related to the "extortionate" statements by the Frisbies could be

linked either to PBAU or to PBAU's earlier contracting decisions as part of an enterprise "pattern," those acts, too, are episodic and suggest nothing regarding the potential for ongoing, future unlawful activities.

4.   **Plaintiffs Do Not – and Cannot – Allege That Any "Pattern" of Racketeering Activity was a Proximate Cause of Cognizable Injury**

Finally, Plaintiffs' RICO claim independently fails to plead cognizable injury to their business or property that "flow[s] directly from the predicate acts," *Morast v. Lance*, 807 F.2d 926, 933 (11th Cir. 1987), including "how those damages were proximately caused by the RICO violation." *O'Rear v. Am. Family Life Assurance Co.*, 139 F.R.D. 418, 422 (M.D. Fla. 1991). Plaintiffs here rest their RICO claim on unspecified injury to the "lost expectancy" of PBAU's property, "the profits" they expected to derive from that transaction, return on their investments in producing a plan for that transaction, and $2,000,000 Plaintiffs claim they spent to re-engineer their own property because they failed to prevail upon Defendants to relocate utility easements in their favor. (FAC, ¶ 127.)  Each fails to meet Plaintiffs' burden.

*First*, with respect to the "lost expectancy" and the expected profits and unspecified return on Plaintiffs' investment, it is well-settled that these injuries do not constitute cognizable RICO harm.  Quite the contrary: because RICO is not intended to provide a cause of action to every tort plaintiff in the country, Plaintiffs' "expectancy" – claiming the benefit of the bargain because they lost out on the opportunity to develop PBAU's property – does not constitute an injury to "business or property" under the RICO statute.  *See, e.g., Maio v. Aetna, Inc.*, 221 F.3d 472, 483 (3d Cir. 2000) (RICO "injury requires proof of a concrete financial loss and not mere injury to a valuable intangible property interest."); *Price v. Pinnacle Brands, Inc.*, 138 F.3d 602, 607 (5th Cir. 1998) ("Injury to mere expectancy interests or to an 'intangible property interest' is not sufficient" under RICO); *Heinhold v. Perlstein*, 651 F. Supp. 1410, 1412 (E.D. Pa. 1987) (no RICO injury where "the only property to which a plaintiff alleges injury is an expectation interest that would not have existed but for the alleged RICO violation.").

*Second*, all of Plaintiffs' claimed "injuries," including their unadorned claim to have spent $2,000,000 in relocating utilities for their existing project, are nowhere connected to any Defendants' predicate acts or to a pattern of racketeering activity.  These claims thus also fail for lack of proximate cause.  Because "RICO does not provide a remedy for every injury that may be traced to a predicate act," *O'Malley v. O'Neill*, 887 F.2d 1557, 1561 (11th Cir. 1989), Plaintiffs

must demonstrate that their cognizable injury to their business or property "was directly caused by the RICO violation." *Bivens Gardens Office Bldg., Inc. v. Barnett Banks of Fla., Inc.*, 140 F.3d 898, 908 (11th Cir. 1998). Nowhere in their complaint do Plaintiffs even attempt to explain how the predicate acts allegedly committed by Defendants led to injuries to their business or property – how, for example, they had any entitlement to easements over *PBAU*'s land (for which they claim no predicate criminal act); how William Fleming's purported misleading of Plaintiffs as to the reason for the delay in signing the proposed PSA led to any loss by Plaintiffs; or how any purportedly extortionate conduct by Suzanne Frisbie led to any loss of property. As noted, these supposed sources of injury are not even predicate criminal acts, *see supra* Part B.2, and Plaintiffs do not even claim that Defendants' actions related to the easement amount to one. Their failure to plead causation provides another, independent reason why the RICO claim should be dismissed with prejudice.

C.  **PLAINTIFFS FAIL TO STATE A CLAIM FOR TRADE SECRET MISAPPROPRIATION.**

The Defend Trade Secrets Act ("DTSA") provides a federal cause of action for an owner of a "trade secret" that has been "misappropriated." 18 U.S.C. 1836(b). However, no trade secret exists, or can provide the basis for such a suit, where the owner has not "taken reasonable measures to keep such information secret." *Id.* § 1839(3)(A). "In a trade secret action, the plaintiff bears the burden of demonstrating both that the specific information it seeks to protect is secret and that it has taken reasonable steps to protect this secrecy." *Am. Red Cross v. Palm Beach Blood Bank, Inc.*, 143 F.3d 1407, 1410 (11th Cir. 1998). Cases construe the DTSA and Florida Uniform Trade Secret Act ("FUTSA") in tandem for this and other purposes. *See M.C. Dean, Inc. v. City of Miami Beach*, 199 F. Supp. 3d 1349, 1353 (S.D. Fla. 2016) (quoting and applying *Am. Red Cross* standard to DTSA claim); *see also Temurian v. Piccolo*, No. 18-62737, 2019 WL 1763022, at *10 (S.D. Fla. Apr. 22, 2019).

Plaintiffs fail to meet their burden in both respects: their own allegations establish they failed to treat the information as a secret at all, and took no "reasonable measures" to ensure its secrecy, and likewise they fail to identify any "specific information" that constitutes a misappropriated trade secret.

1.      **The FAC Establishes That Plaintiffs Failed To Take "Reasonable Measures" To Maintain the Secrecy of the Asserted Secrets.**

In determining whether a party took "reasonable measures" to protect the secrecy of its information, courts routinely look to "confidentiality agreements relating to sensitive information" and "physical security measures" to assess whether "reasonable measures" to maintain secrecy were taken. *Charles Ramsey Co., Inc. v. Fabtech-NY LLC*, No. 1:18-CV-0546 (LEK/CFH), 2020 WL 352614, at *16 (N.D.N.Y. Jan. 21, 2020) (quoting *U.S. v. Shanshan Du*, 570 F. App'x 490, 500 (6th Cir. 2014)).  While entering a confidentiality agreement alone provides insufficient protection, *see id.*, "[d]isclosing the 'information to others who are under no obligation to protect the confidentiality of the information defeats any claim that the information is a trade secret.'" *M.C. Dean, Inc.*, 199 F. Supp. 3d at 1355 (quoting *In re Maxxim Med. Grp., Inc.*, 434 B.R. 660, 691 (Bank. M.D. Fla. 2010)); *see TriEst Irrigation LLC v. Hiers*, No. 7:18-CV-155 (HL), 2021 WL 2229059, at *12 (M.D. Ga. June 2, 2021) (dismissing DTSA claim where plaintiff failed to allege that two of the defendants were required "to sign non-disclosure agreements . . . that treat the information as trade secrets").  Plaintiffs' complaint contains a series of admissions that they failed to take "reasonable measures" to protect their information in just these and similar ways.

a.      **Plaintiffs Widely Disseminated Information Without Protections.**

Far from treating their information as secret, Plaintiffs broadly disseminated it to a series of parties, without imposing formal or other protections.  When disclosures are made without first "mak[ing] clear to the [recipients] that there was an expectation and obligation of confidentiality"—let alone requiring the execution of any confidentiality agreement—a DTSA claim must fail. *Bateman v. Mnemonics, Inc.*, 79 F.3d 1532, 1550 (11th Cir. 1996).

