## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 9:21-CV-82067-CIV (CANNON)

TWO ROADS DEVELOPMENT LLC,
TRILAR HOLDINGS LLC, and FLAGLER
SOUTH DEVELOPMENT LLC,

               Plaintiffs,

v.

PALM BEACH ATLANTIC UNIVERSITY
INC., FRISBIE GROUP LLC, FH3 LLC,
WILLIAM M.B. FLEMING, JR., PATRICK
C. KOENIG, DAVID W. FRISBIE,
ROBERT N. FRISBIE JR., and CODY S.
CROWELL,

               Defendants.

## PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS AND INCORPORATED MEMORANDUM OF LAW

# TABLE OF CONTENTS

Page(s)

PRELIMINARY STATEMENT ........................................................................................... 1

BACKGROUND ............................................................................................................... 2

LEGAL STANDARD......................................................................................................... 4

ARGUMENT ................................................................................................................... 5

I.     Plaintiffs Sufficiently Plead that Defendants Violated Civil RICO (Count 1)...................... 5

       A.     Plaintiffs Adequately Allege that Defendants Operated or Managed an
              Association-in-Fact Enterprise. ...................................................................... 6

       B.     Plaintiffs Adequately Allege that Defendants Engaged in Predicate Acts. ................... 8

       C.     Plaintiffs Adequately Allege RICO Continuity. .............................................. 13

       D.     Plaintiffs Adequately Allege RICO Causation. .............................................. 14

II.    The Complaint Adequately Alleges that Defendants Misappropriated Plaintiffs'
       Trade Secrets in Violation of State and Federal Law (Counts 9 & 10)............................... 16

       A.     As Pleaded, Plaintiffs' Proprietary Information Qualifies as a Trade Secret. ............. 17

       B.     Plaintiffs Allege "Reasonable Measures" to Protect Their Trade Secrets. .................. 19

       C.     Plaintiffs Sufficiently Allege Misappropriation of Trade Secrets. ............................. 23

III.   Plaintiffs Adequately Plead Their Related State Law Claims............................................. 23

       A.     Plaintiffs Adequately Allege that PBA Breached the LOI (Counts 2 & 3). ................ 23

       B.     Plaintiffs Adequately Allege that PBA Breached the PSA (Count 4) and that
              Plaintiffs Are Entitled to Specific Performance (Count 15). ....................................... 25

       C.     Plaintiffs' Remaining Claims (Counts 5–8 & 11–14) Are Not Preempted.................. 27

       D.     Plaintiffs Adequately Allege Tortious Interference (Counts 12 & 13). ....................... 28

       E.     Plaintiffs Adequately Allege Fraudulent—or At the Very Least Negligent—
              Misrepresentations and Aiding and Abetting Fraud (Counts 5–7). ............................ 28

IV.    If Necessary, Plaintiffs Seek Leave to Amend................................................................. 30

CONCLUSION................................................................................................................ 30

i

# TABLE OF AUTHORITIES

Page(s)

## CASES

*Acrisure of Cal., LLC v. Soc. Comm. Ins. Servs., Inc.*,
   2019 WL 4137618 (C.D. Cal. Mar. 27, 2019)........................................................18

*Ad-Vantage Tel. Directory Consultants, Inc. v. GTE Directories Corp.*,
   849 F.2d 1336 (11th Cir. 1987) .............................................................................28

*Agilysys, Inc. v. Hall*,
   258 F. Supp. 3d 1331 (N.D. Ga. 2017) ..................................................................11

*Alix v. McKinsey & Co.*,
   23 F.4th 196 (2d Cir. 2022) ...................................................................................15

*American Aviation, Inc. v. Aero-Flight Serv., Inc.*,
   712 So.2d 809 (Fla. 4th DCA 1998) ......................................................................26

*American Dental Ass'n v. Cigna Corp.*,
   605 F.3d 1283 (11th Cir. 2010) ...............................................................................8

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)..................................................................................................4

*Attia v. Google LLC*,
   2018 WL 2971049 (N.D. Cal. June 13, 2018).......................................................11

*Ayres v. Gen. Motors Corp.*,
   234 F.3d 514 (11th Cir. 2000) ..................................................................................8

*Belin v. Health Ins. Innovations, Inc.*,
   2019 WL 9575236 (S.D. Fla. Oct. 22, 2019)...........................................................6

*Bergman v. DeIulio*,
   826 So. 2d 500 (Fla. 4th DCA 2002) .....................................................................26

*Boyle v. United States*,
   556 U.S. 938 (2009)..................................................................................................6

*Brand Energy & Infrastructure Servs., Inc. v. Irex Contracting Grp.*,
   2017 WL 1105648 (E.D. Pa. Mar. 24, 2017)..........................................................11

*Bridge v. Phoenix Bond & Indem. Co.*,
   553 U.S. 639 (2008)..............................................................................................9, 14

*Brooks v. Blue Cross & Blue Shield of Fla.*,
   116 F.3d 1364 (11th Cir. 1997) ..............................................................................29

**TABLE OF AUTHORITIES**

*(continued)*

Page(s)

*Charles Ramsey Co., Inc. v. Fabtech-NY LLC,*
    2020 WL 352614 (N.D.N.Y. Jan. 21, 2020) ........................................................22

*Colonial Penn Ins. Co. v. Value Rent-A-Car Inc.,*
    814 F. Supp. 1084 (S.D. Fla. 1992) .....................................................................13

*Compulife Software Inc. v. Newman,*
    959 F.3d 1288 (11th Cir. 2020) ...........................................................................16

*Cont. Assocs., Inc. v. Atalay,*
    2015 WL 1649051 (E.D. Va. Apr. 10, 2015) .......................................................21

*Cook v. Theme Park Ventures, Inc.,*
    633 So.2d 468 (Fla. 5th DCA 1994) ....................................................................25

*Corcel Corp. v. Ferguson Enters., Inc.,*
    551 F. App'x 571 (11th Cir. 2014) .......................................................................15

*Davis v. Ivey,*
    984 So.2d 571 (Fla. 5th DCA 2008) ....................................................................25

*Decurtis LLC v. Carnival Corp.,*
    2021 WL 1968327 (S.D. Fla. Jan. 6, 2021) .........................................................18

*Del Monte Fresh Produce Co v. Dole Food Co.,*
    136 F. Supp. 2d 1271 (S.D. Fla. 2001) ................................................................17

*DeMartini v. Town of Gulf Stream,*
    942 F.3d 1277 (11th Cir. 2019) .............................................................................5

*Dev. Techs., LLC v. Mitsui Chems., Inc.,*
    2019 WL 1598808 (M.D. Fla. Apr. 15, 2019) .....................................................18

*Devon IT, Inc. v. IBM Corp.,*
    805 F. Supp. 2d 110 (E.D. Pa. 2011) ...................................................................11

*Diamond Power Int'l, Inc. v. Clyde Bergemann, Inc.,*
    370 F. Supp. 2d 1339 (N.D. Ga. 2005) ................................................................21

*Dippin' Dots Patent Litig.,*
    249 F. Supp. 2d 1346  (N.D. Ga. 2003) ...............................................................21

*Dotolo v. Schouten,*
    426 So.2d 1013 (Fla. 2d DCA 2003) ...................................................................20

# TABLE OF AUTHORITIES

*(continued)*

Page(s)

*Durham v. Bus. Mgmt. Assocs.*,
  847 F.2d 1505 (11th Cir. 1988) ............................................................5

*In re Egidi*,
  571 F.3d 1156 (11th Cir. 2009) ......................................................23, 25

*Faith Enters. Grp., Inc. v. Avis Budget Grp., Inc.*,
  2012 WL 1409403 (N.D. Ga. Apr. 20, 2012) ......................................15

*Flamenbaum v. Orient Lines, Inc.*,
  2004 WL 1773207 (S.D. Fla. July 20, 2004).......................................29

*Foman v. Davis*,
  371 U.S. 178 (1962).............................................................................30

*Garcia v. Dep't of Bus. & Pro. Reg.*,
  988 So.2d 1199 (Fla. 3d DCA 2008) ...................................................27

*H.J. Inc. v. Nw. Bell Tel. Co.*,
  492 U.S. 229 (1989).......................................................................13, 14

*Hester v. Fla. Cap. Grp., Inc.*,
  189 So. 3d 950 (Fla. 2d DCA 2016) ....................................................25

*Hill Holliday Connors Cosmopulos, Inc. v. Greenfield*,
  433 F. App'x 207 (4th Cir. 2011) ........................................................18

*Hill v. Morehouse Med. Assocs., Inc.*,
  2003 WL 22019936 (11th Cir. Aug. 15, 2003).........................5, 10, 29

*In re Holdsworth*,
  495 B.R. 544 (Bank. M.D. Fla. 2013)..................................................12

*Hurry Fam. Revocable Tr. v. Frankel*,
  2019 WL 2868945 (M.D. Fla. July 3, 2019) ........................................17

*Inv. Sci., LLC v. Oath Holdings Inc.*,
  2021 WL 3541152 (S.D.N.Y. Aug. 11, 2021) ......................................21

*Invego Auto Parts, Inc. v. Rodriguez*,
  34 So.3d 103 (Fla. 3d DCA 2010) .......................................................26

*Jackson v. BellSouth Telecomms.*,
  372 F.3d 1250 (11th Cir. 2004) ...........................................................13

# TABLE OF AUTHORITIES
*(continued)*

Page(s)

*Johnson Enters. Of Jacksonville, Inc. v. FPL Grp., Inc.*,
    162 F.3d 1290 (11th Cir. 1998) ...................................................................28

*Johnson v. Davis*,
    480 So.2d 625 (Fla. 1985)............................................................................28

*Khanimov v. St. Tropez II, LLC*,
    2009 WL 10667415 (S.D. Fla. Aug. 18, 2009)..........................................23

*Kolski ex rel. Kolski v. Kolski*,
    731 So. 2d 169 (Fla. 3rd DCA 1999) .........................................................26

*Kosterlitz v. S/V Knotta Klu*,
    809 F. App'x 735 (11th Cir. 2020) .............................................................25

*Krush Commc'ns, LLC v. Lunex Telecom, Inc.*,
    2014 WL 12069847 (N.D. Ga. Sept. 12, 2014) .........................................21

*Lavastone Cap. LLC v. Coventry First LLC*,
    2015 WL 1939711 (S.D.N.Y. Apr. 22, 2015) ..............................................9

*Lawrence Holdings, Inc. v. ASA Int'l, LTD.*,
    2014 WL 5502464 (M.D. Fla. Oct. 30, 2014) .............................................6

*Lawrence v. Bank of Am., N.A.*,
    455 F. App'x 904 (11th Cir. 2012) .............................................................29

*LouMac Distrib. U.S. LBM, LLC v. Luongo*,
    2019 WL 4345778 (M.D. Fla. Sept. 12, 2019) ..........................................27

*M.C. Dean, Inc. v. City of Miami Beach, Florida*,
    199 F. Supp. 3d 1349 (S.D. Fla. 2016) ......................................................21

*Magnifico v. Villanueva*,
    783 F. Supp. 2d 1217 (S.D. Fla. 2011) .......................................................13

*In re Managed Care Litig.*,
    298 F. Supp. 2d 1259 (S.D. Fla. 2003) ...................................................6, 10

*Mapei Corp. v. J.M. Field Mktg.*,
    295 So. 3d 1193 (Fla. 4th DCA 2020) .......................................................22

*Marsh U.S.A., Inc. v. Walpole Inc.*,
    2005 WL 2372006 (M.D. Fla. Sept. 26, 2005) ..........................................29

**TABLE OF AUTHORITIES**

*(continued)*

Page(s)

*Metallurgical Indus. Inc. v. Fourtek, Inc.*,
   790 F.2d 1195 (5th Cir. 1986) ........................................................................22

*Meterlogic, Inc. v. Copier Sols.*,
   126 F.Supp. 2d 1346 (S.D. Fla. 2000) .............................................................5

*Midtown Realty, Inc. v. Hussain*,
   712 So. 2d 1249 (Fla. 3d DCA 1998) .............................................................26

*Murphy v. City of Aventura*,
   2008 WL 4540055 (S.D. Fla. Oct. 10, 2008)....................................................4

*Nautica Int'l v. Intermarine USA, L.P.*,
   5 F. Supp. 2d 1333 (S.D. Fla. 1998) ..............................................................28

*Nephron Pharm. Corp. v. Hulsey*,
   2020 WL 7684863 (M. D. Fla. Oct. 7, 2020) .................................................19

*Nicholson v. Kellin*,
   481 So. 2d 931 (Fla. 5th DCA 1985) ...........................................................9, 30

*Novoneuron Inc. v. Addiction Rsch. Inst., Inc.*,
   326 F. App'x 505 (11th Cir. 2009) .................................................................24

*Perry v. Gammon*,
   583 F. Supp. 1230 (N.D. Ga. 1984) ...............................................................30

*Pinnock o/b/o ADA Consultants & Advisors, Inc. v. Wal-Mart Stores, Inc.*,
   2009 WL 10670000 (M.D. Fla. Aug. 10, 2009) .............................................18

*Procter & Gamble Co. v. Big Apple Indus. Bldgs., Inc.*,
   879 F.2d 10 (2d Cir. 1989)..............................................................................11

*R.C. Olmstead, Inc., v. CU Interface, LLC*,
   606 F.3d 262 (6th Cir. 2010) ..........................................................................21

*R+C+G Station, Inc. v. Urbieta Oil, Inc.*,
   2012 WL 2054934 (S.D. Fla. June 7, 2012) ....................................................4

