**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF FLORIDA**

**WEST PALM BEACH DIVISION**

**CASE NO. 9:21-CV-82067-CIV (CANNON)**

TWO ROADS DEVELOPMENT LLC,
TRILAR HOLDINGS LLC, and FLAGLER
SOUTH DEVELOPMENT LLC,

                    Plaintiffs,

v.

PALM BEACH ATLANTIC UNIVERSITY
INC., FRISBIE GROUP LLC, FH3 LLC,
WILLIAM M.B. FLEMING, JR., PATRICK
C. KOENIG, DAVID W. FRISBIE,
ROBERT N. FRISBIE JR., and CODY S.
CROWELL

                    Defendants.

**DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS FOR LACK
OF SUBJECT MATTER JURISDICTION AND FAILURE TO STATE A CLAIM UPON
WHICH RELIEF CAN BE GRANTED**

## <u>TABLE OF CONTENTS</u>

<u>**Page**</u>

OVERVIEW ........................................................................................................................1

I.  PLAINTIFFS FAIL TO STATE A RICO CLAIM. ................................................2

    A.  Plaintiffs Confirm Their Inability To Plead A RICO Enterprise. ............................2

    B.  Plaintiffs Have Not Adequately Alleged Predicate Acts. ........................................3

    C.  Plaintiffs Fail To Satisfy The Continuity Requirement. ..........................................6

    D.  Plaintiffs Have Alleged No Cognizable RICO Injury. .............................................7

II.  PLAINTIFFS FAIL TO STATE A TRADE SECRET CLAIM. .........................................8

    A.  No "Reasonable Measures" To Keep Information Secret. ......................................8

    B.  Failure To Identify Any Misappropriated Trade Secret Information. ...................11

    C.  Misappropriation. ...................................................................................................12

III.  PLAINTIFFS ALSO FAIL TO STATE VARIOUS STATE LAW CLAIMS................13

CONCLUSION................................................................................................................15

i

## **TABLE OF AUTHORITIES**

**Page**

**Cases**

## **FEDERAL CASES**

*Aces High Coal Sales, Inc. v. Comm. Bank & Trust of West Ga.*,
    768 Fed. Appx. 446 (6th Cir. 2019)..........................................................................7

*Am. Registry, LLC v. Hanaw*,
    No. 2:13-cv-352-FtM-29CM, 2014 WL 12606501 (M.D. Fla. July 16, 2014) ......................14

*American Dental Association v. Cigna Corp.*,
    605 F.3d 1283 (11th Cir. 2010) ......................................................................2, 3

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)....................................................................................2, 3

*Attia v. Google LLC*,
    No. 17-cv-06037-BLF, 2018 WL 2971049 (N.D. Cal. Jun. 13, 2018)......................5

*Banco Latino Int'l v. Gomez Lopez*,
    95 F. Supp. 2d 1327 (S.D. Fla. 2000) .........................................................2

*Bell Atlantic Corp. v. Twombley*,
    550 U.S. 544 (2007)..................................................................................2, 3

*Blue Cross Blue Shield of Ala. v. Sanders*,
    138 F.3d 1347 (11th Cir. 1998) ...............................................................13

*Boyle v. U.S.*,
    556 U.S. 938 (2009)....................................................................................3

*Brand Energy & Infrastructure Services, Inc. v. Irex Contracting Group*,
    No. CV 16-2499, 2017 WL 1105648 (E.D. Pa. Mar. 24, 2017)................................5

*Bridge v. Phoenix Bond & Indem. Co.*,
    553 U.S. 639 (2008)..................................................................................4, 7

*Brooks v. Blue Cross & Blue Shield of Fla.*,
    116 F.3d 1364 (11th Cir. 1997) ................................................................4

*Brown v. First Tennessee Bank Nat. Ass'n*,
    753 F.Supp. 2d 1249 (N.D. Ga. 2009) ......................................................4

ii

**TABLE OF AUTHORITIES**
(Continued)

**Page**

*Catano v. Capuano*,
No. 18-20223-Civ-TORRES, 2019 WL 3035752 (S.D. Fl. Jul. 11, 2019) ..............................3

*Charles Ramsey Co., Inc. v. Fabtech-NY LLC*,
No. 1:18-CV-0546, 2020 WL 352614 (N.D.N.Y. Jan. 21, 2020) ............................................9

*DB Riley, Inc. v. AB Eng'g Corp.*,
977 F. Supp. 84 (D. Mass. 1997) ..........................................................................................9

*Decurtis LLC v. Carnival Corporation*,
No. 20-22945-Civ-SCOLA/TORRES, 2021 WL 1968327 (S.D. Fla. Jan. 6, 2021)..............12

*Devon IT, Inc. v. IBM Corp.*,
805 F. Supp. 2d 110 (E.D. Pa. 2011) ......................................................................................5

*Diaz v. Gov't Emps. Ins. Company*,
No. 17-23673-CIV-GRAHAM, 2017 WL 11128354 (S.D. Fla. Nov. 29, 2017)....................8

*Elliott v. Foufas*,
867 F.2d 877 (5th Cir. 1989) ...................................................................................................2

*Gamboa v. Velez*,
457 F.3d 703 (7th Cir. 2006) ...................................................................................................7

*Harvey v. Home Savers Consulting Corp.*,
2011 WL 13298705 (E.D.N.Y. Mar. 3, 2011)..........................................................................8

*Hemi Group, LLC v. City of New York, N.Y.*,
559 U.S. 1 (2010)......................................................................................................................7

*Hill Holliday Connors Cosmopulos, Inc. v. Greenfield*,
433 F. App'x 207 (4th Cir. 2011) ............................................................................................9

*Hope for Families & Comm. Serv., Inc. v. Warren*,
721 F. Supp. 2d 1079 (M.D. Al. 2010) ...................................................................................8

*Hurry Fam. Revocable Tr. v. Frankel*,
No. 8:18-cv-2869-T-33CPT, 2019 WL 2868945 (M.D. Fla. July 3, 2019)...........................12

*In re Holdsworth*,
495 B.R. 544 (M.D. Fla May 21, 2013)...................................................................................5

*K3 Enterprises, Inc. v. Sasowski*,
No. 1:20-CV-24441-AMC (S.D. Fla. Nov. 22, 2021), ECF No. 95........................................14

**TABLE OF AUTHORITIES**
(Continued)

**Page**

*M.C. Dean, Inc. v. City of Miami Beach, Florida,*
    199 F. Supp. 3d 1349 (S.D. Fla. 2016) ...................................................................10

*McGinnis v. Ingram Equip. Co., Inc.,*
    918 F.2d 1491 (11th Cir. 1990) (*en banc*) ............................................................13

*Metallurgical Indus. Inc. v. Fourtek, Inc.,*
    790 F.2d 1195 (5th Cir. 1986) ...............................................................................11

*Nephron Pharmaceuticals Corp. v. Hulsey,*
    No. 6:18-cv-1573-Orl-31LRH, 2020 WL 7684863 (M.D. Fla. Oct. 7, 2020) ..........9

*Pinnock o/b/o ADA Consultants & Advisors, Inc. v. Wal-Mart Stores, Inc.,*
    No. 6:09-cv-143-Orl-18DAB, 2009 WL 10670000 (M.D. Fla. Aug. 10, 2009) ....................11

*Proctor & Gamble Co. v. Big Apple Indus. Bldgs., Inc.,*
    879 F.2d 10 (2d Cir. 1989).......................................................................................4

