**UNITED STATES DISTRICT**

**COURT SOUTHERN DISTRICT**

**OF FLORIDA WEST PALM**

**BEACH DIVISION**

**CASE NO. 9:21-CV-82067-CIV (CANNON)**

| | |
|---|---|
| TWO ROADS DEVELOPMENT LLC, TRILAR HOLDINGS LLC, and FLAGLER SOUTH DEVELOPMENT LLC, | |
| Plaintiffs, | |
| v. | |
| PALM BEACH ATLANTIC UNIVERSITY INC., FRISBIE GROUP LLC, FH3 LLC, WILLIAM M.B. FLEMING, JR., PATRICK C. KOENIG, DAVID W. FRISBIE, ROBERT N. FRISBIE JR., and CODY S. CROWELL, | |
| Defendants. | |

**PLAINTIFFS' MOTION TO COMPEL DISCOVERY FROM DEFENDANTS**

## TABLE OF CONTENTS

Page

INTRODUCTION ................................................................................................................ 1

BACKGROUND ................................................................................................................. 2

**I.   Factual Background** ................................................................................................ 2

**II.  Procedural Background** ......................................................................................... 4

LEGAL STANDARD ......................................................................................................... 6

**III. Motion to Compel** ................................................................................................. 6

**IV.  Civil RICO** ........................................................................................................... 7

ARGUMENT ...................................................................................................................... 8

**I.   Plaintiffs' Request for Documents Relating to Defendants' Personal and
     Business Relationships is Relevant to Plaintiffs' RICO Claim and Not Vague or
     Ambiguous.** .......................................................................................................... 8

    *A.   The Specific Item to Be Compelled* ................................................................. 8

    *B.   The Specific Objection* .................................................................................... 8

    *C.   The Reasons Assigned As Supporting the Motion* ............................................ 8

**II.  Plaintiffs' Request for Documents Relating to Other Development Deals
     Between Defendants is Relevant to Plaintiffs' RICO Claim.** ............................ 10

    *A.   The Specific Item to Be Compelled* ............................................................... 10

    *B.   The Specific Objection* .................................................................................. 10

    *C.   The Reasons Assigned As Supporting the Motion* .......................................... 10

**III. Plaintiffs' Request for Full Production of Text Messages Across a Limited Time
     Period and Among a Narrow Set of Custodians Is Required to Ensure all
     Relevant and Discoverable Text Messages Are Produced.** ............................... 12

    *A.   The Specific Item to Be Compelled* ............................................................... 12

    *B.   The Specific Objection* .................................................................................. 12

    *C.   The Reasons Assigned As Supporting the Motion* .......................................... 12

**CONCLUSION** .............................................................................................................. 14

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Adelman v. Boy Scouts of Am.*,
276 F.R.D. 681 (S.D. Fla. 2011) ................................................................6

*Al-Rayes v. Willingham*,
914 F.3d 1302 (11th Cir. 2019) ................................................................7

*Boyle v. United States*,
556 U.S. 938 (2009) ................................................................7

*Catano v. Capuano*,
2019 WL 3035752 (S.D. Fla. July 11, 2019) ................................................7

*Companhia Energetica Potiguar v. Catepillar, Inc.*,
307 F.R.D. 620 (S.D. Fla. 2015) ................................................................6

*Crowe v. Henry*,
43 F.3d 198 (5th Cir. 1995) ................................................................7

*Deiparine v. Siemens Med. Sol. USA, Inc.*,
2011 WL 13298893 (M.D. Fla. Nov. 21, 2011) ................................................7

*Drone Nerds Franchising, LCC v. Childress*,
2021 WL 7543800 (S.D. Fla. Nov. 15, 2021) ................................................6

*Farnsworth v. Procter and Gamble Co.*,
758 F.2d 1545 (11th Cir. 1985) ................................................................6

*H.J. Inc. v. Nw. Bell Tel. Co.*,
492 U.S. 229 (1989) ................................................................11

*Hpc US Fund 1 v. Wood*,
2014 WL 12496558 (S.D. Fl. June 11, 2014) ................................................8, 11

*Libertad v. Welch*,
53 F.3d 428 (1st Cir. 1995) ................................................................11

*O.L. v. City of El Monte*,
2021 WL 926105 (C. D. Cal. Jan. 11, 2021) ................................................7

*Oppenheimer Fund, Inc. v. Sanders*,
437 U.S. 340 (1978) ................................................................6, 12

*Panola Land Buyers Assoc. v. Shuman*,
762 F.2d 1550 (11th Cir. 1985) ................................................................6

## TABLE OF AUTHORITIES
*(continued)*

Page(s)

*Rivera v. 2K Clevelander, LLC*,
  2017 WL 5496158 (S.D. Fla. 2017) ............................................................................6

*Sallah v. Worldwide Clearing LLC*,
  855 F. Supp.2d 1364 (S.D. Fla. 2012) ........................................................................7

*Sorvillo v. Ace Hardware Corporation*,
  2014 WL 12616972 (M.D. Fla. July 30, 2014) ...........................................................7

*Spencer v. City of Orlando, Florida*,
  2016 WL 397935 (M.D. Fla. Feb. 2, 2016) .................................................................6

*United States v. Turkette*,
  452 U.S. 576 (1981)......................................................................................................7

*Woodard-CM, LLC v. Sunlord Leisure Prods., Inc.*,
  2022 WL 892995 (S.D. Fla. Feb. 10, 2022) ................................................................6

