UNITED STATES DISTRICT

COURT SOUTHERN DISTRICT

OF FLORIDA WEST PALM

BEACH DIVISION

CASE NO. 9:21-CV-82067-CIV (CANNON)

TWO ROADS DEVELOPMENT LLC,
TRILAR HOLDINGS LLC, and FLAGLER
SOUTH DEVELOPMENT LLC,

    Plaintiffs,

v.

PALM BEACH ATLANTIC UNIVERSITY
INC., FRISBIE GROUP LLC, FH3 LLC,
WILLIAM M.B. FLEMING, JR., PATRICK
C. KOENIG, DAVID W. FRISBIE,
ROBERT N. FRISBIE JR., and CODY S.
CROWELL,

    Defendants.

**PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION
TO COMPEL DISCOVERY FROM DEFENDANTS**

Page(s)

CONTENTS

INTRODUCTION ................................................................................................................. 1

ARGUMENT ......................................................................................................................... 2

    I.    **Plaintiffs' Motion to Compel Complies with Local Rule 26.1(g)(2).** ........................ 2

    II.   **Plaintiffs' Request for Documents Relating to Defendants' Personal and Business Relationships is Relevant to Plaintiffs' Claims and Sufficiently Particularized and Clear.** ................................................................................... 4

    III.  **Defendants Admit that They Have Additional Information About Other Development Deals Between Defendants, Yet They Refuse to Produce.** ................ 6

    IV.  **Plaintiffs' Request for Full Production of Text Messages Across a Limited Time Period and Among a Narrow Set of Custodians Is Appropriate and Timely.** ........................................................................................................... 8

CONCLUSION ..................................................................................................................... 10

## TABLE OF AUTHORITIES

Page(s)

### CASES

*Elite Mitigation Servs., LLC v. Westchester Surplus Lines Ins. Co.*,
    2020 WL 6122068 (N.D. Fla. Apr. 6, 2020)..............................................................................5

*Just Play, LLC v. Fitzmark, Inc.*,
    Case No. 20-cv-80663 Dkts. 29................................................................................................4

*Moore v. Westgate Resorts*,
    2020 WL 113352 (E.D. Tenn. Jan. 9, 2020)............................................................................5

### RULES

Fed. R. Civ. P. 26(b) ......................................................................................................................1

Local R. 26.1(g)(2) ........................................................................................................................2

## INTRODUCTION

Defendants are desperate to keep evidence of their RICO conspiracy from Plaintiffs. First, they refused to produce three categories of documents that would support Plaintiffs' RICO claim, including documents demonstrating business and personal relationships between the Defendants, evidence of other deals between the Defendants, and text messages between certain key Defendants during specific periods of time, forcing Plaintiffs to file the instant motion to compel. Next, they filed an "expedited" motion to stay just this discovery—despite the fact that discovery had already been proceeding without issue for months and Defendants have otherwise agreed to produce documents and sit for depositions—and failed to timely file an opposition to the instant motion. That motion to stay was appropriately denied. Now, Defendants have filed their belated opposition ("Opp."), but fail to meaningfully engage with Plaintiffs' arguments or case law. Indeed, Defendants do not address or attempt to distinguish *any* of Plaintiffs' cited cases explaining why each of the three categories of requested documents are relevant to proving up Plaintiffs' RICO and other claims, nor do they meaningfully engage with Plaintiffs' detailed presentation of the allegations of the Amended Complaint and evidence already uncovered by Plaintiffs supporting the relevance and importance of these categories of documents to the claims asserted.

