**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

TWO ROADS DEVELOPMENT LLC,
TRILAR HOLDINGS LLC, and FLAGLER
SOUTH DEVELOPMENT LLC,

                      Plaintiffs,

v.

PALM BEACH ATLANTIC UNIVERSITY
INC., FRISBIE GROUP LLC, FH3 LLC,
WILLIAM M.B. FLEMING, JR., PATRICK
C. KOENIG, DAVID W. FRISBIE,
ROBERT N. FRISBIE, JR., and CODY S.
CROWELL,

                      Defendants.

Case No.: 9:21-cv-82067-AMC/Reinhart

**DEFENDANTS' MOTION AND MEMORANDUM OF LAW IN SUPPORT OF THEIR**
**MOTION FOR ENTRY OF PARTIAL FINAL JUDGMENTS UNDER**
**FEDERAL RULE OF CIVIL PROCEDURE 54(b)**

## TABLE OF CONTENTS

**Page**

INTRODUCTION ...........................................................................................................................1

BACKGROUND ............................................................................................................................2

LEGAL STANDARD .....................................................................................................................5

ARGUMENT ..................................................................................................................................5

A.   This Court's Dismissal of Plaintiffs' PSA-Related Claims for Breach of Contract
     and Specific Performance Is Both Final and a Judgment. .....................................................6

B.   No Just Reason Exists to Delay Entry of Final Judgments for the Separable
     Claims for Breach of Contract and Specific Performance of the PSA. ...............................7

     1.   The Equities Weigh in Favor of Certification...........................................................7

     2.   Certification Accords with Judicial Administrative Interests. ...............................8

CONCLUSION...............................................................................................................................10

COMPLIANCE WITH LOCAL RULE 7.1(a)(3) ........................................................................10

i

# TABLE OF AUTHORITIES

**Page(s)**

<u>**CASES**</u>

*AMF Holdings, LLC v. Elie*,
No. 15-cv-3916, 2016 WL 10520951 (N.D. Ga. Nov. 2, 2016) ................................................8

*Carter v. City of Phila.*,
181 F.3d 339 (3d Cir. 1999)..................................................................................................9

*Curtiss-Wright Corp. v. Gen. Elec. Co.*,
446 U.S. 1 (1980)....................................................................................................6, 7, 8, 9

*Dirty Work Unlimited, Inc. v. Turner Const. Co.*,
No. 85-cv-10299, 1986 WL 12821 (N.D. Ill. Nov. 10, 1986) .................................................8

*Doe #1 v. Red Roof Inns, Inc.*,
21 F.4th 714 (11th Cir. 2021) ...............................................................................................7

*Edwards v. Prime, Inc.*,
602 F.3d 1276 (11th Cir. 2010) ............................................................................................7

*FDIC v. Chaves*,
47 F.3d 1178 (10th Cir. 1995) ..............................................................................................8

*Federated Dep't Stores, Inc. v. Moitie*,
452 U.S. 394 (1981)..............................................................................................................6

*Gelboim v. Bank of Am. Corp.*,
574 U.S. 405 (2015)..........................................................................................................2, 5

*Hart v. Yamaha-Parts Distribs., Inc.*,
787 F.2d 1468 (11th Cir. 1986) ............................................................................................6

*In re Se. Banking Corp.*,
69 F.3d 1539 (11th Cir. 1995) ...........................................................................................6, 7

*Ind. Harbor Belt R.R. Co. v. Am. Cyanamid Co.*,
860 F.2d 1441 (7th Cir. 1988) ..............................................................................................7

*Lloyd Noland Found., Inc. v. Tenet Health Care Corp.*,
483 F.3d 773 (11th Cir. 2007) ...........................................................................................5, 6

*Osterneck v. E.T. Barwick Indus., Inc.*,
825 F.2d 1521 (11th Cir. 1987) ............................................................................................3

*Quinn v. City of Bos.*,
   325 F.3d 18 (1st Cir. 2003) ................................................................................9

