UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

TWO ROADS DEVELOPMENT LLC,
TRILAR HOLDINGS LLC, and
FLAGLER SOUTH DEVELOPMENT
LLC,

        Plaintiffs,

v.

PALM BEACH ATLANTIC
UNIVERSITY INC., FRISBIE GROUP
LLC, FH3 LLC, WILLIAM M.B.
FLEMING, JR., PATRICK C. KOENIG,
DAVID W. FRISBIE, ROBERT N.
FRISBIE JR., and CODY S. CROWELL,

        Defendants.

Case No.: 9:21-cv-82067-AMC

**AFFIDAVIT OF ROBERT N. FRISBIE, JR.**

STATE OF FLORIDA      )
                                ) ss:
PALM BEACH COUNTY  )

        BEFORE ME, the undersigned authority duly authorized to administer oaths and take acknowledgements, on this day personally appeared Robert N. Frisbie, Jr., who after being first duly sworn, deposes and says:

        1.     My name is Robert N. Frisbie, Jr., and I am a resident of Palm Beach County, Florida. I affirm that the facts set forth in this affidavit are based on personal knowledge and are true and correct.

        2.     I am a Member of Flagler Towers Project DEV LLC ("Flagler Towers"), which is a joint venture formed on February 16, 2022 between JCH 2012 Trust, a Hines Interests Limited

Partnership trust ("Hines Members") and David Frisbie, Rick Frisbie, Robert Frisbie, Sr., Robert Frisbie, Jr., and Cody Crowell ("Frisbie Members"). The joint venture is owned 50% by the Frisbie Members, and 50% by the Hines Members.

3. The purpose of the joint venture is to own and develop property located at 1315 South Flagler Drive and 1401 South Flagler Drive (the "Property") as a residential condominium currently being marketed as South Flagler House.

4. In July 2022, Palm Beach Atlantic University Inc. transferred title to the Property to Flagler Towers.

5. Prior to the acquisition of the Property, beginning in 2020, the University, as the previous owner of the Property, and FH3, LLC (an entity in which I am a Manager), sought certain zoning approvals from the City of West Palm Beach designed to facilitate the future development of the Property. I was personally involved in the process from its commencement until the City of West Palm Beach formally approved the zoning requests via resolutions dated January 10, 2022.

6. These zoning approvals permitted the development of two 23-story luxury condominium towers on a 4-story pedestal base, totaling 27 stories, which was designed by Robert A.M. Stern Architects (the "Project").

7. Plaintiffs through their agents undertook both formal and informal objections to the rezoning efforts of the Property in 2020 and 2021; however, I have been informed that the date to file any appeal from those approvals was February 9, 2022, and upon examination, we have found no evidence of and have been provided with no notice of any appeal having been filed by Plaintiffs or any other party.

8. The Flagler Towers Project joint venture has made efforts to move forward with the development and marketing of the Property (for which more information can be viewed at:

www.southflaglerhouse.com), including the selection of a general contractor (Gilbane) to construct the project, the relocation of employees to West Palm Beach to help oversee construction, employment of a brokerage firm to lead sales & marketing (Corcoran Sunshine), the development of marketing assets including a showroom, digital renderings, and paid advertisements, and the employment of an advisory firm (Cushman & Wakefield) on construction financing.

9. The market for condominiums in West Palm Beach is very strong, and interest in the Flagler Towers Project is high, especially considering it was the first Robert A.M. Stern designed condominium building in South Florida. I, along with the other Members, wish to respond to the current demand in the market and proceed promptly with the sales and construction of the condominiums.

10. Since the Project's inception, there has been an enthusiastic response from the public to the Project through the form of "reservations" seeking to secure the purchase of units. Reservation holders are required to submit a 10% deposit. I have been personally involved in the marketing of the Project and from March 2022 until the present, we received over $478 million in reservations from interested parties.

11. I have also been personally involved, on behalf of the Flagler Towers joint venture, in seeking construction financing for the Project. Based on what has been communicated to us by Cushman & Wakefield, PLC, our other agents, and potential lenders, there is a strong interest in committing to a construction loan for the Project, especially in light of the high demand for reservations and units.

12. Despite strong public enthusiasm from qualified buyers and lenders for the Project, however, the Project has been undermined by the Plaintiffs' specific performance claim, which was count 15 of the First Amended Complaint.

13. We disclosed to prospective buyers and lenders the existence of the claim.

14. Prospective buyers communicated to me and the other Members their concerns about the claim's impact on the construction of the Project and its delivery date.

15. Lenders have told us they would require "clear title," in the form of a title commitment, before they will issue and fund a construction loan.

16. Title insurance companies, in turn, have advised us that they will not issue title insurance in light of the pendency of the specific performance claim.

17. On March 28, 2023, the Court dismissed the specific performance count with prejudice. My understanding is that the Court found that there was no executed Purchase and Sale Agreement between the University and Plaintiffs, therefore the Court determined that the specific performance claim should be dismissed with prejudice since there was no agreement to enforce.

18. The other Members and I have advised title insurance companies that the specific performance count was dismissed with prejudice, but the title insurance companies still refuse to issue title insurance because there is a chance Plaintiffs could appeal that ruling sometime in the future.

19. The cloud to title will also affect purchasers' ability to obtain mortgages and close on the units they have reserved.

20. Accordingly, qualified and otherwise interested prospective purchasers continue to be reluctant to proceed with purchasing condominium units in the Project and those with

reservations are reluctant or unable to convert those reservations to contracts based on the specific performance count and the delays and uncertainty it is causing.

21. Other reservation holders have cancelled their reservations for condominium units in the Project all because of the delay and uncertainty caused by the specific performance count and its impact on development. These losses amount to over $200 million.

22. This harm started when Plaintiffs filed this lawsuit and it is ongoing.

23. Overall Project costs have also significantly increased because of the delay during an inflationary environment coupled with rising interest rates.

24. The Members have already incurred significant expenses, in excess of $60 million, on the initial development of the Project. Lost reservations and increasing costs diminish our returns on that investment.

25. Delays in the Project also result in the loss of approximately $2 million per month in tax revenue for the City of West Palm Beach, Palm Beach County and the State of Florida, as the Project will likely become the largest taxpayer in West Palm Beach.

26. Without a final resolution of the specific performance claim, which I understand that the Court has determined to be legally untenable, the Flagler Towers joint venture and its Members are and will continue to suffer financial hardship as the delay in the development of the Project is imposing significant financial damage on the joint venture and its members.

27. If this legal uncertainty cannot be eliminated promptly and with an additional degree of finality, we are potentially at risk of losing hundreds of millions of dollars of sales and deposits from buyers.

FURTHER AFFIANT SAYETH NAUGHT.

_____
Name: Robert N. Frisbie, Jr.

STATE OF FLORIDA       )
                       )
COUNTY OF PALM BEACH   )

BEFORE ME, the undersigned authority, duly authorized to administer oaths and take acknowledgments, personally appeared Robert N. Frisbie, Jr. who is  X  personally known to me, or who has produced _____ as identification, who did take an oath.

Notary Seal

JOHN GILMORE MACCONNELL
Notary Public-State of Florida
Commission # HH 253288
My Commission Expires
July 26, 2026

_____
Notary Public, State of Florida
Print Name: John Gilmore MacConnell
Date: May 22, 2023
My Commission Expires: July 26, 2026