**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**CASE NO. 9:21-CV-82067-CIV (CANNON)**

TWO ROADS DEVELOPMENT LLC,
TRILAR HOLDINGS LLC, and FLAGLER
SOUTH DEVELOPMENT LLC,

                  Plaintiffs,

v.

PALM BEACH ATLANTIC UNIVERSITY
INC., FRISBIE GROUP LLC, FH3 LLC,
WILLIAM M.B. FLEMING, JR., PATRICK
C. KOENIG, DAVID W. FRISBIE,
ROBERT N. FRISBIE JR., and CODY S.
CROWELL,

                  Defendants.

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO**
**DEFENDANTS' CORRECTED MOTION FOR ENTRY OF PARTIAL FINAL**
**JUDGMENTS UNDER FEDERAL RULE OF CIVIL PROCEDURE 54(b)**

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................. 1

BACKGROUND ...................................................................................................................... 3

LEGAL STANDARD .............................................................................................................. 6

ARGUMENT .......................................................................................................................... 7

    A. Plaintiffs' Claims for Breach of the PSA and Specific Performance
    are not "Final" Judgments ............................................................................................. 7

        1. The Claim for Breach of the PSA is Not "Separable" from the
        Surviving Claims ................................................................................................ 7

        2. The Specific Performance Claim is Not "Separable" from the
        Surviving Breach of LOI Claim ........................................................................ 9

    B. This Court Should Preserve the Federal Policy Against Piecemeal
    Appeals and Deny Plaintiffs' Request for Rule 54(b) Certification ......................... 10

        1. Judicial Administrative Interests Weigh Heavily Against Rule
        54(b) Certification ............................................................................................ 10

        2. The Frisbie Defendants Have Not Established that They Will
        Suffer Hardship or Injustice in the Absence of Relief Under Rule
        54(b) ................................................................................................................. 13

CONCLUSION ...................................................................................................................... 16

## TABLE OF AUTHORITIES

Page(s)

<u>**Cases**</u>

*AMF Holdings, LLC v. Elie*,
No. 15-cv-3916, 2016 WL 10520951 (N.D. Ga. Nov. 2, 2016) ............................................. 15

*Barnett v. MacArthur*,
715 F. App'x 894 (11th Cir. 2017) ................................................................................... passim

*Curtiss-Wright Corp. v. General Electric Co*,
446 U.S. 1 (1980) .................................................................................................................. 12, 15

*Dirty Work Unlimited, Inc. v. Turner Const. Co.*,
No. 85-cv-10299, 1986 WL 12821 (N.D. Ill. Nov. 10, 1986) ................................................. 15

*Ebrahimi v. City of Huntsville Bd. of Educ.*,
114 F.3d 162 (11th Cir. 1997) ................................................................ 7, 10, 12, 15

*Edwards v. Prime, Inc.,*
602 F.3d 1276 (11th Cir. 2010) ................................................................................................ 9

*FDIC v. Chaves,*
47 F.3d 1178 (10th Cir. 1995) ............................................................................................... 15

*In re Se. Banking Corp.,*
69 F.3d 1539 (11th Cir. 1995) ........................................................................................ passim

*Liberty Mut. Ins. Co. v. Wetzel,*
424 U.S. 737 (1976) .................................................................................................................. 9

*Lloyd Noland Found., Inc. v. Tenet Health Care Corp.*,
483 F.3d 773 (11th Cir. 2007) ............................................................................................. 6, 7

*Minority Police Officers Ass'n of S. Bend v. City of S. Bend, Ind.*,
721 F.2d 197 (7th Cir. 1983) ................................................................................................. 12

*Parker v. Ahmsi Insurance Agency Inc.*,
2021 WL 8565968 (S.D. Fla. July 8, 2021) ...................................................................... 10, 11

*Resol. Tr. Corp. v. Driscoll*,
985 F.2d 44 (1st Cir. 1993) .................................................................................................... 15

*Shedd v. Wells Fargo Bank, N.A.*,
2016 WL 4565775 (S.D. Ala. Aug. 31, 2016) ....................................................................... 10

*V.V.V. & Sons Edible Oils Ltd. v. Meenakshi Overseas LLC*,
   No. 14-cv-02961, 2023 WL 2354874 (E.D. Cal. Mar. 3, 2023)................................. 15

*Vann v. Citicorp Sav. of Ill.*,
   891 F.2d 1507 (11th Cir. 1990) .................................................................................. 13

**<u>Rules</u>**

Fed. R. Civ. P. 54(b) ..................................................................................... passim