Most importantly, Plaintiffs' disclosures of information to *Defendants* fail this basic requirement.  For example, the disclosures to the Frisbie Defendants were subject only to an "implied … understanding" of confidentiality, (FAC ¶ 177), which even if accepted as true does not remotely satisfy the statutory requirement. *See infra* Part C.1.c.

The alleged initial disclosures to the PBAU Defendants also clearly defeat Plaintiffs' claim.  Those parties eventually entered an LOI (which only highlights how Plaintiffs failed to take reasonable measures to protect their information). *See infra* Part C.1.b.  However, Plaintiffs concede that they disclosed "detailed" information about their development plans to PBAU

beginning in 2016, long before the parties entered into any confidentiality agreement.  (*See* FAC ¶¶ 45-49; Dec., Ex. A, p. 2 (LOI executed on July 23, 2018).)[5]  Well before the LOI's execution, they provided to the University (1) "a detailed development plan," (2) "a detailed zoning analysis and proposal for 'legislative steps' to permit the proposed development," (3) a financing plan and "a detailed capital plan timeline," and (4) "a 'purchase proposal'" with a purchase price of $36 million and a 90-day contract and due diligence period.  (FAC ¶¶ 46-48.)

Indeed, Plaintiffs admit that they repeatedly shared their property development "secrets" widely with other parties, without undertaking even the most rudimentary protections.  For example, Plaintiffs: (1) "met with the CEO and Deputy Director of the Norton Museum" to discuss the PBAU Parcels' potential development, design and "campus plan," (*id.* ¶ 58); (2) "spoke with West Palm Beach city staff" about the same, and about "renaming the area the 'Norton Art Walk District,'" (*id.*); (3) "approached the Mayor of West Palm Beach and select City Commissioners" about re-zoning the land and "Plaintiffs' plan to transform the area into a cultural hub," (*id.*); (4) discussed project financing with Marius Fortelni and an unnamed "capital fund partner," (*id.* ¶ 56); (5) discussed their development plans with adjacent parcel owner Joseph Nasser, (*id.* ¶ 76), and (6) even discussed details of the development plan before third parties at a "charity fundraiser" at a prominent West Palm Beach locale, (*id.*, ¶ 57).  Nowhere do Plaintiffs allege that any of these individuals receiving the information was made aware that it was meant to be confidential—let alone made to sign any confidentiality agreements.  This alone is fatal to Plaintiffs' DTSA claim.  *See Hill Holliday Connors Cosmopulos, Inc. v. Greenfield*, 433 F. App'x 207, 214-15 (4th Cir. 2011) (information disclosed to third parties absent a nondisclosure agreement does not qualify as a trade secret); *Sheets v. Yamaha Motors Corp., U.S.A.*, 849 F.2d 179, 183-84 (5th Cir. 1988) (information appellant freely disclosed to companies "in which he had no proprietary interest," and to nine individuals he "only

---

[5] Apart from not entering any confidentiality agreement prior to disclosing this information, Plaintiffs have further failed to allege other "reasonable measures" that were required, such as designating information as secret.  *Cf. Yellowfin Yachts, Inc. v. Barker Boatworks, LLC*, 898 F.3d 1279, 1300 (11th Cir. 2018) (no "reasonable measures" to maintain secrecy even where plaintiff made "verbal statements warning employees not to share [trade secret information] with third parties"); *Mason v. AmTrust Fin. Servs., Inc.*, No. 19CV8364 (DLC), 2020 WL 1330688, at *3 (S.D.N.Y. Mar. 23, 2020) (failure to allege that plaintiff "designat[ed] its contents confidential or proprietary" further underscored plaintiff's "careless[ness]"), *aff'd*, 848 F. App'x 447 (2d Cir. 2021).

minimal[ly] instruct[ed]" to maintain secrecy, did not qualify as a trade secret).

Nor does the complaint establish, as it must, that Plaintiffs protected their information in the normal course of business.  For example, the complaint "sets forth no facts regarding how [Plaintiffs] sought to protect its information in terms of its own employee's access to the same, or in regard to other organizations with which [the plaintiff] might have business interactions." *St. Johns Vein Ctr., Inc. v. StreamlineMD LLC*, 347 F. Supp. 3d 1047, 1070 (M.D. Fla. 2018). The complaint in fact underscores how many third party suppliers and partners Plaintiffs enlisted to develop their "secret" information, (*see* FAC ¶ 58), yet provides no details of any confidentiality and use limitation agreements, or physical security, imposed on those parties. And Plaintiffs permitted the PBAU Defendants to distribute the information to third parties without securing such protections.  *See infra* pp. 17-18.  "Without such allegations, a claim asserting the existence of a trade secret cannot succeed."  *St. Johns Vein Ctr., Inc.*, 347 F. Supp. 3d at 1070.

Plaintiffs' single, conclusory allegation that they "maintained adequate security to protect their computers, files, documents and other records that stored information relating to the[ir] trade secrets," (FAC ¶ 175), does not suffice.  This statement regarding IT and information storage security, even if true, has no relevance to Plaintiffs' failures to protect information they disclosed promiscuously to third parties, and is in any event a classic conclusory statement that the Court must disregard.  *See American Dental Ass'n*, 605 F.3d at 1290.  Failing to detail the basic internal security precautions or protections for information provided to third parties alone warrants dismissal of Plaintiffs' DTSA claim.  *See Yellowfin Yachts, Inc. v. Barker Boatworks, LLC*, 898 F.3d 1279, 1300 (11th Cir. 2018) (affirming reasonable measures were not taken where the defendant employee was free to access the plaintiff company's trade secret information on his unsecured personal devices); *Care Servs. Mgmt., LLC v. Premier Mobile Dentistry of VA, LLC*, No. 3:17-CV-01095, 2020 WL 5797974, at *4 (M.D. Tenn. Sept. 29, 2020) (noting absence of any authority "indicating documents shared with third parties become 'trade secrets' simply because they are kept on a secure server").

### b.   The LOI Confirms the Absence of Reasonable Measures

While the execution of a confidentiality agreement does not itself satisfy the requirement that the plaintiff take reasonable measures to protect secrecy, *see Charles Ramsey Co., Inc.*, 2020 WL 352614, at *16; *TriEst Irrigation LLC*, 2021 WL 2229059, at *12, the nature and

circumstances of this particular LOI actually confirm Plaintiffs' failure in that respect—making Plaintiffs' failure to share the document with the Court quite understandable. That is so in four respects, each of which suffices to defeat Plaintiffs' claim.

*First*, as described above, the extensive information provided to the PBAU Defendants prior to the LOI's execution was unprotected, and thus cannot constitute trade secrets. *See, e.g.*, *Smart & Assocs., LLC v. Indep. Liquor (NZ) Ltd.*, 226 F. Supp. 3d 828, 857 (W.D. Ky. 2016) (plaintiff had no trade secret rights in any information it revealed to the defendant manufacturer *before* the parties executed a confidentiality agreement). The LOI confirms as much, excluding from the scope of protected information any "information already in a party's possession" at the time of its execution. (Dec., Ex. A ¶ 7.)

*Second*, the LOI's duty of confidentiality was of limited duration, terminable at will or after the expiration of the 90-day negotiation period. The LOI provided Defendants could "terminate . . . this LOI at their sole discretion upon written notice," in which case it would not "thereafter have any further liability, responsibility or obligation to the other under this LOI." (*Id*. ¶ 8.) Plaintiffs allege that the confidentiality obligation continued "under this LOI," which the University formally terminated on May 29, 2019. (*Id*. ¶ 7; FAC ¶ 64.) Even if the May 29, 2019 communication were more than a housekeeping matter undertaken long after the confidentiality obligation expired, it terminated the confidentiality obligation even under Plaintiffs' theory.