*Randall v. Offplan Millionaire AG*,
   2020 WL 2365258 (M.D. Fla. Apr. 21, 2020).................................................11

*Reprod. Health Servs. v. Strange*,
   3 F.4th 1240 (11th Cir. 2021), *rev'd on other grounds*,
   22 F.4th 1346 (11th Cir. 2022) ..................................................4–5, 18, 20, 30

**TABLE OF AUTHORITIES**

*(continued)*

<u>Page(s)</u>

*Road Space Media, LLC v. Miami Dade County*,
  2020 WL 434929 (S.D. Fla. Jan. 28, 2020) ...........................................................................24

*Rogers v. Desa Int'l, Inc.*,
  183 F. Supp. 2d 955 (E.D. Mich. 2002)..................................................................................21

*Schmuck v. United States*,
  489 U.S. 705 (1989).................................................................................................................9

*Sedima, S.P.R.L. v. Imrex Co., Inc.*,
  473 U.S. 479 (1985).......................................................................................................5, 6, 12

*Sentry Data Sys., Inc. v. CVS Health*,
  361 F. Supp. 3d 1279 (S.D. Fla. 2018) ...................................................................16, 17, 27

*Specialty Marine & Indus. Supplies, Inc, v. Venus*,
  66 So. 3d 306 (Fla. 1st DCA 2011) ........................................................................................29

*St. Johns Vein Ctr., Inc. v. StreamlineMD LLC*,
  347 F. Supp. 3d 1047 (M.D. Fla. 2018)..................................................................................21

*TB Food USA, LLC v. Am. Mariculture, Inc.*,
  2021 WL 4690691 (M.D. Fla. Oct. 7, 2021) ..........................................................................11

*ThinkLite LLC v. TLG Sols., LLC*,
  2017 WL 5972888 (S.D. Fla. Jan. 31, 2017) ..........................................................................27

*TRB Acquisitions LLC v. Yedid*,
  2021 WL 293122 (S.D.N.Y. Jan. 28, 2021) ...........................................................................18

*TriEst Irrigation LLC v. Hiers*,
  2021 WL 2229059 (M.D. Ga. June 12, 2021) ........................................................................21

*United States v. Bradley*,
  644 F.3d 1213 (11th Cir. 2011) ...............................................................................................9

*United States v. Browne*,
  505 F.3d 1229 (11th Cir. 2007) .............................................................................................13

*United States v. Church*,
  955 F.2d 688 (11th Cir. 1992) ...............................................................................................10

*United States v. Hasson*,
  333 F.3d 1264 (11th Cir. 2003) ...............................................................................................9

**TABLE OF AUTHORITIES**
*(continued)*

Page(s)

*United States v. Maxwell*,
    579 F.3d 1282 (11th Cir. 2009) ........................................................................................8

*United States v. Takhalov*,
    827 F.3d 1307 (11th Cir. 2016) ........................................................................................9

*Vacation Club Sys., Inc. v. Rodriguez*,
    2010 WL 1645129 (M.D. Fla. Apr. 22, 2010) ...............................................................27

*Varney v. R.J. Reynolds Tobacco Co.*,
    118 F. Supp. 2d 63 (D. Mass. 2000) ..............................................................................30

*Vienneau v. Metro. Life Ins. Co.*,
    548 So.2d 856 (Fla. 4th DCA 1989) ..............................................................................24

*VVIG, Inc. v. Alvarez*,
    2019 WL 5063441 (S.D. Fla. Oct. 9, 2019) ...................................................................18

*Water Int'l Network, U.S.A., Inc. v. East*,
    892 F. Supp. 1477 (M.D. Fla. 1995) ..............................................................................13

*Westmont Indus., Inc. v. Weinstein*,
    762 F. Supp. 646 (M.D. Pa. 1989) .................................................................................11

*White Constr. Co., Inc. v. Martin Marietta Materials, Inc.*,
    633 F. Supp. 2d 1302 (M.D. Fla. 2009) .........................................................................26

*Williams v. Mohawk Indus., Inc.*,
    465 F.3d 1277 (11th Cir. 2006) ....................................................................................7, 8

*Yellowfin Yachts, Inc. v. Barker Boatworks, LLC*,
    898 F.3d 1279 (11th Cir. 2018) .................................................................................20, 21

**STATUTES**

18 U.S.C. § 1341 .........................................................................................................................9

18 U.S.C. § 1343 .........................................................................................................................9

18 U.S.C. § 1832 .......................................................................................................................11

18 U.S.C. § 1836 .......................................................................................................................16

18 U.S.C. § 1839 .......................................................................................................11, 16, 17, 23

## TABLE OF AUTHORITIES
*(continued)*

Page(s)

18 U.S.C. § 1961 ...............................................................................................8, 11, 12

Fla. Stat. § 668.50 ........................................................................................................25

Fla. Stat. § 688.002 ................................................................................................16, 17

Fla. Stat. § 688.008 ......................................................................................................27

Fla. Stat. § 725.01 ........................................................................................................25

Fla. Stat. § 775.082 ......................................................................................................12

Fla. Stat. § 836.05 ........................................................................................................12

### OTHER AUTHORITIES

Restatement (Third) of Unfair Competition § 39(f) (2019) ...........................................22

*RICO: Civil and Criminal Law and Strategy* § 2.02[4] (Rakoff & Goldstein eds., 2014) .........................................................................................................................6

### RULES

Fed. R. Civ. P. 9(b) ..................................................................................................5, 29

Fed. R. Civ. P. 15(a) .....................................................................................................30

Plaintiffs Two Roads Development LLC, Trilar Holdings LLC and Flagler South Development LLC (together, "Plaintiffs"), respectfully submit this memorandum of law in opposition to the motion of Defendants Palm Beach Atlantic University Incorporated ("PBA"), Frisbie Group LLC ("Frisbie Group"), FH3 LLC ("FH3"), William Fleming, Patrick Koenig, David Frisbie, Robert Frisbie Jr., and Cody Crowell (collectively, "Defendants") to dismiss most—but not all—of the causes of action in Plaintiffs' Amended Complaint (hereinafter, "Complaint") (Dkt. 11).  For the reasons set forth below, Defendants' motion should be denied in its entirety.

## PRELIMINARY STATEMENT

As detailed in the 69-page, 211-paragraph Complaint, this is an action to remedy and prevent the further implementation of a wide-ranging, unlawful, and fraudulent real estate development scheme perpetrated by Defendants in connection with the development of luxury condominiums on the parcels located at 1315 and 1401 South Flagler Drive (the "PBA Parcels" or the "Parcels").  ¶ 1.[1]  PBA initially agreed to sell the PBA Parcels to Plaintiffs.  However, while inducing Plaintiffs to (i) share their valuable plans for the PBA Parcels, and (ii) negotiate for nine months to a final agreement for the sale of the Parcels, PBA coordinated with Frisbie Group and the other Defendants—who, unbeknownst to Plaintiffs, had longstanding personal and business relationships—to have Frisbie Group step into Plaintiffs' shoes to steal the project, worth hundreds of millions of dollars.  PBA would go on to renege on its completed deal with Plaintiffs and then contract to sell the valuable parcels to Frisbie Group.  ¶¶ 2–3, 69.

In carrying out this scheme to defraud Plaintiffs out of the development deal for the Parcels, steal Plaintiffs' trade secrets, and use whatever means necessary to cover their tracks and complete their plan, Defendants violated exclusivity and confidentiality obligations entered into by PBA in its Letter of Intent with Plaintiffs ("LOI," Ex. A), and purported to back out of the "all approved" Purchase and Sale Agreement ("PSA," Ex. B) between them.  Defendants did this through deceit and chicanery.  ¶¶ 3–4.  After Plaintiffs confronted Frisbie Group, Defendants David Frisbie, Robert Frisbie Jr., and Cody Crowell lied to and misled Plaintiffs about their secret dealings with PBA to cover their tracks, and then proposed a partnership on the development of Parcels.  ¶ 5.  Plaintiffs believed Frisbie Group pursued this partnership in good faith as an olive branch to make amends for its prior bad acts, but that turned out to be yet another phase of the ongoing scheme to defraud

---

[1]  References to "¶ __" are to the Amended Complaint.  References to "Ex. __" are to the exhibits submitted in support of Defendants' motion to dismiss (*see* Dkt. 38-1).

1

Plaintiffs and steal their trade secrets and confidential plans for the development of the PBA Parcels.  *Id*.  In furtherance of the scheme to defraud, and proving their consciousness of guilt, Defendants then sought to condition the provision of routine easements needed by Plaintiffs for their development of the Forté on Plaintiffs' waiver of their right to take any legal action against Defendants for the scheme, and on Plaintiffs' blanket approval of future development plans for the illegally obtained PBA Parcels.  ¶ 6.  Defendants then sought to extort Plaintiffs by threatening to get brokers to abandon the Forté if Plaintiffs did not capitulate to Defendants' development plan—which encompasses key elements of the plan developed by and stolen from Plaintiffs.  ¶¶ 6–7.

In paragraph after paragraph, the Complaint lays out a detailed account of how Defendants acted in concert to form an enterprise and carry out this scheme.  ¶¶ 28–94.  Plaintiffs' allegations explain the motives for the scheme, the opportunities to plan and develop it, and Defendants' unlawful coordination.  ¶¶ 95–127.  Plaintiffs also lay out a continuous pattern of racketeering, through numerous predicate acts of wire fraud, trade secret misappropriation, and extortion.  *Id*.  And they clearly link this scheme to the extensive harm alleged.  *See id*.  In the face of these well-plead allegations tracking each element of Plaintiffs' causes of action, including federal civil RICO and Defense of Trade Secrets Act claims, and related state law claims, Defendants' brief in support of their motion to dismiss (Dkt. 38) ("Br.") ignores most of the facts alleged in the Complaint, and mischaracterizes those it acknowledges.  Defendants' legal arguments, meanwhile, are built on misstated law and inapposite cases.  This Court should reject the attempt to portray Defendants' unlawful and coordinated behavior as standard commercial fare.  The Complaint more than sufficiently pleads each of the claims asserted.  Defendants' motion to dismiss should be denied in its entirety.

## BACKGROUND

As alleged, Plaintiffs are experienced real estate developers who identified a unique opportunity to build a set of luxury waterfront condominium high-rises on some of the last undeveloped lots on South Flagler Drive in West Palm Beach, Florida.  ¶¶ 32–34.  After purchasing the parcels at 1309 and 1311 South Flagler Drive and 134 Acacia Road (as assembled, "the Forté"), ¶ 35, Plaintiffs then sought to purchase the two adjacent parcels, which were owned by PBA.  ¶ 43. In or around 2016, Plaintiffs approached PBA about purchasing the Parcels.  ¶ 45.  After Plaintiffs shared their initial proposal for building a luxury condominium on the site in early 2018, the parties entered into a formal letter of intent for the sale of the Parcels on June 11, 2018.  ¶¶ 45–51.  This

LOI included a confidentiality provision that specified that the "terms of th[e] LOI and the parties' discussions and exchanged written materials relating to the proposed transaction," including the "terms of the proposed Purchase and Sale Agreement," "the proposed development of the [PBA Parcels]" and "due diligence information and documents relating to the [PBA Parcels]," are proprietary and confidential, and may not "be shown or disclosed by either party . . . to any other person or entity" except to those involved in the proposed transaction." ¶ 52. The LOI also contained an exclusivity provision that, among other things, required the parties to "negotiate exclusively with the other to draft and enter into a Purchase and Sale Agreement." ¶ 53. From June 2018 to Spring 2019, the parties intensively negotiated. ¶ 56. Throughout this period, Plaintiffs invested time, money, and ingenuity in a comprehensive plan to develop the PBA Parcels—and shared this trade secret information with PBA. ¶ 58. In or around March 2019, while Plaintiffs were negotiating in good faith with PBA under the LOI, PBA, Fleming, and Koenig secretly coordinated with Frisbie Group, David Frisbie, Robert Frisbie Jr., and Cody Crowell, to plan and execute this scheme—in direct violation of the LOI's exclusivity provision. ¶¶ 67–70. This violation is so clear that Defendants do not seek dismissal of the breach claim premised on it. Plaintiffs, assured by PBA's representations that a deal was imminent, continued to invest time and resources into finalizing the development plan and the PSA. *Id.* On April 5, 2019, PBA sent Plaintiffs an email through its attorney, Larry Alexander, stating that the deal was "all approved." ¶ 59. On April 24, 2019, at PBA's request, Plaintiffs executed and delivered the completed and mutually approved PSA. ¶ 62. But then PBA stalled, claiming that their president, William Fleming, could not physically countersign the signature page of the final, "all approved" document due to "health challenges." ¶ 63. On information and belief, Defendants used the President's illness as an excuse to back out of the completed contract so they could enter into a substantially similar contract with Frisbie Group. ¶ 4. In July 2019, Plaintiffs learned that Frisbie Group had the PBA Parcels under contract. ¶ 71. Plaintiffs asked questions, but Frisbie Group lied to and misled Plaintiffs about their secret dealings with PBA to cover their tracks. ¶¶ 71–72. Meanwhile, PBA, Fleming, and Koenig were sharing Plaintiffs' valuable trade secret information with Frisbie Group in direct violation of their confidentiality obligations pursuant to the LOI. ¶¶ 113, 176.

In August 2019, in what appeared to be an olive branch to smooth relations between the parties, Frisbie Group proposed a development partnership with Plaintiffs. ¶ 5. At first hesitant, Plaintiffs came around after a series of serious discussions with Frisbie Group and its agents. ¶ 73.