*Randall v. Offplan Millionaire AG,*
    2020 WL 2365258 (M.D. Fla. Apr. 21, 2020).........................................................4

*Reyes v. Foreclosure Asset Sales & Transfer P'ship,*
    No. 13-22829-CIV, 2014 WL 12623071 (S.D. Fla. Mar. 5, 2014) ........................15

*Rogers v. Desa Int'l, Inc.,*
    183 F. Supp. 2d 955 (E.D. Mich. 2002).................................................................9

*Schmuck v. U.S.,*
    489 U.S. 705 (1989).................................................................................................4

*Sentry Data Systems, Inc. v. CVS Health,*
    361 F. Supp. 3d 1279 (S.D. Fla. 2018) .................................................................12

*Silicon Image, Inc. v. Analogix Semiconductor, Inc.,*
    No. C-07-00635 JCS, 2008 WL 166950 (N.D. Cal. Jan. 17, 2008) ........................8

*St. Johns Vein Ctr., Inc. v. StreamlineMD LLC,*
    347 F. Supp. 3d 1047 (M.D. Fla. 2018).................................................................9

*Taxinet, Corp. v. Leon,*
    No. 16-24266-CIV-MORENO, 2018 WL 3405243 (S.D. Fla. July 12, 2018)................14, 15

*U.S. v. Hasson,*
    333 F.3d 1264 (11th Cir. 2003) ..............................................................................4

**TABLE OF AUTHORITIES**
**(Continued)**

**Page**

*U.S. v. Turkette*,
   452 U.S. 576 (1981) ...................................................................................................2

*VVIG, Inc. v. Alvarez*,
   No. 18-23109-CIV-ALTONAGA/Goodman, 2019 WL 5063441 (S.D. Fla. Oct. 9,
   2019) ........................................................................................................................12

*W. Assocs. Ltd. P'ship v. Mkt. Sq. Assocs.*,
   235 F.3d 629 (D.C. Cir. 2001) ...................................................................................7

*Westmont Indus., Inc. v. Weinstein*,
   762 F. Supp. 646 (M.D. Pa. 1989) .............................................................................5

*Yellowfin Yachts, Inc. v. Barker Boatworks, LLC*,
   898 F.3d 1279 (11th Cir. 2018) ...............................................................................10

*Zucker for BankUnited Fin. Corp. v. U.S. Specialty Ins. Co.*,
   856 F.3d 1343 (11th Cir. 2017) ...............................................................................10

**STATE CASES**

*Chestnut v. State*,
   516 So.2d 1144 (Fla. 5th DCA 1987) .........................................................................6

*Dotolo v. Schouten*,
   426 So. 2d 1013 (Fla. Dist. Ct. App. 1983) .............................................................10

*Excelsior Ins. Co. v. Pomona Park Bar & Package Store*,
   369 So. 2d 938 (Fla. 1979) ......................................................................................14

*Font & Nelson, PLLC v. Path Medical, LLC*,
   317 So. 3d 134 (Fla. 4th Dist. Ct. App. 2021) .........................................................15

*Jay v. Mobley*,
   783 So. 2d 297 (Fla. 4th Dist. Ct. App. 2001) .........................................................13

*Kolski v. Kolski*,
   731 So. 2d 169 (Fla. 4th Dist. Ct. App. 1999) .........................................................14

*Lambert v. Berkley S. Condo. Ass'n, Inc.*,
   680 So. 2d 588 (Fla. 4th Dist. Ct. App. 1996) .........................................................14

*Mapei Corp. v. J.M. Field Mktg., Inc*,
   295 So. 3d 1193 (Fla. Dist. Ct. App. 2020) .............................................................11

**TABLE OF AUTHORITIES**
**(Continued)**

**Page**

*Matthews v. State*,
    363 So.2d 1066 (Fla. 1978)...................................................................6

*Paris v. Paris*,
    412 So. 2d 952 (Fla. 1st DCA 1982) ..................................................6

*Petersen v. Mayo*,
    65 So.2d 48 (Fla. 1953)......................................................................6

*State v. McInnes*,
    153 So. 2d 854 (Fla. 1st DCA 1963) ..................................................6

*State v. O'Hara*,
    478 So.2d 24 (Fla. 1985).....................................................................6

**FEDERAL STATUTES**

RICO ..............................................................................1, 2, 3, 5, 7, 8, 13, 15

**STATE STATUTES**

Fla. Stat. § 688.002(4)(b)....................................................................................9

Fla. Stat. § 688.008(1)........................................................................................14

Fla. Stat. § 836.05 ...............................................................................................6

S.C. Code Ann. § 39-8-20(5)(a)(ii).....................................................................9

South Carolina Trade Secrets Act .......................................................................9

Uniform Trade Secrets Act ..................................................................................9

**RULES**

Rule 9(b) ...........................................................................................................4, 5

Rule 12(b)(1).......................................................................................................13

Rule 12(b)(6).......................................................................................................13

Defendants Palm Beach Atlantic University Inc. ("the University"), William M.B. Fleming, Jr., and Patrick C. Koenig (the "University Defendants"), and David W. Frisbie, Robert N. Frisbie Jr., Cody S. Crowell, Frisbie Group LLC, and FH3 LLC (the "Frisbie Defendants"), respectfully submit this reply to Plaintiffs' Opposition to Defendants' Motion to Dismiss Plaintiffs' First Amended Complaint (DE 51 ("Opp."), opposing DE 11 ("MTD")) for lack of subject matter jurisdiction and failure to state a claim upon which relief can be granted.

## OVERVIEW

Plaintiffs' Opposition confirms that their First Amended Complaint ("FAC") should be dismissed. In support of their RICO claim, Plaintiffs again and again present their FAC as reflecting "stages" of an alleged "scheme," along with imputed bad motives. Opp. 2-4, 6-8, 9-10. But the FAC does not improve with repetition. It remains an unwarranted gloss on a handful of bilateral commercial episodes: Plaintiffs' failed contract negotiation with the University, their failed negotiation with the Frisbie Defendants, an easement dispute that involves no wrongdoing, and heated negotiations (such as a warning not to provoke "war") passed off as extortion claims. Nor does repetition fill the gaps Defendants identified. No fact—none—indicates any improper coordination; none suggests an ongoing unit, structure, or enterprise separate from the supposed bad acts; and none indicates harm arising from the supposed misrepresentations or from any ongoing pattern of criminal activity. *See infra* 2-8. Plaintiffs instead invite the Court to "infer" the facts the FAC does not supply. Opp. 7, 20.

Plaintiffs' trade secret and contract arguments fail to address, and often do not mention, Defendants' principal arguments. Plaintiffs say nothing about their disclosures of "secrets" to multiple parties, two provisions of their Letter of Intent ("LOI") that confirm that they took no reasonable measures to protect information provided to the University Defendants, or the contrast with the reasonable protections they built into the proposed purchase contract. *See infra* 8-12. They acknowledge, however, that the only protection afforded to information disclosed to the Frisbie Defendants arose from the context of a "serious discussion" in pursuit of a business "relationship," Opp. 20—that is, they took no protective measures at all. As for enforcement of the proposed contract, Plaintiffs do not mention the contract term addressing when the contract would become effective, or address Defendants' related arguments. *See infra* 13-14.