**STATUTES**

18 U.S.C. § 1962(c) ...............................................................................................................3

**RULES**

Fed. R. Civ. P. 26(b) ..............................................................................................................6

Plaintiffs Two Roads Development LLC, Trilar Holdings LLC and Flagler South Development LLC (together, "Plaintiffs"), respectfully submit this memorandum of law in support of their Motion to Compel Defendants Palm Beach Atlantic University Incorporated ("PBA"), Frisbie Group LLC ("Frisbie Group"), FH3 LLC ("FH3"), William Fleming, Patrick Koenig, David Frisbie, Robert Frisbie Jr., and Cody Crowell (collectively, "Defendants") to direct Defendants to produce certain documents that they are refusing to produce in response to Plaintiffs' first set of Requests for Production (Exs. A-C).[1]

## INTRODUCTION

Plaintiffs' 66-page Amended Complaint sets out a series of robust allegations against Defendants, including allegations of fraud and civil racketeering under the federal RICO statute.  Indeed, without the benefit of any discovery, Plaintiffs were able to allege in detail the multi-year and multi-player racketeering scheme orchestrated by Defendants through their enterprise.  In discovery, Plaintiffs are entitled to the production of documents supporting these allegations.

After Plaintiffs served Requests for Production of Documents on Defendants on April 11, 2022, and Defendants served responses and objections a month later, the parties engaged in an extended series of good faith negotiations, both on the phone and in writing, seeking to reach agreement on the appropriate scope of discovery.  Nearly every issue Defendants raised has now been resolved amicably.  There are, however, three issues that remain in dispute and regarding which the parties' positions have crystalized.  Notably, each category of documents that Defendants have refused to produce are relevant to, and necessary to support, Plaintiffs' racketeering claim, and in particular their RICO enterprise allegations.

To be clear, Defendants do not assert that such documents and information do not exist.  Instead, their refusal is based on objections concerning the breadth and specificity of the requests and the relevance of the documents requested that do not take appropriate cognizance of Plaintiffs' civil RICO claim and the facts relevant to supporting the existence of a RICO enterprise.  In their motion to dismiss, Defendants argued that Plaintiffs had not adequately pled racketeering—and specifically, the existence of an enterprise between Defendants.  Yet in the face of document requests that go specifically to proving up those allegations, they argue the information sought is

---

[1] References to "Ex. __" are to the exhibits attached to the Declaration of Sean Domnick, submitted herewith.

irrelevant. Defendants' refusal to provide these documents to Plaintiffs speaks volumes. The Court should order these documents be produced.

## BACKGROUND

### I.     Factual Background

As alleged, Plaintiffs are experienced real estate developers who identified a unique opportunity to build a set of luxury waterfront condominium high-rises on some of the last undeveloped lots on South Flagler Drive in West Palm Beach, Florida.  ¶¶ 32–34.[2]  After purchasing the parcels at 1309 and 1311 South Flagler Drive and 134 Acacia Road (as assembled, "the Forté"), ¶ 35, Plaintiffs then sought to purchase the two adjacent parcels, which were owned by PBA.  ¶ 43. In or around 2016, Plaintiffs approached PBA about purchasing the Parcels.  ¶ 45.  After Plaintiffs shared their initial proposal for building a luxury condominium on the site in early 2018, the parties, on June 11, 2018, entered into a formal letter of intent for the sale of the Parcels.  ¶¶ 45–51. This LOI included a confidentiality provision specifying that the "terms of th[e] LOI and the parties' discussions and exchanged written materials relating to the proposed transaction," including the "terms of the proposed Purchase and Sale Agreement," "the proposed development of the [PBA Parcels]" and "due diligence information and documents relating to the [PBA Parcels]," are proprietary and confidential, and may not "be shown or disclosed by either party . . . to any other person or entity" except to those involved in the proposed transaction."  ¶ 52.  The LOI also contained an exclusivity provision that, among other things, required the parties to "negotiate exclusively with the other to draft and enter into a Purchase and Sale Agreement."  ¶ 53.  From June 2018 to Spring 2019, the parties intensively negotiated.  ¶ 56.  Throughout this period, Plaintiffs, assured by PBA's representations that a deal was imminent, invested time, money, and ingenuity in further developing a comprehensive plan to develop the PBA Parcels—and shared this trade secret information with PBA.  ¶ 58.

In or around March 2019, while Plaintiffs were negotiating in good faith with PBA under the LOI, PBA, Fleming, and Koenig secretly coordinated with Frisbie Group, David Frisbie, Robert Frisbie Jr., and Cody Crowell, to steal the PBA Parcels project out from under Plaintiffs.  ¶¶ 67–70.  On April 5, 2019, PBA sent Plaintiffs an email through its attorney, Larry Alexander, stating that the deal was "all approved."  ¶ 59.  On April 24, 2019, at PBA's request, Plaintiffs executed

---

[2]  References to "¶ __" are to the paragraphs of the Amended Complaint (Ex. D).

and delivered the completed and mutually approved PSA.  ¶ 62.  But PBA stalled, claiming that their president, William Fleming, could not physically countersign the signature page of the final, "all approved" document due to "health challenges." ¶ 63.  As alleged, Defendants used Fleming's illness as an excuse to back out of the completed contract so they could enter into a substantially similar contract with Frisbie Group.  ¶ 4.  In July 2019, Plaintiffs learned that Frisbie Group had the PBA Parcels under contract.  ¶ 71.  Plaintiffs asked questions, but Frisbie Group lied to and misled Plaintiffs about their secret dealings with PBA to cover their tracks.  ¶¶ 71–72.  Meanwhile, PBA, Fleming, and Koenig were sharing Plaintiffs' valuable trade secret information with Frisbie Group in direct violation of their confidentiality obligations pursuant to the LOI.  ¶¶ 113, 176.