The Federal Rules of Civil Procedure allow a party to obtain discovery of "any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b). This right extends to *all* claims brought in the Amended Complaint—including Plaintiffs' RICO claims. Instead of facing up to this central justification for the requests or otherwise materially responding on the merits, Defendants mischaracterize the nature of the parties' negotiations—claiming the parties are not at an impasse—and repeatedly hide behind the Local Rule 26.1(g)(2) requirement that the moving party describe the items to be compelled and objections. But Plaintiffs' motion complies with the local rule in all respects—and even if it didn't, any technical noncompliance would not justify denial of the motion. And the impasse Defendants deny is clear from the face of the parties' briefing. Plaintiffs seek all text messages between certain custodians on certain dates. Defendants refuse to produce them. Same thing with evidence of Defendants' business and professional relationships. And Plaintiffs request evidence of deals between the Defendant entities, inclusive of their representatives. Defendants refuse to produce, disingenuously claiming that there are no deals between the corporate PBA and Frisbie Group entities involving an "investment agreement," when Plaintiffs' request was not limited to the corporate entities or that subset of

1

deals. At the same time, Defendants have now admitted that one of the PBA-affiliated Defendants, Patrick Koenig, has coordinated on a potential deal with Frisbie Group *and* served as a broker on a separate Frisbie Group transaction. Opp. 12 n.8. But it took the instant motion presenting evidence Plaintiffs developed on their own, and calling Defendants out for misleadingly (if not outright falsely) claiming no such deals existed, to force that admission. Yet Defendants refuse to produce even documents relating to these two deals. And, tellingly, Defendants do not maintain that these are the only deals between representatives of Frisbie Group and representatives of PBA.

Defendants seem to believe that they can claim there's "nothing to see here" and the Court will look away. They cannot do so. The motion should be granted.

## ARGUMENT

### I. Plaintiffs' Motion to Compel Complies with Local Rule 26.1(g)(2).

Defendants accuse Plaintiffs of "indisputabl[y] fail[ing] to satisfy their burden under Local Rule 26.1(g)(2)." Opp. 9. Not so. It is only Defendants' twisted interpretation of the local rule that lends even an iota of credence to this argument.

Defendants read Local Rule 26.1(g)(2) as requiring the moving party to transpose in full each request at issue, including the full text of all definitions relevant to the request. The rule imposes no such requirement. On its face, the rule states that a party seeking to compel discovery must articulate "verbatim the specific *item* to be *compelled*," not the full set of items requested, let alone the full text of each request that is in any way implicated in the dispute. Local R. 26.1(g)(2). Indeed, because the parties have negotiated these production requests extensively prior to Plaintiffs' filing the instant motion, the items requested and the items to be compelled are not one and the same; the former category is much broader than the latter. Plaintiffs excerpted their requests, quoting verbatim only the portion of each request still in dispute; this fully complies with the rule.[1]

Local Rule 26.1 further requires the moving party to articulate the "specific objections raised." *Id.*[2] Defendants interpret this rule as demanding a full reprinting of each of their boilerplate written objections to the relevant request for production. The Rule imposes no such

---

[1] Furthermore, Plaintiffs provided the Court with full copies of both the requests and the responses and objections in conjunction with the motion to compel, and cited to those full copies in the motion. *See* Dkt. 56-1–3; 56-5–7. Thus, even if the local rule required that the parties provide the Court with the verbatim text of each full request and response—which it does not—Plaintiffs complied.

[2] Local Rule 26.1 also requires the moving party to provide "the reasons assigned as supporting the motion" as to the items requested. This requirement was met in Plaintiffs' motion, and Defendants do not argue otherwise.

requirement. Nor would such a requirement make any sense. Between Defendants' May 11 responses and objections and Plaintiffs' July 10 motion to compel, the parties exchanged at least 40 emails and engaged in four lengthy meet and confers, all with the express purpose of narrowing the issues in dispute. And they accomplished just that. As Defendants acknowledge, Opp. 4, both parties engaged in good faith narrowing of their positions so that, by July 10, very few disputes remained. Plaintiffs have described those remaining disputes with particularity in their motion, including the specific objections raised by Defendants to the extent they remain unresolved. The objections omitted from the motion to compel are only those that are no longer in dispute because Plaintiffs clarified and narrowed the scope of the request or because Defendants dropped the objection. Objections not in dispute do not require the Court's attention or intervention. To present them to the Court would not only waste the Court's time, but render the entire meet and confer process, and the parties' joint efforts to narrow their disputes, meaningless. Defendants may disagree with Plaintiffs' characterization of the dispute remaining between them. But their position that the motion to compel was legally deficient for omitting to quote in full the myriad pro forma responses and objections which are no longer in dispute defies logic and lacks support in the law.[3]