*Reeves v. Beardall*,
   316 U.S. 283 (1942) ...........................................................................................7

*Resol. Tr. Corp. v. Driscoll*,
   985 F.2d 44 (1st Cir. 1993) ...............................................................................7

*S and T Buildings v. Globe Properties Inc.*,
   944 So. 2d 302 (Fla. 2006) .................................................................................3

*Sears, Roebuck & Co. v. Mackey*,
   351 U.S. 427 (1956) ..............................................................................6, 7, 9, 10

*Twist v. Prairie Oil & Gas Co.*,
   274 U.S. 684 (1927) ...........................................................................................9

*V.V.V. & Sons Edible Oils Ltd. v. Meenakshi Overseas LLC*,
   No. 14-cv-02961, 2023 WL 2354874 (E.D. Cal. Mar. 3, 2023) .........................8

## STATUTES

28 U.S.C. § 1291 ........................................................................................................3

Fla. Stat. § 48.23(b)(1) ..............................................................................................3

## RULES

Fed. R. Civ. P. 2 ........................................................................................................9

Fed. R. Civ. P. 12(b)(6) ............................................................................................6

Fed. R. Civ. P. 54(b) ....................................................................................... *passim*

Fed. R. Civ. P. 58 ......................................................................................................3

Fed. R. Civ. P. 58(b) .................................................................................................5

Pursuant to Federal Rule of Civil Procedure 54(b), Defendants Palm Beach Atlantic University Inc. ("PBA" or the "University"), William M.B. Fleming, Jr., and Patrick C. Koenig (collectively, the "University Defendants"), and David W. Frisbie, Robert N. Frisbie, Jr., Cody S. Crowell, Frisbie Group LLC, and FH3 LLC (collectively, "Frisbie Defendants"; and, collectively with the PBAU Defendants, "Defendants") move for entry of a partial final judgments as to Count 4 (Breach of Contract, Purchase and Sale Agreement) and Count 15 (Specific Performance) of the First Amended Complaint ("FAC"), ECF No. 11, which this Court dismissed with prejudice on March 28, 2023, ECF No. 85 at 15–19, 38 ("Order").

## INTRODUCTION

This case principally concerns the alleged conduct of the University Defendants and the Frisbie Defendants in the course of their negotiations leading to the University's contracting to sell a West Palm Beach property (the Palm Beach Atlantic University Parcels, or "PBA Parcels") to the Frisbie Defendants.  In particular, Plaintiffs alleged that the University had breached an earlier, unsigned Purchase and Sale Agreement ("PSA") to sell the PBA Parcels to them, and they sought specific performance of that proposed agreement.  This Court dismissed Plaintiffs' claim of breach of the PSA (Count 4) and Plaintiffs' related specific performance claim (Count 15), as well as dismissed Plaintiffs' federal RICO claim and various other state law claims.  *See* Order at 8–12, 15–19, 33–34, 37.  On April 21, 2023, Plaintiffs filed a Second Amended Complaint.  *See* ECF No. 88 ("SAC").  In that complaint, Plaintiffs have asserted a federal trade secret claim and various state law claims.  *Id.* at ¶¶ 116–99.  Two of those state law claims are subject to a pending motion to dismiss.  *See* ECF No. 95.

As the litigation progressed, the Frisbie Defendants increasingly understood that Plaintiffs' pending specific performance claim was impeding their ability to secure title insurance, which prohibited their ability to obtain a construction loan.  This, in turn, has delayed development of the PBA Parcels—despite the various legal grounds for concluding that the specific performance claim was without merit.  The Frisbie Defendants described these harms in Defendants' motion for supplemental briefing on their motion to dismiss and in an accompanying declaration.  *See* ECF No 66 at 1–6; ECF No. 66-2 ("2022 Frisbie Aff.").  As elaborated below, that source of harm arising from the now-dismissed specific performance claim continues.  Title insurers still appear reluctant to extend title insurance because the specific performance claim is not finally resolved, in the sense of a determination subject to an order of final judgment and either not appealed or

1

appealed and finally concluded. That is, the Frisbie Defendants have been unable to secure title insurance for a construction loan that would enable them to complete important components of the project and appear likely to be unable to do so until the specific performance claim is finally resolved.