**<u>Other Authorities</u>**

10 Fed. Prac. & Proc. § 2657 (2d ed. 1983).................................................................. 8

Plaintiffs Two Roads Development LLC, Trilar Holdings LLC and Flagler South Development LLC (together, "Plaintiffs"), respectfully submit this memorandum of law in opposition to Defendants Palm Beach Atlantic University Inc. ("PBA"), William M.B. Fleming, Jr., and Patrick C. Koenig (collectively, the "University Defendants"), and David W. Frisbie, Robert N. Frisbie, Jr., Cody S. Crowell, Frisbie Group LLC, and FH3 LLC (collectively, "Frisbie Defendants"; and, collectively with the University Defendants, "Defendants") motion for entry of partial final judgments under Federal Rule of Civil Procedure 54(b) as to Count 4 (Breach of Contract, Purchase and Sale Agreement) and Count 15 (Specific Performance) of the First Amended Complaint ("FAC") (ECF No. 11). For the reasons set forth below, Defendants' motion for entry of partial final judgments under Federal Rule of Civil Procedure 54(b) (the "Motion" or "Mot.") (ECF No. 111) should be denied in its entirety.

## PRELIMINARY STATEMENT

This action arises out of a common set of facts alleging claims sounding in tort and contract. The University Defendants—with the assistance of the Frisbie Defendants—initiated a fraudulent scheme in connection with the development of valuable real estate. In doing so, the University Defendants breached a contractual letter of intent with Plaintiffs, and Defendants induced Plaintiffs to share valuable confidential information and trade secrets. Faced with repeated transgressions and a multi-year-long scheme, Plaintiffs had no choice but to bring this action to vindicate their rights and recover for the harm caused by Defendants. Now, Defendants assert that certain claims for relief are so prejudicial that they must be resolved immediately even though the underlying dispute has undoubtedly survived a motion to dismiss.

The instant motion for extraordinary, unusual relief should be denied. Defendants understate the standard applied to Rule 54(b) motions. In essence, they encourage the Court to

adopt a test that would accept piecemeal appeals as the norm, rather than the exception—a practice that the Eleventh Circuit has cautioned would unduly burden the appellate docket.  Under the actual standard, Defendants' Motion fails.

First, Plaintiffs' claim for breach of the PSA and Plaintiffs' surviving claims, including the claims for breach of the LOI, fraud, and negligent misrepresentation, are predicated on the same underlying facts and seek overlapping remedies.  These claims are therefore not separable and must be denied pursuant to Eleventh Circuit precedent.  Plaintiffs' FAC alleged fifteen claims with detailed accounts of how Defendants acted in concert to create and execute upon a scheme to defraud Plaintiffs.  When confronted with Defendants' motion to dismiss all claims, this Court held that Plaintiffs had adequately alleged claims for breach of the Letter of Intent's ("LOI") exclusivity provision, breach of the LOI's confidentiality provision, fraud, negligent misrepresentation, tortious interference with business relations, and violation of federal and state trade secrets laws.[1]  Although the Court dismissed certain specific claims, including claims for breach of the Purchase and Sale Agreement ("PSA") and specific performance, other causes of action predicated on the same factual allegations and seeking relief for the same offenses by the same defendants are proceeding before this Court.  Because these claims are not separable, the Court must deny Defendants' Rule 54(b) motion for entry of a partial judgment.

Second, even if the Court determines that Plaintiffs' claims for breach of the PSA are separable from the surviving claims, the Court should deny Defendants' Rule 54(b) motion in its entirety because (1) judicial economy is not served—but rather undermined—by an immediate

---

[1] The Court also granted leave for Plaintiffs to re-plead its claims for aiding and abetting fraud against the Frisbie Defendants and tortious interference with contract—specifically, the LOI—against the Frisbie Defendants.

appeal and (2) Defendants have failed to establish a pressing need for relief and a harsh result if such relief is denied.  As demonstrated below, Defendants' Motion should be denied.[2]

## BACKGROUND

Defendants engaged in a prolonged fraudulent scheme in connection with the sale of land located at 1315 and 1401 South Flagler Drive (the "PBA Parcels" or the "Parcels") and the development of luxury condominiums on the Parcels.  While inducing Plaintiffs to share their valuable plans for the PBA Parcels and negotiate for nine months to a final agreement for the acquisition of the Parcels, Defendants coordinated with one another via secret meetings, cash payments, so-called donations, and other underhanded tactics to have Frisbie Group step into Plaintiffs' shoes to steal the project, worth hundreds of millions of dollars.  *See* Pls.' Opp. to Defs.' Mot. to Dismiss at 3-4 (ECF No. 119); *see also* Pls.' Second Amended Compl. at ¶¶ 2-5 (ECF No. 88) ("SAC").  Plaintiffs sought to avoid litigation and amicably resolve their dispute with the Frisbie Defendants, but instead, the Frisbie Defendants and PBA continued to lie and mislead Plaintiffs about their secret dealings to cover their tracks.  SAC at ¶¶ 4-5.  After nearly three years of deceit and lies from the Frisbie Defendants and PBA, Plaintiffs had no choice but to initiate this action.