Such confidentiality agreements that are effective only for a limited time do not constitute reasonable measures to maintain the secrecy of any information they address. *See Silicon Image, Inc. v. Analogix Semiconductor, Inc.*, No. C-07-00635 JCS, 2008 WL 166950, at *17 (N.D. Cal. Jan. 17, 2008) ("courts have denied trade secret protection where allegedly confidential information . . . was disclosed under a non-disclosure agreement with only a limited duration"); *DB Riley, Inc. v. AB Eng'g Corp.*, 977 F. Supp. 84, 91 (D. Mass. 1997) (plaintiff "has not met its burden of proving that it took reasonable steps to preserve the secrecy of its trade secrets" where the confidentiality agreement at issue was valid for a 10-year term, reasoning that "[plaintiff]'s own expectations of maintaining its trade secrets were time limited").

*Third*, the LOI expressly permitted PBAU to disclose to third parties any confidential information it received, without imposing confidentiality obligations on them. The LOI permitted the University to provide any confidential information it received to "employees,

16

attorneys, accountants or other advisors who have a need to know" <u>without</u> requiring the University to first have such recipients execute a confidentiality agreement, restrict their use of the information, agree to abide by the LOI, or otherwise be placed on notice that their access to, disclosure of, or use of the information is in any way limited.  (Dec., Ex. A ¶ 7.)

This failure, too, indicates that Plaintiffs did not treat their information as "secrets" and failed to take reasonable protective measures.  *See, e.g.*, *M.C. Dean, Inc.*, 199 F. Supp. 3d at 1356-57 (dismissing DTSA claim where the parties' agreement expressly permitted defendants to disclose the information at issue to a government agency with no confidentiality obligations of its own); *R.C. Olmstead, Inc., v. CU Interface, LLC*, 606 F.3d 262, 276 (6th Cir. 2010) (plaintiff's interface was not a trade secret because no "confidentiality [agreement] preventing third parties from viewing [it]"); *Krush Commc'ns, LLC v. Lunex Telecom, Inc.*, No. 1:13-CV-3167-SCJ, 2014 WL 12069847, at *11 (N.D. Ga. Sept. 12, 2014) (no trade secret claim where the plaintiff failed to demonstrate that "persons with access to [trade secret] information . . . were informed that Plaintiff considered such information to be a trade secret, or that such persons agreed, in writing or otherwise, not to disclose such information to third parties").

*Fourth*, the LOI was not a "reasonable measure" to maintain secrecy because it did not limit the University's use of the information or even require the University to return or destroy any confidential information it received once the agreement expired.  *See Yellowfin Yachts, Inc.*, 898 F.3d at 1300 (affirming that the plaintiff company failed to reasonably protect its purported trade secret information because it did not request that the defendant employee "return or delete" the same when he left the company); *Diamond Power Int'l, Inc. v. Clyde Bergemann, Inc.*, 370 F. Supp. 2d 1339, 1348 (N.D. Ga. 2005) (no reasonable efforts to maintain secrecy where plaintiff failed to require return of alleged trade secret information).

The deficiencies in Plaintiffs' protective measures are even clearer when compared to Plaintiffs' protection of information they actually viewed as sensitive or secret, as in their proposed PSA.  *See Rogers v. Desa Int'l, Inc.*, 183 F. Supp. 2d 955, 957 (E.D. Mich. 2002) (plaintiff held no trade secret where, "[t]hough he had entered into a confidentiality agreement with [another entity], he did not ask for a similar agreement from [defendant]").  In contrast to the LOI, the proposed PSA's confidentiality provision required that third parties receiving the information be bound to confidentiality obligations and extended the confidentiality obligation beyond any termination of the agreement.  (*See* Dec., Ex. B ¶ 16.)  And, confirming the limited

17

scope of any trade secrets at issue, the proposed PSA expressly excluded from protection the information Plaintiffs provided to the University prior to the entry into the LOI and did not protect information regarding the property provided by Plaintiffs (or even *any* Plaintiff-provided information other than that related to the transaction parties and transaction terms). *Id.*

        **c.**    **An "Implied . . . Understanding" Is No "Reasonable Measure."**

All of the limitations identified above with respect to the LOI's lack of confidentiality protections for disclosures to the University apply with even greater force to the disclosures made to the Frisbie Defendants.  Plaintiffs do not allege that they sought or secured *any* confidentiality agreement from those defendants.  They claim only that they were working with the Frisbie Defendants under an "implied confidentiality understanding."  (FAC ¶ 177.)

For all the reasons described above with respect to inadequate formal confidentiality undertakings, courts in this Circuit are, understandably, "'[w]ary of any trade secret claim predicated on the existence of' such [implicit understandings]" and routinely hold that they cannot support a trade secret claim where, as here, no confidentiality obligations were made clear to the defendant.  *Yellowfin Yachts, Inc.*, 898 F.3d at 1300 (quoting *Bateman*, 79 F.3d at 1550 (11th Cir. 1996)).[6]  That failure is particularly clear here because Plaintiffs fail to allege that they: (1) explained any confidentiality policy to the Frisbie Defendants; (2) designated any material disclosed to them as confidential; (3) instructed the Frisbie Defendants not to house such information on personal or unsecured devices; (4) restricted their ability to access, use or disclose such information; or (5) requested that such information be destroyed or returned once the parties' relationship soured.  *See Yellowfin Yachts, Inc.*, 898 F.3d at 1300 (demanding such requirements); *see also St. Johns Vein Center, Inc.*, 347 F. Supp. 3d at 1070 (dismissing DTSA claim in light of plaintiff's failure to allege that it placed "restrictions or limits on how the Defendants could use or access that information," or "indicate any restrictions it may have placed on the Defendants' access to th[e] [trade secret] information, should the business venture

---

[6] Many courts have outright rejected any claim of "implied" protection as inadequate.  *See, e.g.*, *Dippin' Dots Patent Litigation*, 249 F. Supp.2d 1346, 1377 (N.D. Ga. 2003) (alleged implied duties are insufficient, "[b]ecause simple measures, such as identifying materials as trade secret and using a written confidentiality agreement, are available to protect sensitive information"); *Inv. Sci., LLC v. Oath Holdings Inc.*, No. 20 CIV. 8159 (GBD), 2021 WL 3541152, at *3 (S.D.N.Y. Aug. 11, 2021) ("Plaintiff provides no case law, and this Court is unaware of any, to support the proposition that an implied contract of confidentiality constitutes a 'reasonable measure' to protect a trade secret.").

between the parties fail to be actualized"); *Cont. Assocs., Inc. v. Atalay*, No. 1:14-CV-882, 2015 WL 1649051, at *5 (E.D. Va. Apr. 10, 2015) (rejecting implied confidentiality theory where plaintiffs relied on an "unspoken 'ethical standard that was understood between the [parties]," "[r]ather than explicitly instructing Defendants to keep [plaintiff's] information confidential").[7] And, as with the LOI, the "implied . . . understanding" is especially unreasonable because Plaintiffs sought more extensive, formal protections where they actually possessed and sought to protect trade secrets.  (*See* Dec., Ex. B ¶ 16 (proposed PSA), *supra* pp. 18-19.)