Understanding that a development partnership was imminent, and believing that they were operating under a corresponding implied understanding of confidentiality, Plaintiffs shared additional information about their plans to develop the PBA Parcels.  ¶¶ 75–76.  But Plaintiffs were misled: This was just another phase of the ongoing scheme to defraud Plaintiffs and steal their trade secrets. Frisbie Group took Plaintiffs' proprietary information and continued to move forward on their development of the PBA Parcels without Plaintiffs.  ¶¶ 77–78.

In an attempt to avoid liability and complete their fraudulent scheme, Defendants coordinated to condition the provision of routine easements needed by Plaintiffs for their development of the Forté on two unacceptable demands:  That Plaintiffs waive their right to sue PBA for their actions relating to the PBA Parcels, and that Plaintiffs provide a blanket approval of future development plans for the PBA Parcels, sight unseen.  ¶¶ 83, 84, 86, 89, 115.  PBA served as the front for these negotiations, with Frisbie Group initially denying involvement to obscure the extent of the scheme.  ¶¶ 83, 84, 86.  Eventually, Frisbie Group took the reins on the coverup and the attempt to push through the development with the easement conditions, turning to extortionary threats in an attempt to pressure Plaintiffs into refraining from objecting to Frisbie Group and FH3's development of the PBA Parcels.  ¶¶ 89, 90.  Plaintiffs refused to be bullied into submission, and incurred at least $2,000,000 to reengineer the Forté so that it would not require the easements that Defendants were holding hostage in their scheme.  ¶ 85.  In sum, as a direct result of Defendants' fraudulent scheme, as well as their breaches of contract and acts of tortious interference, Plaintiffs have lost an invaluable, irreplaceable development project, years of work, and millions of dollars in out-of-pocket costs.  ¶ 90.

## LEGAL STANDARD

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6),[2] a complaint must contain sufficient factual matter to state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  The court must "accept as true the allegations in the pleadings of the non-moving party and draw all reasonable inferences in that party's favor."

---

[2]   Although Defendants also seek dismissal under Federal Rule of Civil Procedure 12(b)(1), Br. 1, 4, they have failed to raise any jurisdictional arguments.  To the extent that Defendants intended to seek dismissal Plaintiffs' state law claims under 12(b)(1), this was in error.  *See R+C+G Station, Inc. v. Urbieta Oil, Inc.*, 2012 WL 2054934, at *6 n.4 (S.D. Fla. June 7, 2012) (stating that the proper vehicle to dismiss pendent state law claims is 28 U.S.C. § 1367(a)); *see also Murphy v. City of Aventura*, 2008 WL 4540055, at *1–2 (S.D. Fla. Oct. 10, 2008) (recognizing that that defendants had moved to dismiss state law claims under both Federal Rule of Civil Procedure 12(b)(1) and 28 U.S.C. § 1367(a), but assessing only the latter motion rather than the former).  In any event, Defendants only attacks Plaintiffs' state law claims on the merits, not on jurisdictional grounds.  Br. 21–30.

*Reprod. Health Servs. v. Strange*, 3 F.4th 1240, 1258 (11th Cir. 2021), *rev'd on other grounds*, 22 F.4th 1346 (11th Cir. 2022) (en banc).  Where a complaint raises claims of fraud, Federal Rule of Civil Procedure 9(b) requires the plaintiff to "state with particularity the circumstances constituting fraud or mistake."  Fed. R. Civ. P. 9(b).  "The application of the rule, however, must not abrogate the concept of notice pleading," *Durham v. Bus. Mgmt. Assocs.*, 847 F.2d 1505, 1511 (11th Cir. 1988), and "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally," Fed. R. Civ. P. 9(b).  The requirements alleging fraud with specificity are relaxed where the alleged fraud occurred during an extended period of time, the acts were numerous, or strict application would result in substantial unfairness to private litigants who could not possibly have detailed knowledge at the time they file the complaint.  *Meterlogic, Inc. v. Copier Sols.*, 126 F.Supp. 2d 1346, 1360–61 (S.D. Fla. 2000).  Furthermore, courts apply Rule 9(b) less stringently when specific "factual information [about the fraud] is peculiarly within the defendant's knowledge or control."  *Hill v. Morehouse Med. Assocs., Inc.*, 2003 WL 22019936, at *3 (11th Cir. Aug. 15, 2003) (alteration in original).

## ARGUMENT

### I.    Plaintiffs Sufficiently Plead that Defendants Violated Civil RICO (Count 1).

To state a claim under the civil RICO statute, a plaintiff must plausibly allege that defendants "engaged in an enterprise through a pattern of racketeering activity that included at least two racketeering acts that caused injury to the [plaintiff's] business or property."  *DeMartini v. Town of Gulf Stream*, 942 F.3d 1277, 1301 (11th Cir. 2019).  The Supreme Court has repeatedly instructed that RICO is to be "read broadly," consistent with the statute's "express admonition that [it] is to be liberally construed to effectuate its remedial purpose" and "Congress' self-consciously expansive language" and "approach."  *Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 497–98 (1985) (quotation marks omitted).  Plaintiffs' allegations satisfy RICO's pleading requirements.

Inexplicably, Defendants claim that Plaintiffs allege "no facts" regarding four RICO elements: (1) "any associated-in-fact 'enterprise'"; (2) "any predicate criminal acts"; (3) "any lengthy and repeated 'pattern' of such acts"; or (4) "any harm arising from them."  Br. 2.  In so doing, Defendants ignore paragraphs upon paragraphs of detailed allegations.  The Complaint lays out in detail the individuals who comprise the association-in-fact Enterprise, their roles in the Enterprise, and exactly how and why the Enterprise came together for a common purpose: to steal the development deal and all related trade secrets, cover up their bad acts, and push through their own

development by whatever means necessary. *See, e.g.*, ¶¶ 99–127. The Complaint lays out exactly how these acts form a patterned and continuous scheme, and ties the harms alleged with the RICO Defendants' actions. To the extent Defendants acknowledge some facts as pleaded, they claim those facts amount to "normal and legitimate commercial conduct." Br. 5. However, wire fraud, theft, and extortion are not legitimate commercial conduct.[3] Because Defendants' arguments either ignore the detailed allegations or mischaracterize the conduct alleged, the Court should deny the motion to dismiss Plaintiffs' RICO claim.

### A.     Plaintiffs Adequately Allege that Defendants Operated or Managed an Association-in-Fact Enterprise.

Defendants argue that Plaintiffs failed to plead an association-in-fact enterprise, and wrongly claim that Plaintiffs "concede[d]" that they are two independent parties "each pursuing their separate economic interests and related only by the objective of completing a discrete property transaction." Br. 6. This is untrue. In fact, the Complaint repeatedly explains how Defendants engaged in a wide-ranging, coordinated scheme to serve the interests of the Enterprise and accomplish its common purposes. *See, e.g.*, ¶¶ 98–105, 110–15.

An association-in-fact enterprise "is proved by evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit." *Boyle v. United States*, 556 U.S. 938, 945 (2009). An enterprise may consist of an "'amoeba-like' structure of a loose informal association." *In re Managed Care Litig.*, 298 F. Supp. 2d 1259, 1275 (S.D. Fla. 2003). In the first stage of the scheme as pleaded, the Enterprise coordinated to replace Plaintiffs with Frisbie Group on the "all approved" contract for the sale of the PBA Parcels, while also misappropriating as many trade secrets from Plaintiffs as it could. ¶ 105(d)–(e). In exchange for future donations and deals from Frisbie Group, PBA would hand the contract for the Parcels—as well as the trade secrets and confidential information taken from Plaintiffs during the negotiations for those Parcels—to Frisbie Group. *Id.* As part of the plan, PBA, Fleming, and Koenig

---

[3]  Even if the Court were to accept the flawed premise that Defendants' deceptive scheme amounts to behavior typical in a "garden variety" business dispute, Br. 5, RICO would still be a proper vehicle here, as civil RICO can be applied "to almost any commercial controversy," *RICO: Civil and Criminal Law and Strategy* § 2.02[4] (Rakoff & Goldstein eds., 2014), as the Supreme Court has made clear, *see Sedima*, 473 U.S. at 499 (endorsing that "[i]nstead of being used against mobsters and organized criminals, [civil RICO] has become a tool for everyday fraud cases brought against 'respected and legitimate enterprises'"); *see also, e.g.*, *Belin v. Health Ins. Innovations, Inc.*, 2019 WL 9575236, at *6 (S.D. Fla. Oct. 22, 2019) (citing Supreme Court decisions that have "rejected the argument that RICO should be narrowly construed as a per se exclusion of business disputes"); *Lawrence Holdings, Inc. v. ASA Int'l, LTD.*, 2014 WL 5502464, at *5 (M.D. Fla. Oct. 30, 2014) (same). Defendants' outdated citations do not override this authority. *See* Br. 5.

fraudulently roped Plaintiffs along until the parties were ready for Frisbie Group to step in Plaintiffs' shoes; meanwhile, they sought to extract more of Plaintiffs' trade secrets. ¶ 112. Frisbie Group and its agents accepted this arrangement and assented to PBA's fraudulent misrepresentations to Plaintiffs. *Id*. In a move highly reminiscent of PBA, Fleming, and Koenig's scheme to steal Plaintiffs' trade secrets, Frisbie Group, Crowell, David Frisbie, and Robert Frisbie Jr. later used the pretense of a development partnership in order to steal whatever additional trade secrets and confidential business information they could. ¶ 114.

In the second stage of the scheme, the Enterprise used fraud and extortion to cover up the extent of the scheme, attempt to avoid liability, and push through the development of the PBA Parcels. ¶ 115. First, Crowell, David Frisbie, and Robert Frisbie Jr. knowingly deceived Plaintiffs about their knowledge of Plaintiffs' negotiations with PBA. ¶¶ 71, 113. They did this to prevent Plaintiffs from putting the pieces together and realizing that they had not just been cheated by PBA, but had been—and continued to be—victims of a coordinated scheme. *Id*. Second, Defendants conditioned consent for the relocation of necessary utility easements on Plaintiffs' surrender to their joint demands. ¶ 115. Frisbie Group denied knowledge, claiming it was a "misunderstanding" in an effort to keep their role in the scheme hidden. ¶ 84. But eventually, Frisbie Group took the reins on negotiations for easements *owned and controlled by PBA*. Frisbie Group then deceptively rewrote the history of the dispute over the easements in an attempt to create a false record and narrative and undermine Plaintiffs' legal claims. ¶¶ 89, 90. Finally, in May and November 2021, in an attempt to bully through a blanket approval of their Development, Frisbie Group threatened injury to Plaintiffs, their property, and their reputations. ¶¶ 87, 91, 121–122.

In this nearly three yearlong scheme, the Enterprise had a common purpose: To take the Parcels development deal—and all related trade secrets—from Plaintiffs, cover up their bad acts, and push through the development by whatever means necessary in order to complete the scheme. Such a common purpose is more than sufficient under the RICO statute. *See Williams v. Mohawk Indus., Inc.*, 465 F.3d 1277, 1285–86 (11th Cir. 2006) ("In our circuit, however, there has never been any requirement that the 'common purpose' of the enterprise be the sole purpose of each and every member of the enterprise. In fact, it may often be the case that different members of a RICO enterprise will enjoy different benefits from the commission of predicate acts.").

The scheme as alleged in the Complaint clearly alleges circumstances sufficient to infer such a common purpose. First, the Complaint alleged a mutually beneficial quid pro quo in which

PBA provided the PBA Parcels deal and trade secrets to Frisbie Group, and Frisbie Group provided further potential business opportunities and donations to PBA. ¶¶ 69, 112. Second, Plaintiffs allege coordination in the greater effort to cover up the Enterprise's fraudulent scheme. ¶¶ 111–115. As part of this effort, PBA premised its easements on the approval of *Frisbie Group's* development plan, and Frisbie Group negotiated the terms of *PBA's* easements. ¶ 83; *see also* ¶ 88 ("Frisbie Group and PBA are working in concert and scheming together" to pressure Plaintiffs to give up their rights). Third, the Complaint lays out similar tactics used to defraud Plaintiffs of their trade secrets by roping them along with false promises of a future deal. ¶¶ 5, 70, 73, 74, 114. These circumstances support the inference that Defendants coordinated to achieve their common purpose. Plaintiffs also allege how such a meeting of the minds came to fruition: Koenig, Fleming, and other PBA Trustees have longstanding social and business relationships with the Frisbie family and Frisbie Group, and Fleming has traveled to socialize with the Frisbie family at their compound in Nantucket, Massachusetts. ¶¶ 69, 100, 105.[4] Plaintiffs also allege in great detail how each RICO Defendant operated and managed the Enterprise. ¶ 105(a)–(g). Such fulsome allegations are more than sufficient at this stage. *See Mohawk Indus.*, 465 F.3d at 1286.

**B.** **Plaintiffs Adequately Allege that Defendants Engaged in Predicate Acts.**

Defendants claim that Plaintiffs failed to plead any facts amounting to predicate acts under RICO. This assertion ignores the Complaint's detailed allegations of numerous acts of wire fraud, theft of trade secrets, and extortion pleaded with more than adequate specificity—although the RICO statute requires only "two acts of racketeering activity." 18 U.S.C. § 1961(5).