Plaintiffs are, however, quite clear that they seek to have this Court depart from established law in three significant ways. First, Plaintiffs' view of how loosely information can

1

be handled while still being protected as trade secrets—that taking "any measures" to protect it is sufficient, Opp. 21—would eliminate the "reasonable measures" statutory requirement. *See infra* 8-11. Second, Plaintiffs' view of how "almost any commercial controversy," Opp. 6 n.3, can be relabeled as a RICO claim, would enable disgruntled commercial parties to make a federal case of nearly every state law business dispute. *But see Banco Latino Int'l v. Gomez Lopez*, 95 F. Supp. 2d 1327, 1333 (S.D. Fla. 2000). This case, under Plaintiffs' standard, would become Exhibit A of that new approach. And, Plaintiffs would have this Court return, for coordinated conduct cases, to pleading standards existing before *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), *Bell Atlantic Corp. v. Twombley*, 550 U.S. 544 (2007), and Eleventh Circuit cases applying those decisions, beginning with *American Dental Association v. Cigna Corp.*, 605 F.3d 1283 (11th Cir. 2010). Plaintiffs do not address these standards, and their FAC, which does not set out facts establishing "plausible claims" under those cases, cannot survive their application.

## I.  PLAINTIFFS FAIL TO STATE A RICO CLAIM.

### A.  Plaintiffs Confirm Their Inability To Plead A RICO Enterprise.

Plaintiffs claim that the FAC's listing of allegedly wrongful acts, labeled "stage[s]" of a "scheme," satisfies their obligation to plead the existence of a RICO enterprise. *See* Opp. 6-7. But this pattern of supposed bad acts is, under established law, plainly insufficient.

A RICO enterprise "is not the 'pattern of racketeering activity'; it is an entity separate and apart from the pattern of activity in which it engages." *U.S. v. Turkette*, 452 U.S. 576, 583 (1981). But Plaintiffs' allegations establish no separate entity: their list of bad acts or "scheme" supposedly establishing an enterprise is the same as the "scheme" of supposed wire frauds. *Compare* Opp. 6-7 *with id.* 9-10.[1] Instead, "[t]he plaintiff must plead specific facts which establish that the association exists for purposes other than simply to commit the predicate acts." *Elliott v. Foufas*, 867 F.2d 877, 881 (5th Cir. 1989). Plaintiffs must, but do not, provide the Court with facts showing "the entity's 'separate' existence and 'ongoing organization,'" *Turkette*, 452 U.S. at 583, demonstrating "a continuing unit that functions with a common purpose," including "a purpose, relationships among those associated with the enterprise, and

---

[1] Defendants' supposed "common purpose" is also simply the achievement of wrongful acts. Opp. 7 (common purpose "[t]o take the Parcels development deal-and all related trade secrets-from Plaintiffs, cover up their bad acts and push through the development by whatever means necessary in order to complete the scheme").

longevity sufficient to permit those associates to pursue the enterprise's purpose." *Boyle v. U.S.*, 556 U.S. 938, 941, 946 (2009).  Plaintiffs point to no facts showing any "organization" or any "continuing unit."  They allege no organizational reports, no facts reflecting direction or command, and no indicia of an ongoing association.  If an association-in-fact "merely has a single discrete goal to accomplish the predicate acts," as claimed here (*supra* n.1), "it is not an association within the meaning of the federal RICO statute."  *Catano v. Capuano*, No. 18-20223-Civ-TORRES, 2019 WL 3035752, at *6 (S.D. Fl. Jul. 11, 2019).

Plaintiffs also err in inviting this Court to "infer" an improper "common purpose," Opp. 7-8, which even if accepted would not establish the existence of an entity or unit that amounts to an enterprise.  Plaintiffs present no facts—none—that show coordination between the Frisbie and University Defendants with respect to (i) Plaintiffs' contract negotiations with the University or the Frisbie Defendants, (ii) the supposed misrepresentations related to contract completion or knowledge of prior negotiations, or (iii) the supposed "extortion."  Inferences drawn from "potential business opportunities and donations," supposed "longstanding social and business relationships," or a social trip at an unspecified time to a "compound in Nantucket," Opp. 8, cannot substitute for facts regarding RICO coordination or an enterprise.  Likewise, the "similar tactics" of unsuccessfully negotiating a contract, *id.*, reflect no coordination, and the easement negotiations, *id.*, reflected neither any wrongful act nor coordination beyond that expected of parties with, by that time, a common interest in having their development contract performed.

This inference, or any conclusion that the FAC plausibly establishes a RICO enterprise rather than unilateral, normal commercial actions, is also what controlling decisions specifically prohibit.  *Iqbal*, 556 U.S. 662, *Twombley*, 550 U.S. 544, and *American Dental Association*, 605 F.3d 1283, all instruct that much more is needed before a court can find improper motive or improper coordination to have been adequately pleaded.  Plaintiffs do not even address these cases (other than to attempt to distinguish *American Dental Association* on its facts, Opp. 8 n.4) or Defendants' related arguments.  *See* MTD 1-2, 4-5, 8, 15.

     **B.**    <u>**Plaintiffs Have Not Adequately Alleged Predicate Acts.**</u>

Plaintiffs also argue that their FAC contains "detailed allegations of numerous acts of wire fraud, theft of trade secrets and extortion pleaded with more than adequate specificity."  Opp. 8.  Their amended pleading does no such thing.

**Wire Fraud**.  Plaintiffs concede that they allege no mail fraud, Opp. 8, but, for wire fraud, fail to plausibly allege the core fraud elements of reliance and materiality—that is, how the "statements misled the Plaintiffs" and "what the Defendants gained by the alleged fraud." *Brooks v. Blue Cross & Blue Shield of Fla.*, 116 F.3d 1364, 1380-81 (11th Cir. 1997).  For all the fraud elements, Plaintiffs' allegations do not satisfy Rule 9(b), providing a sufficient basis to disregard Plaintiffs' wire fraud allegations at this stage.  But Plaintiffs particularly fail to plead facts establishing "a material representation, or the omission or concealment of a material fact calculated to deceive another out of money or property."  *Brown v. First Tennessee Bank Nat. Ass'n*, 753 F. Supp. 2d 1249, 1253 (N.D. Ga. 2009).

Plaintiffs point to a series of alleged misstatements of fact, but that is not fraud.  Their FAC shows instead that they establish no resulting deprivation and thus fail to establish any "scheme to deprive by trick or deceit."  Opp. 9.  The alleged misstatements regarding the University's delay in signing the contract were supposedly a "lie to buy time," Opp. 10, but the FAC shows that the "time" amounted to a few weeks ending in May, when negotiations were terminated, FAC ¶ 64, and was long after any confidential information was being exchanged.  *Id.* ¶¶ 59-62.  The FAC identifies no benefit the University secured, and in any event silence on its part would have achieved the same result.  Likewise with the Frisbie Defendants' supposed misstatements regarding knowledge of prior University-Plaintiff dealings:  the FAC shows that Plaintiffs widely broadcast the fact that they were developing the parcels, *id.* ¶¶ 57-58, and the University's duty of confidentiality had long expired, *see* LOI (DE 38-1, Ex. A) ¶ 8 (termination of obligations), so the result for Defendants and Plaintiffs would have been the same had the Frisbie Defendants indicated some awareness (which may have arisen from any number of sources apart from any improper dealings).  Plaintiffs also advert to another "misleading statement," Opp. 9 (citing FAC ¶ 84), but offer no explanation of how that statement was misleading or how it materially damaged Plaintiffs or advantaged Defendants.[2]