In August 2019, in what appeared to be an olive branch to smooth relations between the parties, Frisbie Group proposed a development partnership with Plaintiffs.  ¶ 5.  At first hesitant, Plaintiffs came around after a series of serious discussions with Frisbie Group and its agents.  ¶ 73.  Yet this was just another phase of the ongoing scheme to defraud Plaintiffs and steal their trade secrets.  Frisbie Group took Plaintiffs' proprietary information and continued to move forward on their development of the PBA Parcels without Plaintiffs.  ¶¶ 77–78.   In an attempt to avoid liability and complete their fraudulent scheme, Defendants coordinated to condition the provision of routine easements needed by Plaintiffs for their development of the Forté on two unacceptable demands:  That Plaintiffs waive their right to sue PBA for their actions relating to the PBA Parcels, and that Plaintiffs provide a blanket approval of future development plans for the PBA Parcels, sight unseen.  ¶¶ 83, 84, 86, 89, 115.  PBA served as the front for these negotiations, with Frisbie Group initially denying involvement to obscure the extent of the scheme.  ¶¶ 83, 84, 86.  Eventually, Frisbie Group took the reins on the coverup and the attempt to push through the development with the easement conditions, turning to extortionary threats in an attempt to pressure Plaintiffs into refraining from objecting to Frisbie Group and FH3's development of the PBA Parcels.  ¶¶ 89, 90.  Plaintiffs refused to be bullied into submission, and incurred at least $2,000,000 to reengineer the Forté so that it would not require the easements that Defendants were holding hostage in their scheme.  ¶ 85.

Based on allegations summarized above, Plaintiffs brought claims for, as most directly relevant to the instant motion, violations of the civil RICO statute, 18 U.S.C. § 1962(c) (¶¶ 95-127).  As a direct result of Defendants' fraudulent scheme, as well as their breaches of contract

and acts of tortious interference, Plaintiffs have lost an invaluable, irreplaceable development project, years of work, and millions of dollars in out-of-pocket costs.  ¶ 90.

In setting out detailed RICO allegations, each RICO Defendant is alleged to have "conducted and participated in the operation and management of the enterprise," through, *inter alia*, "business," "familial," and "social relationships" with other Defendants.  ¶ 105(a)-(g).  Plaintiffs similarly allege that "[t]he members of the Enterprise have long-standing and ongoing relationships rooted in familial connections, common ownership, common control, ongoing business dealings, and mutual interest and participation in common activities."  ¶ 100.  As for the temporal scope of the Enterprise, the Amended Complaint alleges these "long-standing and ongoing relationships," and that "[t]he Enterprise has longevity" sufficient to pursue its goals.  ¶ 101.

## II.    Procedural Background

Following the exchange of initial disclosures and the commencement of discovery, Plaintiffs served three Requests for Production of Documents (the "Document Requests") on Defendants on April 11, 2022, which were directed at Defendants Palm Beach Atlantic University Inc. ("PBA") (Ex. A or "PBA RFP"), Frisbie Group LLC ("Frisbie Group") (Ex. B or "Frisbie RFP"), and FH3 LLC (Ex. C or "FH3 RFP"), respectively.  On May 11, 2022, Defendants served their responses and objections.  Exs. E-G.[3]  Counsel met and conferred by telephone on May 20, June 7, and June 10, 2022, and over that period exchanged numerous emails regarding their positions, which resulted in the resolution of the vast majority of disputed issues and the narrowing of others. *See* Ex. H.

On June 10, the parties entered into an agreement stipulating to "a seven-day extension of time for Plaintiffs to present to the Court by motion any discovery disputes that (a) relate to Defendants' responses and objections to Plaintiffs' first sets of requests for production and requests for admissions and (b) are governed by Local Rule 26.1(g)(1)(a)."  Ex. I at 1.[4]  On June 17,

---

[3]  Plaintiffs also served Requests for Admission on various Defendants, and Defendants served responses and objections, but this motion is directed only at Defendants' objections and responses to the Document Requests.

[4]  The parties further stipulated that, because each had yet to identify any "purported deficiency concerning" the others' position on the appropriate search terms and custodians for searching for and producing electronically stored information ("ESI")—for those requests for which Defendants have agreed to produce subject to agreed-upon search terms and custodians—the 30-day period identified in Local Rule 26.1(g)(1)(c) "has not yet been triggered."  Ex. I at 2.  The parties agree that "[i]f and when any party believes the ongoing negotiations regarding such search terms and custodians are no longer fruitful, any party may inform the other of this belief, and that will begin the 30 day clock under Local Rule 26.1(g)(1)(c)."  *Id.*  For this reason, this motion to compel

following further productive negotiations, the parties entered into another stipulation, pursuant to which the parties agreed that "any outstanding discovery disputes relating to Defendants' objections and responses to Plaintiffs' first sets of discovery requests shall be governed by Local Rule 26.1(g)(1)(c)," that the "parties' good faith meet-and-confer process relating to these requests is ongoing," and that, "[a]s a result, there is not yet any 'purported deficiency concerning' these issues under Local Rule 26.1(g)(1)(c)," such that "the 30-day period identified in Local Rule 26.1(g)(1)(c) has not yet been triggered."  Ex. J at 1.  Moreover, "to the extent the 30-day period (extended to 37 days by prior stipulation) identified in Local Rule 26.1(g)(1)(a) applies (though the parties believe it does not), there is good cause to extend the deadline."  *Id.*  Finally, the parties agreed that "[i]f and when any Party believes their ongoing negotiations are no longer fruitful, any Party may inform the other of this belief in writing not less than three (3) days prior to filing a motion, and the date the Party is so informed of this belief will begin the 30-day clock under Local Rule 26.1(g)(1)(c)."  *Id.*