Finally, that Plaintiffs did not file a stand-alone request for the production of text messages misses the mark and misconstrues the record. Plaintiffs' third request for production from PBA, with which Defendants have agreed to comply, *see* Dkt. 56-9 at 36, requests from PBA all "communications" "with or relating to the Frisbie Group or any of its members, officers, employees, or agents, including but not limited to David W. Frisbie, Robert Frisbie Sr., Rick Frisbie, Robert N. Frisbie Jr., Suzanne Frisbie, Cody S. Crowell, Frances Frisbie Criddle, Richard D.W. Frisbie, Ashley B.C. Frisbie, or Peter Reed, from January 1, 2010 forward." Dkt. 56-2 at 11. The term "communications," in turn, is defined to include text messages. *Id.* at 2. Likewise, Plaintiffs' second

---

[3] Defendants claim that "Plaintiffs fail to acknowledge" remaining objections to the requests, including that they are "unreasonably broad, indeterminate, vague, ambiguous, seek[] privileged and confidential documents, [and are] unduly burdensome and harassing." Opp. 10. But, where relevant, Plaintiffs have substantively addressed in their motion, for example, objections of vagueness or overbreadth; they are not required to quote in their motion every synonym (e.g., "indeterminate, vague, ambiguous") used by Defendants in their boilerplate objections. Moreover, Plaintiffs focused their discussion on objections that Defendants pressed in the meet and confer process and that the parties discussed and *failed* to resolve. In contrast, for example, in the June 7 meet and confer, counsel for Plaintiffs assured Defendants that Plaintiffs were not seeking privileged documents, subject to a privilege log. *See* Shapiro Decl. ¶ 6. Plaintiffs' counsel also noted the court-ordered protective order the parties have in place, Dkt. 10, which would protect any confidential documents produced. *See* Shapiro Decl. ¶ 7. Defense counsel acknowledged these assurances, and also noted that they would not withhold documents on the basis of confidentiality. *See* Shapiro Decl. ¶ 7. Thus, some of what Defendants claim are remaining objections were in fact resolved in the meet and confer process.

request from Frisbie Group seeks all "communications"—including text messages—"with or relating to Palm Beach Atlantic University, or any of its employees, agents, Trustees/Board Members, or any individual acting on its behalf, including but not limit[ed] to William M.B. Fleming Jr., James C. (Jim) Jenkins, Patrick C. Koenig, Larry B. Alexander, John Kautz III, Peter Reed, or William Blodgett, from January 1, 2010 forward." Dkt. 56-3 at 2, 10.  Plaintiffs formally requested the production of the messages at issue, the parties negotiated, and Defendants refused to produce.

In any event, even if the motion to compel were (counterfactually) not entirely aligned with the local rule, that would not be grounds to deny the motion.  This Court has on numerous occasions heard and granted motions to compel that do not comply with the letter of Local Rule 26.1(g)(2).  *See, e.g.*, *Just Play, LLC v. Fitzmark, Inc.*, Case No. 20-cv-80663 Dkts. 29, 38.  If the Court accepts Defendants' characterization of this Rule, it should nevertheless address the motion on the merits.

**II.    Plaintiffs' Request for Documents Relating to Defendants' Personal and Business Relationships Is Relevant to Plaintiffs' Claims and Sufficiently Particularized and Clear.**

Plaintiffs' Twentieth Request for Production from Defendant PBA seeks from PBA "[a]ll Documents and Communications relating to the personal and business relationships between and among Defendants," as does Plaintiffs' Nineteenth Request for Production from Defendant Frisbie Group and Plaintiffs' Eighteenth Request from Defendant FH3.  As explained in Plaintiffs' opening brief, this evidence supports Plaintiffs' RICO claim as it would demonstrate the existence of a RICO enterprise that committed the predicate acts *and* operates outside the commission of those acts. Dkt. 56 at 8–9.  Defendants do not claim otherwise.  Nor do they address any of the supporting case law or Amended Complaint allegations discussed in Plaintiffs' motion.  Instead, Defendants have put their heads in the sand for months on this request, claiming that commonsense definitions of "personal relationships" and "business relationships" are "amorphous" and not sufficiently particularized under Rule 34, and that the motion to compel these documents should be denied on that basis alone.  This Court should reject these evasion tactics.