To hasten the end of this ongoing harm, Defendants file this motion seeking entry of final judgments with respect to the dismissed claims for breach of the PSA and for specific performance of the PSA. They do not seek entry of final judgments with respect to Plaintiffs' RICO claim or the other state law claims this Court dismissed. The Court's dismissal order finally resolved the breach of contract and specific performance claims and plainly subjected them to judgments. The two claims are logically intertwined and most efficiently considered together, and they are distinct from the claims that remain in the case as a result of Plaintiffs' SAC. Entering judgment to bring the specific performance claim to final resolution more quickly would be equitable and serve interests of judicial economy, thus furthering Rule 54(b)'s core purpose: "to avoid the possible injustice of delaying judgment on a distinctly separate claim pending adjudication of the entire case." *Gelboim v. Bank of Am. Corp.*, 574 U.S. 405, 409 (2015) (quotation marks and brackets omitted).

## BACKGROUND

In July 2022, the University transferred title of the property at issue to Flagler Towers DEV LLC ("Flagler Towers"). *See* Att. A (Affidavit of Robert N. Frisbie, Jr.) ¶ 4. Flagler Towers is jointly owned by the Frisbie Defendants and Hines Interests Limited Partnership Trust. *Id.* ¶ 2.

Prior to this transfer of the PBA Parcels, the City of West Palm Beach formally approved the development of two 23-story luxury condominium towers (with a 4-story pedestal base) on the property. *Id.* ¶ 6. The zoning resolutions are dated January 2022, and the window to appeal these resolutions expired in February 2022. *Id.* ¶¶ 5, 7. Flagler Towers advertised the property and quickly obtained more than $478 million in reservations to secure the purchase of units from interested parties. *Id.* ¶ 10.

On November 12, 2021, Plaintiffs initiated this action, and they filed their FAC on December 1, 2021. *See* ECF No. 1 at 11. That FAC set forth the claims related to breach of the PSA (Count 4) and for specific performance (Count 15) that this Court dismissed in its Order of

2

March 28, 2023.[1]  The Court reasoned that "[a]ccordingly, even accepting all factual allegations in the Amended Complaint . . . the lack of a signature on the proposed Agreement clearly violates the unambiguous terms of the Agreement and thus demonstrates that the parties did not form an enforceable contract."  Order at 19.  And because the PSA was not an enforceable contract, the Court further ruled that "Plaintiffs are not entitled to specific performance" of the PSA.  *Id.*; *see also id.* ("Plaintiffs' failure to establish a breach of contract precludes specific performance.").  Stating that "any repleading of these counts would be futile," the Court dismissed Counts 4 and 15 with prejudice and without leave to amend.  *Id.* at 38.  On April 21, 2023, Plaintiffs filed their SAC, which contains no claims for breach or specific performance of the PSA.  ECF No. 88.

Although this Court dismissed Counts 4 and 15 with prejudice, that ruling will not become a final judgment for purposes of any potential appeal until this Court enters a separate, final judgment disposing of those claims.  28 U.S.C. § 1291; Fed. R. Civ. P. 54(b); *see Osterneck v. E.T. Barwick Indus., Inc.*, 825 F.2d 1521, 1530 (11th Cir. 1987) (no appeal "even from fully consummated decisions" until those decisions are reflected in or "merge" into a final judgment).  Rule 54(b) empowers this Court to "direct entry of a final judgment as to one or more, but fewer than all, claims or parties," but it may do so "only if the court expressly determines that there is no just reason for delay."  Fed. R. Civ. P. 54(b); *see* Fed. R. Civ. P. 58 (judgment to be reflected in a separate document).