On November 12, 2021, Plaintiffs filed this lawsuit and, on December 1, 2021, filed the FAC.  The FAC alleged fifteen claims, including claims for breach of the LOI's exclusivity provision, breach of the LOI's confidentiality provision, breach of the PSA, specific performance, fraud, negligent misrepresentation, tortious interference with business relations, and violation of

---

[2] In the event this Court grants Defendants' Motion in whole or in part, it should allow discovery to proceed pursuant to its recently ordered trial schedule and related discovery deadlines.  *See* ECF No. 92.

federal and state trade secrets laws.  These claims were based on the same underlying course of conduct and sought overlapping injuries and remedies.  For example, many claims sought:

- **Overlapping injuries**.  The claims for breach of the PSA alleged identical injuries to the claims for breach of the LOI's exclusivity provision, fraud, and negligent misrepresentation.  FAC at ¶¶ 134, 146, 155, 166 ("the lost expectancy of the PBA Parcels, the lost profits derived from the transaction, and their significant investments in producing the plan for the proposed development of the PBA Parcels, the terms of the PSA, and all due diligence information and documents relating to the PBA Parcels.").

- **Overlapping remedies**.  Despite Defendants representations to the contrary, the specific performance claim is a remedy sought pursuant to the claims for breach of the PSA *and breach of the LOI*.  *Id.* at ¶ 208  ("Plaintiffs are entitled to the PBA Parcels, including *because Two Roads completed the Letter of Intent with PBA* and Flagler South Development LLC completed the Purchase and Sale Agreement with PBA for the purchase of the parcels.") (emphasis added).  Most other claims sought monetary damages.  *See*, *e.g.*, *Id.* at ¶¶ 134, 146, 155, 166.

- **Overlapping allegations**.  For example, the fraud and breach of the PSA claims included allegations that PBA representatives told Plaintiffs "that the deal was 'all approved,'" *id.* at ¶¶ 142, 149, that the only reason that PBA had not countersigned the PSA was due to Defendant Fleming's "health issues," *id.* at ¶¶ 142, 148, and that it intended to move forward with Plaintiffs as its development partner, *id.* at ¶¶ 142, 148, all the while knowing that these statements of material fact were untrue.

At bottom, the FAC alleged a scheme that involved the same interwoven cast of characters, conversations, agreements, and facts that cannot be easily bifurcated claim-by-claim.

On January 18, 2022, Defendants moved to dismiss the FAC and, just over a year later, the Court granted in part and denied in part the motion to dismiss.  *See* ECF No. 85 ("Order"). Specifically, this Court held that Plaintiffs had adequately alleged claims for breach of the LOI's exclusivity and confidentiality provisions, fraud, negligent misrepresentation, tortious interference with business relations, and violation of federal and state trade secrets laws, granted leave for Plaintiffs to re-plead claims for tortious interference with contract and aiding and abetting fraud, and dismissed with prejudice other claims, including claims for breach of the PSA, specific performance, and violations of RICO.  Order at 38.  In other words, the case survived a motion to dismiss and discovery proceeded; however, certain claims did not.  The SAC, therefore, named the same defendants and alleged the same underlying misconduct.  *Compare*, *e.g.*, FAC at ¶¶ 147-55, with SAC at ¶¶ 128-36 (alleging the same underlying conduct for fraud).

On April 28, 2023, this Court issued an order setting trial for May 20, 2024 and requiring the parties to complete discovery by December 11, 2023, among other pre-trial deadlines.  *See* ECF No. 92.  Plaintiffs were excited—the Court had delineated the claims that would proceed and set discovery, pre-trial and trial deadlines.  There was a date certain by which Plaintiffs would be able to prove Defendants' wrong and obtain the deserved relief.  Plaintiffs had a clear target and were positioned to rigorously pursue their well-plead claims in discovery.  But Defendants had another procedural mechanism to disturb any forward momentum that may bring this case to a resolution after 20 months, while requiring Plaintiffs to expend additional unnecessary resources to protect their rights.

On May 26, 2023, Defendants filed this Motion, asserting that the lack of a final judgment as to the claim for specific performance is harming the Frisbie Defendants because they are having difficulty obtaining title insurance, finalized contracts, and loans for the properties being developed on the PBA Parcels. *See* Mot. at 4-5. As support for this purported harm, Defendants rely exclusively on an unverified, vague, and self-serving affidavit from a defendant in this very action—Mr. Robert Frisbie Jr. *See id.* (citing Att. A, ECF No. 111-1 ("Frisbie Aff.")). Plaintiffs dispute all the allegations in Mr. Frisbie's affidavit and have not had the opportunity to depose or cross-examine Mr. Frisbie regarding the statements contained therein.