## 2.   Plaintiffs Fail To Identify Any Misappropriated Trade Secret Information.

Consistent with how Plaintiffs so pervasively failed to treat their property development information as secret, they unsurprisingly fail to identify what information constitutes their supposed "secrets" that were misappropriated.  Plaintiffs "bear[] the burden of demonstrating . . . that the specific information it seeks to protect is secret," *Am. Red Cross,* 143 F.3d at 1410, yet they describe only general, project-related information and make clear that only a subset of that was misappropriated.  (*See, e.g.*, FAC ¶¶ 59, 68, 75-76, 173.)

As a result, Plaintiffs' DTSA claim should be dismissed for a failure to identify the alleged trade secrets with "sufficient particularity."  *See Hurry Fam. Revocable Tr. v. Frankel*, No. 8:18-CV-2869-T-33CPT, 2019 WL 2868945, at *2 (M.D. Fla. July 3, 2019).  Where, as here, the trade secrets at issue are "so broad and conclusory" as to include "all information" concerning a project, the particularity requirement has not been met.  *VVIG, Inc. v. Alvarez*, No. 18-23109-CIV, 2019 WL 5063441, at *3 (S.D. Fla. Oct. 9, 2019).

Plaintiffs' failure is the same one identified in *Decurtis LLC v. Carnival Corporation*, No. 20-22945-CIV, 2021 WL 1968327, at *7 (S.D. Fla. Jan. 6, 2021).  In *Decurtis*, the plaintiff asserted a DTSA claim alleging the defendant misappropriated trade secrets concerning plaintiff's proprietary technology, "Project Trident," including "software, prototypes, hardware, database structures, operations procedures, [and] testing plans," among other things.  *Id.* at *6 (internal quotation marks omitted).  The court dismissed the claim, holding that these

---

[7] Plaintiffs' failure to protect their information is especially clear because Plaintiffs and the Frisbee Defendants never entered into a co-developer agreement, and "[g]iven that there was no agreement in place between the parties to engage in a joint-venture, the court can easily conclude that the defendants did not have "reason to know that [plaintiff's] disclosure of information to [defendant] was intended to be in confidence."  *Fail-Safe LLC v. A.O. Smith Corp.*, 744 F. Supp. 2d 831, 864 (E.D. Wis. 2010).

"categorical descriptions" were insufficiently specific, as they all fell under the label of "Project Trident," and "all information concerning a product . . . is not a secret." *Id.* at *6-7.

Here, too, Plaintiffs' complaint identifies general categories of trade secret information that amount to "all information" concerning a broad project, the development of the PBAU Parcels. *See* FAC ¶ 173 (identifying "the terms of the PSA; all due diligence documentation; the siting and massing plan . . . ; the comprehensive plan to comply with city zoning and land use requirements; plans to build a marina and dock . . .; plans for integrating the property with its surroundings[;] and strategic information on various citizens groups and neighbors" as trade secrets); *cf. TRB Acquisitions LLC v. Yedid*, No. 20-CV-0552 (JMF), 2021 WL 293122, at *2 (S.D.N.Y. Jan. 28, 2021) (dismissing DTSA claim because the plaintiff identified only "general categories of information," like its "core brand and marketing plan strategy," as trade secrets). Plaintiffs' use of the catch-all language "*inter alia*" when identifying their purported trade secrets confirms their pleading's inadequacy. FAC ¶ 173; *see VVIG*, 2019 WL 5063441, at *4 (dismissing trade secrets claim where plaintiffs used "catch-all" phrases, like "all necessary know how," to describe the alleged trade secrets); *Acrisure of Cal., LLC v. Soc. Commercial Ins. Servs., Inc.*, No. CV 18-10187-CJC (ADSx), 2019 WL 4137618, at *3 (C.D. Cal. Mar. 27, 2019) (courts "reject[] the use of 'catchall' language" like "*inter alia*," finding it "insufficiently specific 'because it does not clearly refer to tangible trade secret material'").

Plaintiffs' own claims also show that little if any of even the general project information was misappropriated. For example, Plaintiffs concede that they provided detailed information to PBAU for at least nine months before March, 2019, when the "scheme to defraud" and related misappropriation supposedly began. FAC ¶ 68. Indeed, by March, 2019, the parties were negotiating the "concluding revisions" to the proposed PSA, (*id.* ¶ 59), so nothing but contract drafts could have been "misappropriated" through the supposed fraud thereafter. Likewise, Plaintiffs themselves provided project-related information to the Frisbie Defendants, (*id.*, ¶¶ 75-76), rendering any provision by PBAU of the same information to the Frisbie Defendants harmless.

Even if there was misappropriation, what information Plaintiffs do identify fails to qualify as trade secrets, as a matter of law, because it was "readily ascertainable." 18 U.S.C. § 1839(3)(B). For instance, a "plan to comply with city zoning and land use requirements," (FAC ¶ 173), is an unprotected product anyone can produce through basic research. *See Pinnock*

*o/b/o ADA Consultants & Advisors, Inc. v. Wal-Mart Stores, Inc.*, No. 609CV143ORL18DAB, 2009 WL 10670000, at *4 (M.D. Fla. Aug. 10, 2009) (dismissing FUTSA claim, holding that plaintiff's report documenting and analyzing ADA violations at defendant's stores, and recommending modifications to cure the same, "is not protectable when the interpretation is readily ascertainable through research").  Likewise, public information regarding "citizen groups and neighbors" hardly qualifies as data that is "not [] readily ascertainable through proper means," 18 U.S.C § 1839(3)(A), (B), and ideas to include run-of-the-mill "street-level amenities," like "a café," in the development are "generally known" in the industry.  (FAC ¶¶ 58, 173.)  Indeed, the "trade secrets" that Plaintiffs allege to have been adopted by the Frisbie Defendants in their plan are nothing of the sort: floors with "two units," units with "views of the city, the Intercoastal Waterway, Palm Beach, and the Atlantic Ocean," inclusion of a "street level café" and "art walk," and "partnership with the [neighboring] Norton Museum," (FAC ¶ 80), are blindingly obvious development concepts, not unascertainable secrets.

### D.  PLAINTIFFS ALSO FAIL TO SUFFICIENTLY PLEAD VARIOUS STATE LAW CLAIMS.

Plaintiffs' failure to plead claims with plausible foundation for federal trade secret violations and for violations of RICO eliminates the asserted basis for this Court's jurisdiction.  *See Blue Cross & Blue Shield of Ala. v. Sanders*, 138 F.3d 1347, 1352 (11th Cir. 1998).  Plaintiffs' complaint is certainly one that district courts are "encourage[d]…to dismiss…when, as here, the federal claims have been dismissed prior to trial."  *Raney v. Allstate Ins. Co.*, 370 F.3d 1086, 1088-89 (11th Cir. 2004).  But in the event the Court does not dismiss the entirety of Plaintiffs' complaint, it should find that Plaintiffs have also failed to sufficiently plead at least the following state law claims, for the reasons described below.  *See Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 349-50 (1988).