**1.** **Plaintiffs Adequately Allege that Defendants Engaged in Wire Fraud.**

Mail and wire fraud consist of "(1) intentional participation in a scheme to defraud, and, (2) the use of the interstate mails or wires in furtherance of that scheme." *United States v. Maxwell*, 579 F.3d 1282, 1299 (11th Cir. 2009). To plead a scheme to defraud, a plaintiff need only allege that "some type of deceptive conduct occurred." *Ayres v. Gen. Motors Corp.*, 234 F.3d 514, 521 (11th Cir. 2000). "The law in the Eleventh Circuit makes clear that a defendant 'schemes to defraud'" where "he schemes to 'depriv[e] [someone] of something of value by trick, deceit, chicane,

---

[4] Defendants rely on *American Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010), to assert that the scheme alleged in the Complaint is not plausible. Br. 2. In *American Dental*, the Court held that the alleged scheme was not plausible because Plaintiffs failed to plead *any* facts suggesting an agreement or a long-term criminal enterprise. 605 F.3d at 1291–93. The allegations summarized here rise far above the threshold of mere "plausibility" required.

or overreaching.'" *United States v. Takhalov*, 827 F.3d 1307, 1312–13 (11th Cir. 2016).  "All that is necessary is that the scheme be reasonably calculated to deceive; the intent element of the crime is shown by the existence of the scheme."  *United States v. Bradley*, 644 F.3d 1213, 1239 (11th Cir. 2011).  And while "defendants assert that [plaintiffs] must plead either 'affirmative misrepresentations' or 'material omissions,'" the "statutes are also satisfied if a fraudulent scheme premised on false or deceptive 'pretenses' is shown."  *Lavastone Cap. LLC v. Coventry First LLC*, 2015 WL 1939711, at *4 (S.D.N.Y. Apr. 22, 2015) (Rakoff, J.); *see also* 18 U.S.C. §§ 1341, 1343.

Plaintiffs adequately allege such a scheme to deprive by trick or deceit.  From March to May 2019, PBA roped Plaintiffs along to believe that the deal would be finalized and provided excuses for delay.  In doing so, PBA, Fleming, and Koenig could continue to motivate Plaintiffs to spend time and money finalizing the plans for the project and then continue to steal more of their trade secrets.  ¶ 70.  Afterwards, the RICO Defendants covered up their bad acts and sought to complete the scheme by pushing Frisbie Group's and FH3's development through by any means necessary.  David Frisbie lied about Frisbie Group's knowledge of Plaintiffs' negotiations for the Parcels, ¶ 71, and separately, PBA pushed the liability waiver and blanket development approval, with Frisbie Group initially misleading Plaintiffs about its involvement, ¶ 84.

Any mailing or wire transmission that is "incident to an essential part of the scheme" comprises an act of mail or wire fraud.  *See Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 647 (2008).  Even "innocent" transmissions—"ones that contain no false information—may supply the mailing [or wire] element."  *Schmuck v. United States*, 489 U.S. 705, 715 (1989).  Defendants argue that each communication alleged must have actively defrauded Plaintiffs, and each must be an affirmative misrepresentation or material omission, but they mistake the law.  Rather, "[t]o violate the wire fraud statute, it is not necessary that the transmitted information include any misrepresentation."  *United States v. Hasson*, 333 F.3d 1264, 1272 (11th Cir. 2003).  In any event, the Complaint pleads with particularity more than a dozen specific wire communications that were fraudulent or deceptive, in addition to a number of categories of wire transmissions in furtherance of the scheme, as explained below.[5]

The first part of the scheme to defraud concerned the PSA negotiations from March 2019 to May 2019 and January 2020.  Each of PBA and Koenig's representations below amounted to a

---

[5]  While Plaintiffs and PBA engaged in an arm's-length transaction, PBA undertook to disclose some information, triggering a common law duty to disclose.  *See Nicholson v. Kellin*, 481 So. 2d 931, 936 (Fla. 5th DCA 1985).

lie to buy time. PBA and Koenig sought to continue to motivate Plaintiffs to spend time and money finalizing the plans for the project, and then continue to pump them for these trade secrets. ¶ 70. Frisbie Group and FH3 would use these trade secrets in the development. ¶ 68. And if PBA's negotiations with Frisbie Group fell through, PBA could fall back on Plaintiffs at any time, with Plaintiffs none the wiser about their underhanded dealings. ¶ 70. The Complaint alleges numerous wires were sent in furtherance of this first stage, including, *inter alia*, April and May 2019 emails from Alexander blaming delays on University holidays and Fleming's "health challenges." ¶¶ 62–63; *see also* ¶¶ 59, 61–63, 74, 117. As alleged, "[t]hese messages affirmatively misled Plaintiffs into believing that PBA would countersign the heavily negotiated and 'all approved' PSA with Plaintiffs." ¶ 117. The second stage of the scheme was intended to coverup the first stage and complete the scheme by pushing the Frisbie Group and FH3's development through by any means necessary. First, David Frisbie misled Plaintiffs about his knowledge of Plaintiffs negotiations for the Parcels as part of this coverup. ¶ 71. Second, PBA pushed the easement conditions to secure a liability waiver and blanket development approval of the Frisbie Group project, with Frisbie Group initially misleading Plaintiffs about its involvement in another phase of the coverup. ¶ 84. The Complaint alleges numerous wires were sent in furtherance of this second stage as well, including, *inter alia*, a July 2019 phone call in which David Frisbie knowingly deceived Plaintiffs about Frisbie Group's knowledge of Plaintiffs' negotiations with PBA. *See* ¶¶ 71, 84, 86, 89, 118.

Plaintiffs thus allege with particularity numerous wires in furtherance of the deceptive scheme. And although Plaintiffs do not yet have access to communications between the RICO Defendants, Plaintiffs allege on information and belief that "the RICO Defendants and the members of the Enterprise communicated regularly with one another by email and telephone" in "furtherance of the scheme," and that further discovery will reveal "numerous additional email and phone communications . . . to coordinate and perpetuate the ongoing scheme." ¶¶ 118–119. This is sufficient at this stage. *See Hill*, 2003 WL 22019936, at *3.

The alleged predicate acts of wire fraud alone are more than sufficient to plead a pattern of racketeering. *Cf. United States v. Church*, 955 F.2d 688, 694 (11th Cir. 1992) (rejecting a sufficiency of evidence challenge where exactly two predicate acts were available to support the continuity requirement). The fact that aspects of the wire fraud took place during the course of contract negotiations does nothing to negate their unlawfulness or turn this aspect of the scheme into a dispute outside the reach of RICO. *See, e.g., In re Managed Care Litig.*, 298 F. Supp. 2d at 1278.

Indeed, courts have repeatedly found misrepresentations during the course of contract negotiations supportive of a RICO wire fraud scheme.[6]

### 2.    Plaintiffs Sufficiently Allege Misappropriation of Trade Secrets.

Section II, below, details how Plaintiffs have sufficiently pleaded numerous violations of the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1832.  These predicate acts of misappropriation can be divided into four subsets: (1) PBA, Fleming, and Koenig's theft of trade secrets between March and May 2019; (2) PBA, Fleming, and Koenig's unlawful provision of trade secrets received from Plaintiff to Frisbie Group throughout the negotiations; (3) Frisbie Group's unlawful misappropriation of these trade secrets through its knowing acceptance and use of those secrets; and (4) Frisbie Group, FH3, Crowell, David Frisbie, and Robert Frisbie Jr.'s theft of additional trade secrets stolen from Plaintiffs between February and August 2020.  Within each category, each misappropriation—defined under the DTSA as the "disclosure or use of a trade secret"—constitutes a separate predicate act.  18 U.S.C. 1839(5).  Together, these misappropriations constitute, at a minimum, dozens of predicate acts.

Defendants cite *Attia v. Google LLC* for the proposition that the acquisition and subsequent use of trade secrets should not count as multiple RICO predicate acts.  2018 WL 2971049, at *18 n.15 (N.D. Cal. June 13, 2018).  But in *Brand Energy & Infrastructure Services, Inc. v. Irex Contracting Group*, the court reached the opposite conclusion, holding that allegations of continuing use of trade secrets alone were "sufficient to constitute a 'pattern of racketeering activity' under RICO."  2017 WL 1105648, at *12 (E.D. Pa. Mar. 24, 2017).  *Brand Energy* presents the correct reading of the intersection of RICO and the DTSA.  18 U.S.C. § 1961(1) broadly defines racketeering to include "any act which is indictable under" 18 U.S.C. § 1832.  The majority of courts, including in this Circuit, have found that continued use of a misappropriated trade secret constitutes a violation of the DTSA.  *See, e.g.*, *TB Food USA, LLC v. Am. Mariculture, Inc.*, 2021 WL 4690691, at *3 (M.D. Fla. Oct. 7, 2021); *Agilysys, Inc. v. Hall*, 258 F. Supp. 3d 1331, 1348–

---

[6] *See, e.g.*, *Randall v. Offplan Millionaire AG*, 2020 WL 2365258, at *3, *7 (M.D. Fla. Apr. 21, 2020) (material misrepresentations relating to the properties plaintiffs purchased, including their value, condition, and the ultimate transfer of title); *see also Procter & Gamble Co. v. Big Apple Indus. Bldgs., Inc.*, 879 F.2d 10, 13 (2d Cir. 1989) (misrepresentations to convince plaintiff to lease and guarantee financing for a studio complex); *Devon IT, Inc. v. IBM Corp.*, 805 F. Supp. 2d 110, 124 (E.D. Pa. 2011) (misrepresentations of the market potential of various products to induce plaintiffs to continue to invest in the projects in accordance with schedule in agreements); *Westmont Indus., Inc. v. Weinstein*, 762 F. Supp. 646, 647–48 (M.D. Pa. 1989) (defendant misrepresented his desire to purchase plaintiff's corporation, which culminated in a letter of intent; defendant publicized the letter of intent, ceased doing business with plaintiff, and eventually terminated the letter of intent).

49 (N.D. Ga. 2017).  Thus, *Brand Energy*'s approach is correct.  If a "correction" of the plain language of the statute is sought, especially relating to the "breadth of the predicate offenses" under RICO, it "must lie with Congress."  *Sedima*, 473 U.S. at 499–500.

### 3.    Plaintiffs Adequately Allege that Defendants Engaged in Extortion.

Section 1961(1) of RICO provides that "racketeering activity" includes "any act or threat involving . . . extortion" that is "chargeable under State law and punishable by imprisonment for more than one year."  18 U.S.C. § 1961(1).  The Florida criminal extortion statute reads as follows:

> Whoever, [1] *either verbally* or by a written or printed communication, [2] maliciously threatens to accuse another of any crime or offense, *or by such communication maliciously threatens an injury to the person, property or reputation of another*, or maliciously threatens to expose another to disgrace, or to expose any secret affecting another, . . . [3] *with intent thereby to extort money or any pecuniary advantage whatsoever, or with intent to compel the person so threatened, or any other person, to do any act or refrain from doing any act against his or her will*, shall be guilty of a felony of the second degree.

Fla. Stat. § 836.05 (emphases added); *see also* Fla. Stat. § 775.082(3)(d) (providing that a second-degree felony is punishable "by a term of imprisonment not exceeding 15 years").

Defendants argue that Plaintiffs' allegations fall short of extortion, but their argument is based on a transparent misstatement of the law.  Br. 9.  Rather than directly quote the statute, Defendants define extortion using a paraphrased quote from an out-of-district bankruptcy court that was excerpting the statute to apply to a particular set of facts.  *Id.* (citing *In re Holdsworth*, 495 B.R. 544, 550–51 (Bank. M.D. Fla. 2013)).  Defendants' clipped definition of extortion conveniently leaves out a key disjunctive in the statute: "or by such communication maliciously threatens an injury to the person, property or reputation of another."  Fla. Stat. § 836.05.

Plaintiffs pleaded extortion under Florida law sufficient to meet the RICO statute.  As alleged, on May 13, 2021, Suzanne Frisbie verbally maliciously threatened injury to Plaintiffs, their property, and their reputations, with the intent to extort a pecuniary advantage for the Frisbie Group and other Defendants, and with the intent to compel Plaintiffs to take actions, and refrain from taking actions, against their will, with her threat to tell brokers not to buy units in Plaintiffs' Forté development if Plaintiffs did not go along with Defendants' plan.  ¶ 87.  On November 12, 2021, David Frisbie did the same, with his verbal threat to completely block the Forté's views, his threat of "war," and his doubling down on Ms. Frisbie's earlier threat.  ¶ 91.  These acts of extortion were made with the intent of effecting Defendants' larger scheme by pushing through their ultimate goal:  Frisbie Group and FH3's development of the PBA Parcels.  ¶ 124.

### C.      Plaintiffs Adequately Allege RICO Continuity.

Defendants argue that the Complaint fails to plead a sufficient pattern of racketeering.  Defendants mischaracterize the scheme alleged, ignore well-pleaded allegations laying out how the RICO Defendants engaged in pattern of criminal activity stretching over nearly three years, and fail to credit allegations as to how this pattern of behavior threatens future harm to Plaintiffs.

Under RICO, a pattern of racketeering must be sufficiently continuous.  Continuity is a "closed and open-ended concept, referring either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition." *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 241 (1989).  Plaintiffs' allegations meet both definitions of continuity.

#### 1.      The Facts Pleaded Demonstrate Closed-Ended Continuity.

A plaintiff can plead continuity over a closed period by alleging a "series of related predicates extending over a substantial period of time." *Id.* at 242.  Here, Plaintiffs have alleged a sufficient number of predicate acts to form a pattern. *United States v. Browne*, 505 F.3d 1229, 1260 (11th Cir. 2007) ("Any two predicate acts can be sufficient for the jury to find continuity."). In addition, the predicate acts pleaded are sufficiently related:  The wire fraud, parallel thefts of trade secrets, and extortion tie into the overall scheme to steal the development deal—and all related trade secrets—from Plaintiffs, cover up their bad acts, and push through their own development by whatever means necessary in order to complete the scheme.  ¶¶ 110–115.