---

[2] Plaintiffs' authority—all of which involves proof of material misrepresentations that were communicated, received and relied upon—is not to the contrary.  *See Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639 (2008) (mailings sent in support of scheme involving false attestations of compliance, securing liens); *Schmuck v. U.S.*, 489 U.S. 705 (1989) (fraudulent scheme involving consumer fraud connected with odometer tampering); *U.S. v. Hasson*, 333 F.3d 1264 (11th Cir. 2003) (scheme involving falsely appraised jewelry); *Proctor & Gamble Co. v. Big Apple Indus. Bldgs., Inc.*, 879 F.2d 10 (2d Cir. 1989) (material misrepresentations involving expertise, costs and false and excessive invoices); *Randall v. Offplan Millionaire AG*, 2020 WL

**Trade Secret Misappropriation**.  Plaintiffs also contend that they have alleged "dozens" of predicate acts relating to trade secret misappropriation, grouped into four categories, Opp. 11, but that is not so.  Even assuming for the moment that Plaintiffs had protected trade secrets, no alleged facts support most of those categories.  None suggest that the University provided such information to the Frisbie Defendants (category "2"), much less that the Frisbie Defendants used any such transferred information (category "3"), which in any event the FAC alleges they received directly from Plaintiffs.  FAC ¶ 75.  Nor do alleged facts suggest the University's "theft of trade secrets between March and May 2019" (category "1"), as the FAC makes clear that the parties were then in the process of exchanging near-final contract drafts and, for Plaintiffs, awaiting signature of the contract.  FAC ¶¶ 59-63.  As for the Frisbie Defendants' alleged receipt of information during contract negotiations with Plaintiffs, treating that as multiple predicate acts would "turn a single trade secret misappropriation claim into a RICO offense every time a Defendant violated the DTSA and then did not immediately stop their allegedly unlawful use of the trade secrets."  *Attia v. Google LLC*, No. 17-cv-06037-BLF, 2018 WL 2971049, at *18 n. 15 (N.D. Cal. Jun. 13, 2018).[3]

**Extortion**.  Plaintiffs, *see* Opp. 12, seek to rebut Defendants' showing that the FAC's allegations do not rise to the level of extortion by quoting the entire Florida statute and criticizing Defendants for invoking the—entirely correct—statement of the Bankruptcy Court in *In re Holdsworth*, 495 B.R. 544, 550-551 (M.D. Fla May 21, 2013), that, under Florida law, extortion

> occurs as a general proposition when one maliciously threatens—whether verbally or in writing—to accuse another of any crime or to expose another to disgrace with the intent to extort money or gain any pecuniary advantage with the intent to compel the person so threatened to do any act (or refrain from doing any act) against his or her will.

MTD 9.  The additional language that Plaintiffs would have had Defendants include is irrelevant

---

2365258 (M.D. Fla. Apr. 21, 2020) (fraud concerning sales of properties not disclosed to have been already owned by defendant); *Devon IT, Inc. v. IBM Corp.*, 805 F. Supp. 2d 110, 124 (E.D. Pa. 2011) (false and fraudulent sales forecasts); *Westmont Indus., Inc. v. Weinstein*, 762 F. Supp. 646, 647-48 (M.D. Pa. 1989) (pre-*Iqbal* and *Twombly* notice pleading decision involving fraudulent disclosure of letter of intent).

[3] *Brand Energy & Infrastructure Services, Inc. v. Irex Contracting Group*, No. CV 16-2499, 2017 WL 1105648 (E.D. Pa. Mar. 24, 2017), *see* Opp. 11, states only that properly alleged "dozens of DTSA violations," in conjunction with alleged predicate acts of mail and wire fraud compliant with Rule 9(b), were enough to meet the predicate act requirement.  *Id.* at *12.

to Plaintiffs' core failing:  their inability to plead facts showing that any Defendant "maliciously threatened" anyone sufficiently to overcome their "will."

Plaintiffs cite nothing that suggests that the alleged statements of how continued conflict could invite "war" or have brokers not deal with Plaintiffs, FAC ¶¶ 87, 91, rise to the level of such a "malicious threat."  Those alleged statements do not involve the level of maliciousness and criminal intent necessary to constitute extortion, and are incapable of causing sophisticated property developers such as Plaintiffs to act "against [their] will."  Fla. Stat. § 836.05.  They are not remotely akin, for example, to pointing a gun at a victim's head and threatening to shoot unless guns were returned, *Chestnut v. State*, 516 So. 2d 1144 (Fla. 5th DCA 1987), or threatening deportation, *Petersen v. Mayo*, 65 So. 2d 48 (Fla. 1953), arrest, *State v. O'Hara*, 478 So. 2d 24, 25 (Fla. 1985), exposure of disgraceful information about a victim, *State v. McInnes*, 153 So. 2d 854 (Fla. 1st DCA 1963); *Paris v. Paris*, 412 So. 2d 952 (Fla. 1st DCA 1982), or assassination, *Matthews v. State*, 363 So. 2d 1066 (Fla. 1978).  Heated words about escalating a commercial property dispute are not extortion, and claims to the contrary are frivolous.

C.      **Plaintiffs Fail To Satisfy The Continuity Requirement.**

Plaintiffs acknowledge that they have to show a "pattern of racketeering" of "continuous" predicate acts "extending over a substantial period of time," Opp. 13 (internal quotation marks omitted), but they allege predicate acts that are only sporadic, isolated, and short-lived.

Plaintiffs attempt to stretch both ends of their "pattern" of conduct beyond what the FAC supports.  Opp. 13.  Before the FAC first alleges any fact-based acts of the Frisbie Defendants, in July, 2019, FAC ¶ 71, the only acts it identifies are the University's unilateral actions (which caused no alleged trade secret disclosures and no harm to Plaintiffs, *see infra* 8-12).  After the conclusion of the University-Frisbie contract on January 8, 2020, *id.* ¶ 74, the Frisbie Defendants' next acts identified are brief negotiations with the Plaintiffs in February-May, 2020.  *Id.* ¶¶ 75-77.  All that follows thereafter is the dispute regarding the easement (which is not even a predicate act) and, long after any related predicate acts, isolated comments about "war" and brokers' responses in May and November, 2021.  *Id.* ¶¶ 87, 91.  Any continuous wrongful and coordinated conduct alleged in the FAC was by then long over and had been short-lived.

Plaintiffs also cannot avoid the implications of the end point embedded in their own contention that the dispute arises from the improper purchase, sale and development of a specific parcel of property.  No future property dealings are part of the alleged scheme.  When, as here

a complaint explicitly presents a distinct and non-reoccurring scheme with a built-in termination point and provides no indication that the perpetrators have engaged or will engage in similar misconduct, the complaint does not sufficiently allege continuity . . . *even if the purported scheme takes several years to unfold, involves a variety of criminal acts, and targets more than one victim.*

*Gamboa v. Velez*, 457 F.3d 703, 709 (7th Cir. 2006) (emphasis added); *accord Aces High Coal Sales, Inc. v. Comm. Bank & Trust of West Ga.*, 768 Fed. Appx. 446, 456 (6th Cir. 2019) (dismissal where 13-month closed-ended scheme involved "inherently terminable" end point involving "one-time" "sales arrangement"); *W. Assocs. Ltd. P'ship v. Mkt. Sq. Assocs.*, 235 F.3d 629, 633-37 (D.C. Cir. 2001) (dismissal where eight-year scheme was a single effort not satisfying pattern element).