The parties then continued to meet and confer in good faith, in the course of which they further narrowed their disputes relating to the Document Requests, but reached impasse on a narrow set of issues, namely: (1) production of documents and communications relating to Defendants' personal and business relationships with one another (*see* PBA RFP 20/Frisbie Group RFP 19/FH3 RFP 18); (2) production of documents and communications relating to development deals between and among individual Defendants, representatives of PBA, representatives of Frisbie Group and/or PBA or Frisbie Group (*see* PBA RFP 21/Frisbie Group RFP 20/FH3 RFP 19); and (3) production of text messages without the use of search terms from certain key time periods and among a narrow set of six custodians.  *See generally* Ex. H.

In their Motion to Dismiss, Defendants argued, *inter alia*, that Plaintiffs had not sufficiently alleged facts supporting the existence of relationships among the members of the RICO enterprise and "longevity sufficient to permit those associates to pursue the enterprise's purpose."  Dkt. 54 (Motion to Dismiss Reply) at 2-3.  Yet, faced with the prospect of producing documents supporting these allegations, Defendants refuse to cooperate.

---

does not address search terms or custodians.  Should the parties reach an impasse in their negotiation of search terms and custodians, Plaintiffs will file a timely motion to compel as appropriate at that time.

On July 6, Plaintiffs informed Defendants that they believed the parties had reached an impasse on these three issues.[5]

## LEGAL STANDARD

### III.     Motion to Compel

The Federal Rules of Civil Procedure "strongly favor full discovery whenever possible." *Farnsworth v. Procter and Gamble Co.*, 758 F.2d 1545, 1547 (11th Cir. 1985).   Rule 26(b) therefore permits a party to obtain discovery of "any nonprivileged matter that is relevant to any party's claim or defense."  Fed. R. Civ. P. 26(b).

When considering a party's objections to discovery requests, "[t]he law in the Eleventh Circuit makes clear that boilerplate discovery objections are tantamount to no objection being raised at all."  *Rivera v. 2K Clevelander, LLC*, 2017 WL 5496158, at *4 (S.D. Fla. 2017); *see also Spencer v. City of Orlando, Florida*, 2016 WL 397935, at *2 (M.D. Fla. Feb. 2, 2016) (concluding that objections that are "are too vague and nonspecific" fail to "preserve any objection to the requested discovery.").   Instead, objections to discovery must be "plain enough and specific enough so that the court can understand in what way the [discovery is] alleged to be objectionable." *Panola Land Buyers Assoc. v. Shuman*, 762 F.2d 1550, 1559 (11th Cir. 1985).

In considering a challenge to the relevance of a discovery request, the Court must consider that "relevance for discovery purposes is much broader than relevance for trial purposes."  *Drone Nerds Franchising, LCC v. Childress*, 2021 WL 7543800, at *3 (S.D. Fla. Nov. 15, 2021) (citation omitted).   "[I]nformation can be relevant and therefore discoverable, even if not admissible at trial, so long as the information is reasonably calculated to lead to the discovery of admissible evidence." *Adelman v. Boy Scouts of Am.*, 276 F.R.D. 681, 689 (S.D. Fla. 2011).   Because "the purpose of discovery is to allow a broad search for facts, the names of witnesses, or any other matters which may aid a party in the preparation or presentation of his case," *id.*, courts consider "relevant" for purposes of discovery "any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case," *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978); *see also Woodard-CM, LLC v. Sunlord Leisure Prods., Inc.*, 2022 WL 892995, at *12 (S.D. Fla. Feb. 10, 2022) ("Information is relevant if it is 'germane, conceivably helpful to plaintiff, or reasonably calculated to lead to admissible evidence.'" (citation omitted)).

---

[5]   Although the parties have continued to communicate, *see* Ex. H at 1–3, those communications have only confirmed that the parties remain at an impasse.

"Discovery should ordinarily be allowed under the concept of relevancy unless it is clear that the information sought has no possible bearing on the subject matter of the action." *Companhia Energetica Potiguar v. Catepillar, Inc.*, 307 F.R.D. 620, 627 (S.D. Fla. 2015) (citation omitted).

Challenges to the breadth, particularity, and burden of discovery requests must meet a similarly high bar. "Objections that state that a discovery request is vague, overly broad, or unduly burdensome are, standing alone, meaningless." *Sallah v. Worldwide Clearing LLC*, 855 F. Supp.2d 1364, 1376 (S.D. Fla. 2012) (internal quotation marks omitted). Instead, "[a] party objecting on these grounds must explain the specific and particular way in which a request is vague, overly broad, or unduly burdensome." *Id*.