First, as Plaintiffs have maintained throughout, the terms "personal relationships" and "business relationships" do not require further clarification.  Defendants can use their common sense, and their intimate knowledge of their relationships with one another (which only they have access to at this stage), to determine whether and to what extent they have such relationships.  Second, though not necessary, Plaintiffs provided a clarification and definition of, and offered to limit, the term "personal relationships" to communications between at least one representative of

4

PBA and one representative of Frisbie Group related to non-business matters. Dkt. 56-9 at 33–34. As for "business relationships," Plaintiffs explained that they believe the term is readily understandable, and that a more specific definition would not be appropriate because it may omit certain responsive business relationships, the nature of which only Defendants would know. *Id.* at 39.

Courts expect parties to use common sense and assign phrases their ordinary meaning when responding to discovery requests. *See Elite Mitigation Servs., LLC v. Westchester Surplus Lines Ins. Co.*, 2020 WL 6122068, at *4 (N.D. Fla. Apr. 6, 2020) (discussing a request that sought records used to "calculate damages"). Defendants understood these simple terms enough to deny the existence of such relationships in their RFA responses, and understand these simple terms today. *See, e.g.*, Dkt. 56-12 at 12. In no way are these phrases too amorphous to apply. *See Moore v. Westgate Resorts*, 2020 WL 113352, at *5 (E.D. Tenn. Jan. 9, 2020) (ordering that "Defendants shall provide any documents establishing the formal business relationship between the respective Defendants"). Defendants' case law, which involves vague requests for "all documents relating to claims and defenses" and "all communications between Plaintiffs and any Defendants" is inapposite; precise, understandable terms are at issue here. Responsive documents must be produced.

In seeking to fend off this request, Defendants again twist the record, claiming that Plaintiffs "ignored" their requests to more narrowly define "personal relationships" and "business relationships," implying that Plaintiffs manufactured an impasse. The record reflects the opposite. After Defendants requested clarification on these terms, Plaintiffs maintained that the terms were "understandable and sufficiently specific" without clarification. Dkt. 56-9 at 39. But in a good faith effort to resolve the issue, Plaintiffs nevertheless provided a further explanation and limitation of the definition of personal relationships, and explained why further narrowing of business relationships was not necessary or feasible without Plaintiffs risking relevant documents being excluded. *Id.* at 33–34. When Plaintiffs later flagged this as an outstanding issue regarding which they believed the parties were at an impasse, *id.* at 7, Defendants (apparently either not recalling or ignoring the prior back-and-forth) responded that they were still "awaiting suggested definitions . . . that are consistent with the proper scope of discovery," *id.* at 5. Plaintiffs responded in turn that they had already provided this information. *Id.* at 3. Defendants then reiterated their earlier position, responding that they would only "entertain an appropriately targeted request." *Id.* at 2. Plaintiffs' final email on July 10, articulating its position for a fourth time, speaks for itself: "[W]e have previously provided Plaintiffs' firm position with regard to 'business relationships' and

'personal relationships,' and you again reject that position and state that you are willing to 'consider definitions' that are 'consistent with the proper scope of discovery.' But this is exactly the dispute, as we believe Plaintiffs' previously expressed positions and definitions are 'consistent with the proper scope of discovery.'" *Id.* at 1. Far from ignoring these requests, Plaintiffs engaged on them for months, going in circles with Defendants. Plaintiffs declared an impasse only when it became clear that Defendants were refusing to squarely address the requests or Plaintiffs' explanations, and were instead maintaining their disingenuous position that they were awaiting further information—despite that exact information having been repeatedly provided—in an apparent attempt to forestall the instant motion.

### III. Defendants Admit That They Have Additional Information About Other Development Deals Between Defendants, Yet They Refuse to Produce.