The absence of final resolution of the specific performance claim continues to harm the Frisbie Defendants by impeding their ability to build a condominium on the property and to sell condominium units.  The Frisbies understand from title insurance brokers and others that, even following the Court's dismissal with prejudice of the specific performance claim, title remains clouded simply because the specific performance claim is not sufficiently final from the insurers' perspective and could conceivably be revived.  *See* Att. A ¶¶ 17–18.  As described before this

---

[1] Contrary to Florida law, Plaintiffs did not record notice of *lis pendens* before filing an action for specific performance.  *See* Fla. Stat. § 48.23(b)(1).  The Florida Supreme Court has held that a trial court has authority to require posting of a bond because notice of *lis pendens* will often prevent the property holder from selling their property, and that is the usual practice in contested proceedings.  *See S and T Buildings v. Globe Properties Inc.*, 944 So. 2d 302, 304 (Fla. 2006).  Defendants' inability to seek indemnity against such a bond further supports certification to mitigate the ongoing harm.

Court issued its Order, uncertainty surrounding title impeded the contracting process for the condominium units that would be constructed on the property. 2022 Frisbie Aff. ¶¶ 15–19. Potential purchasers of the condominiums have been reluctant to proceed with purchasing condominium units and those with existing reservations have been reluctant to convert those reservations to contracts based on the specific performance count and the delays and uncertainty it is causing relating to construction of the project. *Id.* at ¶ 17. The financial harm has been very significant because, even though the Frisbie Defendants received very significant expressions of interest from potential purchasers, including $478 million in reservations, those contracts could not be concluded and the project could not move forward. Att. A at ¶ 10. Even though the specific performance claim has now been dismissed, the fact that it remains pending in the case and has not been finally resolved remains an impediment to the issuance of title insurance for this purpose. *See id.* ¶ 18.

Even more directly, the Frisbie Defendants are suffering ongoing harm because they cannot secure title insurance for a construction loan that is necessary to enable them to advance significant portions of the project. They have been proceeding with initial stages of developing the project, and they remain able and eager to move forward. *See id.* ¶ 9–11, 24. As is normal for such a large project, the Frisbie Defendants require a construction loan to proceed to undertake the more expensive components of developing the property. *See id.* ¶ 11. Title insurance must be issued to enable them to secure that construction loan. *See id.* ¶ 15. And, they understand from discussions with title insurers that title insurance will not be issued for their loan while the specific performance claim remains in the case and is not finally resolved. *Id.* ¶ 16–18. The resulting delay to the project's completion is causing significant, ongoing harm. *See id.* ¶ 21–25. The cost to build the project is expected to cost hundreds of millions of dollars, and with delay comes increased costs of materials and disruption to securing the required inputs. *See id.* ¶ 23–24. And, given the time value of money and continued increasing interest rates, delay further reduces the Frisbie Defendants' return and increases their costs on their already significant expenditures to purchase the land and complete the initial planning and development phases of the project (in excess of $70 million), in addition to potentially increasing the interest rate of the loans they will secure. *See id.* ¶ 23–24.

Entry of an order of final judgment with respect to that claim, followed by either no appeal or an appeal where the Court's ruling is upheld, would hasten the end to the uncertainty that has hamstrung the project's development. *Id.* ¶ 16. Finality would be assured in the event this Court enters final judgment and the Plaintiffs do not appeal, or if they do appeal and this Court's resolution of the claims is upheld on appeal. In either event, entry of final judgments would considerably accelerate resolution of that issue. Otherwise, a final judgment on the specific performance claim would not be available until after the conclusion of post-trial proceedings, and trial is not scheduled to begin until at least May 20, 2024. ECF No. 92 at 1.