## LEGAL STANDARD

Federal Rule of Civil Procedure 54(b) is designed "to codify the historic practice of 'prohibit[ing] piecemeal disposition of litigation and permitting appeals only from final judgments', except in the 'infrequent harsh case' in which the district court properly makes the determinations contemplated by the rule." *Barnett v. MacArthur*, 715 F. App'x 894, 899 (11th Cir. 2017) (quoting *In re Se. Banking Corp.,* 69 F.3d 1539, 1547 (11th Cir. 1995)). Accordingly, Rule 54(b) permits the district court to "direct entry of a final judgment as to one or more, but fewer than all, claims or parties…*only if* the court expressly determines that there is no just reason for delay." Fed. R. Civ. P. 54(b) ("Rule 54(b)") (emphasis added).

The district court's application of Rule 54(b) involves a two-step inquiry. First, the court must determine that its final judgment is, in fact, both "final" and a "judgment." *Lloyd Noland Found., Inc. v. Tenet Health Care Corp.*, 483 F.3d 773, 777-78 (11th Cir. 2007). "A final judgment must either entirely dispose of a separable claim or completely dismiss a party from the case." *Barnett*, 715 F. App'x at 899. If a claim is separable from the surviving claims, the Court determines whether there is no "just reason for delay" in certifying the issue as final and

6

immediately appealable. *Lloyd Noland*, 483 F.3d at 778. The Eleventh Circuit has directed district courts to "be conservative in exercising their Rule 54(b) discretion," *In re Se. Banking Corp.*, 69 F.3d at 1550, and to reserve "Rule 54(b) certifications…'for the unusual case in which the costs and risks of multiplying the number of proceedings and of overcrowding the appellate docket are outbalanced by pressing needs of the litigants for an early and separate judgment as to some claims or parties.'" *Ebrahimi v. City of Huntsville Bd. of Educ.*, 114 F.3d 162, 166 (11th Cir. 1997). The presumption is that individual issues are not certified as final until completion of the underlying action. To overcome this presumption, the moving party must establish why its case is unusual and exceptional such that the court may rightly exercise its discretion to grant relief under Rule 54(b).

## ARGUMENT

### A. Plaintiffs' Claims for Breach of the PSA and Specific Performance are not "Final" Judgments

In order to satisfy the first prong, a judgment must be final—meaning it either entirely disposes of a "separable claim or completely dismiss[es] a party from the case." *Barnett*, 715 F. App'x at 899. There is no dispute that this Court's Order did not dismiss all claims against a single defendant. *See* Mot. at 7-9. Therefore, the only question is whether the claims for breach of the PSA and specific performance are "separable" from the surviving claims. *Id.* at 9. As *Barnett* demonstrates, the breach of PSA and specific performance claims are not "separable" from the surviving claims, including the claim for breach of the LOI. 715 F. Appx. at 899.

1. *The Claim for Breach of the PSA is Not "Separable" from the Surviving Claims*

This Court cannot certify the breach of PSA claim pursuant to Rule 54(b) unless it is "separable" from all surviving claims. "[I]f the possible recoveries under various portions of the complaint are mutually exclusive, or substantially overlap" then the claims are not "separable" for

purposes of Rule 54(b) certification.  *In re Se. Banking Corp.*, 69 F.3d at 1547; citing 10 Charles A. Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice & Procedure § 2657, at 67 (2d ed. 1983).  In *Barnett*, an Eleventh Circuit panel addressed a Rule 54(b) certification of a malicious prosecution claim dismissed on a motion for summary judgment while a false imprisonment claim remained pending before the district court.  715 F. Appx. at 894.  The court held that the malicious prosecution claim was not "separable" from the false imprisonment claim because the amended complaint "alleges the exact same harms and seeks substantially the same relief for the remaining unlawful arrest and detention claims as she does for the malicious prosecution claims."  *Id.* at 902.

Plaintiffs' claim for breach of the PSA substantially overlaps with Plaintiffs claims for breach of the LOI's exclusivity provision because it also alleges the exact same harm and seeks substantially the same relief.  Indeed, Plaintiffs have alleged the exact same harms for their claim for breach of the PSA as they do for breach of the exclusivity provision of the LOI.  *Compare* FAC at ¶ 146 ("Plaintiff's injuries as a result of this breach include the lost expectancy of the PBA Parcels, the lost profits derived from the transaction, and their significant investments in producing the plan for the proposed development of the PBA Parcels, the terms of the PSA, and all due diligence information and documents relating to the PBA Parcels."), *with* FAC at ¶ 134 (same). Plaintiffs also seek substantially the same relief—monetary damages and equitable relief in the form of specific performance.  *See* FAC at ¶ 208 ("Plaintiffs are entitled to the PBA Parcels, *including because Two Roads completed the Letter of intent with PBA* and Flagler South Development LLC completed the Purchase and Sale Agreement with PBA for the purchase of the parcels."); FAC at ¶¶ 147, 155 (describing Plaintiffs' monetary losses).  Defendants' attempt to certify the Court's dismissal of the claim for breach of the PSA pursuant to Rule 54(b), therefore, fails at step one of this Court's analysis.