#### 1.  Plaintiffs' Purchase and Sale Agreement-Based Claims Seek Enforcement of a Contract In Violation of Its Own Terms and the Statute of Frauds

##### a.  Breach of The Proposed PSA (Claim 4).

Plaintiffs assert that the proposed PSA is an enforceable contract, (FAC ¶ 141), but their own pleadings and the proposed PSA itself show that this conclusion is foreclosed by the parties' intent, reflected most directly in the document's terms.  Plaintiffs acknowledge that no PBAU official signed the proposed PSA.  (*Id.* ¶¶ 63-64.)  The proposed contract's terms, however,

expressly indicate that the agreement would become effective and enforceable *only* once signed by both Plaintiffs and a PBAU representative: it would be "made and entered into as of the Effective Date," which the contract defined to "mean the date upon which the Agreement was last executed by Buyer and Seller." (Dec., Ex. B p. 1 (preamble); *id.* ¶ 30 (Effective Date); *id.* p. 21 (parties' signature would indicate that they "have executed this Agreement to be effective as of the Effective Date").)  The parties' intent regarding what would create a binding contract governs whether they have done so.  *See, e.g., Club Eden Roc v. Tripmasters, Inc.*, 471 So. 2d 1322, 1323 (Fla. 3d Dist. Ct. App. 1985) ("Where the parties intend that there will be no binding contract until the negotiations are reduced to a formal writing, there is no contract until that time."); *see also Cap. Asset Research Corp. v. Michael Swerdlow Cos.*, 743 So. 2d 43, 43-44 (Fla. 4th Dist. Ct. App. 1999); *Metro Worldwide, LLC v. ZYP LLC*, No. 9:19-CV-81502-RLR, 2021 WL 1015960, at *2 (S.D. Fla. Mar. 17, 2021) (No contract if no signature where the parties intended to be bound by a signed agreement, and  "[w]hether Defendants assured Plaintiff that they would execute the [agreement] does not command a different conclusion.").  Nor do Plaintiffs allege that PBAU or Plaintiffs performed any of the acts required by the contract (such as Plaintiffs paying PBAU, *see* Dec., Ex. B ¶ 7) or demanded performance based on having entered a completed contract, or did anything other than unsuccessfully and repeatedly seek to have the document signed (FAC ¶¶ 62-63) – further indicating that the parties understood that the unsigned, proposed contract was not binding.

This understanding is routine and is indeed compelled by Florida's Statute of Frauds, which separately defeats Plaintiffs' effort to plead breach of contract.  That statute provides that "[n]o action shall be brought … upon any contract for the sale of lands … unless the agreement or promise … [is] in writing and signed by [the defendant]."  Fla. Stat. § 725.01; *see also DK Arena, Inc. v. EB Acquisitions I, LLC*, 112 So. 3d 85, 91-97 (Fla. 2013) ("a contract for the sale of land . . . falls within the purview of section 725.01," and must be memorialized in a written document signed by the parties to be enforceable) (citing *Tanenbaum v. Biscayne Osteopathic Hosp., Inc.*, 190 So. 2d 777 (Fla. 1966)).  Plaintiffs' breach of contract claim seeks to enforce the terms of a contract that Plaintiffs affirmatively allege was not signed by any PBAU Defendant or representative.  (FAC ¶ 63; Dec., Ex. B (contract executed by Plaintiffs was unsigned by the University).  The claim thus falls squarely within the terms of Section 725.01 and is subject to

dismissal with prejudice for that reason, too.  *See, e.g.*, *Cavallaro v. Stratford*, 784 So. 2d 619, 621 (Fla. 5th Dist. Ct. App. 2001).

        **b.**        <u>**Specific Performance (Claim 15) and Promissory Estoppel (Claim 8).**</u>

Plaintiffs seek specific performance of the PSA, claiming that they "are entitled to the PBA Parcels" because they "completed the Letter of Intent with PBA and … completed the [PSA] with PBA for the purchase of the parcels."  (FAC ¶ 208.)

However, Plaintiffs' complaint and the documents they rely upon require dismissal of these claims.  The LOI was only a preliminary agreement to negotiate and stated that "[t]his LOI is non-binding to either party and shall only serve as the basis for continued negotiation."  (Dec., Ex. A, p. 2.)  The PSA, in turn, was not binding for the reasons just noted.  *See supra* Part D. Nor could, or did, Plaintiffs complete their obligations under the proposed PSA, further precluding specific performance even had a binding contract existed, due to the lack of their own performance and the doctrine of impossibility of performance.  *See, e.g., Home Design Joint Venture v. Cnty. Appliance of Naples*, 563 So. 2d 767, 770 (Fla. 2d Dist. Ct. App. 1990).

Giving effect to the proposed PSA for Plaintiffs' alternative reason, their "reasonable reliance on PBA's promises and representations," (FAC ¶ 64), would effectively nullify Florida's common law contract requirements and also be inconsistent with the Statute of Frauds.  *See DK Arena, Inc.*, 112 So. 3d at 97 (the "application of the Statute of Frauds is a matter of legislative prerogative; the judicial doctrine of promissory estoppel may not be used to circumvent its requirements"); *see, e.g.*, *Metro Worldwide, LLC*, 2021 WL 1015960, at *2 (promises by defendant that it intended to sign the agreement did not create binding obligations where the agreement remained unsigned). .  The same inconsistencies with Florida law require dismissal of Plaintiffs' promissory estoppel claim, which rests on Defendants' alleged "promises" that "the sale of the Parcels to Plaintiffs would be finalized … ."  (FAC ¶¶ 168-69.)  In addition, both claims must be dismissed because they allege only "agreements to agree," which are unenforceable.  *See, e.g., Bergman v. DeIulio*, 826 So. 2d 500, 502 (Fla. 4th Dist. Ct. App. 2002); *Midtown Realty, Inc. v. Hussain*, 712 So. 2d 1249 (Fla. 3d  Dist. Ct. App. 1998); *White Constr. Co., Inc. v. Martin Marietta Materials, Inc.*, 633 F. Supp. 2d 1302, 1320-22 (M.D. Fla. 2009).

Finally, Plaintiffs' complaint, filed in December, 2021, seeks specific performance of a purported April, 2019 contract.  The specific performance claim is thus also barred by Florida's

one-year statute of limitations for such claims.  *See* Fla. Stat. § 95.11(5)(a); *see also Rybovich Boat Works, Inc. v. Atkins*, 585 So. 2d 270, 271-72 (Fla. 1991) (section 95.11(5)(a)'s one-year statute of limitations barred counterclaim for specific performance of a contract for purchase and sale of land).

         **c.**     **Breach of the LOI's Exclusivity Provision (Claim 2).**

The LOI's exclusivity and due diligence provision provides that "each party agrees to negotiate exclusively with the other to draft and enter into a [PSA] as contemplated herein for a period of Ninety (90) days" and that "in the event the parties cannot reach an agreement, either party may terminate the negotiations and this LOI … ."  (FAC ¶ 130; Dec., Ex. A ¶ 8.)  The LOI was entered in July 2018.  (*See id.*, Ex. A, p. 2; FAC ¶ 129 (Plaintiffs claim the LOI was entered on or about June 11, 2018 but it was signed in late July, 2018).)  The exclusivity term thus expired no later than October, 2018, long before any alleged discussions between PBAU and the Frisbie Defendants, (FAC ¶¶ 130-131).