Finally, while the Eleventh Circuit has not set a clear minimum for the "substantial period of time" requirement, *see Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1266–67 (11th Cir. 2004), courts in this district have found schemes lasting under two years to qualify. *See Magnifico v. Villanueva*, 783 F. Supp. 2d 1217, 1229 (S.D. Fla. 2011) (eighteen months); *Water Int'l Network, U.S.A., Inc. v. East*, 892 F. Supp. 1477, 1482 (M.D. Fla. 1995) (twenty-two months); *Colonial Penn Ins. Co. v. Value Rent-A-Car Inc.*, 814 F. Supp. 1084, 1094 (S.D. Fla. 1992) (two years). Defendants' authority requiring, at most, a scheme of over two years is both out of circuit and met by the allegations here.  Br. 10.  Plaintiffs allege the scheme began, at the latest, in March 2019 and continued through at least November 2021. *See* ¶¶ 112, 122.  A wide ranging scheme of related predicate acts stretching at least two years and eight months is more than sufficient.

Unable to defend against a well-pleaded pattern of continuous racketeering, Defendants recast the allegations in the Complaint to involve only the sale of the Parcels.  In so doing, they ignore the allegations that Defendants covered up their bad acts through wire fraud, ¶ 117; stole

13

trade secrets between March 2019 and August 2020, ¶ 177; coordinated to pressure Plaintiffs to give up their right to object to Defendants' plan and pursue their legal rights in exchange for customary easements from 2019 through 2021, ¶¶ 81–90; and used extortion to attempt to complete the scheme in May 2021 and November 2021, ¶¶ 87, 91.

**2.      The Facts Pleaded Demonstrate Open-Ended Continuity.**

A plaintiff pleads open-ended continuity by alleging that the enterprise poses a continuing threat. *H.J. Inc.*, 492 U.S. at 242.  A plaintiff can do so by pleading either that "the racketeering acts themselves include a specific threat of repetition extending indefinitely into the future," or that "the predicate acts or offenses are part of an ongoing entity's regular way of doing business." *Id.*  Plaintiffs adequately allege open-ended continuity on both fronts.

*First*, the RICO Defendants' predicate acts extend to the present.  Contrary to Defendants' assertions, this scheme does not have a built-in "ending point."  Br. 10.  Extortionary threats to impact the Forté still stand, as Frisbie Group can follow through on its threat to "block[]" the Forté's views and tell buyers to avoid the building.  ¶ 91.  Frisbie Group and FH3 also continue to develop the ill-gotten PBA Parcels.  ¶ 92.  And Defendants continue to benefit from stolen trade secrets as they plan their development of the property.  ¶ 177.  *Second*, the allegations make clear that Defendants' repeated pattern of fraud, theft, and extortion across a period of nearly three years demonstrates that Defendants regularly conduct business in this manner, and will continue to do so.  ¶¶ 111–12.  The Enterprise thus poses an ongoing threat.

**D.      Plaintiffs Adequately Allege RICO Causation.**

Defendants make two RICO causation arguments, neither of which has merit.

First, they claim that it is "well-settled" that "lost expectancy" and "expected profits" "do not constitute cognizable RICO harm."  Br. 11.  But they rely solely on authority decided before the Supreme Court's 2008 decision in *Bridge v. Phoenix Bond & Indemnity Co.*, which made clear that such damages meet RICO's causation-of-injury requirement.  In *Bridge*, defendants restricted bidding in a way that helped them obtain liens at plaintiffs' expense, in violation of a local law.  553 U.S. at 643–44.  The Supreme Court held that plaintiffs met the causation requirement by alleging that they "suffered the loss of property related to *the liens that they would have been able to acquire, and the profits flowing therefrom, had [defendants] not implemented their scheme* and acquired [the] liens."  *Id.* 644 at n.3 (emphasis added).  These are parallel to the injuries Plaintiffs allege flow from the property they would have acquired but for the scheme.  *See* ¶ 127; *see*

14

*also Alix v. McKinsey & Co.*, 23 F.4th 196, 204–06 (2d Cir. 2022) (RICO proximate cause adequately alleged by plaintiffs' loss of potential clients and business flowing from defendant's fraud); *Faith Enters. Grp., Inc. v. Avis Budget Grp.*, Inc., 2012 WL 1409403, at *3–4 (N.D. Ga. Apr. 20, 2012) (RICO proximate cause sufficiently pleaded by allegation of lost rental car sales resulting from defendant's fraud).  And they allege far more than expectation damages.

Second, Defendants argue that Plaintiffs do not "even attempt to explain how the predicate acts allegedly committed by Defendants led to injuries to their business or property."  Br. 11–12. This represents another failure to grapple with the detailed allegations in the Complaint.  RICO requires the plaintiff to plead only "some direct relation" between the injury asserted and the injurious conduct.  *Corcel Corp. v. Ferguson Enters., Inc.*, 551 F. App'x 571, 576 (11th Cir. 2014). Thus, a plaintiff need only plead that the "conduct was a substantial factor in the sequence of responsible causation."  *Id.*  In multiple respects, Plaintiffs adequately allege that the RICO scheme was at least a substantial factor—that is, had some direct relation—to the damages they sustained. *First*, PBA, Fleming, and Koenig schemed to misappropriate Plaintiffs' trade secrets and confidential information by convincing Plaintiffs that the deal would be finalized, and handing over Plaintiffs' trade secrets to Frisbie Group.  ¶¶ 66, 68.  As part of the scheme, Plaintiffs were also induced to entrust trade secrets to Frisbie Group and Crowell.  ¶¶ 73–76.  As alleged, Defendants have used these trade secrets to develop a project that Plaintiffs assert they have a right to develop and reap the benefit of, and that is harming their next-door project.  ¶¶ 7, 177, 178.  *Second*, because PBA, Fleming, and Koenig fraudulently roped Plaintiffs along by misrepresenting their intent to sell the PBA Parcels to Plaintiffs, Plaintiffs invested time and money in their continued negotiations with PBA from March 2019 through May 2019.  ¶ 112.  *Third*, Plaintiffs alleged the existence of a binding and "all approved" Purchase and Sale contract for the PBA Parcels.  ¶ 59. Through Defendants' fraudulent scheme, in which they secretly replaced Plaintiffs with Frisbie Group and tried to cover up their bad acts, Plaintiffs lost the value of this contract and the benefits it could provide.  ¶ 126.  And as a result of the deceptive actions, including their coverup, Plaintiffs could not promptly pursue a remedy for Defendants' bad acts.  ¶¶ 88, 111.  *Fourth*, this fraudulent scheme to displace Plaintiffs on the development project and cover up the scheme was the substantial factor in allowing Defendants to bully Plaintiffs with the easement conditions, as well as the motivating factor for Defendants to do so—which forced Plaintiffs to invest $2,000,000 in remodeling the Forté.  ¶ 127.  *Finally*, as alleged, the scheme also caused harm to Plaintiffs'

15

reputations, ongoing and anticipated business and contractual relationships, customer relation-
ships, and public image.  ¶ 93.  This harm will carry forward and adversely impact not only the
Forté project, but all future projects that Plaintiffs are involved in.  *Id.*

## II.   The Complaint Adequately Alleges that Defendants Misappropriated Plaintiffs' Trade Secrets in Violation of State and Federal Law (Counts 9 & 10).

To state a claim for trade secret misappropriation pursuant to the Defend Trade Secrets
Act, 18 U.S.C. § 1836 ("DTSA"), plaintiff must allege facts showing that "it (i) possessed infor-
mation of independent economic value that (a) was lawfully owned by the plaintiff and (b) for
which the plaintiff took reasonable measures to keep secret, and (ii) the defendant used and/or
disclosed that information, despite (iii) a duty to maintain its secrecy."  *Sentry Data Sys., Inc. v.
CVS Health*, 361 F. Supp. 3d 1279, 1293 (S.D. Fla. 2018).  Similarly, to state a claim under Flor-
ida's Uniform Trade Secret Act ("FUTSA"), "a plaintiff must demonstrate that (1) it possessed a
'trade secret' and (2) the secret was misappropriated."  *Compulife Software Inc. v. Newman*, 959
F.3d 1288, 1310–11 (11th Cir. 2020).  "Misappropriation" is the "(A) acquisition of a trade secret
of another by a person who knows or has reason to know that the trade secret was acquired by
improper means; or (B) disclosure or use of a trade secret of another without express or implied
consent by a person."  18 U.S.C. § 1839(5); *see also* Fla. Stat. § 688.002(2).

Plaintiffs allege that they lawfully possessed information of independent economic value,
including, *inter alia*, "[a] siting and massing plan, including blueprints, maps, and the work prod-
uct of an architect" and "plans for integrating the property with its surroundings, including details
about the art walk and co-branding with the Norton Museum, and strategic information on various
citizens groups and neighbors."  ¶ 173; *see also* ¶¶ 47, 58, 66, 75–76.  Plaintiffs detail numerous
steps they took to keep this information secret, such as entering into an express confidentiality
agreement with Defendant PBA.  *Id*. ¶¶ 50–52.  As alleged, Plaintiffs shared their trade secrets
with Defendants, ¶¶ 57, 75–76, but they did so with an understanding that the secrecy of this in-
formation would be maintained.  *See id.*; *see also* ¶ 177.  Despite this understanding, Defendants
misappropriated the trade secrets:  PBA, Fleming, and Koenig first acquired trade secrets through
fraudulent misrepresentation of their intent, ¶ 66, they then shared that information with Frisbie
Group despite a written agreement not to do so, ¶ 68, and finally Frisbie Group and Crowell

16

acquired additional trade secrets information from the Plaintiffs through similarly fraudulent misrepresentation of their intent, ¶¶ 75– 76, 189.[7]

Defendants dispute Plaintiffs' misappropriation claims on three grounds.  They assert that Plaintiffs have failed to identify proprietary information that qualifies as a "trade secret."  Br. 19–21.  They argue that Plaintiffs failed to demonstrate sufficient protective measures to keep that information secret.  *Id*. at 13–19.  And they make a brief challenge to the allegation that they misappropriated the information.  *Id*. at 20.  These arguments rely on misrepresentations of controlling law and misinterpretation of Plaintiffs' allegations.  Plaintiffs' claims are well-pleaded.

### A.    As Pleaded, Plaintiffs' Proprietary Information Qualifies as a Trade Secret.

Generally, "[w]hether a particular type of information constitutes a trade secret is a question of fact," and as such is inappropriate for resolution at the motion to dismiss stage of litigation. *Del Monte Fresh Prod. Co. v. Dole Food Co.*, 136 F. Supp. 2d 1271, 1292 (S.D. Fla. 2001).  Nevertheless, in the instant case, Defendants seek a ruling that, as a matter of law, Plaintiffs' propriety information does not comprise a trade secret.  This argument is meritless.

The relevant statutes define the term "trade secret" broadly to include "all forms and types of financial, business, scientific, technical, economic, or engineering information," that "derives independent economic value" that is not "readily ascertainable through proper means."  18 U.S.C. § 1839(3); *see also* Fla. Stat. § 688.002(4).  The Complaint alleges misappropriation of information that clearly falls within this definition, including business plans, technical designs and analyses, and architectural models.  ¶¶ 44, 66, 75.

Defendants characterize this information as "general."  Br. 19.  But even if Plaintiffs were to accept this characterization as true, which they do not, courts in this Circuit have repeatedly found such information sufficiently particular when it is "related to specific clients, competitors, and projects."  *Hurry Fam. Revocable Tr. v. Frankel*, 2019 WL 2868945, at *2 (M.D. Fla. July 3, 2019).  For example, in *Sentry Data Systems*, the Southern District of Florida rebuffed the defendant's argument that the plaintiff had failed to plead with sufficient specificity non-public information constituting a trade secret, finding sufficient the plaintiff's description of (1) a services agreement template that was specific to the plaintiff's partnerships with pharmacies and (2) a software program that would be used in connection with a specific government program to which the

---

[7]   As discussed in more detail below, the trade secrets provided to PBA in late 2018 differed from those provided to Frisbie Group and Crowell in 2020.

17

defendant was subject.  *See* 361 F. Supp. 3d at 1294; *see also Dev. Techs., LLC v. Mitsui Chems., Inc.*, 2019 WL 1598808, at *3 (M.D. Fla. Apr. 15, 2019).  Here, the misappropriated information was created for a specific project:  The planned development of the PBA Parcels.  *See, e.g.*, ¶ 58.  Therefore, even to the extent that some of Plaintiffs' descriptions of their trade secrets are somewhat generalized, the Court should still find them sufficiently pled; Defendants are on notice of the claimed trade secrets.