> **D.**     **Plaintiffs Have Alleged No Cognizable RICO Injury.**

Maintaining a RICO claim requires showing that "a RICO predicate offense not only was a 'but for' cause of [their] injury, but was the proximate cause as well," *Hemi Group, LLC v. City of New York, N.Y.*, 559 U.S. 1, 9 (2010) (internal quotation omitted), and Plaintiffs cannot meet even their own formulation of a requisite "direct relation." Opp. 16. Contrary to Plaintiffs' claims, *id.*, Defendants' alleged misstatements worked no harm on Plaintiffs (and yielded no benefits for Defendants). *See supra* 2-6. The supposed transfer of secrets from the University to the Frisbie Defendants, unsupported by any alleged fact, also produced no harm, given Plaintiffs' acknowledgement of giving much the same information to the Frisbie Defendants. FAC ¶ 75; *see infra* 11, 12. Plaintiffs point to no harm they suffered as a result of the Frisbie Defendants' alleged use of the information. Any costs incurred as a result of not receiving a gift of the University's easement, Opp. 13, are irrelevant, as that involved no alleged predicate act. And any profits from any consummated property development are supremely speculative: that assumes Plaintiffs secured the University's agreement to proceed, secured financing and persevered during COVID, secured the requisite zoning approvals on acceptable terms, had no cost increases, and met sales expectations. No direct, non-speculative, or tangible harm can be found in the FAC.

Contrary to Plaintiffs' claim, Opp. 14, *Bridge v. Phoenix Bond & Indemnity Co.,* 553 U.S. 639 (2008), does not establish that such speculative injury qualifies as sufficient. At most, the decision indicates that lost expectancy is not categorically barred from establishing damages if sufficiently certain and direct. But, nothing in it supports the adequacy of a claim when, as

here, that expectancy is quite uncertain or there is no showing of loss to the plaintiff's business or property by reason of the RICO violations. *Accord, e.g.*, *Harvey v. Home Savers Consulting Corp.*, 2011 WL 13298705, at *8 (E.D.N.Y. Mar. 3, 2011) ("damages for lost profits or for the benefit of an alternative opportunity" not recoverable under RICO as "such losses are inherently speculative and lack adequate causational proof"); *Hope for Families & Comm. Serv., Inc. v. Warren*, 721 F. Supp. 2d 1079, 1134 (M.D. Al. 2010) (expectancy damages speculative where plaintiffs were unable to explain how the steps they took would have qualified them for licenses not tainted by the alleged RICO violations).

## II.   PLAINTIFFS FAIL TO STATE A TRADE SECRET CLAIM.

### A.   No "Reasonable Measures" To Keep Information Secret.

Unprotected Disclosure to the University Defendants.  Plaintiffs acknowledge that they disclosed extensive information to the University Defendants both before and after the parties entered the LOI, but argue that the "non-binding" LOI amounted to the requisite "reasonable measure" to protect the information as "secrets."  Opp. 19-20.  This argument ignores or mischaracterizes the central provisions of the document.

For information provided before the LOI was signed, Plaintiffs point to nothing to support their claim that the information was protected, Opp. 22, and do not address the LOI's term that "excludes public information or information already in a party's possession" from any protection afforded to "Confidential Information."  LOI ¶ 7.  Plaintiffs simply do not respond to and thus concede this central point.  *See* MTD 13-14, 16; *Diaz v. Gov't Emps. Ins. Company*, No. 17-23673-CIV-GRAHAM, 2017 WL 11128354, at *2 (S.D. Fla. Nov. 29, 2017) (failure to address an argument is tantamount to a concession).

For information provided afterward, Plaintiffs likewise do not address the LOI's provision that "either party may terminate the negotiations and this LOI at their sole discretion upon written notice to the other, in which event, *neither party hereto shall have any further liability, responsibility or obligation to the other under this LOI*," which necessarily included those relating to confidentiality.  LOI, ¶ 8 (emphasis added).  Defendants' argument focused on this provision, rather than the 90-day limitation Plaintiffs address.  *See* MTD 16; *compare* Opp. 19-20.  In alleging that the LOI was terminated on May 29, 2019, FAC ¶ 64, Plaintiffs establish that it was limited in duration and thus not a "reasonable measure" to maintain secrecy.  *See Silicon Image, Inc. v. Analogix Semiconductor, Inc.*, No. C-07-00635 JCS, 2008 WL 166950, at

*17 (N.D. Cal. Jan. 17, 2008) (information disclosed under an NDA with "a limited duration" is not a trade secret); *DB Riley, Inc. v. AB Eng'g Corp.*, 977 F. Supp. 84, 91 (D. Mass. 1997) (same).[4]  Plaintiffs also ignore Defendants' argument faulting the LOI because it did not limit the University Defendants' use of any confidential information, or even require the return or destruction of any such information upon the LOI's termination.[5]  *See* MTD 15-18.  Nor do they respond to Defendants' argument that the LOI's shortcomings are underscored by the contrast with the more extensive protections Plaintiffs sought in their proposed contract, where they actually may have possessed and sought to protect trade secrets.  *See* MTD 17-18; Dkt. No. 38-1, Ex. B ¶ 16 (proposed PSA); *Rogers v. Desa Int'l, Inc.*, 183 F. Supp. 2d 955, 957 (E.D. Mich. 2002) (no trade secret where plaintiff entered into a confidentiality agreement with another entity, but did not ask for a similar agreement from defendant).[6]

Plaintiffs purport to rebut an argument that the LOI permitted the University Defendants "to share Plaintiffs' trade secrets with third-parties at will."  Opp. 20.  But that is not Defendants' argument.  Instead, it is that because the LOI permitted the University Defendants to share any confidential information with third parties <u>without</u> advising such third parties that their access to,

---

[4] Plaintiffs contend these cases are not "binding precedent," Opp. 19 n.10, but they are of course persuasive and are modeled on the same Uniform Trade Secrets Act ("UTSA") that informs the DTSA.  Plaintiffs cite no cases to the contrary.  Plaintiffs similarly do not address Defendants' many-cited cases setting out the protections required to establish an actionable trade secret, but they do attempt to distinguish one, *Hill Holliday Connors Cosmopulos, Inc. v. Greenfield*, 433 F. App'x 207, 214-15 (4th Cir. 2011), by contending the South Carolina Trade Secrets Act ("SCTSA") at issue there "differ[s] in meaningful ways from Florida law."  Opp. 18.  However, both Florida and South Carolina have adopted the UTSA, and the SCTSA, like the FUTSA, precludes trade secret protection absent "efforts that are reasonable under the circumstances to maintain [] secrecy."  S.C. Code Ann. § 39-8-20(5)(a)(ii); Fla. Stat. § 688.002(4)(b).