A request for production is overly broad when it asks for documents that are not relevant to the action. *Sorvillo v. Ace Hardware Corporation*, 2014 WL 12616972, at *2 (M.D. Fla. July 30, 2014). Terms objected to on the basis of vagueness of ambiguity should be interpreted "using common sense and ordinary meanings." *O.L. v. City of El Monte*, 2021 WL 926105, at *14 (C. D. Cal. Jan. 11, 2021). These terms must be interpreted in context, not in a vacuum. *See Deiparine v. Siemens Med. Sol. USA, Inc.*, 2011 WL 13298893, at *9, *11, *16 (M.D. Fla. Nov. 21, 2011) (holding that objected-to terms were "not vague and ambiguous when read in context"). "[C]laims of undue burden should be supported by a statement (generally an affidavit) with specific information demonstrating how the request is overly burdensome." *Sallah*, 855 F. Supp. 2d at 1376.

## IV. Civil RICO

"A plaintiff asserting a RICO claim must allege the existence of an enterprise." *Crowe v. Henry*, 43 F.3d 198, 204 (5th Cir. 1995). A RICO enterprise is defined as "a group of persons associated together for a common purpose" and "is proved by evidence of an ongoing organization." *United States v. Turkette*, 452 U.S. 576, 583 (1981). "A RICO enterprise can either be a legal entity or an association in fact." *Catano v. Capuano*, 2019 WL 3035752, at *5 (S.D. Fla. July 11, 2019). An association-in-fact enterprise must possess three qualities: "a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose." *Boyle v. United States*, 556 U.S. 938, 946 (2009). It is "simply a continuing unit that functions with a common purpose." *Id*. "[F]ederal courts have routinely recognized association-in-fact enterprises made up of individuals who had relationships that predated their schemes." *Al-Rayes v. Willingham*, 914 F.3d 1302, 1308 (11th Cir. 2019).

**ARGUMENT**

I.   **Plaintiffs' Request for Documents Relating to Defendants' Personal and Business Relationships is Relevant to Plaintiffs' RICO Claim and Not Vague or Ambiguous.**

   A.   *The Specific Item to Be Compelled*

Plaintiffs' Twentieth Request for Production from Defendant PBA seeks from PBA "[a]ll Documents and Communications relating to the personal and business relationships between and among Defendants," as does Plaintiffs' Nineteenth Request for Production from Defendant Frisbie Group[6] and Plaintiffs' Eighteenth Request from Defendant FH3.  Ex. A at 13; *see also* Ex. B at 12; Ex. C at 12.

   B.   *The Specific Objection*

Following discussions and negotiations in the meet and confer process, Defendants' remaining specific objections to these Requests are to the relevance of the information sought as well as the specificity of the terms "personal relationship" and "business relationship."  Neither of these objections justify Defendants' withholding of documents responsive to these Requests.

   C.   *The Reasons Assigned As Supporting the Motion*

First, the documents and communications sought in this request are relevant to Plaintiffs' RICO claim because they establish a relationship between the Defendants beyond the real estate transaction at issue in this case, which supports the existence of an enterprise.  *See Hpc US Fund 1 v. Wood*, 2014 WL 12496558, at *2 (S.D. Fl. June 11, 2014)  (plaintiff's allegation that defendants' relationship existed for at least two years supported plaintiff's claim that a RICO enterprise existed between them).

In the Amended Complaint, moreover, Plaintiffs specifically allege that each RICO Defendant has "conducted and participated in the operation and management of the enterprise," through, *inter alia*, "business," "familial," and "social relationships" with other Defendants, ¶ 105(a)-(g), and that an enterprise exists between Defendants because, among other things, "[t]he members of the Enterprise have long-standing and ongoing relationships rooted in familial connections, common ownership, common control, ongoing business dealings, and mutual interest and participation in common activities," ¶ 100.  Moreover, responsive documents may undermine Defendants' credibility, as Defendants have denied having business and personal relationships

---

   [6]  This request was erroneously labeled as Request No. 18.  The parties both recognize that it is in fact Plaintiff's Nineteenth Request.

with one another for more than the past five years.  *See, e.g.*, Ex. K at 12; Ex. L at 2–4.  Plaintiffs have reason to believe this is untrue.  Documents showing that Patrick Koenig had brokered real estate transactions for Frisbie Group in 2016, or that Suzanne Frisbie had brokered them for PBA in 2017, for example, would both disprove this assertion and bolster Plaintiffs' RICO enterprise allegations.  Those documents, to the extent they exist, are therefore relevant and discoverable.

Second, the terms "business relationship" and "personal relationship" are not unduly vague or ambiguous.  As an initial matter, that Defendants understood these terms enough to deny the existence of such relationships in RFA responses demonstrates that the meaning of the terms is sufficiently clear.  *See, e.g.*, Ex. K at 12.  Moreover, during negotiations, Plaintiffs clarified the meaning of, and offered to limit, the term "personal relationships" as follows: "(1) Where at least one representative of PBAU (e.g., Jim Jenkins, Patrick Koenig, or William Fleming) intentionally engaged in an activity or spent time with at least one representative of Frisbie Group (e.g., Robert Frisbie Jr., David Frisbie, or Cody Crowell) for a non-business purpose; OR (2) Communications between at least one representative of PBAU (e.g., Jim Jenkins, Patrick Koenig, or William Fleming) and at least one representative of Frisbie Group (e.g., Robert Frisbie Jr., David Frisbie, or Cody Crowell) related to non-business matters." Ex. H at 33–34.  As for "business relationships," Plaintiffs explained that they believe the term is readily understandable, and that a more specific definition of the term would not be appropriate because it may result in relevant documents not being produced, while only Defendants know the exact nature of any responsive business relationships—and should know that information readily.  *Id.* at 34.  Defendants' business relationships could include serving as brokers on property sales for one another, acting as co-investors in an unrelated business, participating as partners in the same limited partnership, or any of a myriad other arrangements.  Indeed, as discussed in more detail below, Plaintiffs have already independently uncovered evidence demonstrating a business partnership between Defendant Patrick Koenig and the Frisbie Group that would be responsive to these Requests and that Defendants appear to be attempting to hide.  *See infra* p. 11.  Because these documents are relevant to Plaintiffs' RICO claim and thus discoverable, Plaintiffs should not be required to narrow the term "business relationships" in a way that could omit these and other relevant business relationships.