Plaintiffs' Twenty-First Request for Production from Defendant PBA, as well as the corresponding Twentieth Request from Defendant Frisbie Group and Nineteenth Request from Defendant FH3, seeks "[a]ll Documents and Communications relating to any past, present, planned, or potential Development deals or partnerships between or involving You and any other Defendant or Defendants." As explained in Plaintiffs' opening brief, Documents concerning such deals or partnerships would bolster Plaintiffs' RICO claims by evidencing the parties' long-standing and ongoing relationships and dealings, as well as any quid pro quo between the parties rewarding each other for participation in the scheme. Dkt. 56 at 10–12. Such deals—two of which have come to light as a result of this motion—are relevant to Plaintiffs' RICO claim. To hide this evidence, Defendants maintain that they will only produce documents related to the Mango Promenade deal because it is the only deal "reflecting an investment agreement between the entities," and thus the only matter responsive to this request. Opp. 5; Dkt. 56-9 at 5, 29. But this assertion assumes the truth of their (incorrect) position that no other deals are "relevant," and in doing so, twists the Request—and attempts to sidestep the production of responsive documents—in two key ways.

First, the Request does not seek documents relating only to deals reflecting "investment agreements." Defendants' suspiciously specific and calculated formulation suggests additional deals between PBA and Frisbie Group that did not reflect (undefined) "investment agreements." Such agreements are highly relevant, and documents relating to them should be produced.

Second, the Request does not seek documents relating only to deals and partnerships between the PBA and Frisbie Group corporate entities alone. Rather, it seeks evidence of such deals and partnerships between "You" (from each of PBA, Frisbie Group, and FH3, respectively) and

6

"any other Defendant or Defendants." "You" is defined in each request to include the relevant entity as well as "any of its divisions, subsidiaries, officers, directors, managers, partners, members, employees, contractors, attorneys, and agents, and any person acting or engaged for or on its behalf." Dkt. 56-2 at 5. And "Defendants" of course includes the named Defendants, many of whom are individuals—including Patrick Koenig—as well as the corporate entities (which again are defined to include representatives). Plaintiffs have maintained from the very beginning of the meet and confer process that they seek discovery relating to deals between and among PBA and its representatives and Frisbie Group and its representatives. Plaintiffs seek this discovery because they have pleaded a RICO enterprise involving PBA, Frisbie Group, and numerous individuals associated with the two entities. Evidence that Patrick Koenig (a key player in the RICO scheme) and Frisbie Group recently worked on a real estate deal demonstrates that the Enterprise has a continuing operation separate from the predicate acts pleaded—exactly what Defendants argued was required for a RICO enterprise, *see* Dkt. 38 at 10—and demonstrates that the parties rewarded each other for their actions in the scheme, *see* Dkt. 11 at 21.

As Defendants have now admitted—but only after the instant motion called Defendants out for misleadingly (if not outright falsely) claiming no such deals existed—Koenig has formed an LLC and coordinated on a potential deal with Frisbie Group through Flatura LLC *and* served as a broker on a separate transaction involving 5400 North Flagler. Opp. 12 n.8. Tellingly, Defendants do not maintain that these are the only deals or partnerships between representatives of Frisbie Group or PBA (whether a corporate entity is involved or not). *Id.* Given these revelations, Defendants' adamant position that there are no responsive documents because the *only* deals and partnerships that are relevant are between the formal entity PBA on the one hand, and the formal entity Frisbie Group on the other, evidencing an "investment agreement," is no more than an attempt to avoid damaging discovery through obfuscation and misleading half-truths.

Finally, Defendants again misrepresent the record in seeking to fend off Plaintiffs' requests. Defendants claim that in seeking to compel the discovery at issue, Plaintiffs bring a "newly minted corporate officer-based conspiracy theory" "[n]ever raised in meet and confer negotiations." *Id.* at 12. Untrue. In the parties' initial meet and confer on May 20, 2022, Plaintiffs made clear that they sought "any past, present, planned, or potential Development deals or partnerships between Frisbie Group on the one hand (inclusive of all its employees, officers, agents, etc.) and PBAU on the other (inclusive of all its employees, officers, agents, etc, or at least those that are

7

relevant to this case)." Dkt. 56-9 at 47. This understanding was memorialized in Plaintiffs' May 31 email, *id.*, and confirmed by Defendants in their June 2 email, *id.* at 44. The parties' further negotiations repeatedly addressed this aspect of the request.[4] It is hard to understand how Defendants could claim that this issue was just introduced in Plaintiffs' motion in light of these exchanges.