## LEGAL STANDARD

Federal Rule of Civil Procedure 54(b) affords the district court discretion to "direct entry of a final judgment as to one or more, but fewer than all, claims or parties," but "only if the court expressly determines that there is no just reason for delay." Fed. R. Civ. P. 54(b); *see also* Fed. R. Civ. P. 58(b) (authorizing entry of partial judgment under Rule 54(b)). Determining whether to enter a partial judgment under Rule 54(b) requires a "two-step analysis." *Lloyd Noland Found., Inc. v. Tenet Health Care Corp.*, 483 F.3d 773, 777 (11th Cir. 2007). The Court must determine (1) whether "its final judgment is, in fact, both 'final' and a 'judgment'"; and (2) whether there is "just reason for delay" in certifying the order as immediately appealable. *Id.*

Rule 54(b) was adopted "to avoid the possible injustice of delaying judgment on a distinctly separate claim pending adjudication of the entire case." *Gelboim v. Bank of Am. Corp.*, 574 U.S. 405, 409 (2015) (quotation marks and brackets omitted); *see also* Fed. R. Civ. P. 54(b) adv. comm. note (1946) (recognizing this rule was "originally adopted . . . to avoid the possible injustice of a delay in judgment of a distinctly separate claim to await adjudication of the entire case").

## ARGUMENT

This Court's dismissal of Claims 4 and 15 presents precisely the type of determination Rule 54(b) was designed to address. The Court has completely disposed of the breach of contract and specific performance claims by dismissing them from this action with prejudice. Both claims are legally independent of the remainder of this action, and specific performance is a distinct form of relief. Delaying entry of final judgment until the resolution of the remaining issues in this case would cause significant harm and be inconsistent with efficient judicial administration. Accordingly, no just reason supports further delay, and entry of final judgment as to the specific performance and breach of the PSA claims is warranted.

5

**A.      This Court's Dismissal of Plaintiffs' PSA-Related Claims for Breach of Contract and Specific Performance Is Both Final and a Judgment.**

This Court's Order dismissing the specific performance claim and the related breach of the PSA claim with prejudice is "both final and a judgment," *Lloyd Noland Found.*, 483 F.3d at 777 (citation and quotation marks omitted), thus satisfying the first requirement for certification under Rule 54(b).  It is "'final' because it is 'an ultimate disposition of an individual claim entered in the course of a multiple claims action,'" and it is a "'judgment' in the sense that it is a decision upon a cognizable claim for relief." *Curtiss-Wright Corp. v. Gen. Elec. Co.*, 446 U.S. 1, 7 (1980) (quoting *Sears, Roebuck & Co. v. Mackey*, 351 U.S. 427, 436 (1956)).  This Court definitively concluded that Plaintiffs' claims for breach of contract with respect to the PSA and for specific performance are without merit, are to be dismissed with prejudice, and cannot be the subject of an amended complaint.  Order at 15–19.  Thus the "dismissal" of Claims 4 and 15 "constitutes a 'final decision' on individual claims," *Sears*, 351 U.S. at 436, and the Order is a complete disposition of those claims.  *See Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 399 n.3 (1981) ("The dismissal for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) is a 'judgment on the merits.'"); *cf. Hart v. Yamaha-Parts Distribs., Inc.*, 787 F.2d 1468, 1470 (11th Cir. 1986) (holding that "[a] dismissal with prejudice operates as a judgment on the merits" sufficient to invoke claim preclusion).

The dismissal is also a final disposition of a "claim" because it does not represent dismissal of only a "partially adjudicated 'claim' [that] cannot serve as the basis for a Rule 54(b) certification," as may arise when "a district court has adjudicated one count of a complaint, but another count seeks substantially similar relief." *Lloyd Noland Found.*, 483 F.3d at 780.  The dismissal of Counts 4 and 15 completely resolved Plaintiffs' claim for specific performance of the PSA.  Only Count 15 sought specific performance of the PSA, and only Count 4 provided the basis to grant that relief.  *See* FAC, ¶¶ 140–43, 207–10 (characterizing the breach of the PSA as a "Claim for Relief" separate from the specific performance "Claim for Relief").  The newly filed SAC contains no claim for specific performance of any contract, much less the PSA, and does not seek other enforcement of the PSA.  The dismissal of Counts 4 and 15, therefore, is appropriate as being "'separately enforceable' without 'mutually excluding' or 'substantially overlapping' with remedies being sought by the remaining claims pending in the district court." *Lloyd Noland Found.*, 483 F.3d at 780 (quoting *In re Se. Banking Corp.*, 69 F.3d 1539, 1547 (11th Cir. 1995)