2. *The Specific Performance Claim is Not "Separable" from the Surviving Breach of LOI Claim*

The Eleventh Circuit has explained that "partial dismissals" foreclosing certain types of damages are not "final judgment[s] disposing of an entire claim" and therefore "not the stuff of Rule 54(b) certification." *Edwards v. Prime, Inc.,* 602 F.3d 1276, 1289 n.11 (11th Cir. 2010); *see also Liberty Mut. Ins. Co. v. Wetzel*, 424 U.S. 737, 743 n.4 (1976) ("[A] complaint asserting only one legal right, even if seeking multiple remedies for the alleged violation of that right, states a single claim for relief.").  Defendants appear to agree with this standard.  *See* Mot. at 7-9.

This Court cannot certify the specific performance claim pursuant to Rule 54(b) because *both* the surviving claim for the breach of the LOI's exclusivity provision and the dismissed claim for breach of the PSA sought specific performance as a remedy.  Defendants incorrectly assert that "[o]nly Count 15 sought specific performance of the PSA, and only Count 4 provided the basis to grant that relief."  *Id.* at 8.  In fact, Plaintiffs allege that they "are entitled to the PBA Parcels, *including because Two Roads completed the Letter of intent with PBA* and Flagler South Development LLC completed the Purchase and Sale Agreement with PBA for the purchase of the parcels."   FAC at ¶ 208 (emphasis added).[3]   The specific performance claim, therefore, "substantially overlaps" with the remedies sought in the surviving claim for breach of the LOI and the interlocutory appeal cannot proceed.  *In re Se. Banking Corp.*, 69 F.3d at 1547; *see also Barnett*, 715 F. Appx. at 902-03 (overturning Rule 54(b) certification for punitive damages because underlying claim could not be certified).

---

[3] Defendants' argument that "[t]he newly filed SAC contains no claim for specific performance of any contract, much less the PSA, and does not seek other enforcement of the PSA," Mot. at 8, fails because this Court's Order specifically foreclosed including a prayer for specific.

**B. This Court Should Preserve the Federal Policy Against Piecemeal Appeals and Deny Plaintiffs' Request for Rule 54(b) Certification**

The "historic federal policy" is "against piecemeal appeals." *Ebrahimi*, 114 F.3d at 166 (citation omitted). Recognition of a "final judgment" necessary to trigger an appeal "is proper only after the rights and liabilities of all the parties to the action have been adjudicated." *Id.* at 165-67. Rule 54(b) allows courts to exercise their discretion to disregard this well-established policy under limited circumstances. Thus, before granting Rule 54(b) certification, courts in this Circuit look to whether there is a "pressing need" or "hardship" that requires Rule 54(b) certification. *See Shedd v. Wells Fargo Bank, N.A.*, 2016 WL 4565775, at *9 (S.D. Ala. Aug. 31, 2016) ("Here, the dangers of piecemeal appeals and needless proliferation of proceedings are not offset by 'pressing needs of the litigants.'"). At the same time, "when the factual underpinnings of the adjudicated and unadjudicated claims are intertwined, courts should be hesitant to employ Rule 54(b)." *Ebrahimi*, 114 F.3d at 167; *see also Parker v. Ahmsi Insurance Agency Inc.*, 2021 WL 8565968, at *4 (S.D. Fla. July 8, 2021) (rejecting certification where "the same operative facts… serve as the basis for all of the named Plaintiffs' claims"); *Barnett*, 715 F. Appx. at 903 ("strongly caution[ing] against a broad reading of Rule 54(b)," under similar circumstances that involved a common nucleus of operative facts).

1. *Judicial Administrative Interests Weigh Heavily Against Rule 54(b) Certification*

Defendants argue that "there is little risk of repeat or scattershot appeals presenting the same issues." Mot. at 10. This is just wrong. There is no way to tell at this stage what other issues will be raised on any appeal—whether after a motion for summary judgment, trial or other motion or proceeding—but it is reasonable to assume that the LOI claims could be at issue in a later appeal. What is certain, however, is that requiring Plaintiffs to piecemeal appeal the issues in this action will unnecessarily burden the Eleventh Circuit's docket and cause Plaintiffs to have expended

additional, potentially unnecessary, resources in its already resource-intensive effort to recover from Defendants for the harm they have knowingly and deliberately caused.  Allowing an interlocutory appeal could also needlessly delay final resolution of Plaintiffs' remaining claims. Plaintiffs wish to abide by this Court's set trial schedule, closing discovery in late 2023 and beginning trial in May 2024.  *See* ECF No. 92 at 1-2.  That becomes increasingly unlikely if this Court grants Rule 54(b) certification.  It becomes a certainty if the Court allows a stay of discovery pending appeal because any appeal is likely to take months, if not years, to resolve.  *See, e.g.*, *Parker*, 2021 WL 8565968, at *4 (noting the litigation was "stayed for nearly two years pending the Eleventh Circuit's" ruling on appeal).