Plaintiffs' reading of the LOI—that the exclusivity period extended to and included March, 2019, *id.*—is contrary to the plain meaning of the LOI and would render the 90-day provision meaningless.  *See Hester v. Fla. Cap. Grp., Inc.*, 189 So. 3d 950, 955 (Fla. 2d Dist. Ct. App. 2016) (contract was clear and unambiguous in its requirement that approval of payment terms must be made within 6 months, and "[w]hen interpreting contractual provisions, courts will not interpret a contract in such a way as to render provisions meaningless when there is a reasonable interpretation that does not do so.") (internal citations omitted); *Davis v. Ivey*, 984 So. 2d 571, 573 (Fla. 5th Dist. Ct. App. 2008) ("The fundamental problem with the Seller's interpretation of the contract is that it ignores and renders meaningless the contractual provision allowing a fifteen-day title examination period.").  The LOI certainly permitted the parties to continue to conduct due diligence and negotiate beyond the 90-day period, and the LOI's plain language indicates that, if they did so, the exclusivity period would no longer apply.  (Dec., Ex. A ¶ 8.)  It is hardly unusual for parties to negotiate without an exclusivity arrangement.  Plaintiffs point to nothing in the LOI that imposed a continuing exclusivity requirement beyond its express term.

The LOI provided that either party could terminate the LOI without "any further liability, responsibility, or obligation to the other under this LOI," (Dec., Ex. A ¶ 8), and Plaintiffs assert that the LOI's exclusivity provision continued beyond its 90-day end date because a PBAU

representative on May 29, 2019 stated that PBAU "terminates negotiations under the LOI, as well as all obligations either party has to the other." (FAC ¶ 64.) The LOI imposed on the parties various contingent and other obligations related to seeking Board approval, payment, cooperation with due diligence, and confidentiality. (*See* Dec., Ex. A ¶¶ 2, 3, 4, 5.) Nothing in the termination notification indicates any acknowledgement of any ongoing or then-existing exclusivity obligation, even if doing so could have created a contractual obligation. To the contrary, the termination notice tracked the LOI's language regarding how termination ended "any further obligations … under the LOI," (Dec., Ex. A ¶ 8), which did not at that point, after the 90-day period, include any exclusivity requirement even as it included other obligations.

### 2.   Plaintiffs Fail to State Claims Related to Misappropriation of Information.

Plaintiffs assert that through fraudulent and other actions, Defendants unjustly enriched themselves through the misappropriation of Plaintiffs' trade secret information. These allegations form the basis of their federal DTSA claim, (*see supra* Part C; FAC ¶¶ 173-177), and their parallel claim under Florida's trade secret law, FUTSA. (FAC ¶¶ 180-182 (incorporating their DTSA allegations).) Those allegations also lie at the heart of a series of Plaintiffs' other claims, as described below.

However, for purposes of non-contract state law claims, FUTSA does not permit Plaintiffs to also seek remedies based on these repackaged or closely related claims. Instead, asserting a FUTSA claim "displace[s] conflicting tort, restitutionary, and other law of [Florida] providing civil remedies for misappropriation of trade secrets." Fla. Stat. § 688.008(1). As this Court has confirmed, "[a]ccording to the majority view, non-FUTSA, non-contractual civil misappropriation claims *do* constitute 'conflicting … law' under Florida Statute § 688.008(1) and are preempted at the motion to dismiss stage." Order at 18, *K3 Enters., Inc. v. Sasowski*, No. 1:20-cv-24441-AMC, (S.D. Fla. Nov. 22, 2021), ECF No. 95; *id.* 18-19 (collecting cases); *Nephron Pharms. Corp. v. Hulsey*, No. 6:18-cv-1573-Orl-31LRH, 2020 WL 7684863, at *20 (M.D. Fla. Oct. 7, 2020), *adopted*, 2020 WL 7137992 (M.D. Fla. Dec. 7, 2020) ("'[A]s a general proposition other torts involving the same underlying factual allegations as a claim for trade secret misappropriation will be preempted by the FUTSA.'"). The scope of FUTSA's preemption is broad: "[T]he FUTSA preempts all non-contract claims based on the misappropriation of confidential and/or commercially valuable information even if the information does not constitute a trade secret under the FUTSA." *Am. Registry, LLC v. Hanaw*,

No. 2:13-CV-352-FtM-29CM, 2014 WL 12606501, at *6 (M.D. Fla. July 16, 2014).  As described below, the following non-contractual state law claims must be dismissed as preempted by FUTSA.  Several of those claims must be dismissed for additional reasons.

### a.    FUTSA (Claim 10).

As noted, the federal and Florida trade secrets laws are construed and applied in tandem for purposes relevant here.  *See supra* Part C; *Temurian*, 2019 WL 1763022, at *10 ("[A]nalysis of the [DTSA and the FUTSA] is substantively identical.").  Plaintiffs' state law, FUTSA claim directly parallels the federal, DTSA claim.  (*Compare* FAC ¶¶ 173-177 (DTSA allegations) *with id.* ¶¶ 180-182 (FUTSA allegations).)  As a result, Plaintiffs' state law trade secret claims must be dismissed because Plaintiffs have failed to take reasonable measures to protect the information at issue as secret and failed to specify what information has been misappropriated. *See supra* Part C.

### b.    Conversion of Confidential Business Information (Claim 11)

Courts routinely dismiss conversion claims brought alongside FUTSA claims because such claims are rarely, if ever, "material[ly] distinct[]."  *See Taxinet, Corp. v. Leon*, No. 16-24266-CIV, 2018 WL 3405243, at *5 (S.D. Fla. July 12, 2018) (dismissing conversion of confidential business information claim because it sought "redress for the same wrongdoing" as plaintiff's FUTSA claim).  Plaintiffs' conversion claim is no different.  It mirrors the FUTSA claim: the "confidential business information" forming the basis of this claim is *identical* to Plaintiffs' purported trade secret information.  (*Compare* FAC ¶ 186 *with id.* ¶ 173.)  Like the FUTSA claim, the conversion claim is based on allegations that the University Defendants "wrongfully acquired" this information and disclosed it to the Frisbie Defendants, who wrongfully used it.  (*Compare id.* ¶¶ 188, 189 *with id.* ¶¶ 176, 177.)

As a separate basis for dismissal, the "[e]ssential element of a conversion is a wrongful deprivation of property to the owner."  *Star Fruit Co. v. Eagle Lake Growers*, 33 So. 2d 858, 860 (Fla. 1948) (internal quotation omitted).  However, Plaintiffs have conceded that they did not own this information: they shared it with many third parties with no attendant confidentiality obligations.  *See supra* Part C.1.  And, with respect to the University Defendants, Plaintiffs' conversion claim is also deficient because it duplicates Plaintiffs' claim for breach of the LOI's confidentiality provision.  *See CareerFairs.com v. United Bus. Media LLC*, 838 F. Supp. 2d 1316, 1321 (S.D. Fla. 2011) ("[C]oncurrent causes of action for breach of contract and

conversion cannot stand where the breach of contract claim standing alone provides adequate remedies").

### c.      Unjust Enrichment (Claim 14)

Like the conversion claim, Plaintiffs' claim for unjust enrichment is based on the same allegations underlying their FUTSA claim and is thus preempted.  FAC ¶ 202 (basing unjust enrichment claim solely on allegations that "Defendants have profited and benefited from the confidential business information taken from Plaintiffs"); *see Mile High Healthcare Analytics, LLC v. Med. Care Consortium Inc.*, No. 18-CV-22374, 2020 WL 9460325, at *11 (S.D. Fla. July 29, 2020) (dismissing as preempted an unjust enrichment claim based on allegations that defendant misappropriated plaintiff's proprietary information).