The cases Defendants cite are wholly incomparable.[8]  In many of those cases, the plaintiff presented only broad categories of information without *any* specificity.  For example, in *VVIG, Inc. v. Alvarez*, the court held that the plaintiff, in defining its trade secret as "*all* necessary know-how, standards and specifications" for its product, including "*all* information concerning the business affairs, products, marketing systems, technology, customers, end users, financial affairs, accounting statistical data [belonging to the counter-plaintiffs]" had defined its trade secret "so broad[ly] and conclusory as to be nonsensical."  2019 WL 5063441, at *3 (S.D. Fla. Oct. 9, 2019) (emphases in original).  This scenario is entirely dissimilar from the instant case, as are the remainder of the cases Defendants cite for this proposition.[9]

Defendants alternatively suggest that Plaintiffs have failed to adequately allege a trade secret because the information they sought to protect was "readily ascertainable."  Br. 20.  For example, they characterize Plaintiffs' plan to comply with city zoning and land use requirements as "an unprotected product anyone can produce through basic research."  *Id.*  This characterization misconstrues the Complaint and asks the Court to interpret the facts pled in Defendants' favor, contrary to the applicable standard.  *See Reprod. Health Servs.*, 3 F.4th at 1258.  As alleged, Plaintiffs developed these plans "at great cost to Plaintiffs," ¶ 2, and did so using "significant creativity," ¶ 33, as well as the assistance of costly experts, ¶ 66.  Furthermore, this characterization is inconsistent with Defendants actions, as alleged in the Complaint.  If Defendants believed that

---

[8]  Defendants' brief relies largely on non-binding precedent, citing on nearly every page cases from beyond this Court and the Eleventh Circuit.  *See* Br. 5–7, 9–11, 13–20, 29–30.  Most are also entirely inapposite.  Some apply state laws from other states that differ in meaningful ways from Florida law.  For example, in *Hill Holliday Connors Cosmopulos, Inc. v. Greenfield*, the Fourth Circuit considered application of the South Carolina Trade Secrets Act, which it noted "the Supreme Court of South Carolina construed . . . as setting a high bar for trade secret protection."  433 F. App'x 207, 214 (4th Cir. 2011).  No such high bar exists for FUTSA or the DTSA.

[9]  *See, e.g.*, *Decurtis LLC v. Carnival Corp.*, 2021 WL 1968327, at *6 (S.D. Fla. Jan. 6, 2021) (plaintiff's alleged trade secret included "broad categories of information"); *Pinnock o/b/o ADA Consultants & Advisors, Inc. v. Wal-Mart Stores, Inc.*, 2009 WL 10670000, at *4 (M.D. Fla. Aug. 10, 2009) (same); *see also TRB Acquisitions LLC v. Yedid*, 2021 WL 293122, at *2 (S.D.N.Y. Jan. 28, 2021) (same); *Acrisure of Cal., LLC v. Soc. Com. Ins. Servs., Inc.*, 2019 WL 4137618, at *3 (C.D. Cal. Mar. 27, 2019) (same).

Plaintiffs' plans for the PBA Parcels were "readily ascertainable," they would not have signed a confidentiality agreement memorializing that all "exchanged written materials relating to the proposed [sale of the PBA Parcels to Plaintiffs] [are] proprietary and confidential."  Ex. A at 8.

### B.   Plaintiffs Allege "Reasonable Measures" to Protect Their Trade Secrets.

Defendants' contention that Plaintiffs failed to adequately plead that they reasonably protected their trade secrets is likewise incorrect.  Defendants launch four attacks on Plaintiffs' protective measures:  They mischaracterize Plaintiffs' confidentiality agreement with PBA, they overlook Plaintiffs' implied confidentiality agreement with Frisbie Group, they fault Plaintiffs for not taking various other protective measures, and they exaggerate the limited disclosures Plaintiffs made to relevant third parties.  Each of these arguments is unavailing.[10]

### 1.   Plaintiffs' Confidentiality Agreement with PBA Was a Reasonable Protective Measure.

In regards to PBA and its agents, Plaintiffs have alleged that they entered a LOI that contained a confidentiality provision prohibiting the disclosure of, *inter alia*, (1) the "terms of . . . the parties' discussions and exchanged written materials relating to the proposed" sale of the PBA Parcels, (2) the "terms of the proposed Purchase and Sale Agreement," (3) Plaintiffs' plans for "the proposed development of the" PBA Parcels, and (4) any "due diligence information and documents relating to the" PBA Parcels.  ¶ 52.  The copy of the LOI submitted by Defendants confirms the accuracy of Plaintiffs' pleadings.  This agreement was a reasonable measure to protect the secrecy of Plaintiffs' plans for the PBA Parcels, and should be interpreted as such.  *See Nephron Pharm. Corp. v. Hulsey*, 2020 WL 7684863, at *14 (M. D. Fla. Oct. 7, 2020) (finding a confidentiality agreement evidence that reasonable measures were taken).

Curiously, Defendants urge the Court to instead view the LOI as evidence of a failure to protect the information.  This position is grounded in the erroneous position that the LOI's confidentiality provision is limited in duration and permits the use of confidential information after it expires.  Br. 16–18.  This is not correct.  While another provision of the LOI contains a 90-day limitation, the confidentiality provision contains no such limitation.  *See* Ex. A at 8.  Nor would it be reasonable to conclude that Plaintiffs intended to *sub silencio* limit their confidentiality

---

[10]   Defendants also make a brief argument that Plaintiffs' computer security measures do not alone suffice to constitute a reasonable measure.  Br. 15.  This argument is specious: while Plaintiffs allege that they took computer security measures, ¶ 175, Plaintiffs do not allege this is the *only* protective measure they took.

agreement to 90 days, after which their secrets could be used freely by the very party with whom they entered into a confidentiality agreement.[11]

Defendants also fault the LOI for purportedly allowing PBA to share Plaintiffs' trade secrets with "third parties without securing . . . protections." Br. 15. Again, this contention misconstrues the agreement. In reality, the LOI expressly limits the persons with whom the trade secrets may be shared: *"[E]mployees, attorneys, accountants, or other advisors [of PBA's] who have a need to know* as a result of being involved in the proposed transaction." Ex. A at 8 (emphasis added). This provision does not allow PBA to share Plaintiffs' trade secrets with third-parties at will; it only allows PBA to share the information *with its agents* who need to know due to their involvement the transaction. To disallow these people that information would make no sense and would frustrate the parties' ability to fulfill the terms of their agreement.

Particularly bearing in mind that, at this stage in the litigation, a court must "accept the factual allegations in the complaint as true and make all reasonable inferences in favor of the non-moving party," Plaintiffs urge the Court to reject Defendants' flawed interpretation of the LOI's confidentiality agreement that twists it on its head. *Reprod. Health Servs.*, 3 F.4th at 1258. Instead, the Court should view this provision as it is presented in the Complaint and confirmed by its plain terms: A reasonable measure to protect Plaintiffs' trade secrets.

### 2. Plaintiffs' Implied Confidentiality Understanding with Frisbie Group Was Also Reasonable.

Plaintiffs allege that they shared their trade secrets with Frisbie Group "under an implied confidentiality understanding." ¶ 177. The basis for this understanding is clear: Plaintiffs and Frisbie Group were in "serious discussions around co-developing the PBA Parcels," and Plaintiffs agreed to share trade secrets "[p]ursuant to this [business] relationship." *Id.*

Both Florida courts and the Eleventh Circuit have expressly recognized that an implied understanding of confidentiality may suffice as a reasonable protective measure for trade secrets. *See Dotolo v. Schouten*, 426 So.2d 1013, 1015 (Fla. 2d DCA 2003). Seeking to avoid application of this precedent, Defendants lean on the Eleventh Circuit's decision in *Yellowfin Yachts, Inc. v. Barker Boatworks, LLC*, and urge the Court to find that there can be no implied understanding of confidentiality here. Br. 18 (citing *Yellowfin*, 898 F.3d 1279, 1300 (11th Cir. 2018)). But

---

[11] Defendants' cited cases, which involved confidentiality agreements of limited duration, are inapposite. In any event, Defendants do not cite any binding precedent that a confidentiality agreement of limited duration is categorically insufficient. *See* Br. 16 (citing only cases from Massachusetts and California for this argument).

*Yellowfin*—a summary judgment decision—is inapposite.  In that case, although the plaintiff al-leged that it had an "implicit understanding" regarding confidentiality with a former employee, the record—following discovery—revealed evidence directly to the contrary: that the employee had "refused to sign an employment agreement which stated that he would, among other things, keep all Yellowfin trade secrets in confidence."  *Yellowfin*, 898 F.3d at 1300.  No such contradictory evidence exists here; the Court is deciding a motion to dismiss.[12]  Plaintiffs have plausibly pled an implied confidentiality agreement with Frisbie Group, a reasonable protective measure for the safekeeping of their trade secrets.

### 3.   That Plaintiffs Did Not Take Some of Defendants' Preferred Protec-tions Does Not Make Their Protective Measures Unreasonable.

Defendants' motion to dismiss is replete with citation to various other protective measures Plaintiffs do not claim to have taken, accompanied by an insinuation that because Plaintiffs did not take these measures, they failed to protect their trade secrets.  *See* Br. 13–19.  For example, Defendants cite *St. Johns Vein Center*, 347 F. Supp. 3d at 1070, noting that Plaintiffs do not allege that they limited their own their employees' access to information.  Br. 15.  And they cite *TriEst Irrigation LLC v. Hiers*, 2021 WL 2229059, at *13 (M.D. Ga. June 12, 2021) to suggest that Plain-tiffs' DTSA claim should be dismissed because not every single defendant signed a non-disclosure agreement.  Br. 13.  This line of argument is a red herring.  While a claim will not survive a motion to dismiss when the plaintiff fails to take *any* measures to protect its proprietary information,[13] a plaintiff is not required to take any particular measure, let alone every conceivable measure.  In-deed, Defendants own cited authority makes clear that "[t]here is not a single definition for what

---

[12]   Defendants also cite the Middle District's decision in *St. Johns Vein Ctr., Inc. v. StreamlineMD LLC*, 347 F. Supp. 3d 1047, 1070 (M.D. Fla. 2018) (Br. 18), but no implied understanding of confidentiality was alleged in that case. Defendants' other three citations are to distinguishable district court decisions, some out-of-circuit, that lack both precedential and persuasive power.  *See Inv. Sci., LLC v. Oath Holdings Inc*., 2021 WL 3541152, at *3 (S.D.N.Y. Aug. 11, 2021) (no agreement alleged); *Cont. Assocs., Inc. v. Atalay*, 2015 WL 1649051, at *5 (E.D. Va. Apr. 10, 2015) (summary judgment; plaintiff relied on purported "ethical standard"); *Dippin' Dots Patent Litig.*, 249 F. Supp. 2d 1346, 1377 (N.D. Ga. 2003) (finding, on summary judgment, that no implied understanding existed).

[13]   Each of Defendants' cited cases in furtherance of their claim that Plaintiffs failed to allege sufficient protective measures involved a plaintiff that failed to allege *any* protective measures.  *See M.C. Dean, Inc. v. City of Miami Beach, Florida*, 199 F. Supp. 3d 1349, 1356 (S.D. Fla. 2016) (noting that plaintiff did "not allege it took any steps to maintain the secrecy of its information"); *see also R.C. Olmstead, Inc., v. CU Interface, LLC*, 606 F.3d 262, 276 (6th Cir. 2010) (same); *Krush Commc'ns, LLC v. Lunex Telecom, Inc*., 2014 WL 12069847, at *11 (N.D. Ga. Sept. 12, 2014) (same); *Diamond Power Int'l, Inc. v. Clyde Bergemann, Inc*., 370 F. Supp. 2d 1339, 1347 (N.D. Ga. 2005) (same); *Rogers v. Desa Int'l, Inc*., 183 F. Supp. 2d 955, 957 (E.D. Mich. 2002) (same).  In the instant case, in contrast, Plaintiffs have alleged several protective measures.  *See* ¶¶ 52, 75, 136, 175.

constitutes 'reasonable measures.'"  *Charles Ramsey Co., Inc. v. Fabtech-NY LLC*, 2020 WL 352614, at *15 (N.D.N.Y. Jan. 21, 2020) (cited at Br. 13).

### 4.     Plaintiffs Did Not "Widely Disseminate" Their Trade Secrets.

Lastly, Defendants argue that Plaintiffs' trade secrets were not reasonably protected because they were "widely disseminated." Br. 13. This argument finds no support in the Complaint. Although, as alleged, Plaintiffs spoke with representatives from local government and the Norton Museum about narrow *aspects* of their plan for the PBA Parcels, these communications were limited. *See* ¶ 58 (Plaintiffs spoke to the Deputy Director of the Norton Museum about how Plaintiffs would "offer open greenspace" on the PBA Parcels); *id.* (Plaintiffs discussed zoning with the Mayor). Nowhere does the Complaint allege that Plaintiffs shared their actual plans with either of these parties. And although Plaintiffs shared some of their early plans with PBA prior to the entry of the LOI, the Complaint is clear that these initial disclosures included only preliminary development plans, *see* ¶¶ 46–48, and in any event the LOI memorializes the parties' understanding that this information was to be kept confidential. It makes clear that "the parties' discussions and exchanged written material relating to the proposed transaction are proprietary and confidential" because they are "provided to assist [the parties] in evaluating the transaction contemplated by this LOI." Ex. A at 8. This is drafted to cover both prior and future discussions and exchanges.[14] Finally, while the Complaint alleges that the existence of the PBA-Plaintiffs deal was referenced at a charity fundraiser in December 2018, it does not allege that any details of Plaintiffs' plans— let alone the specific details alleged to be trade secrets—were discussed at the event. *See* ¶ 57.

Furthermore, that some limited aspects of Plaintiffs' plans for the PBA Parcels were known by others does not undermine Plaintiffs' trade secret claim as a matter of law. Elements of a trade secret may be shared publicly so long as the sum of the information was protected. *See Mapei Corp. v. J.M. Field Mktg.*, 295 So. 3d 1193, 1199 (Fla. 4th DCA 2020) (citing Restatement (Third) of Unfair Competition § 39(f) (2019))); *see also Metallurgical Indus. Inc. v. Fourtek, Inc*., 790 F.2d 1195, 1200 (5th Cir. 1986) ("Although the law requires secrecy, it need not be absolute.").