[5] An NDA alone does not constitute a "reasonable measure" to maintain secrecy.  *See Charles Ramsey Co., Inc. v. Fabtech-NY LLC*, No. 1:18-CV-0546 (LEK/CFH), 2020 WL 352614, at *16 (N.D.N.Y. Jan. 21, 2020).  Plaintiffs do not dispute this principle, but instead rely on *Nephron Pharmaceuticals Corp. v. Hulsey*, No. 6:18-cv-1573-Orl-31LRH, 2020 WL 7684863, at *14 (M.D. Fla. Oct. 7, 2020), to argue that an NDA can constitute *some* evidence of "reasonable measures," which is obvious.  The *Nephron* plaintiffs undertook several additional protective measures not alleged here.  *Id.*

[6] Plaintiffs also do not address Defendants' argument that trade secret protection cannot apply where, as here, a plaintiff fails to allege that it "'sought to protect its information in terms of its own employee's access to the same, or in regard to other organizations with which [the plaintiff] might have business interactions.'"  MTD 15 (quoting *St. Johns Vein Ctr., Inc. v. StreamlineMD LLC*, 347 F. Supp. 3d 1047, 1070 (M.D. Fla. 2018).)

disclosure of, or use of the information was in any way limited, it was not a reasonable protective measure. *See* MTD 16-17; *e.g.*, *M.C. Dean, Inc. v. City of Miami Beach, Fla.,* 199 F. Supp. 3d 1349, 1356-57 (S.D. Fla. 2016) (dismissing DTSA claim where the parties' agreement permitted disclosure of the alleged trade secrets to a third party with no confidentiality obligations of its own). Plaintiffs have no response to that point.

Plaintiffs claim that the Court should make "inferences" favoring their characterization of the LOI, Opp. 20, but no basis exists to ignore the LOI's plain terms. Those terms are quite clear and directly defeat Plaintiffs' trade secret claim, which is presumably why Plaintiffs did not provide the document to the Court and do not address its relevant terms now. Plaintiffs cannot "rewrite [the document], add meaning that is not present, or otherwise reach results contrary to the intentions of the parties," *Zucker for BankUnited Fin. Corp. v. U.S. Specialty Ins. Co.*, 856 F.3d 1343, 1348 (11th Cir. 2017), making the issue ripe for decision.

Unprotected Disclosure to the Frisbie Defendants. There is even less merit to Plaintiffs' claim that they protected the extensive information disclosed to the Frisbie Defendants because it was provided to further "serious discussions around co-developing the PBA Parcels" and the related "[business] relationship." Opp. 20. That is, Plaintiffs acknowledge they took *no* particular measures to protect their information, not even using a confidentiality agreement, failing even their own, incorrect "*any* measures" standard. *Id*. 21. Accepting Plaintiffs' argument would read the "reasonable measures" requirement out of the statute, and permit a trade secret claim to spring from any unfruitful but "serious" contract negotiation involving the exchange of information.

Plaintiffs gain no support from *Dotolo v. Schouten*, 426 So. 2d 1013 (Fla. Dist. Ct. App. 1983), *see* Opp. 20, where the plaintiff did take steps to protect information that was inherently secret (the "formula" used to produce products). While the *Dotolo* plaintiff claimed "an express agreement of confidentiality concerning the formula," the court held that it was sufficient that the defendants "were instructed that the formula was a trade secret and that the [plaintiff] wished to protect it." *Id.* at 1015. Plaintiffs here do not claim they did any such thing. And, contrary to Plaintiffs' argument, Opp. 20-21, the summary judgment posture of *Yellowfin Yachts, Inc. v. Barker Boatworks, LLC*, 898 F.3d 1279, 1299 (11th Cir. 2018), provides no basis to disregard the Eleventh Circuit's legal standard that disfavors implied agreements and gives force to the "reasonable measures" requirement.

10

Plaintiffs' unprotected disclosure of information to the Frisbie Defendants also functions as another failure to protect the largely overlapping information Plaintiffs provided to the University Defendants.  Seeking to avoid how their failure here also defeats their claim against the University, they assert that the two sets of information are not "identical."  Opp. 23.  That is so, but in a way unhelpful to Plaintiffs:  disclosures to the Frisbie Defendants included and were more *extensive* than those made to the University.  *Compare* FAC ¶ 58 *with id.* ¶¶ 75-76.

Unprotected Disclosures to Others.  Plaintiffs also fail to address their disclosures to many others, and ignore Defendants' argument that their completely unprotected disclosures to Marius Fortelni, Joseph Nasser, and various capital providers foreclose trade secret protection. *See* MTD 14.  Instead, addressing still other disclosures, Plaintiffs contend that their purported trade secrets are still entitled to protection, because only "aspects" of their disclosure were commonly known by the public.  Opp. 23.  Their cited authority on this point in fact supports Defendants' argument.  *See, e.g.*, *Mapei Corp. v. J.M. Field Mktg., Inc*, 295 So. 3d 1193, 1198 (Fla. Dist. Ct. App. 2020) (software features that were disclosed *only* to third parties with attendant confidentiality obligations were "unique and not well-known or available in the market"); *Metallurgical Indus. Inc. v. Fourtek, Inc.*, 790 F.2d 1195, 1200 (5th Cir. 1986) ("public revelation" of any information "dispel[s] all secrecy").

**B.      Failure To Identify Any Misappropriated Trade Secret Information.**

Plaintiffs' widespread, unprotected disclosure of information also contradicts their claim that they sufficiently specified protectable information because Defendants are "on notice of their trade secrets" even if "Plaintiffs' descriptions . . . are somewhat generalized."  Opp. 18. Yet that is impossible, given Plaintiffs' own acknowledgements that they openly discussed their deal (but not, we are told, its "details") at a public event, *id.* 22, discussed "narrow aspects" of their plans with museum officials and had "limited" communications with the Mayor, *id.*, disclosed only "preliminary" plans to University officials initially, *id.*, and provided "different," unprotected information to the Frisbie Defendants than had been provided to the University, *id.* 23.  Plaintiffs do not claim that their additional disclosures noted above, *supra* 8-11, were limited in any way, and they wrongly seek protection for information "readily available" from public sources, Opp. 18.[7]  Neither set of Defendants could possibly know what particular, non-

---

[7] *Pinnock o/b/o ADA Consultants & Advisors, Inc. v. Wal-Mart Stores, Inc.*, No. 6:09-cv-143-Orl-18DAB, 2009 WL 10670000 (M.D. Fla. Aug. 10, 2009), directly refutes Plaintiffs'

disclosed, and protectable information underlies Plaintiffs' claims.

Plaintiffs' failure to specify any particular "secrets" rather than "generalized" project-related information presents a similar problem. Plaintiffs acknowledge that alleging "only broad categories of information" is insufficient, Opp. 18, yet that is precisely what their FAC sets out. FAC ¶ 173; *see Decurtis LLC v. Carnival Corporation*, No. 20-22945-Civ-SCOLA/TORRES, 2021 WL 1968327, at *6 (S.D. Fla. Jan. 6, 2021) ("*all* information concerning a [project] is not a trade secret") (emphasis added). Likewise, Plaintiffs would have this Court brush aside various cases cited by Defendants because they concern "broad categories of information," Opp. 18 n.9, yet the FAC is just the type of pleading these cases rejected. *See* FAC ¶ 173, 176; *VVIG, Inc. v. Alvarez*, No. 18-23109-CIV-ALTONAGA/Goodman, 2019 WL 5063441, at *3 (S.D. Fla. Oct. 9, 2019) ("General allegations of 'business affairs, products, marketing systems technology, customers, end users, financial affairs, [and] accounting statistical data,'" are "insufficient" to state a DTSA claim, even if they relate to a single product.). Plaintiffs rely on *Sentry Data Systems, Inc. v. CVS Health*, 361 F. Supp. 3d 1279 (S.D. Fla. 2018), but, as they acknowledge, that case concerned allegations of a specific agreement template and a specific software program, <u>not</u> swaths of information pertaining to a particular project. *See* Opp. 17; *see also id.* (relying on *Hurry Fam. Revocable Tr. v. Frankel*, No. 8:18-cv-2869-T-33CPT, 2019 WL 2868945, at *1, 3 (M.D. Fla. July 3, 2019), which concerned "fifteen specific documents" sent on specific dates).