Defendants have refused to produce any documents sought by these Requests. Ex. H at 1, 28–29, 39–40.  Responsive documents and communications should be produced.

II.   **Plaintiffs' Request for Documents Relating to Other Development Deals Between De-
fendants is Relevant to Plaintiffs' RICO Claim.**

   A.   *The Specific Item to Be Compelled*

Plaintiffs' Twenty-First Request for Production from Defendant PBA seeks from PBA
"[a]ll Documents and Communications relating to any past, present, planned, or potential Devel-
opment deals or partnerships between or involving You and any other Defendant or Defendants."
Ex. A at 13.  Plaintiffs' Twentieth Request for Production from Defendant Frisbie Group[7] likewise
seeks "[a]ll Documents and Communications relating to any past, present, planned, or potential
Development deals or partnerships between or involving You and PBA," Ex. B at 12, as does
Plaintiffs' Nineteenth Request from Defendant FH3, Ex. C at 12.[8]

   B.   *The Specific Objection*

During the parties' meet and confer discussions, Defendants represented that only one other
past, present, planned, or potential Development deal or partnership exists between the entity PBA
(exclusive of its officers, directors, and other representatives) and the entity Frisbie Group (exclu-
sive of its officers, directors, and other representatives).  Ex. H at 40.  Defendants' RFA responses
similarly admitted the existence of this deal.  Ex. K at 13; Ex. M at 4; Ex. N at 4; Ex. O at 3.
Defendants agreed to produce documents related to that deal and/or partnership, subject to agree-
ment on search terms and custodians.  Ex. H at 1–2, 29, 40.  Defendants refused, however, to
produce any documents or communications relating to—or to confirm the existence or non-exist-
ence of—any past, present, planned, or potential Development deals or partnerships between and
among any other Defendants, or between and among officers, directors, or other representatives of
even PBA and Frisbie Group, asserting that these deals and/or partnerships are not relevant.  *See
id*. at 1–2, 29.

   C.   *The Reasons Assigned As Supporting the Motion*

Documents and communications showing that the individual Defendants previously en-
gaged in, are currently engaged in, or are planning development deals or partnerships with one
another and/or with the entity Defendants, or that officers, directors, or other representatives of the

---

[7]   This request was erroneously labeled as Request No. 19.  The parties both recognize that it is in fact Plaintiff's
Twentieth Request.

[8]   As defined in the Requests, the term "PBA" includes any of the university's "divisions, subsidiaries, officers,
directors, managers, partners, members, employees, contractors, attorneys, and agents, and any person acting or
engaged for or on its behalf."  Ex. A at 4.  The definitions of Frisbie Group and FH3 are of a piece.  *See* Ex. B at
5; Ex. C at 3.

entity Defendants did so with another entity Defendant or with one another, demonstrate the type of pre-existing, ongoing and/or contemplated future business relationship that is relevant to Plaintiffs' RICO claim, and in particular to their enterprise allegations.  *See Libertad v. Welch*, 53 F.3d 428, 443 (1st Cir. 1995) (evidence sufficient to show that an enterprise exists includes, *inter alia*, "financial ties"); *Wood*, 2014 WL 12496558, at *2; *cf. H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 242 (1989) (plaintiff meets burden of establishing open-ended continuity by showing, *inter alia*, that "the predicate acts or offenses are part of an ongoing entity's regular way of doing business").

In the Amended Complaint, Plaintiffs alleged on information and belief that Frisbie Group has "done multiple deals with PBA" and that these deals "built the relationships and provided the avenues of communications that enabled, provided an opportunity for, and resulted in the scheme to defraud Plaintiffs."  ¶ 69.  Plaintiffs also allege that PBA's participation in the Enterprise, including "through its agent officers and employees," resulted in "additional potentially lucrative deals with the Frisbie Group," ¶ 105(e), as did Defendant Fleming's participation in the Enterprise, ¶ 105(g).  Defendants' admission of the existence of another real estate transaction between PBA and Frisbie Group has already uncovered important evidence supportive of Plaintiffs' RICO claim.

Furthermore, Plaintiffs have independently uncovered evidence of business dealings between Defendants that are responsive to these Requests, and specifically to the categories of development deals and partnerships about which Defendants are refusing to produce documents. Specifically, Flatura LLC, a Florida domiciled company, was first organized in September 2021. *See* Ex. P.  Flatura was registered to 221 Royal Poinciana Way, Suite 1, a property owned and developed by the Frisbie Group.  Both the Frisbie Group and Flagler Realty, Patrick Koenig's real estate company, were listed as officers of Flatura as of October 2021.  *See* Ex. Q at 4.  But between October 2021 and April 2022—during which time Plaintiffs filed the instant law suit—Koenig's real estate company was removed as officer of Flatura.  *See* Ex. R at 1.  As of April 2022, the company's officers are David Frisbie and John MacConnell, who are both affiliated with the Frisbie Group.  *Id*.  This evidence shows not only that there are other "Development deals or partnerships," Ex. A at 13, that are responsive to these Requests—and about which Plaintiffs have a right to obtain documents—but also that Defendants appear to have tried to cover up these ventures when they realized Plaintiffs would likely be bringing suit and that these deals would support Plaintiffs' claims.