On June 13, Defendants repeated their earlier position. *Id.* at 29. When Plaintiffs explained on June 30 that they were at an impasse on this issue, *id.* at 6, Defendants responded that they "believe that [the parties] are in agreement that the Mango Promenade Deal is the only other relevant deal because it is the only other deal reflecting an investment agreement between the entities in this case." *Id.* at 5. Based on the parties' discussions to that point, as memorialized in the above email correspondence, such a purported belief was preposterous. After Plaintiffs pointed this out, Defendants claimed that Plaintiffs were "manufacturing a dispute." *Id.* at 3. Far from it: Plaintiffs seek to compel the discovery at issue due to Defendants' refusal to produce the requested documents, despite Defendants' belated admission that at least some such deals and partnerships exist.

**IV. Plaintiffs' Request for Full Production of Text Messages Across a Limited Time Period and Among a Narrow Set of Custodians Is Appropriate and Timely.**

As explained in Plaintiffs' opening brief, Plaintiffs seek the production of all text messages that meet the following criteria: the text message included (as a sender or recipient) at least one of three specific PBA representatives (Patrick Koenig, William Fleming, and Jim Jenkins) and at least one of three specific Frisbie Group representatives (Cody Crowell, David Frisbie, and Robert Frisbie Jr.), and was sent between January 1, 2015 and August 1, 2020, between May 1 and 30, 2021, or between November 1 and 30, 2021. Defendants' efforts to evade this discovery fail.

As a threshold matter, the motion to compel these text messages is not premature. Defendants assert that the issue of text message production should be reserved for the parties' search term

---

[4] Specifically, in the parties' June 7, 2022 meet and confer, as memorialized in Plaintiffs' June 9 email, Defendants represented that they are "able to stipulate that no other development deals, 'past, present, planned, or potential,' exist between PBAU, on the one hand, and Frisbie Group and/or FH3 on the other, besides the 'Mango Promenade' deal." Dkt. 56-9 at 40. Plaintiffs asked whether this representation covered development deals between representatives of PBAU (e.g., agents, officers, board members, or employees) and representatives of Frisbie Group and/or FH3 (e.g., agents, officers, board members, or employees), to which counsel for Defendants responded that he did not know but would investigate and follow up. *Id.* Then, in the June 10, 2022 meet and confer, as memorialized on June 13, Defendants stated that they "consider irrelevant any development deals other than those between PBAU, on the one hand, and Frisbie Group or FH3 on the other . . ." and "will not agree to produce documents and communications relating to any development deals, to the extent they exist, between, for example, representatives of PBAU [. . . ] and representatives of Frisbie Group and/or FH3 [. . .] when both sides are not acting on behalf of PBAU on the one hand, and Frisbie Group or FH3 on the other, in those deals." *Id.* at 32. In response, Plaintiffs reiterated that they consider these documents relevant and discoverable and that the parties were at an impasse on this issue. *Id.*

negotiation. Opp. 14. As an initial matter, Plaintiffs have no legal obligation to negotiate the scope of a request first and the search terms second. To be sure, doing so is a useful device to resolve multi-layer disputes. For this reason, the parties have largely structured their negotiations this way. But on the issue of text messages, this structure is not useful, because Plaintiffs' position is that *no* search terms are appropriate for this limited subset of discovery. Plaintiffs raised this issue during the meet and confer process, the parties negotiated in good faith, and Defendants took the firm position that they refused to produce these messages without search terms.