6

(brackets omitted); *see also Ind. Harbor Belt R.R. Co. v. Am. Cyanamid Co.*, 860 F.2d 1441, 1444 (7th Cir. 1988) ("[I]f two counts constitute one claim for relief . . . the district court must resolve both counts in order for [Rule 54(b)] to apply.").  As the Supreme Court noted in similar circumstances, a specific performance claim is properly "expedite[d]" for final judgment when it is "separate and distinct" from the other claims pending before the trial court.  *See Reeves v. Beardall*, 316 U.S. 283, 285 (1942) (applying Fed. R. Civ. P. 54(b) (1939)).  Even when claims arise "out of a single transaction or occurrence," they are "separable" so long as "different sorts of relief are sought."  *In re Se. Banking Corp.*, 69 F.3d at 1547 (citations and quotation marks omitted).

For these reasons, the Court's Order dismissing Claims 4 and 15 "with prejudice" and without leave to amend qualifies as a "final judgment[] for purposes of Rule 54(b)."  *See Doe #1 v. Red Roof Inns, Inc.*, 21 F.4th 714, 722 (11th Cir. 2021) (quotation marks omitted); *see also, e.g.*, *Sears*, 351 U.S. at 429 (affirming appealability under Rule 54(b) of "claims . . . dismissed without leave to amend"); *Edwards v. Prime, Inc.*, 602 F.3d 1276, 1289 & n.11 (11th Cir. 2010) (reviewing, among others, a RICO claim dismissed with prejudice and certified under rule 54(b), but not other dismissed claims only partially dismissed).

## B.      No Just Reason Exists to Delay Entry of Final Judgments for the Separable Claims for Breach of Contract and Specific Performance of the PSA.

To determine whether there is "no just reason[] for delay" under Rule 54(b), the Court must consider "the equities involved" as well as "judicial administrative interests."  *Curtiss-Wright*, 446 U.S. at 8.  Here, both the equities and judicial administrative interests strongly favor certification under Rule 54(b).

### 1.      The Equities Weigh in Favor of Certification.

As outlined at length above, *see supra* pp. 3–4, entry of the requested Rule 54(b) order would alleviate the ongoing, substantial harm to the Frisbie Defendants' ability to develop their property—harm that would otherwise continue during the pendency of this case.  Speeding confirmation of the Frisbie Defendants' title to the PBA Parcels and enabling them to develop their property are exactly the kind of equitable interests that justify Rule 54(b) certification.

Courts have repeatedly certified rulings under Rule 54(b) to quiet title or facilitate the sale of real property assets.  "[T]he desire to facilitate a sale of assets . . . is a perfectly good ground for the Rule 54(b) determination."  *Resol. Tr. Corp. v. Driscoll*, 985 F.2d 44, 47 n.3 (1st Cir. 1993)