Surprisingly, Defendants argue that the claims for breach of the PSA and specific performance are not factually related to the other claims in this action.  *See* Mot. at 11.  In fact, there is immense overlap between the allegations regarding Plaintiffs' claim for breach of the PSA and Plaintiffs surviving claims—most notably, Plaintiffs' claims for breach of the LOI's exclusivity provision, fraud, and negligent misrepresentation against Defendants PBA and Koenig. For example, although the SAC no longer asserts a claim for breach of the PSA, the SAC still alleges that "PBA and Koenig repeatedly represented to Plaintiffs that the terms of the PSA had been finalized, that the PSA was 'all approved,' and that PBA planned and intended to move forward with Plaintiffs as its development partner."  SAC at ¶ 129.  As noted above, Plaintiffs allege the exact same injuries because of the breach of the PSA as they do for breach of the LOI's exclusivity provision, fraud, and negligent misrepresentation in the SAC and FAC.  *See* SAC at ¶ 147; FAC at ¶¶ 146, 155.  Many of the same facts related to the breach of the PSA claim that would be at issue in an interlocutory appeal are still at issue before this Court in connection with the pending breach of exclusivity provision, fraud, negligent misrepresentation, and tortious

interference claims—such as the value of PBA's investment in the PBA Parcels and other damages Plaintiffs suffered because of PBA's misrepresentations and omissions related to the PSA.  These claims are "intertwined" with Plaintiffs' claim for breach of the PSA and this Court should not certify the breach of contract claim accordingly.  *Ebrahimi*, 114 F.3d at 167.

Moreover, allowing an interlocutory appeal here would unnecessarily burden the Eleventh Circuit's docket.  If confronted with an appeal of the specific performance claim, the Eleventh Circuit would have to intimately familiarize itself with the facts, key characters and even the various legal theories that are still at issue in the SAC.  Not only would the Eleventh Circuit need to familiarize itself with the LOI and PSA, it would also need to understand the intricacies of Defendants' fraudulent scheme.  These issues will undoubtedly arise throughout the rest of the litigation and, potentially, on yet another appeal.  In that regard, any benefit of multiple appeals in the same case "will usually be outweighed by the burden on this court of having to reacquaint itself again and again with at least the basic facts of the case." *In re Se. Banking Corp.*, 69 F.3d at 1548 (quoting *Minority Police Officers Ass'n of S. Bend v. City of S. Bend, Ind.*, 721 F.2d 197, 200 (7th Cir. 1983)); *Ebrahimi*, 114 F.3d at 167 ("[P]iecemeal appeals…require two (or more) three-judge panels to familiarize themselves with a given case, instead of having the trial judge, who sits alone and is intimately familiar with the whole case, revisit a portion of the case. . . .") (citation omitted).

Defendants make two final, half-hearted policy arguments.  Citing a footnote hypothetical in *Curtiss-Wright*, Defendants argue that Rule 54(b) certification may facilitate settlement.  *See* Mot. at 12 (citing *Curtiss-Wright Corp. v. General Electric Co*, 446 U.S. 1, 8 n.2 (1980)).  But continued discovery, and earnest engagement in Court-ordered mediation is far more likely to lead to settlement than the disruption and undue delay that will result from certification that opens a second forum with a partial appeal covering the Court's dismissal order.  Defendants then rely on

case law from over half a century ago to argue that Rule 54(b) should be applied liberally.  *See* Mot. at 12.  In doing so, Defendants ignore binding Eleventh Circuit precedent that has clearly and repeatedly held that certification is the exception rather than the rule.  *See*, *e.g.*, *Vann v. Citicorp Sav. of Ill.*, 891 F.2d 1507, 1509–10 (11th Cir. 1990) (Rule 54(b) codifies "the historic practice of prohibiting piecemeal disposition of litigation and permitting appeals only from final judgments except in the infrequent harsh case...") (citations omitted).

   2. *The Frisbie Defendants Have Not Established that They Will Suffer Hardship or Injustice in the Absence of Relief Under Rule 54(b)*

   Relying exclusively on hearsay from a defendant in this case, Defendants contend that Rule 54(b) certification will alleviate putative economic harm by allowing the Frisbie Defendants to develop the property at issue in this action more expeditiously.  This argument is speculative and devoid of factual support.  To be sure, any purported damage that the Frisbie Defendants are currently encountering is a result of their tortious conduct and the pending litigation against them that they are responsible for triggering.