### d.      Tortious Interference (Claims 12 and 13)

Plaintiffs' tortious interference claims are also preempted.  They, too, are based on allegations that Defendants wrongfully misappropriated Plaintiffs' confidential information. *E.g.*, FAC ¶¶ 194, 199 (crux of tortious interference claim is allegations that "defendants saw an opportunity to reach a quick deal with PBA by utilizing Plaintiffs' detailed plan for the development, terms of the PSA, and due diligence documentation"); *see Am. Registry, LLC*, 2014 WL 12606501, at *6 (dismissing tortious interference claim as preempted by the FUTSA because it was "premised solely on the use of plaintiff's Proprietary Information"); *Jouria v. CE Res., Inc.*, No. 15-CV-61165, 2017 WL 3868422, at *5 (S.D. Fla. July 17, 2017) (tortious interference claim was preempted by FUTSA at the motion to dismiss stage).

Separately, Plaintiffs also fail to plead basic elements of the tort.  Tortious interference requires that a defendant know of and improperly interfere with an existing contract or business relationship "under which the plaintiff has legal rights."  *See Weisman v. S. Wine & Spirits*, 297 So. 3d 646, 650 (Fla. 4th Dist. Ct. App. 2020); *Nautica Int'l v. Intermarine USA, L.P.,* 5 F. Supp. 2d 1333, 1344 (S.D. Fla. 1998).  Here, the proposed PSA did not constitute a contract or give rise to rights, *see supra* Part D.1., so could not provide the basis for an interference claim.  Nor do Plaintiffs plead any facts indicating that the Frisbie Defendants knew of the LOI or of the LOI's particular terms.  And, there is no cause of action for tortious interference in the absence of a breach, *see Hodges v. Buzzeo*, 193 F. Supp. 2d 1279, 1286 (M.D. Fla. 2002), which Plaintiffs also do not establish with respect to the proposed PSA or the LOI's exclusivity provision.  *See supra* Part D.1.

Plaintiffs' claims also fail due to the protections Florida law affords to commercial actors to pursue their own economic interests. Plaintiffs allege that the Frisbie Defendants interfered when they "engaged with PBA to negotiate to purchase the Parcels" and that "defendants saw an opportunity to reach a quick deal with PBA by utilizing Plaintiffs' detailed plan for the development, terms of the PSA, and due diligence documentation." (FAC, ¶¶ 194, 199.)  Where, as here, Defendants were acting to promote their own economic interest – by purchasing the "valuable" property – those actions are privileged and non-actionable. *See Bruce v. Am. Dev. Corp.*, 408 So. 2d 857, 858 (Fla. 3d Dist. Ct. App. 1982) ("There can be no interference with a contractual relationship where the action complained of is undertaken to safeguard or promote one's financial or economic interest."); *Ethyl Corp. v. Balter*, 386 So. 2d 1220, 1225 (Fla. 3d Dist. Ct. App. 1980) (solicitation of more favorable offers to reorganize troubled company's financial assets was non-actionable when aimed at promoting defendant's own financial interests and without evidence that defendant's conduct was improper).  Not even malice or ill-will converts non-actionable self-promotion into an actionable tort. *Ethyl,* 386 So. 2d at 1225.

Moreover, the presentation of a better business deal does not qualify as inducement or give rise to a claim for tortious interference – even had the Frisbie Defendants entered into their PSA with knowledge that PBAU could not sell the same property to both the Frisbie Defendants and Plaintiffs. *See* Restatement (Second) of Torts § 766 cmt. *N* (1979) ("One does not induce another to commit a breach of contract with a third person … when he merely enters into an agreement with the other with knowledge that the other cannot perform both it and his contract with the third person.").  Florida courts follow the Restatement's approach for this cause of action. *See Gossard v. Adia Servs., Inc.*, 723 So. 2d 182, 184 (Fla. 1998); *Martin Petroleum Corp. v. Amerada Hess Corp.*, 769 So. 2d 1105, 1107 (Fla. 4th Dist. Ct. App. 2000).  Even in Plaintiffs' telling, PBAU made a choice between two parties, yet that choice cannot give rise to a claim against the Frisbie Defendants even if PBAU's choice disrupted Plaintiffs' contractual or business expectations with PBAU. *Gossard,* 723 So. 2d at 185.  For these reasons, too, Claims 12 and 13 must be dismissed for failure to state a claim.

###    e.    Fraud (Claim 5), Aiding and Abetting Fraud (Claim 6), and Negligent Misrepresentation (Claim 7)

Finally, no "material distinctions" exist between Plaintiffs' FUTSA claim and their fraud and negligent misrepresentation claims. *Nephron*, 2020 WL 7684863, at *20.  Those latter

claims are based on allegations that the PBAU Defendants "had no firm intention of contracting with Plaintiffs," but instead "wished to pump Plaintiffs for valuable information and discard them after extracting all [they] could." (FAC ¶¶ 151, 162.) Plaintiffs' trade secret claims are based on that same allegation. (*See id.* ¶ 176 (University defendants "continued to indicate their intentions of completing the deal with Plaintiffs" to misappropriate trade secret information).) These claims should accordingly be dismissed. *See Taxinet*, 2018 WL 3405243, at *4 (FUTSA required dismissal of fraud claims based on allegations that the defendant "knew he was making false representations to [plaintiff] . . . with the purpose of obtaining confidential business information from [plaintiff]").

Separately, Rule 9(b) also requires dismissal of Plaintiffs' fraud-based claims. Those claims rest on PBAU's and Defendant Koenig's supposed "misrepresentations and omissions" that a deal with Plaintiffs was "all approved," (FAC, ¶ 149), when Plaintiffs allegedly "were negotiating with another party for that same property," (*id.* ¶ 163), and on the Frisbie Defendants' supposed after-the-fact statements that they lacked knowledge of Plaintiffs' dealings with PBAU. (*See id.*)

Because Rule 9(b) is intended to protect defendants against "spurious charges of immoral and fraudulent behavior," *Durham v. Bus. Mgmt. Assocs.*, 847 F.2d 1505, 1511 (11th Cir. 1988), Plaintiffs cannot simply group Defendants together and allege that they are all responsible for broad-brush "misrepresentations and omissions" about a deal being imminent – a factual situation that could apply in any number of arms-length commercial contexts. To avoid dismissal, Plaintiffs must plead "(1) *precisely* what statements were made in what documents or oral representations or what omissions were made; (2) the *time and place* of each such statement and the person responsible for making or not making same; (3) the *content* of such statements and the *manner in which they misled* the plaintiff; and (4) what the defendant 'obtained as a result of the fraud.'" *Brooks v. Blue Cross & Blue Shield of Fla.*, 116 F.3d 1364, 1371 (11th Cir. 1997) (emphasis added); *accord Varney v. R.J. Reynolds Tobacco Co.*, 118 F. Supp. 2d 63, 68 (D. Mass. 2000) ("[T]he plaintiff must at least tell who said (or failed to say) what, when, and where."). Plaintiffs must separately set forth the acts complained of by each defendant. *See, e.g.*, *Brooks*, 116 F.3d at 1381; *accord Flamenbaum v. Orient Lines, Inc.*, No. 03-22549-CIV, 2004 WL 1773207, at *6 (S.D. Fla. July 20, 2004) ("Plaintiffs cannot lump together all 'defendants' in an allegation of fraud."); *Perry v. Gammon*, 583 F. Supp. 1230, 1233-34 (N.D.