---

[14] Furthermore, the pre-LOI information is alleged to have been shared in January 2018, not 2016 as Defendants claim. *Compare* ¶ 47, *with* Br. 13–14. The parties had been in negotiations for nearly two years at this point, and PBA entered into an explicit confidentiality agreement with Plaintiffs several months later that covers this material. These facts support that both parties understood at the time that the information being conveyed was to be treated as confidential and proprietary.

22

Because, as alleged, at least certain aspects of Plaintiffs' plans for the PBA Parcels were not commonly known by or available to the public, the plans and proposals remain trade secrets.

## C.   Plaintiffs Adequately Allege Misappropriation of Trade Secrets.

Defendants barely contest Plaintiffs' claim that they misappropriated Plaintiff's information, devoting a single paragraph to this argument. *See* Br. 20.  Defendants contend that because Plaintiffs provided trade secrets to Frisbie Group and Crowell, it was not misappropriation for PBA to have shared what Defendants call "the same information" with them.  *Id.*  This is incorrect; as alleged, the information Plaintiffs provided to PBA was not the "same" as the information they provided to Frisbie Group.  *Compare* ¶ 58, *with* ¶¶ 75–76.  Given that these disclosures occurred nearly two years apart, it is not reasonable to assume that even those elements of Plaintiffs' plans that were shared with both sets of Defendants were identical.  PBA therefore did not provide Frisbie Group with information already in the latter's possession; it provided trade secrets that it lacked permission to share.  Accepting these well-pled facts as true, the Court should find that this was misappropriation.  *See* 18 U.S.C. § 1839(5)(B).  Moreover, the claim stands because the Complaint accuses each set of Defendants of an additional form of misappropriation:  Misrepresenting their intentions to obtain the trade secrets in the first place.  *See, e.g.*, ¶¶ 66, 68, 75–76, 189.

## III.   Plaintiffs Adequately Plead Their Related State Law Claims.

### A.   Plaintiffs Adequately Allege that PBA Breached the LOI (Counts 2 & 3).

"In Florida, a cause of action for breach of contract has three elements: (1) a valid contract, (2) a material breach, and (3) damages." *Khanimov v. St. Tropez II, LLC*, 2009 WL 10667415, at *2 (S.D. Fla. Aug. 18, 2009).  Plaintiffs adequately pled each of these elements in the Complaint.  *See* ¶¶  129, 132–33, 137.  Preliminarily, Plaintiffs note that while they have brought *two* causes of action stemming from PBA's breach of the LOI, *see* ¶¶ 128–34 (Count 2: breach of the exclusivity provision), ¶¶ 135–39 (Count 3: breach of the confidentiality provision)*,* Defendants only challenge one of these two claims, *see* Br. 24–25 (moving to dismiss Plaintiffs' claim for breach of the exclusivity provision alone)*.*  Defendants have not moved to dismiss Plaintiffs' claim that PBA violated the confidentiality provision of the LOI.  They have therefore waived any argument against this claim.  *See In re Egidi*, 571 F.3d 1156, 1163 (11th Cir. 2009).

In regard to Plaintiffs' claim that PBA violated the exclusivity provision of the LOI, Defendants ask the Court to interpret the contract as imposing only a 90-day exclusivity period, thus foreclosing Plaintiffs' assertion that a breach occurred in May 2019.  *See* Br. 24–25.  To interpret

the LOI this way, however, would require the Court to misread the plain text of the contract. The exclusivity provision states that the parties will "draft and enter into a Purchase and Sale Agreement" within 90 days. Ex. A at 8. It then states that "[i]n the event the parties cannot reach an agreement, either party may terminate the negotiations and this LOI at their sole discretion upon written notice to the other." *Id*. Based on these plain terms, the parties unambiguously intended that in the event no agreement were reached during the initial 90-day period of the LOI, the exclusivity agreement would continue unless and until one of the parties "terminate[d] the negotiations and this LOI . . . upon written notice to the other." *Id*. Defendants' interpretation does not comport with this unambiguous language.

Even if the Court were to find this provision of the LOI ambiguous, it would still be improper to adopt Defendants' interpretation of the contract. Under Florida law, when "a contract is ambiguous or unclear, the court may consider extrinsic matters . . . to explain, clarify or elucidate the ambiguous language." *Vienneau v. Metro. Life Ins. Co.*, 548 So.2d 856, 859 (Fla. 4th DCA 1989). Here, extrinsic evidence—in the form of PBA's conduct as alleged in the Complaint—supports Plaintiffs' interpretation of the LOI. Had the exclusivity provision automatically expired after 90 days as Defendants argue, PBA would not have needed to terminate the agreement after the passage of 90 days. Yet PBA's representative Larry Alexander purported to terminate the LOI on May 29, 2019, over six months after Defendants claim the exclusivity provision expired. ¶ 64. The Court should interpret this action as evidence that PBA still considered itself bound by the LOI's exclusivity provision, which confirms that the LOI's exclusivity provision was not time-limited. Regardless, at a minimum, because Plaintiffs' interpretation of the exclusivity provision is reasonable and plausible, the Court "must" accept it for the purposes of this motion. *Road Space Media, LLC v. Miami Dade Cty.*, 2020 WL 434929, at *3 (S.D. Fla. Jan. 28, 2020). Indeed, Eleventh Circuit law mandates that where a contract is "susceptible to two different interpretations, each one of which is reasonably inferred from the terms of the contract" a district court may not grant a motion to dismiss for failure to state a claim. *Novoneuron Inc. v. Addiction Rsch. Inst., Inc.*, 326 F. App'x 505, 509 (11th Cir. 2009). Accordingly, because Plaintiffs' interpretation is at

the very least reasonable, the Court must accept it at this juncture and deny the motion to dismiss with respect to the LOI's exclusivity provision.[15]

### B. Plaintiffs Adequately Allege that PBA Breached the PSA (Count 4) and that Plaintiffs Are Entitled to Specific Performance (Count 15).

Plaintiffs have also adequately pleaded each element of their claim for breach of the PSA. *See* ¶¶ 141, 144–45. Defendants do not dispute that PBA accepted Plaintiffs' offer to buy the PBA Parcels, nor do they contest that Alexander's "all approved" email demonstrated that the parties had come to a meeting of the minds. *See Egidi*, 571 F.3d at 1163. Instead, they contend that the PSA does not comply with the statute of frauds. Br. 21–22. This is incorrect. Florida's statute of frauds requires only that a contract be memorialized by "some note or memorandum . . . in writing and signed by the party . . . or by some other person by her or him thereunto lawfully authorized." Fla. Stat. § 725.01. Florida law recognizes that the statute of frauds may be satisfied via electronic communication, including email. *Kosterlitz v. S/V Knotta Klu*, 809 F. App'x 735, 736 (11th Cir. 2020); *see also* Fla. Stat. § 668.50(7)(b) (Florida Uniform Electronic Transactions Act, which dictates that "a contract may not be denied legal effect or enforceability solely because an electronic record was used in the formation of the contract"). Here, on or about April 5, 2019, after the parties had made concluding revisions to the PSA and Plaintiffs' counsel sent the final agreement to PBA for approval, PBA's representative responded in writing "all approved." ¶ 59. Accepting all well-pleaded facts as true and making all permissible inferences in Plaintiffs' favor, the Court should accept this email communication as a written acceptance of the contract—one that comports with the Florida statute of frauds. Furthermore, that the electronic approval was not on the document itself is of no moment. Florida courts recognize that "[f]or purposes of the statute of frauds, several writings, only one of which is signed by the debtor, may be aggregated to satisfy the statute provided that the signed writing expressly or implicitly refers to the unsigned document." *Cook v. Theme Park Ventures, Inc.*, 633 So.2d 468, 471 (Fla. 5th DCA 1994)). "All that the statute requires is written evidence from which the whole contract may be made out." *Kolski*

---

[15] While Defendants contend that Plaintiffs' interpretation of the LOI would render the 90-day provision "meaningless," this argument is clearly unsupported. *See* Br. 24. In each of the cases Defendants cite to make this argument, the time-limiting provision at issue could apply to no other contract term than the one in dispute; for this reason, courts concluded that the time-limiting provision must be applied to the term or else it would serve no purpose. *See Hester v. Fla. Cap. Grp., Inc.*, 189 So. 3d 950, 952–55 (Fla. 2d DCA 2016); *Davis v. Ivey*, 984 So.2d 571, 573 (Fla. 5th DCA 2008). Here, on the other hand, the 90-day provision is couched within a paragraph of the LOI containing multiple contract terms. Ex. A at 8. Declining to apply it to the exclusivity provision would not deny it of meaning. Cases like *Hester* and *Davis* are therefore inapposite.

*ex rel. Kolski v. Kolski*, 731 So. 2d 169, 171 (Fla. 3rd DCA 1999).  Here, the context of PBA's email makes clear that Alexander's "all approved" was in reference to the PSA.  ¶ 59.  Defendants' argument that the PSA is not a binding contract therefore fails.[16]  The motion to dismiss this breach of contract claim should be denied.

The Complaint likewise adequately alleges that Plaintiffs are entitled to specific performance as a remedy for the breach of the PSA.  Defendants move to dismiss Plaintiffs' specific performance claim on three grounds:  Plaintiffs' purported non-performance, the doctrine of impossibility of performance, and the statute of limitations.  Br. 23.  None of these arguments has merit.  That Plaintiffs have not yet performed their part of the bargain is of no import; a plaintiff need only be "ready, willing and able" to perform, as Plaintiffs are, ¶ 208, in order to obtain specific performance.  *See Invego Auto Parts, Inc. v. Rodriguez*, 34 So.3d 103, 104–05 (Fla. 3d DCA 2010).  Nor does the doctrine of impossibility apply because performance has not become impossible; PBA and Frisbie Group have entered into a contract of sale, but ownership of the property has not yet been transferred and Frisbie Group has not yet broken ground.  *See* ¶ 93, Prayer for Relief Section F.  In any event, as Florida courts have recognized, "[w]here performance of a contract becomes impossible after it is executed, if knowledge of the facts making performance impossible were available to the promisor, he cannot invoke them as a defense to performance." *American Aviation, Inc. v. Aero-Flight Serv., Inc.*, 712 So.2d 809, 810 (Fla. 4th DCA 1998).  Here, PBA knowingly caused any alleged impossibility by negotiating and contracting with Frisbie Group when it was contractually obligated not to do so.  ¶ 132.  Any impossibility is a creature of PBA's own making, and Defendants should not be permitted to use this defense.  *American Aviation*, 712 So.2d at 810.  Finally, the Court should equitably toll the one-year statute of limitations because the full extent of the conspiracy between the Defendants could not have been understood by Plaintiffs until May 2021, when Frisbie Group and FH3 confirmed that they would use Plaintiffs' trade secrets through their government filing.  ¶¶ 7, 80.  This came within one year of Plaintiffs' filing this suit.  Florida law allows for equitable tolling of a statute of limitations "when the

---

[16]  In the alternative, Defendants make a half-hearted argument that the PSA was only an "agreement to agree," not a contract for sale.  Br. 23.  In support, they cite several cases in which a plaintiff sought to enforce either an oral agreement or a letter of intent as a contract for sale.  *See, e.g.*, *White Constr. Co., Inc. v. Martin Marietta Materials, Inc.*, 633 F. Supp. 2d 1302, 1322–23 (M.D. Fla. 2009); *Bergman v. DeIulio*, 826 So. 2d 500, 502–03 (Fla. 4th DCA 2002); *Midtown Realty, Inc. v. Hussain*, 712 So. 2d 1249, 1252 (Fla. 3d DCA 1998).  These cases are entirely distinguishable from the instant action, in which Plaintiffs seek to enforce a written purchase and sale agreement—signed by one party and approved in writing by the other.  ¶¶ 59–60; Ex. B. at 30.

plaintiff has been misled or lulled into inaction." *Garcia v. Dep't of Bus. & Pro. Reg.*, 988 So.2d 1199, 1200 (Fla. 3d DCA 2008).  Here, by disguising the nature of their enterprise, Defendants misled Plaintiffs about what had transpired and lulled Plaintiffs into inaction.  Plaintiffs' specific performance claim should be sustained.

      **C.**      **Plaintiffs' Remaining Claims (Counts 5–8 & 11–14) Are Not Preempted.**

      Defendants argue that each of the remaining state law claims—for fraud, aiding and abetting fraud, negligent misrepresentation, promissory estoppel, conversion, tortious interference with a business relationship, tortious interference with a contract, unjust enrichment—must be dismissed because they are preempted by FUTSA.  *See* Br. 25 (citing Fla. Stat. § 688.008(1)).

      As a preliminary matter, courts are split on whether FUTSA preemption may apply at the motion to dismiss stage.  In *Vacation Club System, Inc. v. Rodriguez,* for example, the Middle District of Florida denied a motion to dismiss on FUTSA preemption grounds, reasoning that at this early stage of the litigation, it "ha[s] not yet been determined" whether a trade secret exists, and as such, the plaintiff should be "free to plead in the alternative."  2010 WL 1645129, at *2 (M.D. Fla. Apr. 22, 2010); *see also LouMac Distrib. U.S. LBM, LLC v. Luongo*, 2019 WL 4345778, at *2 (M.D. Fla. Sept. 12, 2019) (same).  Denying Plaintiffs the ability to plead these claims in the alternative could leave them without a remedy if the Court concludes that Plaintiffs' protected information does not qualify as a trade secret.  While Plaintiffs recognize that some courts have acknowledged this possibility and have applied FUTSA preemption nonetheless, Plaintiffs respectfully urge the Court not to follow these cases.  This practice results in the categorical denial of an injured party's opportunity to be heard and arguably contravenes due process.