### C.    <u>Misappropriation.</u>

Plaintiffs argue that their provision of "different" project-related information to the Frisbie Defendants means that the University misappropriated something (undefined) when it allegedly disclosed project-related information to the Frisbies. Opp. 23. Their argument concedes that the University misappropriated nothing to the extent the two sets of information overlap, which is an enormous concession given that the FAC and the logic of Plaintiffs' timing argument indicate that the Frisbies received overlapping but *more extensive* information. *See supra* 11. And, Plaintiffs' argument that misappropriation occurred because Defendants "[m]isrepresented their intentions," Opp. 23, cannot be right because it proves too much: any turnover of information during an unsuccessful negotiation could be alleged as misappropriation.

---

arguments in this respect. *See id.* at *4 & n.5 (analysis of regulations "is not protectable when the interpretation is readily ascertainable through research" even when "a party expends considerable effort, knowledge, time and expense compiling [it]").

III.     **PLAINTIFFS ALSO FAIL TO STATE VARIOUS STATE LAW CLAIMS.**

Rule 12(b)(1) and Scope of Arguments.  Plaintiffs incorrectly claim that Rule 12(b)(1) is irrelevant.  Opp. 9 n.2.  Jurisdiction is lacking if a claim is "patently without merit," *McGinnis v. Ingram Equip. Co., Inc.*, 918 F.2d 1491, 1494 (11th Cir. 1990) (*en banc*) (quotation marks and ellipsis omitted), or "has no plausible foundation," *Blue Cross Blue Shield of Ala. v. Sanders*, 138 F.3d 1347, 1352 (11th Cir. 1998) (quotation marks omitted).  This test is satisfied where Plaintiffs have simply identified no basis for a claim, such as their RICO claims lacking enterprise allegations, trade secret claims presented without showing "reasonable measures" to protect the information, and frivolous extortion claims.  If the Court finds it has no jurisdiction on this basis, it cannot entertain the state law claims (but can do so, at least to dismiss, if it concludes that Plaintiffs have failed to state federal claims under Rule 12(b)(6), *see* MTD 21).  As to the scope of the MTD, Defendants do not challenge all state law claims and offer only limited grounds (pre-emption) for certain of them.  That is no waiver (*compare* Opp. 23), but instead reflects Defendants' recognition of standards for a motion to dismiss.

Contract-Related Claims.  With respect to the proposed Purchase and Sale Agreement ("PSA") (Counts 4 and 15), Plaintiffs do not respond to Defendants' principal argument, based on the language of the proposed PSA confirming that it would become effective only once the signatures of both parties were affixed.  *See* MTD 22.  And, mischaracterizing Defendants as not contesting whether the parties had a "meeting of minds" or the contractual significance of the "all approved" email, Opp. 25, they fail to respond to Defendants' arguments that no alleged facts show the sending attorney's authority to enter the contract or suggested that the email meant anything more than the President had received approvals to finalize the contract if he chose to do so.  *See* MTD 1, 22.  Defendants uniformly characterized the PSA as "proposed" and as an offer, and explained why the email indicated no agreement.  *Id*.; *see also Jay v. Mobley*, 783 So. 2d 297, 298 (Fla. 4th Dist. Ct. App. 2001) (letters between seller and prospective purchaser of real property insufficient to create binding contract).  Plaintiffs also fail to address the cases indicating that the communication could not suffice to complete such a property transaction.  MTD 22.  As for the statute of frauds, even if Defendants' cases were disregarded, all the authority cited by Plaintiffs, Opp. 25, requires a written commitment by the party bound and "authorized" to sign; here, the email was no such commitment, and the proposed PSA made clear that only the President was authorized to sign—as Plaintiffs' continued efforts to secure

13

that signature make clear, MTD 22, and as Florida law requires.  *See Taxinet, Corp. v. Leon*, No. 16-24266-CIV-MORENO, 2018 WL 3405243, at *10 (S.D. Fla. July 12, 2018) (requiring at least one writing <u>signed</u> by the party who contests the agreement).[8]  As for specific performance, when Plaintiffs knew of the "full extent of the conspiracy" is irrelevant to their breach claim, which requires only understanding that Defendants were not performing the PSA.

As for the LOI breach claim (Count 2) and contrary to Plaintiffs' claim, Opp. 24, the LOI's terms are clear.  The full text—rather than Plaintiffs' excerpts—is now before the Court and directly supports Defendants' position for the reasons already provided, *see* MTD 24.  As for the supposed "extrinsic evidence" related to termination, Opp. 24, the LOI provides that termination relieves a party of *all* the LOI's obligations, LOI ¶ 8, and Defendants' termination ended obligations other than the expired exclusivity provision, such as confidentiality.  The text is clear, and the supposed "extrinsic evidence" neither creates ambiguity nor trumps the text.  *See Lambert v. Berkley S. Condo. Ass'n, Inc.*, 680 So. 2d 588, 590-91 (Fla. 4th Dist. Ct. App. 1996); *Excelsior Ins. Co. v. Pomona Park Bar & Package Store*, 369 So. 2d 938, 942 (Fla. 1979) (ambiguity exists only "*after* resort to the ordinary rules of construction") (emphasis added).

<u>Misappropriation-Related Claims (Counts 5-8 &11-14)</u>.  Each of Plaintiffs' misappropriation-related claims (for fraud, aiding and abetting fraud, conversion, negligent misrepresentation, tortious interference, and unjust enrichment) should be dismissed as preempted by the FUTSA.  *See* Fla. Stat. § 688.008(1).  As Plaintiffs concede, Opp. 27, "a majority of jurisdictions" hold that, even upon motions to dismiss, "the FUTSA preempts all non-contract claims based on the misappropriation of confidential and/or commercially valuable information even if the information does not constitute a trade secret under the FUTSA."  *Am. Registry, LLC v. Hanaw*, No. 2:13-cv-352-FtM-29CM, 2014 WL 12606501, at *5, 6 (M.D. Fla. July 16, 2014).  This Court subscribes to the majority view.  *See* Order at 18, *K3 Enterprises, Inc. v. Sasowski*, No. 1:20-CV-24441-AMC (S.D. Fla. Nov. 22, 2021), ECF No. 95.  Plaintiffs request that this Court depart from its position, but offer no reason to do so.[9]

---

[8] *Kolski v. Kolski*, 731 So. 2d 169, 171 (Fla. 4th Dist. Ct. App. 1999), cited by Plaintiffs, Opp. 26, actually supports Defendants based on its proviso that Plaintiffs omit, " . . . provided that the signed writing expressly or implicitly refers to the unsigned document"—here, the signed document, the draft PSA, does not do so.

[9] Plaintiffs cite only two cases departing from the majority view, both of which are unpublished decisions and one of which is over ten years old.  Opp. 27.