Responsive documents relating to "past, present, planned, or potential Development deals or partnerships," Ex. A at 13, between the individual Defendants and/or individual Defendants and the entity Defendants, or officers and representatives of the entity Defendants, are relevant and thus discoverable. *Oppenheimer Fund*, 437 U.S. at 351.

**III.    Plaintiffs' Request for Full Production of Text Messages Across a Limited Time Period and Among a Narrow Set of Custodians Is Required to Ensure all Relevant and Discoverable Text Messages Are Produced.**

      *A.     The Specific Item to Be Compelled*

In connection with Defendants' agreement to produce documents and communications responsive to various Requests—including but not limited to Requests relating to the development of the parcels at issue (*e.g.*, Ex. A at 10) and seeking communications between PBA and Frisbie Group representatives (*e.g.*, Ex. A at 11)—Plaintiffs seek the production of all text messages that meet the following criteria: the text message included (as a sender or recipient) at least one of three specific PBA representatives (Patrick Koenig, William Fleming, and Jim Jenkins) and at least one of three specific Frisbie Group representatives (Cody Crowell, David Frisbie, and Robert Frisbie Jr.), and was sent between January 1, 2015 and August 1, 2020, between May 1 and May 30, 2021, or between November 1 and November 30, 2021.

      *B.     The Specific Objection*

At the parties' June 7, 2022 meet and confer, Defendants agreed in principle with Plaintiffs' proposal that an alternative method, other than search terms, may be appropriate for the identification and production of certain text messages due to the fact that text messages often use shorthand, informal abbreviations and spellings, and other features not amenable to identification of responsiveness through search terms. *See* Ex. H at 30–31. At the parties' June 10 continuation of the meet and confer, Defendants reversed course and stated that upon further reflection they propose using search terms for all text messages, and in a June 13 email "reject[ed] the request that no search criteria be developed" for the production of certain text messages. *See id.* at 28. Specifically, Defendants stated that, notwithstanding Plaintiffs' proposal to limit the non-search production of texts to those involving texts between six individuals and during specific time periods, Plaintiffs' request was "overbroad," and that search terms should be required for all text messages to "avoid the production of totally nonresponsive, irrelevant communications." *Id.*; *see also id.* at 2.

      *C.     The Reasons Assigned As Supporting the Motion*

Defendants' objections are not well-founded.  The text message communications in question will demonstrate that these key individuals established personal and business relationships well before Spring 2019; that through those relationships formed an enterprise that, *inter alia*, worked to fraudulently steal Plaintiffs' development deal, misappropriated Plaintiffs' trade secrets, and used fraud and extortion to cover up their acts and push through their own development at great injury to Plaintiffs; and that their personal and business relationships continued for a significant period of time and for a common purpose.  For the same reasons, these text messages will also support Plaintiffs' fraud, tortious interference, theft of trade secrets, and other claims.

Plaintiffs' request for such texts is narrowly targeted.  Despite pleading a RICO enterprise consisting of at least eleven individuals—each of whom played an important role in the acts alleged—this request seeks only the full set of texts running between two sets of individuals: the three central participants on the PBA side (Fleming, Koenig, and Jenkins) on one hand, and the three central Frisbie participants (David Frisbie, Robert Frisbie Jr., and Crowell) on the other. Each of these individuals other than Jenkins is mentioned by name between 25 and more than 50 times in the Amended Complaint, and Jenkins was the Chairman of PBA's Board during the relevant period and is alleged to be a key participant and member of the RICO enterprise.  Plaintiffs also seek a narrowly targeted date range.  The period from January 1, 2015 to August 1, 2020 is narrowly targeted to capture the beginning of the relationships between these key individuals that led to the formation of the enterprise, through the completion of the key events that form the basis of Plaintiffs' claims alleged in the Amended Complaint.  The periods between May 1, 2021 and May 30, 2021, and between November 1, 2021 and November 30, 2021, were carefully selected to capture communications relating to extortionary threats alleged to have made to Plaintiffs during these months.  *See* ¶¶ 87, 91.  Plaintiffs recognize that numerous texts may have been sent between the relevant parties once Defendants began development; sensitive to this reality, Plaintiffs exclude from non-search term production *fourteen months* of potentially relevant text messages from August 1, 2020 to December 2021.  Further, Plaintiffs do not believe their narrow request would impinge on the parties' intimate or personal communications, as only text messages that include both at least one of the three designated individuals on the PBA side and at least one of the three designated individuals on the Frisbie side would be produced without search terms.  Nor is there a significant risk of "totally irrelevant" communications or any significant burden to Defendants, as David Frisbie, Robert Frisbie Jr., and Cody Crowell each deny having socialized with William

Fleming, and only admit to meeting Koenig in a public social setting to discuss business matters. *See* Ex. M at 3; Ex. N at 3; Ex. O at 2.