Specifically, in the parties' June 7 meet and confer, Plaintiffs proposed that the production of certain text messages should not be limited to search terms because "text messages often use shorthand, informal abbreviations and spellings, and other features not amenable to identification of responsiveness through search terms." Dkt. 56-9 at 30, 37; *see also* Shapiro Decl. ¶ 2. Plaintiffs articulated the limited universe of text messages for which they sought production without search terms. *See id*. During this meeting, Defendants stated that they agreed in principle that text messages should be identified and produced through a method other than search terms and offered to revert back to Plaintiffs on their proposal for doing so. *See* Shapiro Decl. ¶ 3; *see also* Dkt. 56-9 at 37–38. Plaintiffs memorialized their understanding of this discussion in their June 9 email to Defendants as well as their June 13 email to Defendants. *See* Dkt. 56-9 at 30–31, 37–38. In their June 13 response, Defendants changed their tune, stating that they rejected the request to produce text messages without search terms. *Id*. at 28. Plaintiffs have maintained a consistent position on this issue; Defendants have flip flopped. But as it stands, the parties' positions are fixed. The parties are thus at an impasse. Requiring the parties to now engage in an artificial search terms negotiation just to end up at the same place would be a waste of time.

Just as Defendants have misrepresented the status of the parties' dispute, they have likewise mischaracterized Plaintiffs' request. Defendants accuse Plaintiffs of "pull[ing] names out of thin air." Opp. 14. In reality, Plaintiffs seek text messages from only a limited and carefully selected subset of custodians: the six primary representatives of the Defendant entities—three from the PBA side and three from the Frisbie Group/FH3 side: Patrick Koenig, William Fleming, Jim Jenkins, Cody Crowell, Dave Frisbie, and Rob Frisbie. *See* Dkt. 56-9 at 37.

Defendants accuse Plaintiffs of seeking "every communication whatsoever" from these custodians. Opp. 14. In reality, Plaintiffs seek only those text messages sent between January 1, 2015 and August 1, 2020, between May 1 and May 30, 2021, or between November 1 and

9

November 30, 2021, in which at least one PBA representative and at least one Frisbie representative was involved as either sender or recipient. *See* Dkt. 56-9 at 37. Defendants claim that "Plaintiffs have not identified any reason why traditional search term negotiations would fail to result in the production of relevant and responsive text messages." Opp. 14. But as noted above, Plaintiffs explained their rationale to Defendants on multiple occasions. *See* Dkt. 56-9 at 30–31, 37–38.

In reality, Plaintiffs' request for certain text messages is narrowly targeted to result in the production of a limited set of documents highly relevant to Plaintiffs' RICO claim. *See* Dkt. 56 at 13–14 (explaining the relevance of this limited universe of text messages). Defendants do not engage on or counter Plaintiffs' explanations of relevance. These text messages will shed light on the business and personal relationships between the Defendants which Defendants deny exist but of which Plaintiffs have already uncovered some evidence and which directly support the existence of a RICO enterprise—whether the exchanges were about the PBA Parcels deal or not. That is why the production cannot be limited by subject matter. Limiting this production further through search terms would result in minimal additional protection for Defendants, given how narrow the request already is and how little burden there is in reviewing text messages compared to, for example, lengthy contracts. But, as explained in Plaintiffs' opening brief, the use of search terms will likely exclude highly relevant documents and prevent Plaintiffs from obtaining them. The Court should not allow this to happen; it should grant the motion to compel the production of all text messages that include (as a sender or recipient) at least one of three specific PBA representatives (Patrick Koenig, William Fleming, and Jim Jenkins) and at least one of three specific Frisbie Group representatives (Cody Crowell, David Frisbie, and Robert Frisbie Jr.), sent between January 1, 2015 and August 1, 2020, between May 1 and May 30, 2021, or between November 1 and November 30, 2021. If there really was little such communication, Defendants have nothing to fear and there will be a minimal burden in producing these messages. And if there are significant responsive communications, as Plaintiffs expect there will be and as suggested by Defendants' vociferous refusal to produce, that would materially prove up the well-pleaded RICO enterprise and likely support numerous other allegations and claims.

## CONCLUSION

The Court should grant Plaintiffs' motion and direct Defendants to produce the requested documents and communications.