(citing *Curtiss-Wright*); *see, e.g.*, *FDIC v. Chaves*, 47 F.3d 1178 (10th Cir. 1995) (unpublished table opinion) (hearing appeal from a judgment expunging *lis pendens* certified under Rule 54(b)); *V.V.V. & Sons Edible Oils Ltd. v. Meenakshi Overseas LLC*, No. 14-cv-02961, 2023 WL 2354874, at *3 (E.D. Cal. Mar. 3, 2023) (granting Rule 54(b) motion where movant argued that denial of the motion would result in undue prejudice "by permitting a cloud to hang over its title" to mark registrations); *Dirty Work Unlimited, Inc. v. Turner Const. Co.*, No. 85-cv-10299, 1986 WL 12821, at *2 (N.D. Ill. Nov. 10, 1986) (granting Rule 54(b) certification to remove cloud over title to real property).  Faithfully applying these principles, one court concluded that "justice requires" grant of certification to remove "cloud on the title of the property" and clear the way for a party to obtain title insurance.  *See AMF Holdings, LLC v. Elie*, No. 15-cv-3916, 2016 WL 10520951, at *3–4 (N.D. Ga. Nov. 2, 2016), *magistrate report and recommendation adopted*, No. 15-cv-3916, 2016 WL 10567163 (N.D. Ga. Nov. 28, 2016).

As an additional example, the Court in *Curtiss-Wright Corp. v. General Electric Co*, 446 U.S. 1 (1980), affirmed a district court's Rule 54(b) certification premised entirely on economic harm far less significant than that at issue here.  Specifically, the lower court resolved a contract dispute, ordered General Electric to pay the plaintiff the outstanding $19 million balance due on the parties' contract, and entered its disposition as a final judgment under Rule 54(b)—even though other claims and counterclaims arising from the same breached contract dispute could ultimately be set against that sum.  *Id.* at 6.  The district court pointed to the time value of money and interest costs borne by plaintiff, and how that loss was "compounded" by the "large amount of money involved" and the likelihood that the rest of the case would not be fully resolved for "many months, if not years."  *Id.*  The Supreme Court upheld the district court's decision.  *Id.* at 11–12 (Curtis-Wright deserved not to "lose money" until the case was decided).  Here, the harm arising from delay would be much more significant and varied.  Delay risks the successful completion and profitability of the Frisbie Defendants' project, as well as economic harm arising from delayed payment.  *See supra* pp. 3–4.

## 2.     Certification Accords with Judicial Administrative Interests.

Entry of final judgments here would also satisfy the additional consideration bearing on Rule 54(b) relief, by "advanc[ing] the interests of sound judicial administration."  *Curtiss-Wright*, 446 U.S. at 5.

Because Claims 4 and 15 are independent of the remaining claims, there is little risk of repeat or scattershot appeals presenting "the same issues." *Id.* at 6. Claims 4 and 15 are factually and legally interrelated, turning on a single point of law (the enforceability of the proposed PSA, an unsigned contract for real property), and they were decided in tandem, apart from the rest of the litigation. *See* Order at 15–19. Like the contract claim in *Curtiss-Wright*, Claims 4 and 15 are "separate, distinct, and independent" from Plaintiffs' remaining tort and fraud claims, 446 U.S. at 6, and "certainly can be decided independently," *Sears*, 351 U.S. at 436. While "complete legal or factual distinction" from remaining claims "is not necessary to 54(b) certification," *Carter v. City of Phila.*, 181 F.3d 339, 346 n.20 (3d Cir. 1999), the "lack of overlap strongly supports the finding of no just reason for delay . . . under Rule 54(b)," *Quinn v. City of Bos.*, 325 F.3d 18, 27 (1st Cir. 2003). Because Counts 4 and 15 are "separable" and will not require duplicative appellate review, entry of final judgments as to these claims "preserves the historic federal policy against piecemeal appeals." *Curtiss-Wright*, 446 U.S. at 8 (citation omitted).

In addition, Rule 54(b) certification may "facilitate a settlement of the remainder of the claims," a factor bearing on judicial administration interests. *See Curtiss-Wright*, 446 U.S. at 8 n.2. Separating and accelerating resolution of the specific performance claim would force Plaintiffs to clarify their positions regarding the timing and any remaining viability of that claim, and resolution of that issue would facilitate resolution of the balance of Plaintiffs' remaining claims. Those remaining claims would present only issues related to the quantum, if any, of damages. The ability to proceed with the project would be clarified and disentangled from resolution of the litigation.