   The assertions in Defendant Robert Frisbie Jr.'s affidavit are nothing more than vague and self-serving hearsay with unsupported conclusions.  Mr. Frisbie—who is at the heart of the wrongdoing for which Plaintiffs seek relief in this action—does not attribute any statements to a specific buyer or title insurance providers.  *See* Frisbie Aff. at ¶ 14 (noting purported communications from "[p]rospective buyers"), ¶ 15 (claiming "[l]enders… would require 'clear title'"), ¶ 16 (asserting that "[t]itle insurance companies" will not issue title insurance because the specific performance claim is pending).  In part because his affidavit consists almost entirely of unsubstantiated hearsay, Mr. Frisbie's statements are incomprehensibly vague.  For example, Mr. Frisbie asserts that he "disclosed to prospective buyers and lenders the existence of the claim"— presumably as part of a disclosure of the *entire lawsuit*.  Frisbie Aff. at ¶ 13.  But he conveniently

blames the Frisbie Defendants' purported difficulties acquiring title insurance, engaging with lenders, and contracting with prospective buyers on a *dismissed* claim for breach of the PSA while ignoring Plaintiffs' allegations and claims against the Frisbie Defendants for aiding and abetting fraud, misappropriation of trade secrets, and tortious interference with contract and business relations that remain active and pending before this Court. *See* Frisbie Aff. at ¶¶ 14, 20-21. As Mr. Frisbie even admits, the purported "harm started when Plaintiffs filed this lawsuit and it is ongoing." Frisbie Aff. at ¶ 22. Any economic harm befalling the Frisbie Defendants is a result of their tortious conduct and the resultant case that is pending before this Court, not a dismissed claim.

Although any purported harm alleged in Mr. Frisbie's vague and unverified affidavit is insufficient to outweigh the burden on the judiciary, Plaintiffs should, at the very least, have the opportunity to cross-examine Mr. Frisbie and call their own witnesses if the Court intends to rely on the statements contained in his affidavit. Mr. Frisbie, who does not purport to have any experience in the title insurance industry and is certainly not an expert nor an attorney, cannot credibly assert that third-party prospective buyers, title insurance companies, and lenders have refused to contract with the Frisbie Defendants because of the dismissed specific performance claim rather than the pending lawsuit. Should Defendants present actual evidence based on testimony or an affidavit from an individual with personal knowledge of the insurance industry and the issues surrounding the PBA Parcels, Plaintiffs should be afforded the same opportunity.[4] Plaintiffs dispute the purported facts in Mr. Frisbie's affidavit and reserve the right to confront this

---

[4] Undersigned counsel from Clark Smith Villazor has over 20 years of experience within the title insurance industry, including serving as Acting Head of Claims at Fidelity National Financial, the largest title insurance company in the United States. Counsel is utterly unaware of the basis for the purported difficulties in obtaining title insurance set forth in Mr. Frisbie's affidavit.

self-serving witness, and call their own witness with actual expertise in the title insurance industry, if the Court intends to rely on Mr. Frisbie's statements.

Defendants assert that *Curtiss-Wright* supports certification here.    446 U.S. 1; *see* Mot. at 10-11.  But central to the Supreme Court's holding in *Curtiss-Wright* was the District Court's finding that the active counterclaims were severable from the claims that had been determined "in terms of both the *factual* and the legal issues involved."  446 U.S. at 9 (emphasis added).   In contrast, the factual and legal issues that remain live in this litigation are heavily "intertwined" with the issues related to the breach of contract claim.  *Ebrahimi*, 114 F.3d at 167.

The additional cases Defendants cite in support—none of which are controlling—either do not discuss Rule 54(b) substantively, *see FDIC v. Chaves*, 47 F.3d 1178, at *1 (10th Cir. 1995) (noting that the district court certified the appeal pursuant to Rule 54(b) without any further discussion of certification); *Dirty Work Unlimited, Inc. v. Turner Const. Co.*, No. 85-cv-10299, 1986 WL 12821, at *2 (N.D. Ill. Nov. 10, 1986) (noting that plaintiff offered "no reason to delay entry of judgment" without further discussion), or are otherwise distinguishable, *see Resol. Tr. Corp. v. Driscoll*, 985 F.2d 44, 47 n.3 (1st Cir. 1993) (ordering entry of judgment in favor of one defendant after *all* counts against the defendant were dismissed rather than a single count). *V.V.V. & Sons Edible Oils Ltd. v. Meenakshi Overseas LLC*, No. 14-cv-02961, 2023 WL 2354874, at *3 (E.D. Cal. Mar. 3, 2023) (noting that "there is no risk of piecemeal appeals given the unique procedural posture" of the patent case before the court); *see AMF Holdings, LLC v. Elie*, No. 15-cv-3916, 2016 WL 10520951, at *3–4 (N.D. Ga. Nov. 2, 2016), *magistrate report and recommendation adopted*, No. 15-cv-3916, 2016 WL 10567163 (N.D. Ga. Nov. 28, 2016) (noting that "there is little to no risk of 'piecemeal' appeals in this case because [plaintiff] voluntarily

dismissed her claims with prejudice" and citing "unfounded past delays caused by [plaintiff] and the resulting hardship to [defendant]").