Ga. 1984) (similar).  And, with respect to Plaintiffs' omission-based charges of fraud and aiding and abetting, they must similarly plead plausible facts showing that each Defendant had "a duty to make such disclosure" arising from a fiduciary relationship or a response to an inquiry imposing a duty to "disclose the whole truth."  *Friedman v. Am. Guard. Warranty Servs., Inc.*, 837 So. 2d 1165, 1166 (Fla. 4th Dist. Ct. App. 2003); *see Nicholson v. Kellin*, 481 So. 2d 931, 936 (Fla. 5th Dist. Ct. App. 1985).  They do not do so.

Plaintiffs' broad allegations of having supposedly been misled do not satisfy their Rule 9(b) burden of alleging what was said and by whom under what authority, let alone provide plausible facts showing how Plaintiffs were misled, what they lost, what each Defendant did or did not do, or the basis for any Defendant's duty to disclose anything to Plaintiffs.  Indeed, Plaintiffs' allegations actually undermine any suggestion that they were misled or deprived of anything of value.  They show that Plaintiffs were under no illusion that the PSA had become effective, because they continued to seek a signed copy of the proposed contract that by its terms became effective only once executed by both parties.  (*See* FAC ¶¶ 62-63; *supra* Part D.1.) Plaintiffs allege no detriment to them or gain to Defendants following the supposed misrepresentation that would not have arisen had the PBAU Defendants simply said nothing, (FAC ¶¶ 61-66) – confirming that Plaintiffs were not misled to their detriment by any statement. That failure is even more true for the supposedly fraudulent statements of the Frisbie Defendants, which allegedly occurred long *after* PBAU had ceased negotiating with Plaintiffs.  (*Id.* ¶ 72.) Not knowing whether the PBAU Defendants and Frisbie Defendants were or had been in discussions did not, at that point, harm Plaintiffs in any way they describe.

## <u>CONCLUSION</u>

For the foregoing reasons, Defendants respectfully request that their motion be granted in its entirety and that Plaintiffs' complaint be dismissed with prejudice.

Respectfully submitted,

Date:  January 18, 2022
        Miami, Florida

**SHUBIN & BASS, P.A.**
46 S.W. First Street, Third Floor
Miami, Florida 33130
Tel.: (305) 381-6060
Fax: (305) 381-9457
jshubin@shubinbass.com
dfalce@shubinbass.com
jkatz@shubinbass.com
eservice@shubinbass.com

By:    /s/ John K. Shubin
       John K. Shubin
       Fla. Bar No. 771899
       Deana D. Falce
       Fla. Bar No. 84154
       Jamie L. Katz
       Fla. Bar No. 105634

*Counsel for Defendants Frisbie Group LLC,*
*FH3 LLC, David W. Frisbie, Robert N. Frisbie*
*Jr., and Cody S. Crowell*

**JONES FOSTER P.A.**
505 South Flagler Drive, Suite 1100
West Palm Beach, Florida 33401
Tel.: (561) 659-3000
Fax: (561) 650-5300
shawkins@jonesfoster.com

By: /s/ Scott G. Hawkins
       Scott G. Hawkins
       Fla. Bar No. 460117

*Counsel for Defendants Palm Beach Atlantic*
*University Inc., William M.B. Fleming, Jr.,*
*and Patrick C. Koenig*

**ELLIS GEORGE CIPOLLONE**
**O'BRIEN ANNAGUEY LLP**
2121 Avenue of the Stars, Suite 2800
Los Angeles, California 90067
Tel.: (310) 274-7100
Fax: (310) 275-5697
egeorge@egcfirm.com
kwesley@egcfirm.com
rkeech@egcfirm.com
spolatoglu@egcfirm.com

By: /s/ Eric M. George
       Eric M. George (*pro hac vice*)
       Keith J. Wesley (*pro hac vice*)
       Ryan Q. Keech (*pro hac vice*)
       Serli Polatoglu (*pro hac vice*)

*Counsel for Defendants Palm Beach*
*Atlantic University Inc., Frisbie Group*
*LLC, FH3 LLC, William M.B. Fleming, Jr.,*
*Patrick C. Koenig, David W. Frisbie,*
*Robert N. Frisbie, Jr., and Cody Crowell*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 18, 2022, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all Counsel of Record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

    /s/ John K. Shubin    
John K. Shubin, Esq.

**SERVICE LIST**

Scott Hawkins, Esquire
**JONES FOSTER P.A.**
505 South Flagler Drive, Suite 1100
West Palm Beach, Florida 33401
Tel.: (561) 659-3000
Fax: (561) 650-5300
shawkins@jonesfoster.com

*Counsel for Defendants Palm Beach Atlantic
University Inc., William M.B. Fleming, Jr., and
Patrick C. Koenig*

Eric M. George (*pro hac vice*)
Keith J. Wesley (*pro hac vice*)
Ryan Q. Keech (*pro hac vice*)
Serli Polatoglu (*pro hac vice*)
**ELLIS GEORGE CIPOLLONE O'BRIEN
ANNAGUEY LLP**
2121 Avenue of the Stars, Suite 2800
Los Angeles, CA 90067
Tel.: (310) 274-7100
Fax: (310) 275-5697
egeorge@egcfirm.com
kwesley@egcfirm.com
rkeech@egcfirm.com
spolatoglu@egcfirm.com

*Counsel for Defendants Palm Beach Atlantic
University Inc., Frisbie Group LLC, FH3 LLC,
William M.B. Fleming, Jr., Patrick C. Koenig,
David W. Frisbie, Robert N. Frisbie, Jr., and Cody
Crowell*

Sean C. Domnick, Esquire
Matthew T. Christ, Esquire
**DOMNICK CUNNINGHAM & WHALEN**
2401 PGA Boulevard, Suite 140
Palm Beach Gardens, FL 33410
Tel.: (561) 625-6260
Fax: (561) 625-6269
mtc@dcwlaw.com
sean@dcwlaw.com

Reed Brodsky (*pro hac vice*)
Akiva Shapiro (*pro hac vice*)
Diane Chan (*pro hac vice*)
Michael McQueeney (*pro hac vice*)
**GIBSON, DUNN & CRUTCHER LLP**
200 Park Avenue
New York, NY 10166-0193
Tel.: (212) 351-4000
Fax: (212) 351-6235
RBrodsky@gibsondunn.com
AShapiro@gibsondunn.com
DChan@gibsondunn.com
MMcQueeney@gibsondunn.com

*Counsel for Plaintiffs Two Roads Development
LLC, Trilar Holdings LLC and Flagler South
Development LLC*

John K. Shubin, Esquire
Deana D. Falce, Esquire
Jamie L. Katz, Esquire
**SHUBIN & BASS, P.A.**
46 S.W. First Street, Third Floor
Miami, Florida 33130
Tel.: (305) 381-6060
Fax: (305) 381-9457
jshubin@shubinbass.com
dfalce@shubinbass.com
jkatz@shubinbass.com

*Counsel for Defendants Frisbie Group LLC,
FH3 LLC, David W. Frisbie, Robert N.
Frisbie, Jr., and Cody Crowell*