      Even if the Court were to apply FUTSA preemption at this stage, most claims would still survive.  FUTSA does not preempt "civil remedies that are not based upon misappropriation of a trade secret."  Fla Stat. § 688.008(1–2).  To determine whether allegations of trade secret misappropriation preempt a separate, but related tort, a court must evaluate "whether allegations of trade secret misappropriation *alone* comprise the underlying wrong; if so, the cause of action is barred by § 688.008."  *Sentry Data Sys.*, 361 F. Supp. 3d at 1294 (emphasis added).  So long as there is a "material distinction between the plaintiff's FUTSA claim and the other allegation," however, FUTSA preemption does not apply.  *ThinkLite LLC v. TLG Sols., LLC*, 2017 WL 5972888, at *4 (S.D. Fla. Jan. 31, 2017).  Here, while Plaintiffs' state law claims are based in part on Defendants' misappropriation of Plaintiffs' trade secrets, all except their unjust enrichment and conversion

claims are also based in part on other conduct, including Defendants' deceptive conduct around the breakdown of negotiations with PBA, misrepresentations about Defendants' relationship, and contract-violating actions. *See*, *e.g.*, ¶¶ 148, 157, 162, 169, 194, 199. All of Defendants' cited cases, in contrast, involve complete duplication between trade secret and other claims. *See* Br. 26–27. FUTSA accordingly does not preempt these claims, even if it applies at this stage.[17]

### D.    Plaintiffs Adequately Allege Tortious Interference (Counts 12 & 13).

Under Florida law, the elements of tortious interference are: "(1) the existence of a business relationship under which the plaintiff has legal rights; (2) an intentional and unjustified interference with the relationship; and (3) damage to the plaintiff as a result of the tortious interference with that relationship." *Ad-Vantage Tel. Directory Consultants, Inc. v. GTE Directories Corp.*, 849 F.2d 1336, 1348–49 (11th Cir. 1987). For tortious interference with a business relationship, "[t]he thwarted business relationship need not be evidenced by an enforceable contract." *Nautica Int'l v. Intermarine USA, L.P.*, 5 F. Supp. 2d 1333, 1344 (S.D. Fla. 1998). The Complaint adequately alleges each of these elements. *See* ¶¶ 192–95; ¶¶ 197–200. Defendants seek to circumvent these pleadings under the economic interest defense. Br. 28. But this defense is only available where no "improper means" have been alleged. *See Johnson Enters. Of Jacksonville, Inc. v. FPL Grp., Inc.*, 162 F.3d 1290, 1321 (11th Cir. 1998). In none of the cases to which Defendants cite were improper means alleged. *See* Br. 28. By contrast, the complaint is replete with allegations of misrepresentations, intimidation, and conspiratorial conduct. *See* ¶¶ 6, 72, 87, 91.

### E.    Plaintiffs Adequately Allege Fraudulent—or At the Very Least Negligent—Misrepresentations and Aiding and Abetting Fraud (Counts 5–7).

To state a claim for fraud under Florida law, a plaintiff must allege "(1) a false statement concerning a material fact; (2) the representor's knowledge that the representation is false; (3) an intention that the representation induce another to act on it; and (4) consequent injury by the party acting in reliance on the representation." *Johnson v. Davis*, 480 So.2d 625, 627 (Fla. 1985). The elements of negligent misrepresentation are largely the same, except that the defendant need not

---

[17]   For the reasons set forth in Section D and E below, if the Court finds that Plaintiffs' claims sounding in tortious interference and fraud are not preempted, these claims should survive the motion to dismiss, as Defendants' other arguments for dismissal are without merit. Similarly, if not preempted, Plaintiffs' claims for unjust enrichment and conversion should survive. Defendants' only argument regarding unjust enrichment is based in preemption. Br. 27. And their only non-preemption argument regarding conversion is based in their inaccurate assertion that "Plaintiffs have conceded that they did not own [their] confidential information." *Id*. at 26. Plaintiffs have made no such concession. However, Plaintiffs do acknowledge that their promissory estoppel claim (Count 8) will not survive a motion to dismiss; they will not pursue that claim.

have known his statement was false, so long as he should have known. *Specialty Marine & Indus. Supplies, Inc, v. Venus*, 66 So. 3d 306, 310 (Fla. 1st DCA 2011). To state a claim for aiding and abetting, a plaintiff must allege "(1) an underlying violation on the part of the primary wrongdoer; (2) knowledge of the underlying violation by the alleged aider and abettor; and (3) the rendering of substantial assistance in committing the wrongdoing by the alleged aider and abettor." *Lawrence v. Bank of Am., N.A.*, 455 F. App'x 904, 906 (11th Cir. 2012). Plaintiffs allege that PBA and Koenig engaged in fraud—or at the very least negligent misrepresentation—when they repeatedly represented that the terms of the PSA had been finalized, that the PSA was "all approved," and that PBA planned to move forward with Plaintiffs as its development partner. ¶ 148. Plaintiffs allege that Frisbie Group and its agents aided and abetted this fraud by repeatedly misrepresenting their knowledge of Plaintiffs' negotiations with PBA for the Parcels. ¶ 157.

Defendants' primary attack on Plaintiffs' fraud-based claims is that the allegations are insufficiently detailed to satisfy Rule 9(b)'s heightened pleading standard. Br. 29–30. Not so. While it is true that 9(b) requires a plaintiff to identify "(1) the precise statements, documents, or misrepresentations made; (2) the time, place, and person responsible for the statement; (3) the content and manner in which these statements misled the plaintiff; and (4) what the defendant gained by the alleged fraud," *Marsh U.S.A., Inc. v. Walpole Inc.*, 2005 WL 2372006, at *2 (M.D. Fla. Sept. 26, 2005), Defendants are incorrect in asserting that Plaintiffs have failed to do so here. The Complaint pleads with specificity each Defendant's misrepresentations, including the time and—where possible, place—that the misrepresentation was made. *See* ¶ 148 (in May 2019, Koenig represented that the PSA had not been countersigned because Fleming was ill; this was not the true motivating factor); ¶ 157 (in an August 6, 2019 meeting in Nantucket, Robert Frisbie, David Frisbie, and Cody Crowell denied knowledge of Plaintiffs' negotiations and contract with PBA; this was untrue); *see also* ¶ 84 (around May 15, 2020, Frisbie Group told Plaintiffs that PBA's refusal to negotiate was a "misunderstanding" that it would work to "clear . . up," without intent to do so).[18] For this reason, the cases Defendants cite to support this argument are inapposite.[19]

---

[18] To the extent any details are not pleaded, their absence is the result of Defendants' obfuscation and misrepresentation and do not provide grounds for dismissal. *See Hill*, 2003 WL 22019936, at *3.

[19] In each of those cases, the plaintiff's allegations were either "devoid of specific allegations," *Brooks v. Blue Cross & Blue Shield of Fla.*, 116 F.3d 1364, 1381 (11th Cir. 1997), provided no information about the persons involved, *Flamenbaum v. Orient Lines, Inc*., 2004 WL 1773207, at *6 (S.D. Fla. July 20, 2004), "lump[ed] together allegations about all the defendants," *Perry v. Gammon*, 583 F. Supp. 1230, 1233 (N.D. Ga. 1984), or consisted of "a

Defendants also contend that Plaintiffs' pleadings regarding material omissions (*e.g.*, ¶¶ 149, 152–153, 158) fail because Defendants had no duty to inform Plaintiffs of the truth about their negotiations, as they were not in a fiduciary relationship with Plaintiffs.  Br. 30.  The cases Defendants rely on do not support their position.  Instead, each makes clear that even where the parties engage in an arm's-length transaction, where one undertakes to disclose some information, as was alleged here, a duty to disclose all material facts attaches.[20]

Defendants' final argument is purely factual:  They assert that because Plaintiffs continued to seek Fleming's signature on the PSA, they must have believed it was not yet effective.  Br. 30.  But it is reasonable to conclude that in seeking Fleming's signature, Plaintiffs were simply being diligent.  Because Plaintiffs' interpretation of the facts is reasonable, the Court should accept it, and not credit Defendants' disputed inference.  *See Reprod. Health Servs.*, 3 F.4th at 1258.

## IV.    If Necessary, Plaintiffs Seek Leave to Amend.

The Federal Rules prescribe that leave to amend "shall be freely given when justice so requires."  Fed. R. Civ. P. 15(a).  A court should deny leave to amend a pleading only when "(1) the amendment would be prejudicial to the opposing party, (2) there has been bad faith or undue delay on the part of the moving party, or (3) the amendment would be futile."  *Foman v. Davis*, 371 U.S. 178, 182 (1962).  None apply here.  Plaintiffs thus ask in the alternative for leave to amend, should the Court grant the motion to dismiss in whole or in part (which it should not).

## CONCLUSION

Plaintiffs respectfully request that the Court deny Defendants' motion to dismiss in its entirety, or in the alternative grant Plaintiffs leave to amend their complaint.

---

few bald and conclusory assertions . . . simply cobble[d] together," *Varney v. R.J. Reynolds Tobacco Co.*, 118 F. Supp. 2d 63, 68 (D. Mass. 2000).  None of these are comparable to the well-pled allegations in the instant case.

[20]    *Compare* ¶¶ 113, 150, 163 ("PBA undertook to disclose information concerning its intentions"), *with Nicholson*, 481 So. 2d at 936 ("[E]ven assuming that a party to a transaction owes no duty to disclose facts within his knowledge or to answer inquiries respecting such facts, if he undertakes to do so he must disclose the whole truth.").

Dated:
March 1, 2022

DOMNICK CUNNINGHAM & WHALEN

By: /s/ Sean Domnick
    Sean C. Domnick
      sean@dcwlaw.com
    Matthew T. Christ
      mtc@dcwlaw.com

    2401 PGA Boulevard, Suite 140
    Palm Beach Gardens, FL 33410
    Telephone: (561) 625-6260
    Facsimile: (561) 625-6269

GIBSON, DUNN & CRUTCHER LLP

    Reed Brodsky
      RBrodsky@gibsondunn.com
      (*pro hac vice*)
    Akiva Shapiro
      AShapiro@gibsondunn.com
      (*pro hac vice*)
    Cate McCaffrey
      CMcCaffrey@gibsondunn.com
      (*pro hac vice*)
    Michael McQueeney
      MMcQueeney@gibsondunn.com
      (*pro hac vice*)

    200 Park Avenue
    New York, NY 10166-0193
    Telephone: (212) 351-4000
    Facsimile: (212) 351-6235

    *Attorneys for Plaintiffs Two Roads Development LLC, Trilar Holdings LLC and Flagler South Development LLC*

**CERTIFICATE OF SERVICE**

I hereby certify that on March 1, 2022, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all Counsel of Record or *pro se* parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

By: /s/ Sean Domnick
Sean C. Domnick

### SERVICE LIST

Scott Hawkins, Esquire
**JONES FOSTER P.A.**
505 South Flagler Drive, Suite 1100
West Palm Beach, Florida 33401
Tel.: (561) 659-3000
Fax: (561) 650-5300
shawkins@jonesfoster.com

*Counsel for Defendants Palm Beach Atlantic
University Inc., William M.B. Fleming, Jr.,
and Patrick C. Koenig*

Eric M. George (*pro hac vice*)
Keith J. Wesley (*pro hac vice*)
Ryan Q. Keech (*pro hac vice*)
Serli Polatoglu (*pro hac vice*)
**ELLIS GEORGE CIPOLLONE
O'BRIEN ANNAGUEY LLP**
2121 Avenue of the Stars, Suite 2800
Los Angeles, CA 90067
Tel.: (310) 274-7100
Fax: (310) 275-5697
egeorge@egcfirm.com
kwesley@egcfirm.com
rkeech@egcfirm.com
spolatoglu@egcfirm.com

*Counsel for Defendants Palm Beach Atlan-
tic University Inc., Frisbie Group LLC, FH3
LLC, William M.B. Fleming, Jr., Patrick C.
Koenig, David W. Frisbie, Robert N. Fris-
bie, Jr., and Cody Crowell*

Sean C. Domnick, Esquire
Matthew T. Christ, Esquire
**DOMNCK CUNNINGHAM &
WHALEN**
2401 PGA Boulevard, Suite 140
Palm Beach Gardens, FL 33410
Tel.: (561) 625-6260
Fax: (561) 625-6269
mtc@dcwlaw.com
sean@dcwlaw.com

Reed Brodsky (*pro hac vice*)
Akiva Shapiro (*pro hac vice*)
Cate McCaffrey (*pro hac vice*)
Michael McQueeney (*pro hac vice*)
**GIBSON, DUNN & CRUTCHER LLP**
200 Park Avenue
New York, NY 10166-0193
Tel.: (212) 351-4000
Fax: (212) 351-6235
RBrodsky@gibsondunn.com
AShapiro@gibsondunn.com
CMcCaffrey@gibsondunn.com
MMcQueeney@gibsondunn.com

*Counsel for Plaintiffs Two Roads Develop-
ment LLC, Trilar Holdings LLC and Flagler
South Development LLC*

John K. Shubin, Esquire
Deana D. Falce, Esquire
Jamie L. Katz, Esquire
**SHUBIN & BASS, P.A.**
46 S.W. First Street, Third Floor
Miami, Florida 33130
Tel.: (305) 381-6060
Fax: (305) 381-9457
jshubin@shubinbass.com
dfalce@shubinbass.com
jkatz@shubinbass.com

*Counsel for Defendants Frisbie Group LLC,
FH3 LLC, David W. Frisbie, Robert N. Fris-
bie, Jr., and Cody Crowell*