Plaintiffs concede that, if FUTSA preemption applies at this stage, no basis exists and dismissal is required for their unjust enrichment and conversion claims.  Opp. 27-28.  They claim their other misappropriation-related claims are not preempted because they "are also based in part on other conduct, including Defendants' deceptive conduct around the breakdown of negotiations with PBA, misrepresentations about defendants' relationship, and contract-violating actions."  *Id.*  However, Plaintiffs do not, and cannot, explain how these allegations are "material[ly] distinct[]" from those underlying their FUTSA claim.  *Taxinet*, 2018 WL 3405243 at *5.  To the contrary, these allegations mirror one another.  *Compare* FAC ¶¶ 176, 182 (for trade secret claims, alleging the University "continued to indicate their intentions of completing the deal with Plaintiffs" to misappropriate trade secret information), *with* FAC ¶¶ 151, 162 (same allegations underlie fraud and negligent misrepresentation claims); *id.*, ¶¶ 194, 199 (same allegations underlie tortious interference claims).)  As such, they should be dismissed.

Apart from FUTSA preemption, Claims 5-7 (Fraud Claims) should be dismissed for the independent reasons outlined above with respect to the supposed fraud predicates for the RICO claim.  *See supra* 4.  Claim 12 is for "Tortious Interference with Contract" (not tortious interference with a business relationship as Plaintiffs state, *compare* FAC 59 *with* Opp. 28) and as such must be dismissed for the same reasons the contract is unenforceable.  *See, e.g.*, *Font & Nelson, PLLC v. Path Medical, LLC*, 317 So. 3d 134, 139 (Fla. 4th Dist. Ct. App. 2021) (unsigned agreement, an invalid contract, could not be basis for tortious interference claim).  Plaintiffs' attempt to sidestep the "economic interest privilege" with respect to Claims 12 and 13, Opp. 28, is unavailing because the factual allegations in the FAC do not constitute the type of "improper means" that might vitiate the privilege.  *See Reyes v. Foreclosure Asset Sales & Transfer P'ship*, No. 13-22829-CIV, 2014 WL 12623071, *9 (S.D. Fla. Mar. 5, 2014) ("improper means" to support tortious interference "include physical violence, misrepresentations, intimidation, conspiratorial conduct, illegal conduct, and threats of illegal conduct") (internal quotation marks omitted).  The "allegations of misrepresentations, intimidation, and conspiratorial conduct" referenced by Plaintiffs, Opp. 28, are not sufficiently pled and thus, cannot save Claims 12 and 13 from dismissal.  *See supra* 4-6.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that their motion be granted.

Respectfully submitted,

Date:   March 16, 2022
            Miami, Florida

**SHUBIN & BASS, P.A.**
46 S.W. First Street, Third Floor
Miami, Florida 33130
Tel.: (305) 381-6060
Fax: (305) 381-9457
jshubin@shubinbass.com
dfalce@shubinbass.com
jkatz@shubinbass.com
eservice@shubinbass.com

By:    /s/ John K. Shubin
           John K. Shubin
           Fla. Bar No. 771899
           Deana D. Falce
           Fla. Bar No. 84154
           Jamie L. Katz
           Fla. Bar No. 105634

*Counsel for Defendants Frisbie Group LLC,*
*FH3 LLC, David W. Frisbie, Robert N. Frisbie*
*Jr., and Cody S. Crowell*

**JONES FOSTER P.A.**
505 South Flagler Drive, Suite 1100
West Palm Beach, Florida 33401
Tel.: (561) 659-3000
Fax: (561) 650-5300
shawkins@jonesfoster.com

By: /s/ Scott G. Hawkins
         Scott G. Hawkins
         Fla. Bar No. 460117

*Counsel for Defendants Palm Beach Atlantic*
*University Inc., William M.B. Fleming, Jr.,*
*and Patrick C. Koenig*

**ELLIS GEORGE CIPOLLONE**
**O'BRIEN ANNAGUEY LLP**
2121 Avenue of the Stars, Suite 2800
Los Angeles, California 90067
Tel.: (310) 274-7100
Fax: (310) 275-5697
egeorge@egcfirm.com
kwesley@egcfirm.com
rkeech@egcfirm.com
spolatoglu@egcfirm.com

By: /s/ Eric M. George
         Eric M. George (*pro hac vice*)
         Keith J. Wesley (*pro hac vice*)
         Ryan Q. Keech (*pro hac vice*)
         Serli Polatoglu (*pro hac vice*)

*Counsel for Defendants Palm Beach*
*Atlantic University Inc., Frisbie Group*
*LLC, FH3 LLC, William M.B. Fleming, Jr.,*
*Patrick C. Koenig, David W. Frisbie,*
*Robert N. Frisbie, Jr., and Cody Crowell*

16

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 16, 2022, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all Counsel of Record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

_/s/ John K. Shubin_____

John K. Shubin, Esq.

## SERVICE LIST

Scott Hawkins, Esquire
**JONES FOSTER P.A.**
505 South Flagler Drive, Suite 1100
West Palm Beach, Florida 33401
Tel.: (561) 659-3000
Fax: (561) 650-5300
shawkins@jonesfoster.com

*Counsel for Defendants Palm Beach Atlantic
University Inc., William M.B. Fleming, Jr., and
Patrick C. Koenig*

Eric M. George (*pro hac vice*)
Keith J. Wesley (*pro hac vice*)
Ryan Q. Keech (*pro hac vice*)
Serli Polatoglu (*pro hac vice*)
**ELLIS GEORGE CIPOLLONE O'BRIEN
ANNAGUEY LLP**
2121 Avenue of the Stars, Suite 2800
Los Angeles, CA 90067
Tel.: (310) 274-7100
Fax: (310) 275-5697
egeorge@egcfirm.com
kwesley@egcfirm.com
rkeech@egcfirm.com
spolatoglu@egcfirm.com

*Counsel for Defendants Palm Beach Atlantic
University Inc., Frisbie Group LLC, FH3 LLC,
William M.B. Fleming, Jr., Patrick C. Koenig,
David W. Frisbie, Robert N. Frisbie, Jr., and
Cody Crowell*

Sean C. Domnick, Esquire
Matthew T. Christ, Esquire
**DOMNICK CUNNINGHAM &
WHALEN**
2401 PGA Boulevard, Suite 140
Palm Beach Gardens, FL 33410
Tel.: (561) 625-6260
Fax: (561) 625-6269
mtc@dcwlaw.com
sean@dcwlaw.com

Reed Brodsky (*pro hac vice*)
Akiva Shapiro (*pro hac vice*)
Diane Chan (*pro hac vice*)
Michael McQueeney (*pro hac vice*)
**GIBSON, DUNN & CRUTCHER LLP**
200 Park Avenue
New York, NY 10166-0193
Tel.: (212) 351-4000
Fax: (212) 351-6235
RBrodsky@gibsondunn.com
AShapiro@gibsondunn.com
DChan@gibsondunn.com
MMcQueeney@gibsondunn.com

*Counsel for Plaintiffs Two Roads
Development LLC, Trilar Holdings LLC
and Flagler South Development LLC*

John K. Shubin, Esquire
Deana D. Falce, Esquire
Jamie L. Katz, Esquire
**SHUBIN & BASS, P.A.**
46 S.W. First Street, Third Floor
Miami, Florida 33130
Tel.: (305) 381-6060
Fax: (305) 381-9457
jshubin@shubinbass.com
dfalce@shubinbass.com
jkatz@shubinbass.com

*Counsel for Defendants Frisbie Group LLC,
FH3 LLC, David W. Frisbie, Robert N.
Frisbie, Jr., and Cody Crowell*

18