Plaintiffs' narrow and targeted approach here is more than reasonable given the limitations inherent in applying search terms to text message productions. Due to the informal nature of text messages, the relevant parties likely used shorthand, informal abbreviations and spellings that Plaintiffs could not predict. Moreover, Plaintiffs allege, among other things, theft, fraud, and extortion, and it is likely that the parties used various euphemisms, codewords, and the like to communicate about the relevant events. Accordingly, in the interest of compromise, Plaintiffs' already risk not obtaining potentially relevant text messages by agreeing to the use of search terms for texts outside of these narrow constraints.[9] As such, the Court should endorse this narrow request targeting the key individuals and time periods in the case.

## CONCLUSION

The Court should grant Plaintiffs' motion and direct Defendants to produce the requested documents and communications.

## CERTIFICATE OF CONFERENCE

I hereby certify that, pursuant to Local Rule 7.1(a)(3), plaintiffs' counsel conferred with Defendants about the relief sought herein via telephone on May 20, June 7, June 10, and June 13, 2022 and via electronic mail on May 13, 16, 17, and 31; June 2, 6, 9, 10, 13, 14, 15, 16, 17, 23, 24, 29, and 30; and July 1, 5, 6, 8, and 10, 2022. Defendants' counsel informed Plaintiffs' counsel that they oppose the relief sought in this Motion.

By: */s/ Sean Domnick*
Sean C. Domnick

Dated:
July 10, 2022

DOMNICK CUNNINGHAM & WHALEN

By: */s/ Sean Domnick*
Sean C. Domnick

---

[9] Plaintiffs respectfully reserve the right to seek the production of text messages through non-search term means more broadly if, upon review of produced texts or otherwise in the course of discovery Plaintiffs have reason to believe there are additional relevant text messages that have not been captured by the search terms.

sean@dcwlaw.com
Matthew T. Christ
  mtc@dcwlaw.com

2401 PGA Boulevard, Suite 140
Palm Beach Gardens, FL 33410
Telephone: (561) 625-6260
Facsimile: (561) 625-6269

GIBSON, DUNN & CRUTCHER LLP

Reed Brodsky
  RBrodsky@gibsondunn.com
  (*pro hac vice*)
Akiva Shapiro
  AShapiro@gibsondunn.com
  (*pro hac vice*)
Cate McCaffrey
  CMcCaffrey@gibsondunn.com
  (*pro hac vice*)
Michael McQueeney
  MMcQueeney@gibsondunn.com
  (*pro hac vice*)

200 Park Avenue
New York, NY 10166-0193
Telephone: (212) 351-4000
Facsimile: (212) 351-6235

*Attorneys for Plaintiffs Two Roads Develop-
ment LLC, Trilar Holdings LLC and Flagler
South Development LLC*

**CERTIFICATE OF SERVICE**

I hereby certify that on July 10, 2022, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all Counsel of Record or *pro se* parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

By: */s/ Sean Domnick*
Sean C. Domnick

## SERVICE LIST

Scott Hawkins, Esquire
**JONES FOSTER P.A.**
505 South Flagler Drive, Suite 1100
West Palm Beach, Florida 33401
Tel.: (561) 659-3000
Fax: (561) 650-5300
shawkins@jonesfoster.com

*Counsel for Defendants Palm Beach Atlantic
University Inc., William M.B. Fleming, Jr.,
and Patrick C. Koenig*

Eric M. George (*pro hac vice*)
Keith J. Wesley (*pro hac vice*)
Ryan Q. Keech (*pro hac vice*)
Serli Polatoglu (*pro hac vice*)
**ELLIS GEORGE CIPOLLONE
O'BRIEN ANNAGUEY LLP**
2121 Avenue of the Stars, Suite 2800
Los Angeles, CA 90067
Tel.: (310) 274-7100
Fax: (310) 275-5697
egeorge@egcfirm.com
kwesley@egcfirm.com
rkeech@egcfirm.com
spolatoglu@egcfirm.com

*Counsel for Defendants Palm Beach Atlan-
tic University Inc., Frisbie Group LLC, FH3
LLC, William M.B. Fleming, Jr., Patrick C.
Koenig, David W. Frisbie, Robert N. Fris-
bie, Jr., and Cody Crowell*

Sean C. Domnick, Esquire
Matthew T. Christ, Esquire
**DOMNICK CUNNINGHAM &
WHALEN**
2401 PGA Boulevard, Suite 140
Palm Beach Gardens, FL 33410
Tel.: (561) 625-6260
Fax: (561) 625-6269
mtc@dcwlaw.com
sean@dcwlaw.com

Reed Brodsky (*pro hac vice*)
Akiva Shapiro (*pro hac vice*)
Cate McCaffrey (*pro hac vice*)
Michael McQueeney (*pro hac vice*)
**GIBSON, DUNN & CRUTCHER LLP**
200 Park Avenue
New York, NY 10166-0193
Tel.: (212) 351-4000
Fax: (212) 351-6235
RBrodsky@gibsondunn.com
AShapiro@gibsondunn.com
CMcCaffrey@gibsondunn.com
MMcQueeney@gibsondunn.com

*Counsel for Plaintiffs Two Roads Develop-
ment LLC, Trilar Holdings LLC and Flagler
South Development LLC*

John K. Shubin, Esquire
Deana D. Falce, Esquire
Jamie L. Katz, Esquire
**SHUBIN & BASS, P.A.**
46 S.W. First Street, Third Floor
Miami, Florida 33130
Tel.: (305) 381-6060
Fax: (305) 381-9457
jshubin@shubinbass.com
dfalce@shubinbass.com
jkatz@shubinbass.com

*Counsel for Defendants Frisbie Group LLC,
FH3 LLC, David W. Frisbie, Robert N. Fris-
bie, Jr., and Cody Crowell*