Dated:
August 22, 2022

                        DOMNICK CUNNINGHAM & WHALEN

                        By: /s/ Sean Domnick
                           Sean C. Domnick
                              sean@dcwlaw.com
                           Matthew T. Christ
                              mtc@dcwlaw.com

                           2401 PGA Boulevard, Suite 140
                           Palm Beach Gardens, FL 33410
                           Telephone: (561) 625-6260
                           Facsimile: (561) 625-6269

                        GIBSON, DUNN & CRUTCHER LLP

                           Reed Brodsky
                              RBrodsky@gibsondunn.com
                              (*pro hac vice*)
                           Akiva Shapiro
                              AShapiro@gibsondunn.com
                              (*pro hac vice*)
                           Cate McCaffrey
                              CMcCaffrey@gibsondunn.com
                              (*pro hac vice*)
                           Michael McQueeney
                              MMcQueeney@gibsondunn.com
                              (*pro hac vice*)

                           200 Park Avenue
                           New York, NY 10166-0193
                           Telephone: (212) 351-4000
                           Facsimile: (212) 351-6235

                        *Attorneys for Plaintiffs Two Roads Development LLC, Trilar Holdings LLC and Flagler South Development LLC*

## CERTIFICATE OF SERVICE

      I hereby certify that on August 22, 2022, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all Counsel of Record or *pro se* parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

By: /s/ Sean Domnick
Sean C. Domnick

# SERVICE LIST

Scott Hawkins, Esquire
**JONES FOSTER P.A.**
505 South Flagler Drive, Suite 1100
West Palm Beach, Florida 33401
Tel.: (561) 659-3000
Fax: (561) 650-5300
shawkins@jonesfoster.com

*Counsel for Defendants Palm Beach Atlantic University Inc., William M.B. Fleming, Jr., and Patrick C. Koenig*

Eric M. George (*pro hac vice*)
Keith J. Wesley (*pro hac vice*)
Ryan Q. Keech (*pro hac vice*)
Serli Polatoglu (*pro hac vice*)
**ELLIS GEORGE CIPOLLONE O'BRIEN ANNAGUEY LLP**
2121 Avenue of the Stars, Suite 2800
Los Angeles, CA 90067
Tel.: (310) 274-7100
Fax: (310) 275-5697
egeorge@egcfirm.com
kwesley@egcfirm.com
rkeech@egcfirm.com
spolatoglu@egcfirm.com

*Counsel for Defendants Palm Beach Atlantic University Inc., Frisbie Group LLC, FH3 LLC, William M.B. Fleming, Jr., Patrick C. Koenig, David W. Frisbie, Robert N. Frisbie, Jr., and Cody Crowell*

Sean C. Domnick, Esquire
Matthew T. Christ, Esquire
**DOMNICK CUNNINGHAM & WHALEN**
2401 PGA Boulevard, Suite 140
Palm Beach Gardens, FL 33410
Tel.: (561) 625-6260
Fax: (561) 625-6269
mtc@dcwlaw.com
sean@dcwlaw.com

Reed Brodsky (*pro hac vice*)
Sean Domnick (*pro hac vice*)
Cate McCaffrey (*pro hac vice*)
Michael McQueeney (*pro hac vice*)
**GIBSON, DUNN & CRUTCHER LLP**
200 Park Avenue
New York, NY 10166-0193
Tel.: (212) 351-4000
Fax: (212) 351-6235
RBrodsky@gibsondunn.com
ADomnick@gibsondunn.com
CMcCaffrey@gibsondunn.com
MMcQueeney@gibsondunn.com

*Counsel for Plaintiffs Two Roads Development LLC, Trilar Holdings LLC and Flagler South Development LLC*

John K. Shubin, Esquire
Deana D. Falce, Esquire
Jamie L. Katz, Esquire
**SHUBIN & BASS, P.A.**
46 S.W. First Street, Third Floor
Miami, Florida 33130
Tel.: (305) 381-6060
Fax: (305) 381-9457
jshubin@shubinbass.com
dfalce@shubinbass.com
jkatz@shubinbass.com

*Counsel for Defendants Frisbie Group LLC, FH3 LLC, David W. Frisbie, Robert N. Frisbie, Jr., and Cody Crowell*