Indeed, Plaintiffs' suit reflects exactly the judicial administrative concerns that Rule 54(b) was adopted to address. The 1939 Federal Rules of Civil Procedure consolidated law and equity in "one form of action—the civil action." *See* Fed. R. Civ. P. 2. Before, multi-claim suits like Plaintiffs' that contain an equitable, specific performance claim as well as other, legal claims would have been dismissed for misjoinder of equitable and legal causes of action. *See Twist v. Prairie Oil & Gas Co.*, 274 U.S. 684, 687 (1927) ("In the federal court the joinder of an action at law with one in equity is not allowable"). The adoption of "liberal joinder" rules increased the complexity of civil litigation, resulting in occasional "need" for accelerated appellate review of "individual adjudicated claims" under Rule 54(b). *See Sears*, 351 U.S. at 432. As Plaintiffs' suit

9

illustrates, complex multi-claim suits take years to fully resolve, necessitating the use of Rule 54(b) to accelerate appellate review when fully resolved portions of the litigation cause collateral harm. Hence Rule 54(b) was adopted to "relax[]" the "general practice" denying segmented appellate review in precisely the circumstances applicable here. *Sears*, 351 U.S. at 434.

## CONCLUSION

Pursuant to Rule 54(b), the Court should enter final judgments for the dismissed Counts 4 and 15 of the FAC.

## COMPLIANCE WITH LOCAL RULE 7.1(a)(3)

On May 16, 2023, counsel for Defendants conferred with Plaintiffs' counsel of Defendant's intent to file this motion.  Plaintiffs oppose Rule 54(b) certification of their dismissed claims for breach of contract and specific performance.

Dated:   May 22, 2023                           Respectfully submitted,

                                                                **SHUBIN & BASS, P.A.**
                                                                150 West Flagler Street, Suite 1420
                                                                Miami, Florida 33130
                                                                Tel.: (305) 381-6060
                                                                Fax: (305) 381-9457
                                                                jshubin@shubinbass.com
                                                                dfalce@shubinbass.com
                                                                jkatz@shubinbass.com

                                                                By: /s/ John K. Shubin
                                                                     John K. Shubin
                                                                     Deana D. Falce
                                                                     Jamie L. Katz

                                                                *Counsel for Defendants Frisbie Group LLC,*
                                                                *FH3 LLC, David W. Frisbie, Robert N. Frisbie,*
                                                                *Jr., and Cody Crowell*

                                                                **JONES FOSTER P.A.**
                                                                505 South Flagler Drive, Suite 1100
                                                                West Palm Beach, Florida 33401
                                                                Tel.: (561) 659-3000
                                                                Fax: (561) 650-5300
                                                                shawkins@jonesfoster.com

                                                                By: /s/ Scott Hawkins

10

Scott Hawkins
*Counsel for Defendants Palm Beach Atlantic
University Inc., William M.B. Fleming, Jr., and
Patrick C. Koenig*

**ELLIS GEORGE CIPOLLONE O'BRIEN
ANNAGUEY LLP**
2121 Avenue of the Stars, Suite 2800
Los Angeles, California 90067
Tel.: (310) 274-7100
Fax: (310) 275-5697
egeorge@egcfirm.com
By: /s/ Eric M. George
      Eric M. George (*pro hac vice*)

*Counsel for Defendants Palm Beach Atlantic
University Inc., Frisbie Group LLC, FH3 LLC,
William M.B. Fleming, Jr., Patrick C. Koenig,
David W. Frisbie, Robert N. Frisbie, Jr., and
Cody Crowell*

**CERTIFICATE OF SERVICE**

I certify that on May 22, 2023, I electronically filed the foregoing document with the Clerk of the Court for the United States District Court for the Southern District of Florida by using the CM/ECF system.  Participants in the case are registered CM/ECF users, and service will be accomplished by the CM/ECF system.

/s/ John K. Shubin____
John K. Shubin