At bottom, the burden on the judiciary and the parties to litigate piecemeal appeals outweighs the speculative burden on Defendants that they assert based on vague and self-serving hearsay.

**CONCLUSION**

Plaintiffs respectfully request that the Court deny Defendants' motion for entry of partial final judgments under Federal Rule of Civil Procedure 54(b) in its entirety.  In the alternative, should the Court intend to rely on the affidavit of Defendant Robert Frisbie Jr., Plaintiffs respectfully request that the Court order a hearing to allow counsel for Plaintiffs to cross-examine Defendant Robert Frisbie Jr and present their own witnesses and testimony.

Dated:
June 16, 2023

DOMNICK CUNNINGHAM & YAFFA

By: /s/ *Sean C. Domnick*
    Sean C. Domnick
      sean@pbglaw.com
    Matthew T. Christ
      matt@pbglaw.com

    2401 PGA Boulevard, Suite 140
    Palm Beach Gardens, FL 33410
    Telephone: (561) 625-6260
    Facsimile: (561) 625-6269

CLARK SMITH VILLAZOR LLP

    Christopher J. Clark
      clark@csvllp.com
      (*pro hac vice*)
    Benjamin Butzin-Dozier
      benjamin.dozier@csvllp.com
      (*pro hac vice*)

    250 West 55th Street
    New York, NY 10019
    Telephone: (212) 582-4400
    Facsimile: (347) 338-2532

*Attorneys for Plaintiffs Two Roads*
*Development LLC, Trilar Holdings LLC and*
*Flagler South Development LLC*

**CERTIFICATE OF SERVICE**

I hereby certify that on June 16, 2023, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all Counsel of Record or *pro se* parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

By: /s/ *Sean C. Domnick*
     Sean C. Domnick

## SERVICE LIST

Scott Hawkins, Esquire
**JONES FOSTER P.A.**
505 South Flagler Drive, Suite 1100
West Palm Beach, Florida 33401
Tel.: (561) 659-3000
Fax: (561) 650-5300
shawkins@jonesfoster.com

*Counsel for Defendants Palm Beach Atlantic
University Inc., William M.B. Fleming, Jr.,
and Patrick C. Koenig*

Eric M. George (*pro hac vice*)
Keith J. Wesley (*pro hac vice*)
Ryan Q. Keech (*pro hac vice*)
Serli Polatoglu (*pro hac vice*)
**ELLIS GEORGE CIPOLLONE O'BRIEN
ANNAGUEY LLP**
2121 Avenue of the Stars, Suite 2800
Los Angeles, CA 90067
Tel.: (310) 274-7100
Fax: (310) 275-5697
egeorge@egcfirm.com
kwesley@egcfirm.com
rkeech@egcfirm.com
spolatoglu@egcfirm.com

*Counsel for Defendants Palm Beach Atlantic
University Inc., Frisbie Group LLC, FH3
LLC, William M.B. Fleming, Jr., Patrick C.
Koenig, David W. Frisbie, Robert N. Frisbie,
Jr., and Cody Crowell*

Sean C. Domnick, Esquire
Matthew T. Christ, Esquire
**DOMNICK CUNNINGHAM & YAFFA**
2401 PGA Boulevard, Suite 140
Palm Beach Gardens, FL 33410
Tel.: (561) 625-6260
Fax: (561) 625-6269
sean@pbglaw.com
matt@pbglaw.com

Christopher J. Clark (*pro hac vice*)
Benjamin A. Butzin-Dozier (*pro hac vice*)
**CLARK SMITH VILLAZOR LLP**
250 West 55th Street, Floor 30
New York, NY 10019
Tel.: (212) 582-4400
Fax: (347) 338-2532
clark@csvllp.com
benjamin.dozier@csvllp.com

*Counsel for Plaintiffs Two Roads
Development LLC, Trilar Holdings LLC and
Flagler South Development LLC*

John K. Shubin, Esquire
Deana D. Falce, Esquire
Jamie L. Katz, Esquire
**SHUBIN & BASS, P.A.**
46 S.W. First Street, Third Floor
Miami, Florida 33130
Tel.: (305) 381-6060
Fax: (305) 381-9457
jshubin@shubinbass.com
dfalce@shubinbass.com
jkatz@shubinbass.com

*Counsel for Defendants Frisbie Group LLC,
FH3 LLC, David W. Frisbie, Robert N.
Frisbie, Jr., and Cody Crowell*